Mb32DaoC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DAOL REXMARK UNION STATION,
LLC, et al.,

                Plaintiffs,            New York, N.Y.

          v.                           22 Civ. 6649 (GHW)

UNION STATION SOLE MEMBER,
LLC,

                Defendant.

------------------------------x        Remote Conference

                                       November 3, 2022
                                       2:00 p.m.

Before:

                    HON. GREGORY H. WOODS,

                                       District Judge


                          APPEARANCES


MORRISON COHEN LLP
     Attorneys for Plaintiffs
BY:  AMBER R. WILL
     Y. DAVID SCHARF


KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
     Attorneys for Defendant
BY:  DAVID E. ROSS
     DAVID J. MARK
```

Mb32DaoC

1          THE COURT:  This is Judge Woods.  Do I have a court

2    reporter on the line?

3          THE COURT REPORTER:  Good afternoon, Judge.  Kristen

4    Carannante.

5          THE COURT:  Good.  Thank you.

6          Let me begin by taking appearances from the parties.

7    I am going to begin by taking appearances from counsel for

8    plaintiff.

9          Counsel.

10         MS. WILL:  Thank you, your Honor.  This is Amber Will

11   and Y. David Scharf, from Morrison Cohen, for plaintiff.

12         THE COURT:  Good.  Who is on the line for defendant?

13         MR. ROSS:  Good morning, your Honor.  David Ross and

14   David Mark, from Kasowitz Benson Torres, for USSM.

15         THE COURT:  Good.  Thank you very much.

16         I'm sorry.  Is there someone else who would like to

17   identify themselves?

18         So let's begin.

19         So first, let me just remind you all that this is a

20   public proceeding.  Any member of the public or press is

21   welcome to dial in to this conference.  I am not presently

22   monitoring whether third parties are monitoring the conference,

23   so I ask you to just, please, keep that possibility in mind.

24         Second, please state your name each time that you

25   speak during the conference.  I ask that you do that even if

1    you have spoken previously.

2            Third, please keep your lines on mute at all times

3    except when you are intentionally speaking to me or to the

4    representative of a party.

5            Fourth, I am inviting our court reporter to let us

6    know if she has any difficulty hearing or understanding

7    anything that we have to say here today.  If she asks you to do

8    something that will make it easier for her to do her job,

9    please do it to the extent that you can.

10           And finally, I am ordering that there be no recording

11   or rebroadcast of all or any portion of today's conference.

12           So counsel, I scheduled this as an opportunity to hear

13   from plaintiff regarding the proposed motion for summary

14   judgment that's the subject of their premotion conference

15   request letter.  So let me just say that I have read both the

16   letter that was submitted by counsel for plaintiff as well as

17   the letter submitted by counsel for defendant on the 2nd of

18   this month.  Still, it can be helpful for me to hear from each

19   of you about the anticipated arguments in order to help think

20   about how the motion should thus be scheduled, among other

21   things.

22           Let me begin with counsel for plaintiff.  What's the

23   basis for the proposed motion?

24           MS. WILL:  Thank you, your Honor.  This is Amber Will

25   for plaintiffs.

1      Lender is entitled to summary judgment on its single

2 claim for a declaratory judgment because the only dispute here

3 is that of contract interpretation, which the Court can decide

4 as a matter of law.

5      Now, lender's position, as you mentioned, is well

6 articulated in the letter that we submitted to the Court on

7 October 26, 2022, which is filed at ECF Docket No. 51.  The

8 Court is also well-versed on these issues after the briefing

9 that was submitted before the preliminary injunction hearing

10 that was held on August 23.

11      I will briefly kind of summarize why lender is

12 entitled to summary judgment and then address some of the

13 points raised in USSM's response letter, as well.

14      First and most importantly, summary judgment is

15 warranted here because the sole issue before the Court is

16 interpreting unambiguous contractual language.  It is well

17 settled that clear and complete writing should be enforced

18 according to its terms, and here we have both a pledge and

19 security agreement as well as a mezzanine loan agreement.

20      Section 9(a) of the pledge agreement and Section 5.2.2

21 of the loan agreement unambiguously provide lenders certain

22 rights if USSM is in default.  It is undisputed that USSM has

23 been in default since May of 2020.  And as highlighted in the

24 preliminary injunction hearing before the Court, the issues

25 here are contractual, whether lender could do what it did.

Mb32DaoC

1          USSM's response letter supports the focus on

2     contractual interpretation.  In fact, in its opposition letter,

3     on page 3, USSM's first argument regarding merit is based

4     solely on contractual interpretation.  USSM has not identified

5     any discovery that would further support their position on

6     these contractual issues.  Rather, they intend to make the same

7     arguments that were presented and rejected at the preliminary

8     injunction hearing.

9          Lender's request for a summary judgment briefing would

10    be able to resolve these issues as a matter of law, and because

11    the contract includes unambiguous language that can be resolved

12    as a matter of law, discovery is unnecessary in this case.  The

13    documents that are relevant to the single declaratory judgment

14    claim and USSM's defenses have already been provided or are in

15    the possession of both parties.  There are no other documents

16    that are necessary to actually resolve the claim that is

17    pending before this Court.

18          In fact, even though USSM discusses a lot of discovery

19    that they have requested, none of those requests touch on a

20    valid defense that would actually preclude lender from winning

21    on summary judgment.  Particularly, USSM relies on finding

22    documents that would relate to lender's predecessor in interest

23    interfering with an investment and how that could have allowed

24    USSM to become current on its loan.  But regardless of whether

25    that evidence exists, the current posture of this action makes

1    the discovery legally insignificant.  If USSM had sought an

2    injunction in advance of the foreclosure five months or so ago

3    or objected in some other way before the sale had proceeded, we

4    would have been in a different position.  But right now, the

5    foreclosure sale happened on June 14 of 2022, almost five

6    months ago.  The sale has concluded.  Lender purchased the

7    collateral by a credit bid, and lender transferred the

8    collateral to Daol Rexmark.

9         The discovery that USSM wants would not unwind that

10   foreclosure sale.  And discovery needs to be targeted for

11   evidence on a triable, material issue of fact, meaning that it

12   has to be legally significant.  As USSM identifies on page 2 of

13   its letter, "If discovery that is essential to justify an

14   opposition is outstanding, a summary judgment can be deferred

15   or denied," but the discovery requested here is legally

16   irrelevant, given the posture that we find ourselves in, that

17   is, the foreclosure has already happened.

18        Moreover, discovery is also unnecessary because none

19   of the affirmative defenses preclude summary judgment.  USSM

20   has the burden to demonstrate that judgment could be found in

21   its favor on the basis of a particular defense.  And as I just

22   discussed, none of these defenses could actually unwind the

23   foreclosure sale.

24        But regardless, the affirmative defenses that they

25   have claimed contain bare and conclusory statements that can be

1   completely disregarded as a matter of law, and I just want to

2   touch on two of them that are referenced in the letters that

3   were submitted to the Court.

4           The first on the lack of standing or capacity:  Now,

5   lender produced documents that show the transfer of the

6   collateral from Kookmin Bank to Daol Rexmark Union Station in

7   its initial disclosures, and that documentary evidence

8   demonstrates that USSM's defense on that fails.  The other

9   defense that USSM relies upon in its letter toward the end on

10  page 3 is that lender is not entitled to a condemnation award

11  above the loan amount, but that is not an issue before this

12  Court.  The unambiguous language and the claim before this

13  Court is based on Section 5.2.2 which explicitly provides

14  lender the right to serve as USSM's attorney-in-fact during a

15  condemnation proceeding that occurs while USSM is in an event

16  of default.  The distribution of a condemnation award, if it

17  happens, is an issue properly before the court in D.C.  The

18  issues before this Court, no matter how many times USSM tries

19  to conflate them, are only about the loan agreements and the

20  rights exercised thereunder.  But ultimately even this

21  purported affirmative defense that lender cannot receive a

22  condemnation award in excess of the loan amount does not

23  actually preclude a judgment in lender's favor on the single

24  claim for a declaratory judgment.  And for those reasons, we

25  think that lender is entitled to summary judgment prediscovery.

Mb32DaoC

1          THE COURT:  Thank you.  This is not the most pertinent

2     of my questions, but I would like to start with it because it

3     is where you ended.  What is your view of the effect of the

4     foreclosure on the distribution of any funds from the

5     condemnation?  We know that defendants, for reasons known to

6     them, in their wisdom, chose not to file for bankruptcy and

7     potentially retain the upside of the equity value through

8     Chapter 11 or other bankruptcy proceeding as a result of which

9     you assert -- have asserted that you rightfully foreclosed on

10     the equity.  What's the effect of that fact on the distribution

11     of the condemnation amount?  In other words, to whom is the

12     condemnation amount owed?  Let me just hear a little bit about

13     your views regarding the effect of the ownership of the equity

14     of this company on the entitlement of its what you assert to be

15     former owners to a portion of that distribution?  I ask because

16     it is the last thing you raise, also because I'm curious to

17     help me understand the issues presented, maybe not on this

18     motion, but in the litigation more generally.

19          Go ahead.

20          MS. WILL:  Thank you, your Honor.  Again, this is

21     Amber Will for plaintiffs.

22          In response to that, lender does own the ownership

23     interest in USI, and because the condemnation award is when

24     occurs in D.C. would be going to USI, it would be our position

25     that would be under lender's control.  However, there is a

Mb32DaoC

1    point in time from the condemnation which was filed on April

2    14, 2022 and before the foreclosure sale happened on June 14,

3    2022, that if there are any proceeds during that time that the

4    Court feels is better distributed to USSM as the former owner

5    of USI, that would be a decision for the district court in D.C.

6    to make once the condemnation award issue has been presented

7    before that contract.

8            THE COURT:  Thank you.  Let me just pause you.  This

9    is an issue not before me, so I am just asking out of

10   curiosity.  At least it is not before me at this time.

11           Why would the -- what would the basis be for the

12   argument or what do you anticipate the argument to be that

13   would entitle the former equity owner to a portion of the

14   condemnation award?  Why wouldn't the right to a payment of the

15   condemnation award not be just, I will call it, part of the

16   rights inherent in the ownership of the asset, that is, the

17   company that would inhere to the company unless and until the

18   company declared a distribution or dividend to the

19   equityholder?

20           MS. WILL:  Yes.  Amber Will for plaintiffs.

21           Lender disagrees with the idea that USSM as the former

22   owner would have any interest, but the D.C. Court has

23   referenced in the past that it is not ruling against the idea

24   that USSM could have a financial interest in the condemnation

25   award, and that is what we are going off of.

1      THE COURT:  Thank you.  Good.  Understood.

2          So counsel, you have referred in your comments here to

3  the threadbare nature of the defenses raised in the answer.

4  Can you comment more on what the point of that is here as I am

5  evaluating the proposed motion for summary judgment?  In other

6  words, if they are insufficiently pleaded under *Geox* and Second

7  Circuit law, how does that impact my assessment of the proposed

8  motion for summary judgment, which is not a motion to strike?

9      MS. WILL:  Yes, your Honor.

10         As a matter of law, there is case law, including SDNY

11  case law, that says that affirmative defenses that contain bare

12  and conclusory statements are not enough to defeat a summary

13  judgment motion.  There has to be some facts alleged.  There

14  has to be a basis for discovery that would actually demonstrate

15  that judgment could be found in the defendant's favor on a

16  particular defense.  In this case, when we are looking at the

17  first, second, fourth, fifth, sixth, seventh, and eighth

18  affirmative defenses, they are all very bare statements that

19  are just statements of legal conclusions, rather than having

20  any factual allegations to support them.

21      THE COURT:  Thank you.  Let me just pause you on that.

22         You and, I am sure, counsel for defendants are all

23  aware of the pleading standard for affirmative defenses under

24  the Second Circuit's holding and ruling in *Geox*.

25         What I want to understand -- they pleaded them as they

1   have.  What I want to understand is I will call it the

2   procedural nuance here.  I understand that you are not bringing

3   a motion to strike these affirmative defenses because they are

4   inadequately pleaded, because they state no facts, as you

5   argue, to support the defenses, but this is a Rule 56 motion,

6   so can you say a few more words about how I should be thinking

7   about this from a procedural perspective?  I think you said

8   that they need to present facts that would support the

9   affirmative defense for purposes of the summary judgment

10  motion, but you are referring to the absence of facts that they

11  have presented in the answer which are different arguably from

12  the facts that they may present in affidavits or otherwise in

13  response to the Rule 56 motion.  Why would I just look at the

14  sufficiency of the facts stated in the answer for evaluating

15  the 56 motion?

16          MS. WILL:  Thank you.

17          Our point is that you would look at the -- the Court

18  would look at both.  It would not just be solely looking at the

19  affirmative defenses that are pleaded in the answer, but also

20  looking at the arguments that are raised in opposition of

21  summary judgment.  And specifically I am looking at an SDNY

22  case that was decided in September of 2022 called *Town Square

23  Media, Incorporated v. Regency Furniture*.  I can give the

24  Westlaw citation if desired, but it stands for the proposition

25  that a plaintiff's motion for summary judgment, if it's

1    meritorious absent the assertion of an affirmative defense, in

2    order for the defendant to avoid summary judgment, they have to

3    adduce evidence which, viewed in the light most favorable to

4    defendant, would permit judgment for defendant on the basis of

5    that defense.  And based on what we have here, looking at the

6    answer and looking at the letter that was submitted by USSM

7    that doesn't identify any evidence that would be able to

8    preclude a finding in lender's favor, we think that they have

9    not met that burden and that summary judgment would be

10   appropriate here.

11           THE COURT:  Thank you.

12           In defendant's letter, I understand them to be arguing

13   that if I grant your application it will have the effect of

14   being equitable relief.  In other words, they are saying that a

15   declaratory judgment upholding the effect of what I understand

16   to be a nonjudicial foreclosure action under the UCC would, by

17   virtue of the fact that I would grant the relief, be properly

18   considered as an equitable order, ordering foreclosure.  What

19   is your response to that argument?

20           MS. WILL:  Our response is that this is really an

21   outlaw issue.  It is contractual in nature.  And the case law

22   is very clear that because USSM did not object to the

23   foreclosure sale, they only have a basis for monetary damages

24   at this point, and there are no counterclaims in this case,

25   there are no allegations for monetary damages.  They can simply

1    not unwind the sale that has already occurred and that's been

2    well settled in New York law.

3              THE COURT:  Thank you.

4              Am I being asked to transfer ownership of the shares

5    such that this is a judicial act by virtue of the request for

6    entry of declaratory relief here, as I understand defendants

7    are framing it, or is this something else?

8              MS. WILL:  No, your Honor.  The ownership shares have

9    already been transferred based on the foreclosure sale.  The

10   declaratory judgment is just to validate the rights that have

11   been exercised based on the clear contractual provisions in the

12   loan agreement and the pledge agreement.

13             THE COURT:  Thank you.  Thank you very much.

14             Counsel for defendant, let me hear from you.

15             MR. ROSS:  Thank you, your Honor.  David Ross.

16             I'm going to try to address the points that you

17   discussed with Ms. Will, but please let me know if I haven't

18   addressed them all and you would like me to cover them.

19             First, our position is fundamentally set forth, first,

20   in the letter that we sent you yesterday, dated November 2.  I

21   am not going to repeat what's in that letter, but

22   fundamentally, your Honor, we are at a case in which you have

23   granted a preliminary injunction.  So there is no urgency

24   whatsoever to the application that's being made for you now to

25   decide summary judgment at this stage of the case.  No facts

1    have been put before you as to why there would be any urgency

2    to rush to any judgment in this matter given that there is a

3    pending preliminary injunction and no complaint that it has

4    been violated in any way.

5           Number two, your Honor entered a scheduling order on

6    about September 13, and that scheduling order provided for

7    standard, full discovery——both fact discovery and expert

8    discovery——and that discovery would end in February, followed

9    by summary judgment motions being filed by mid March.  Nothing

10   has been put before you as to why discovery should not proceed

11   in the ordinary course.

12          What has actually happened here is that, immediately

13   upon our being able to serve document requests, we served them

14   on the other side, and a month later we got "pound sand" or the

15   equivalent of a stiff arm on every single request that we

16   served.  The position has been:  You are entitled to nothing,

17   we will give you nothing, and nothing is what you will get.

18          They produced five documents to us voluntarily, they

19   say, about standing because that's what they want us to know,

20   only what they want to show us relating to Daol.  We are

21   entitled to inquire as to the facts with respect to which their

22   claim is based, how they got the rights, what rights they had,

23   who they transferred them to, and the fundamentals of the

24   foreclosure transaction which underlays their claim.  I can't

25   tell until I see it what they actually did and how they did it

Mb32DaoC

1  and whether or not any part of it was inequitable or improper.

2  They are only showing us and you what they wanted to put in

3  their injunction papers.

4        Second, we have alleged affirmative defenses that, if

5  proven, would demonstrate that they are not entitled to the

6  relief that they seek.  Whether it is strictly called equitable

7  relief or not, I don't think your Honor has to decide at this

8  moment.  The allegation is that they and their predecessor in

9  interest actively interfered with the financing of the property

10  in such a way as to undermine the owner's ability to refinance

11  the loan, get an equity infusion, pay off the loan.

12        Second, later in time, they themselves interfered

13  directly with our client's ability to obtain funds from tenants

14  for the property, find new tenants, explore new opportunities,

15  and interfered with our tenant Amtrak.

16        THE COURT:  Can I pause you just a little bit on the

17  predecessor issue?

18        MR. ROSS:  Yeah.

19        THE COURT:  When you say predecessor, do you mean

20  their corporate predecessor or the entity that owned these

21  loans before them?

22        MR. ROSS:  I mean the mortgage lender, your Honor, but

23  Rexmark, through Mr. Rebibo, was also in direct contact at that

24  time with Wells Fargo and BlackRock.  He was protesting their

25  conduct as improper and violative of the parties' rights at

1    that time, in writing, and that's part of the discovery that I

2    want to take related to that.

3         As it turns out, we believe Mr. Rebibo and Rexmark and

4    Kookmin also got in bed with the mortgage lender in seeking to

5    undermine our client's rights and interfere with them.  So --

6         THE COURT:  Can I pause you on that?  I am just

7    curious about what I will call the transfer of that liability.

8    So I'm going to assume for these purposes that the prior holder

9    of these loans did interfere.  Why does that give rise to a

10   defense against the enforcement of the obligations under the

11   note as opposed to a claim against the prior entity?  In other

12   words, why isn't the actor the person who is liable for the

13   alleged bad acts?  Why does the problem travel with the note?

14   What cases do you have to support that the prior owner of an

15   asset's conduct diminishes the value of the asset once

16   transferred?

17        MR. ROSS:  Your Honor, David Ross.

18        The note was transferred or assigned to Kookmin from

19   the mortgage lender or lender entities, so its defects travel

20   with the note itself.  They inherited whatever problems that it

21   had.  I don't have a case on my table waiting to hand you, but

22   I can --

23        THE COURT:  Let me just ask about, you say whatever

24   problems it had, referring to the loan.  What is the transitive

25   property here, that conduct by owner of asset that therefore

Mb32DaoC

1    contaminates the asset such that it's transferred together with

2    the asset as opposed to bad actor remains liable for their bad

3    act?  Is there a case that supports that proposition?

4            MR. ROSS:  I think there are, your Honor, but New York

5    General Obligations Law also says that when you transfer an

6    interest, it carries with it any claims that are against that

7    interest.  So I don't -- I think we can, if you like, we will

8    dig it out and submit it to your Honor, but it's a fairly

9    standard proposition that it doesn't wash -- the transfer

10   doesn't cleanse or wash any defects or violations that may have

11   occurred that accompany that interest.

12           THE COURT:  Thank you.  I look forward to any case law

13   that you can put in front of me that supports that proposition

14   in this context in a nonfrivolous way.  I just note that it is

15   a very expansive argument that you are proposing, namely, that

16   the conduct by any person that owned an asset travels with the

17   asset itself.

18           MR. ROSS:  Yes, your Honor.  I'm sorry.  I didn't mean

19   to interrupt you.

20           THE COURT:  That's fine.  Please go ahead.

21           MR. ROSS:  What I was also saying is that Kookmin

22   Bank, through Rexmark and Mr. Rebibo, also wrongfully

23   participated themselves in undermining our client's interest,

24   so it is not only the conduct of the predecessor, but the

25   conduct of the plaintiff itself that we are pursuing.  I think

1    that -- I think this is equitable in the sense of the

2    declaratory judgment being an equitable remedy that arises in

3    the context of a foreclosure and asks for you to decide and

4    declare what the rights of the parties are in this context.  We

5    have cited --

6         THE COURT:  Can I just pause you on that?  I saw the

7    case that is -- you heard the question that I was asking

8    counsel for plaintiff about this.  The act that they took that

9    they assert led to their ownership of the asset was a

10   nonjudicial foreclosure action under the UCC.  Are the cases

11   that you are pointing to cases that involve nonjudicial

12   foreclosures of that type or are they cases in which the court

13   ordered foreclosure?  So, in other words, is my *post hoc*

14   recognition of a nonjudicial foreclosure the same as a court

15   ordered foreclosure?

16        MR. ROSS:  I think the cases that we cited to you

17   involve judicial foreclosure, your Honor, but I don't think

18   that that changes the answer to the inquiry.

19        The essential nature of what's going on here is that

20   it arose out of a foreclosure, and they are seeking a

21   declaration as to rights and I believe as a matter of law that

22   you are entitled to consider equitable defenses.  The effect of

23   the judgment in this case would be the same whether or not

24   whatever this original source was.  So I think you look to the

25   nature of the relief that's being sought.

1          With respect to the affirmative defenses, your Honor,

2     as you point out, clearly, no motion has been made to strike

3     our affirmative defenses or suggest that they are inadequately

4     pled, only that at this stage of the proceeding, having just

5     answered, we are also being put to the burden before conducting

6     any discovery and with a stiff arm being put out barring us

7     from getting any documents.  They would like to say that we

8     can't put any meat on the bones yet.  And respectfully, your

9     Honor, we think that that is the height of depriving us of due

10     process in order for us not to be able to inquire.

11          For example, even as to the simple question of

12     standing, of Daol's standing, they say we have to take the five

13     documents they received, we are not entitled to get all

14     documents about how Daol acquired this or any communications

15     about it, and we then have to accept as fact their assertion of

16     what these documents show.  I don't know if they are

17     legitimate.  I don't know when they were created.  I don't know

18     what else their files show.  I don't understand why I'm not

19     entitled to inquire as to a fundamental element of their claim

20     that they own these rights and that they properly acquired

21     them.

22          We are at the start of a case, and while they may have

23     been entitled to a preliminary injunction based on your Honor's

24     evaluation of what was put forward, that's not the ultimate

25     determinant in this case, and I believe that I am entitled on

1    behalf of my client to get the documents that relate to the

2    fundamental issues in the case, including these affirmative

3    defenses that we asserted, but also the fundamentals, for

4    example, about the drafting and negotiation of the documents.

5    How did the clauses that we are disputing and that are the

6    subject of this supposed clear and unambiguous contract, how

7    did they get in there?  Who drafted them?  Why were these

8    certain sentences added to the end of certain clauses that are

9    not in the original mortgage provision on condemnation?

10           They are telling you, Don't look behind the curtain,

11   you can only look at what we decide to show you, and I think we

12   are entitled to investigate those matters.  And given that

13   there is a preliminary injunction in place, I also think that

14   it is fundamentally unfair to say we have got to make our case

15   at this moment in time based only on the opaque disclosure that

16   we are given and we are not going to be able to use the next 12

17   weeks to learn anything.  If they are not giving us any

18   documents, are they also not giving us any witnesses?  And are

19   they going to tell us we can't ask the witnesses these

20   questions?  And if we can ask them these questions, why can't

21   we get the documents about the questions?

22           So to me, I think we are being essentially completely

23   closed out of our rights unfairly and improperly, and what I

24   think your Honor should do is defer any briefing on this

25   summary judgment, let us get the documents that we are entitled

1   to, and we may have to bring a dispute to your Honor in the

2   next two weeks, because if the stiff-arm approach continues

3   from the other side——and perhaps your Honor will give some

4   indication of your views on that, but if that continues, then

5   we are going to make -- ask your Honor to allow us to move to

6   compel, and all of that is going to bog down the discovery that

7   we are entitled to.  If we are being told, no, you can get

8   nothing at this point in this case either about our claims or

9   your defenses and you merely can sit there bound and gagged at

10  counsel's table, then I don't think that that is the kind of

11  proceeding that's appropriate.

12          THE COURT:  Good.  Thank you very much.

13          Let me turn back to counsel for plaintiffs.  I want to

14  ask about a couple of defendant's points which are well made.

15          First, counsel, you have looked at Rule 56(d) and the

16  case law that describes the circumstances in which a Court

17  permits full briefing on a summary judgment motion and grants

18  summary judgment prior to the completion of discovery.  There

19  is clear case law in the Second Circuit which I'm confident the

20  parties have looked at.  Aware of the standard and the

21  Circuit's description of the circumstances in which they have

22  told us district courts that we may proceed to decide on a

23  motion for summary judgment and circumstances in which

24  discovery has not been completed, counsel for plaintiff, let me

25  hear from you about why it is that you think that this motion

1    will succeed in the face of what I expect we all anticipate

2    will be a response based on Rule 56(d).  And I note that one of

3    the factors——I'm going to paraphrase it, because I don't have

4    the language in front of me, I apologize——looks to the reasons

5    why the discovery has not been made available here.  I

6    anticipate that defendant is going to say, based on their

7    comments here, that it hasn't been made available because it's

8    early days in discovery and because they said that you have not

9    yet given them relevant documents.  So given the anticipated

10   56(d) opposition, counsel for plaintiff, why is the time ripe

11   for this motion?  And as you are responding, you should

12   respond, please, to the related argument that there is no rush

13   given the pendency of the injunctive relief.

14            (Continued on next page)

15

16

17

18

19

20

21

22

23

24

25

MB31DAO2

1          MS. WILL:  Thank you, your Honor.  This is Amber Will

2     for plaintiff.

3          Again, without repeating myself too much from before,

4     a lot of the points raised regarding the predecessor in

5     interest's supposed bad acts, the interference with tenants and

6     leases, which is actually just the enforcement of contractual

7     language based on USSM's default, all of those kind of

8     equitable defenses that USSM keeps relying on and keeps arguing

9     that are relevant to this case, even if there was evidence to

10    produce -- to support those arguments, that would not preclude

11    a finding in lender's favor.  There's just not -- the evidence

12    for those defenses would not actually prevent lender from

13    succeeding on its summary judgment for the declaratory judgment

14    claims.  That is why it's relevant now before discovery, before

15    there is wasted resources, and the parties go through four

16    months or so for discovery, when it's unnecessary.  It's

17    irrelevant.  It might be interesting, but it's actually

18    insignificant or legally insignificant to the issues that are

19    before the Court.  Specifically, in regards to the discovery

20    arguments that USSM has made in saying that we've given them a

21    stiff arm, we have told them to pound sand and say that we're

22    not getting nothing --

23          THE COURT:  I don't need argument on the discovery

24    issues here, or the anticipated potential discovery issues.  If

25    those arise, I'll hear from the parties.  I'll comment on this

1    at the end.

2          Just from a practical perspective, counsel, if I set

3    summary judgment briefing now and I do not stay discovery, the

4    likelihood that I'm going to decide this proposed motion before

5    discovery ends under the existing case management plan and

6    scheduling order is honestly very low.  How does that affect

7    your argument regarding I'll call it the efficiency and the

8    potential of such a motion to reduce the burden on the parties?

9    Again, unless I were to stay discovery—-which no one has asked

10   for here and I'm not taking a position on it—-discovery would

11   happen in parallel with the briefing and resolution of this

12   motion.  Briefing will take some amount of time, which we will

13   determine shortly, and then it will take me some time to

14   resolve it.  That will gobble up, I expect, a good portion of

15   the fact discovery period, at a minimum.  So how does that

16   affect the argument regarding the value of bringing this motion

17   now?

18          MS. WILL:  Well, even if discovery -- sorry.  This is

19   Amber Will for plaintiffs.  Even if discovery continued through

20   the summary judgment briefing, at least with the summary

21   judgment briefing, there would be context for any discovery

22   disputes that would also be brought before this Court.  As USSM

23   has mentioned, we had a meet-and-confer yesterday.  We asked to

24   go through the requests one by one to understand why all

25   documents related to Union Station was necessary for their

MB31DAO2

1    defenses.  They refused to go into detail.  So we think that

2    there are going to be factual -- or not factual -- we think

3    that there are going to be discovery disputes that will

4    probably come before this Court as well, and with the summary

5    judgment motion being briefed, it will give the Court context

6    as to whether discovery is necessary and how to rule on those

7    motions.

8             THE COURT:  Thank you.  Good.

9             So I'm going to go ahead and set a briefing schedule

10   for the motion now.  I want to talk about structure of the

11   motion.  I'm going to make a request for the parties' views

12   regarding two alternative approaches here.

13            The default approach is the standard approach in which

14   the motion will be filed, an opposition, and then a reply would

15   follow.  An alternative that I have seen and used in other

16   circumstances where there is an anticipated Rule 56(d)

17   opposition is this:  I have in the past, in appropriate

18   occasions, not all occasions, structured the summary judgment

19   motion briefing so that rather than a plenary opposition

20   addressing the 56(d) argument, as well as substantive

21   opposition to the motion, I have instead scheduled an

22   opportunity for the opposing party, who's opposing on 56(d)

23   grounds, to submit the affidavit which is required for such

24   opposition under Second Circuit case law, and a memorandum of

25   law that's limited to the 56(d) issue, then a reply addressing

1    the 56(d) issue.  Only after I've resolved the 56(d)

2    issue—-namely, whether or not I'm going to actually entertain

3    the fulsome substantive motion—-then do I ask for substantive

4    briefing in opposition to the motion from usually the plaintiff

5    but here defendant.  That is an alternative structure.  So I'm

6    going to describe them as standard and the 56(d) options, and I

7    want to ask for each of your respective views on those options

8    for the potential briefing structure here, beginning with

9    counsel for plaintiffs.  Counsel?

10              MS. WILL:  Thank you, your Honor.  Amber Will for

11   plaintiffs.

12              Lender would ask for the traditional default structure

13   of the summary judgment motion, particularly because the

14   defenses that have been raised here are legally insignificant

15   and that is what USSM is seeking discovery on, and the other

16   issues have already been brought before the Court in the

17   preliminary injunction briefing.

18              THE COURT:  Thank you.

19              Counsel for defendant, let me hear from you.

20              MR. ROSS:  David Ross, your Honor.  I think your 56(d)

21   option is very sensible in this context, given the discussion

22   that has happened and the letters that have been submitted and

23   the obvious potential that you may conclude that we are correct

24   with respect to the 56(d) issue, and that obviates the need for

25   further briefing at that point.

MB31DAO2

1          THE COURT:  Thank you.  Good.  Thank you very much,

2     counsel.  I appreciate that.  Let me turn to the briefing

3     schedule.

4          I'm going to adopt the 56(d) option here.  I

5     appreciate that there is an attendant issue with this

6     option--namely, that from plaintiff's perspective, it will

7     stretch out the time for resolution of the motion.  I'm going

8     to try to mitigate that potential concern by recognizing the

9     fact that the scope of the opposition will be more limited than

10    it would be in the context of a plenary opposition and that

11    therefore, the reply to the 56(d) affidavit will be more narrow

12    and focused than I'll call it the standard reply to the motion

13    for summary judgment itself.  So what I'm going to do is set a

14    briefing schedule for the motion for summary judgment.  I'll

15    start with the proposed moving date by counsel for plaintiff.

16    I'll solicit that from you, and then I will set a schedule for

17    the remaining submissions with some instructions about what I

18    expect to see after hearing from each of you.

19         Let me start with counsel for plaintiff.  When would

20    you propose to file your motion?

21         MS. WILL:  Lender would file its motion by

22    November 23rd --

23         THE COURT:  Thank you.

24         MS. WILL:  -- which is a Wednesday.

25         THE COURT:  Good.  Thank you.  Understood.

MB31DAO2

1          So this is my proposal.  I propose to accept the

2     proposed filing date, which is the 23rd.  I propose that the

3     opposition, which, as I understand it, will be limited to an

4     opposition addressing the defendant's proposed argument focused

5     on Rule 56(d) -- please look carefully at the case law in this

6     space from the circuit.  I'm confident that you will.  They say

7     that there are certain things that must be provided to the

8     Court, so please look at that carefully.  I've seen

9     circumstances where parties don't do that, and that's not in

10     the best interest of their client.  So please look carefully at

11     what it is that you're supposed to present, most importantly an

12     affidavit describing the things that the circuit says that it

13     should describe.  So the opposition will be due three weeks

14     after the service of the motion.  Any reply will be due one

15     week after.  As I said, this is an expedited schedule so that I

16     can address the 56(d) issue relatively promptly, I would hope,

17     and then would turn to substantive briefing in the event that I

18     decide that defendants' arguments are insufficient.  I

19     recognize that that schedule straddles the holidays, and that's

20     the reason why I'm proposing three weeks as the date for the

21     opposition as opposed to a potentially shorter period of time.

22          I note on the 56(d) issue that that does not require

23     necessarily that you have full information regarding the

24     content of the moving brief, and as a result, I expect that

25     much of what you would put in front of the Court regarding the

MB31DAO2

1    grounds for opposing it under Rule 56(d) grounds could be

2    thought about and developed, really starting now.

3         Good.  So that's my proposed schedule.  Counsel for

4    defendants, can you make that work?

5         MR. ROSS:  Yes, your Honor.  Thank you.  I have

6    something to raise, but I'll wait till we finish this part.

7         THE COURT:  Good.  Thank you.

8         So the schedule is as I just described it.  The motion

9    itself is due no later than the 23rd of November; any

10   opposition, which will be limited to any issues pertaining to

11   Rule 56(d), will be due no later than three weeks following the

12   date of service of the motion; any reply will be due no later

13   than one week following service of the opposition.

14        Let me just say a few brief words about the summary

15   judgment motion practice generally.  I don't need to say this,

16   and some of what I'm about to say only applies should we get to

17   full substantive briefing on the motion for summary judgment,

18   but since you're all here, I'll take your time to flag these

19   issues.

20        As you're presenting your motion to the Court, counsel

21   for plaintiff, obviously you should review the court's local

22   rules and my individual rules.  Each side will need to comply

23   with the local rules regarding 56.1 statements.  When you

24   prepare your 56.1 statement, counsel for plaintiff, please

25   support each statement of fact with the citation to record

1   evidence that will be presented to me in connection with the

2   motion.  As you're presenting that record evidence to the

3   Court, please do so with as much specificity as possible.  So

4   if you're pointing to a document, please point to the line or

5   page number.  Should we get to the point in the case where the

6   relevant evidence includes things like depositions, I would

7   expect that they would include pin cites to relevant testimony

8   and references to specific page numbers for any relevant

9   document.  Should we get to the point where an opposition to a

10  56.1 statement must be filed, please follow my individual rules

11  of practice with respect to them.  My individual rules require

12  that the responding party cut and paste their adversary's 56.1

13  statement and that you include, immediately beneath the

14  asserted statement of fact by I'll say the moving party—-the

15  person that has propounded the relevant fact—-your response.

16  Remember that under our local rules, you can admit a statement

17  of fact but a 56.1 statement is not an answer, so you cannot

18  categorically deny a statement of fact asserted in a 56.1

19  statement.  Under the local rules, if you categorically deny a

20  statement by saying "Disagree" or "Denied" or any words to that

21  effect, it's actually treated as an admission of that

22  statement.  Instead, if you disagree with a statement of fact

23  asserted by your adversary, you have to present your version of

24  the relevant fact and you must present record evidence that

25  supports your view.  So again, please just look at the local

1    rules and my rules and comply with them.

2          Although my emergency rules of practice in light of

3    COVID are still in effect, with respect to the provision of

4    courtesy copies of documents, please comply with my regular

5    rules.  My regular rules require that you provide me with

6    courtesy copies of the motion papers and supporting documents

7    when it's fully briefed.  Under the 56(d) option, that would

8    mean after the 56(d) briefing structure is fully briefed.  That

9    would be moving papers, opposition, and reply.  And so you

10   should submit full courtesy copies in accordance with my normal

11   rules, given that.

12         If there are large electronic files that are hard to

13   upload on ECF -- I think that's unlikely in the 56(d) option,

14   but for example, were we to get to more substantive summary

15   judgment motion practice, if you were to provide me, for

16   example, with the depositions or if there were other media,

17   please give them to me at the time that you submit the fully

18   briefed motions with your courtesy copies.  You should ideally

19   do that in the following manner:  Reach out to my courtroom

20   deputy, Ms. Joseph.  Her name is Wileen Joseph.  She will send

21   you a link that you can use to upload the relevant documents to

22   our system.  That is the preferred route.  If, however, you are

23   unable to make those arrangements, the default rule is that you

24   should provide the Court with copies of those electronic

25   documents on a USB drive or CD or other media.

MB31DAO2

1          Good.  So I think that's all that I wanted to say on

2     this topic.  I'm looking forward to seeing your papers.

3          I have a couple of brief comments, and then I want to

4     turn to counsel for each side to hear if there's anything else

5     that you'd like to talk about.

6          Let me begin actually with that last thing first.

7     Counsel for defendant, you said that there was something else

8     you wanted to raise with me.

9          MR. ROSS:  Yes, your Honor.  David Ross.

10          I just want to be clear that if we are unable to

11     resolve disputes with plaintiff as regards discovery matters,

12     we should follow your standard procedure for a joint letter

13     regarding the discovery dispute?  I just wanted to check if

14     that is what we should do.

15          THE COURT:  Yes, that is what you should do.  There's

16     a possibility that I'll refer the discovery issues to the

17     assigned magistrate judge, but I have not yet decided to do

18     that.  I may, having heard a preview of the potential issues.

19     But assuming I haven't done that, then please comply with my

20     individual rules.

21          MR. ROSS:  Thank you, your Honor.

22          THE COURT:  Good.

23          Counsel for plaintiff, anything else from you?

24          MS. WILL:  Nothing further from plaintiffs.  Thank

25     you.

1          THE COURT:  Thank you.

2          Please indulge me for just a moment.  As you both

3     know, summary judgment motion practice can be very expensive,

4     so I'd like to just spend a moment to talk about settlement

5     issues at this stage of the case.  I really would like to

6     encourage the parties to work to see what you can do to resolve

7     the case.  I know that you are surely working on the side to

8     try to resolve the case.  I strongly encourage you to

9     rededicate your efforts to that, with the hope that perhaps you

10    can save some money in this process.  I started with my

11    questions about the economics of the dispute earlier.  I heard

12    a little bit about the economics of the dispute during our

13    initial pretrial conference, which, as I understand it, may

14    really be focused on the amount by which the condemnation

15    proceeds may exceed the value of the debt that was the subject

16    of the foreclosure action.  I'm not going to take a position on

17    that.  I think that my hope is that the parties—-and in

18    particular the lender—-will be thinking about the extent to

19    which retaining the full condemnation proceeds is I'll call it

20    a windfall and whether or not the parties should be talking

21    about a way to potentially resolve how to deal with any

22    potential proceeds that exceed the principal and accrued

23    interest on the loan.  This, frankly, seems like the kind of

24    case where parties working together in good faith should be

25    able to work to resolve these issues.  I know that you are

1    working together in good faith.  I hope that you are.  If

2    there's anything that I can do to help the parties work to

3    resolve any of these issues by referring you to either a

4    magistrate judge or to our excellent mediation program, which

5    is free, I'd be happy to do that, and I strongly encourage you

6    to think about that now and to be thinking about whether and to

7    what extent there's a way to carve up the potential upside here

8    in a way that's fair and equitable, and to strategize about how

9    to maximize that return for both sides.  So if there's anything

10   that I can do, please let me know; I'd be very happy to refer

11   you to one of those resources.  And I strongly encourage you,

12   in this window before the motion is filed, to talk about these

13   issues and to see whether there's a way to work these issues

14   through.  If you think that you're making progress and that

15   you'd like to focus on talking about a resolution instead of

16   actively litigating the issues that you're prepared to bring to

17   me, please feel free to write me.  I'm happy to modify the

18   schedule to permit the parties to focus on reaching an amicable

19   resolution here, which I would hope could be framed based on

20   the parties' reasonable economic expectations for a return,

21   given the nature of their investments.

22           Good.  So, anything that I can do at this point?  And

23   again, you don't need to say anything in particular.  The main

24   thing I'm curious about is, I just want to encourage each of

25   you to think about this, and encourage each of you to let me

1    know if you think it would be helpful for me to refer you to

2    one of those resources.  Remember that asking me to do that

3    doesn't mean that you're going to settle; it doesn't mean that

4    you're caving; it just means that you're willing to have an

5    informed conversation about a potential resolution.  So I'm not

6    going to ask either of you to come to the table on that now, or

7    to take a position on it now during this call.  I just strongly

8    exhort you to engage with your clients and each other to see if

9    there may be a path forward.

10          So that's all I've got.  Anything else, counsel for

11   plaintiff?

12          MS. WILL:  Thank you, your Honor.  Just a point to add

13   to what you had just said.  The parties are still disputing

14   whether Amtrak has actually properly taken the leasehold

15   interest in Union Station, so the just compensation issue is

16   not even pending before the DC court at this time either.  So

17   those kind of economics are still far in the future, from our

18   end.  But other than that --

19          THE COURT:  Understood.  I appreciate that.  My only

20   comment is that your interests may be aligned, to the extent

21   that the defendants are not asserting that they don't need to

22   pay the debt that they borrowed.  And so whether that means

23   continuing the leasehold or otherwise or condemnation, in any

24   event, these are issues that may be conjoined, and it may be

25   also that the parties would think about how best to handle this

MB31DAO2

1    litigation in conjunction with the DC litigation.  In any

2    event, I appreciate the clarification, counsel.  It's very

3    helpful.  I just encourage you to keep on thinking creatively

4    and constructively, as I'm confident that you are.

5              Anything else, counsel for defendants?

6              MR. ROSS:  No, your Honor.  David Ross.  But thank you

7    for your comments.  They are much appreciated and understood.

8              THE COURT:  Good.  Thank you.

9              So counsel, I'm going to adjourn this proceeding.  You

10   should feel free to drop off.

11             Parties that are joining us for the Bitsadze

12   conference, please hold on the line on mute.  We'll be with you

13   in a moment.

14                          o0o

15

16

17

18

19

20

21

22

23

24

25