**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAOL REXMARK UNION STATION LLC and KOOKMIN BANK CO., LTD., in its capacity as trustee of KTB CRE DEBT FUND NO. 8, a Korean Investment Trust, by its agent in Korea DAOL FUND MANAGEMENT CO. and by its agent in United States REXMARK HOLDINGS LLC d/b/a REXMARK, <br><br> Plaintiffs, <br><br> v. <br><br> UNION STATION SOLE MEMBER, LLC, <br><br> Defendant. | Case No. 1:22-cv-06649-GHW |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 56(d)**

KASOWITZ BENSON TORRES LLP

David E. Ross
David J. Mark
Daniel J. Koevary
Andrew W. Breland
1633 Broadway
Tel.: (212) 506-1700

*Attorneys for Defendant Union Station Sole Member LLC*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................II

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ................................................................................................ 2

      A.     Background on Union Station............................................................. 2

      B.     Lender's Wrongful Acts Preceding The Condemnation......................................... 4

      C.     Lender Attempts to Hijack Control of Union Station ............................................ 5

      D.     The Condemnation Action ................................................................ 7

ARGUMENT ....................................................................................................................... 10

      I.     The Discovery USSM Seeks Is Relevant To USSM's Affirmative Defenses, Which Would Bar Plaintiffs' Relief If Proven ..................................................... 11

            A.     USSM's Contract-Related Discovery Is Relevant to Plaintiffs' Claim .... 11

            B.     USSM's Discovery Related to Inequitable Actions is Relevant............... 14

      II.     USSM's Declarations Establish the Information USSM Seeks and How It Will Be Acquired ..................................................................... 18

      III.     Plaintiffs Are Not Prejudiced By Permitting Discovery........................................ 19

CONCLUSION .................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alpha Cap. Anstalt v. Imaging3, Inc.*,
2018 WL 3597520 (S.D.N.Y. July 26, 2018) .........................................................................17

*American Safety Equipment Corp. v. J.P. Maguire Co.*,
391 F.2d 821 (2d Cir. 1968).................................................................................................15

*Ass'n of Car Wash Owners Inc. v. City of New York*,
911 F.3d 74 (2d Cir. 2018)...................................................................................................10

*Atlas MF Mezzanine Borrower, LLC v. Macquarie Texas Loan Holder LLC*,
174 A.D.3d 150 (1st Dep't 2019) .........................................................................................16

*Berman v. Microchip Tech. Inc.*,
838 F. App'x 292 (9th Cir. 2021) .........................................................................................12

*BlueTarp Fin., Inc. v. E. Materials Corp.*,
592 F. Supp. 2d 188 (D. Me. 2009) ......................................................................................12

*Chachkes v. David*,
2021 WL 101130 (S.D.N.Y. Jan. 12, 2021) ....................................................................17, 19

*Citibank, Nat'l Ass'n v. Jacobson*,
2020 WL 7046841 (S.D.N.Y. Dec. 1, 2020) .........................................................................17

*Cognetta v. Bonavita*,
330 F. Supp. 3d 797 (E.D.N.Y. 2018) ...................................................................................15

*Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*,
271 F.3d 374 (2d Cir. 2001)..................................................................................................11

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch*,
232 F.3d 153 (2d Cir. 2000)..................................................................................................12

*Diematic Mfg. Corp. v. Packaging Indus., Inc.*,
516 F.2d 975 (2d Cir. 1975)..................................................................................................15

*Dubai Islamic Bank v. Citibank, Nat'l Ass'n*,
126 F. Supp. 2d 659 (S.D.N.Y. 2000)....................................................................................10

*Elliott v. Cartagena*,
2020 WL 4432450 (S.D.N.Y. July 31, 2020) ........................................................................11

*Est. of Lennon by Lennon v. Screen Creations, Ltd.*,
  939 F. Supp. 287 (S.D.N.Y. 1996) ........................................................12

*Exec. Office Network, Ltd. v. 666 Fifth Ave. Ltd. P'ship*,
  294 A.D.2d 166 (1st Dep't. 2002) ........................................................14

*Franklin v. Krueger Int'l, Inc.*,
  1997 WL 691424 (S.D.N.Y. Nov. 5, 1997) ........................................15

*Gaffney v. Muhammad Ali Enterprises LLC*,
  2022 WL 4095953 (S.D.N.Y. Sept. 7, 2022) ......................................14

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*,
  485 U.S. 271 (1988) ............................................................................15

*Hellstrom v. U.S. Dep't of Veteran Affairs*,
  201 F.3d 94 (2d Cir. 2000) ..................................................................10

*Mitsubishi Elec. Corp. v. Westcode, Inc.*,
  2016 WL 3855180 (N.D.N.Y. July 12, 2016) ......................................11

*Paddington Partners v. Bouchard*,
  34 F.3d 1132 (2d Cir. 1994) ................................................................18

*Rajic v. Faust*,
  165 A.D.3d 716 (2d Dep't 2018) .........................................................15

*Seneca Beverage Corp. v. Healthnow New York, Inc.*,
  200 F. App'x 25 (2d Cir. 2006) ...........................................................11

*Xerox Corp. v. JCTB Inc.*,
  787 F. App'x 43 (2d Cir. 2019) ...........................................................17

**Statutes**

49 U.S.C. § 24311(b)(2) ..............................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 56(d) ............................................... *passim*

Defendant Union Station Sole Member LLC ("USSM") respectfully submits this memorandum of law in opposition to the motion for summary judgment (the "Motion") filed by Plaintiffs Daol Rexmark Union Station LLC ("Daol") and Kookmin Bank Co., Ltd. ("Kookmin" or "Lender").  Under the schedule entered by the Court, this memorandum of law addresses only USSM's arguments pursuant to Federal Rule of Civil Procedure 56(d).  *See* ECF No. 54.

## PRELIMINARY STATEMENT

Plaintiffs' motion for summary judgment is premature and asks the Court to summarily adjudicate complex issues of fact and law without providing USSM any opportunity to support its defense by obtaining discovery to which it is entitled.  This effort must—and does—fail.  To date, Plaintiffs have not produced a single document in response to USSM's discovery requests despite USSM's ongoing good faith efforts to reduce or eliminate burden to the production of documents.  Because USSM's affirmative defenses—and Plaintiffs' affirmative claim—if borne out raise fact questions that would prohibit summary judgment, USSM must be permitted to take discovery.

While styled as a request for a single declaratory judgment, Plaintiffs seek to finally adjudicate the rights to equity worth more than $700 million and seeks to bar USSM from participation in a pending court case in Washington, D.C.  As set out herein, USSM is entitled to take discovery to challenge Plaintiffs' basis for their claim and to support USSM's own affirmative defenses.  Among other things, Plaintiffs' proposed declaration rests on provisions of the relevant loan agreements that are ambiguous and that may require extrinsic evidence to construe.  And, while Plaintiffs' claim is premised on the language of contracts, they seek equitable relief in this action.  In light of that, USSM asserted several equitable defenses to this action in its Answer.  *See* Answer [ECF No. 45] at 31-32.  Those defenses, if proven, would bar

Plaintiffs from receiving the relief they have requested here.  USSM has a factual basis for each of its affirmative defenses and is entitled to take discovery to investigate them.

And finally, Plaintiffs are not prejudiced at all by allowing USSM to take discovery here. Since this Court entered a preliminary injunction in this case, Plaintiffs have effectively received virtually all of the relief they seek in their declaration—in the form of an enforceable injunction punishable by contempt of Court.  Plaintiffs have not asserted any basis upon which their rights are prejudiced by the continued pendency of this action while the injunction is in place.  In short, because there is no prejudice to Plaintiffs, and because USSM has established a facial entitlement to take discovery related to the contracts at issue here and its affirmative defenses, the Court should deny Plaintiffs' motion for summary judgment without prejudice or defer ruling on it until discovery has been completed.[1]

## FACTUAL BACKGROUND[2]

### A.    *Background on Union Station*

Prior to the April 2022 commencement of the Condemnation Action, USSM was the holder of equity in Union Station Investco LLC ("USI"), the lessee under a 99-year lease with 62

---

[1]    Following the conference regarding USSM's discovery requests, counsel for the Parties have continued to negotiate the scope of Plaintiffs' search for documents responsive to USSM's requests.  Plaintiffs have agreed to search for documents responsive to narrowed versions of nine of USSM's requests, though the parties still are negotiating search terms and Plaintiffs have not yet produced any documents in response to USSM's requests.  While USSM expects for this issue to be resolved consensually, it may still become necessary to present this issue to the Court in a motion to compel.

[2]    As used herein, 1) "Ross Decl. ¶ __" refers to the Declaration of David E. Ross filed herewith, 2) "Press Decl. ¶ __" refers to the Declaration of Yossi Preiserowicz (a/k/a Joe Press) filed herewith, 3) "Levy Decl. ¶ __" refers to the Declaration of Daniel Levy filed herewith, and 4) "Ashkenazy Decl. ¶ __" refers to the Declaration of Ben Ashkenazy filed herewith. References to the "Condemnation Action" refer to the pending case in the United States District Court for the District of Columbia, *National Railroad Passenger Corporation (Amtrak) v.*

years remaining covering the vast majority of Union Station, a Washington, D.C. landmark and nationally significant transportation, retail, and dining hub.  Press Decl. ¶ 4.  As the holder of the lease, USI, aided by USSM and Ashkenazy Acquisition Corporation ("AAC"), operated the Station safely and effectively for more than fifteen years.  *Id.*

To obtain funding for the Station's operations, on May 8, 2018, USI and Defendant Kookmin's predecessors in interest (the "Original Mortgage Lender") entered into a loan agreement (the "Mortgage Loan Agreement"),[3] an Assignment of Leases and Rents,[4] and other loan documents (the "Mortgage Loan Documents"), pursuant to which the Mortgage Lender provided a loan to USI in the aggregate principal amount of $330 million secured by a mortgage on USI's lease of Union Station (the "Mortgage Loan").  Press Decl. ¶ 5.  The same day, USSM and Kookmin entered into an agreement (the "Mezzanine Loan Agreement" and together with the Mortgage Loan Agreement, the "Loan Agreements"),[5] a pledge and security agreement (the "Pledge Agreement"),[6] and other loan documents (the "Mezzanine Loan Documents," and together with the Mortgage Loan Documents, the "Loan Documents") pursuant to which Kookmin provided a loan to USSM in the aggregate principal amount of $100 million (the "Mezzanine Loan").  *Id.* ¶ 8.  The Mezzanine Loan is secured by a pledge of USSM's interest in

---

*Sublease Interest Obtained Pursuant to an Assignment and Assumption of Leasehold Interest Made as of January 25, 2007, et al.*, No. 22-cv-1043.

[3]     A true and correct copy of the Mortgage Loan Agreement is attached as Exhibit 1 to the Press Declaration.

[4]     A true and correct copy of the Assignment of Leases and Rents is attached as Exhibit 2 to the Press Declaration.

[5]     A true and correct copy of the Mezzanine Loan Agreement is attached as Exhibit 3 to the Press Declaration.

[6]     A true and correct copy of the Pledge Agreement is attached as Exhibit 4 to the Press Declaration.

USI (the "Mezzanine Collateral").  *Id.*  In January 2022, Kookmin purchased the Mortgage Loan from the previous holder and became the lender for the purpose of both loans.  *Id.* ¶ 7.

## B.     *Lender's Wrongful Acts Preceding The Condemnation*

The COVID-19 pandemic had a severe impact on USSM and USI and the operation of Union Station.  Prior to the pandemic, USSM and USI were current on all of their obligations under the Loan Documents, including their payment obligations.  Press Decl. ¶ 11.  However, Union Station's business was devastated by the pandemic.  Among other things, lockdowns and travel restrictions led to an enormous reduction in the number of travelers, shoppers, and other visitors to Union Station.  *Id.* ¶ 12.  That systemic shock caused a substantial decrease in USI's and USSM's revenue.  *Id.*  This drastic decline in revenue, in turn, affected USI's and USSM's ability to make payments on the Loans.  Beginning with a payment due on or before May 9, 2020, Borrowers have been unable to make full monthly debt service payments on either the Mortgage Loan or the Mezzanine Loan.  *Id.*  Thereafter, USI, USSM, AAC, and the then-existing lenders entered into extensive negotiations and forbearance agreements.  *Id.* ¶ 13.

In December 2020, an affiliate of USSM entered into a confidential agreement with a large and well-capitalized sovereign wealth fund (the "Investor"), providing for the Investor to purchase an ownership stake in an affiliate of USSM, in exchange for capital valuing USI's lease at more than $700 million (the "Investment").  Ashkenazy Decl. ¶ 12.  These funds would have allowed both USI and USSM to come current under the Loans, including paying off the Mezzanine Loan, and would have provided additional funds for the operation of the Station.  *Id.*  As an indication of its intention to close the transaction, the Investor deposited the extraordinarily large amount of *$100 million* into an escrow account.  *Id.*  ¶ 13.

Due to the proposed change in ownership structure, USI and USSM sought consent from the then-existing lenders to the Investment.  Ashkenazy Decl. ¶ 16.  The Mortgage Loan

Agreement provides, however, that "consent shall not be unreasonably withheld or delayed."
*See* Mortgage Loan Agreement § 4.2.12.  Rather than consent to a transaction that would have
rescued Union Station from its pandemic-induced hardships, the Lender's predecessor in interest
to the Mortgage Loan ("Second Mortgage Lender")[7] unreasonably refused to consider granting
consent to the transactions necessary to close the Investment, in violation of its contractual
obligations under the Mortgage Loan Documents, and thus prevented the transaction from
closing.  Ashkenazy Decl ¶ 24.  USSM learned that the Second Mortgage Lender did so as part
of a plan to oust USSM and its affiliates, including AAC, from Union Station and seize their
interest, just as they are attempting to do in this case.  *Id.* ¶¶ 21, 23.  The Investor terminated the
Investment and withdrew its $100 million escrow deposit expressly because the Second
Mortgage Lender refused to grant the required consent.  *Id.* ¶ 26.  Afterward, USI and USSM
once again began negotiating a workout with the lenders.  During this process, foreclosures
under both Loans were noticed and scheduled for January 2022, but each was canceled following
Lender's purchase of the Mortgage Loan.  Press Decl. ¶¶ 14-17.

### C.    *Lender Attempts to Hijack Control of Union Station*

While USSM and its affiliates were led to believe that Lender's purchase of the Mortgage
Loan would allow the parties to work together cooperatively to reinvigorate Union Station,
Lender's actions have been to the contrary.  Since becoming the sole lender, Lender has
unlawfully interfered with the day-to-day operation of Union Station.  Press Decl. ¶ 18.  In
particular, Lender has interfered with USSM's and its affiliates' ability to lease space in Union

---

[7]     Following execution of the Mortgage Loan Documents, the Original Mortgage Lender
subsequently securitized the Mortgage Loan and the Second Mortgage Lender became the
successor-in-interest to the Original Mortgage Lenders.  Ashkenazy Decl. ¶¶ 6-7.

Station to prospective tenants and held themselves out as owners of Union Station before any foreclosure or condemnation. *Id.* ¶¶ 19-20.

Less than a month after acquitting the Mortgage Loan, Plaintiffs' agent, Rexmark Holdings, LLC ("Rexmark") entered into negotiations with Amtrak regarding a potential transaction (*i.e.*, sale) involving the Station in January 2022. *See* Levy Decl. ¶¶ 4-7. In particular, Rexmark's principal, Michael Rebibo, told an affiliate of USSM that he was negotiating a transaction with Amtrak and that Amtrak requested detailed financial information in order to "identify the right transaction at the right valuation for both parties" (*i.e.* Rexmark and Amtrak). Levy Decl. ¶ 4. Mr. Rebibo also explained that he had conditioned providing information to Amtrak on Amtrak's signing of a non-disclosure agreement which would have, among other things, prevented Amtrak from negotiating or executing a deal with anyone other than Rexmark and Mr. Rebibo, including USI. *Id.* ¶ 5. USSM later learned that Amtrak refused to give up its right to negotiate a transaction with USI, which was owned and managed at the time by USSM. *Id.* ¶ 6. USSM understood these conversations as Rexmark, on behalf of Kookmin, holding itself out as the owner of Union Station and not merely the Lender to the owners.

Rexmark also repeatedly interfered with and sought to lease space in Union Station without authority to do so. Despite not having consent, USSM is aware of at least one version of a leasing book that was prepared by Rexmark to advertise space at Union Station without notice to or consent of USI, USSM, or their affiliates. *See* Press Decl. ¶ 21; Ex. 5. As a specific example of Rexmark's interference—Rexmark intervened in leasing discussions with a large hospitality company, Sage Hospitality Group ("Sage"), with whom USSM and its affiliates were in discussions to sign the largest lease in Union Station history. Press Decl. ¶ 22. After

Rexmark intervened—in the words of Rexmark's principal, "taking over" the negotiations—Sage ceased all communications with USSM and its affiliates, and the lease never was signed. *Id.* ¶ 22; Levy Decl. ¶ 9.  Around the same time, Plaintiffs, through Rexmark, also refused to approve several leases that USSM and its affiliates negotiated in order to begin to rehabilitate Union Station after the COVID-19 pandemic, including two leases that would have paid $700,000 per year to the Station to replace non-paying tenants.  Press Decl. ¶ 23.

These actions constituted only part of a campaign by Plaintiffs and others to seize control of Union Station and to cut USSM and its affiliates out of their rights under the Loan Documents and Union Station lease.

**D.      *The Condemnation Action***

On April 14, 2022, Amtrak commenced the Condemnation Action by filing a complaint and declaration of taking of USI's lease over Union Station in the United States District Court for the District of Columbia.  Press Decl ¶ 29.  By operation of law, following those filings and a $250 million deposit by Amtrak, title to the leasehold interest and the rights thereunder previously held by USI were transferred to Amtrak.  *See* 49 U.S.C. § 24311(b)(2).  Amtrak's complaint named as defendants USI, USSM, and Kookmin, as the Lender for both Loans.  *See* Condemnation Action, ECF No. 1.

Nearly a month after the condemnation was effected, on May 13, 2022, Kookmin, through Rexmark and counsel, sent USSM and USI three letters claiming to exercise its "rights" under the Loan Documents (the "May 13 Letters") including, in particular, to terminate the existing manager of USI and to appoint a new manager.  Press Decl ¶ 30.  Kookmin also purported to exercise an option under Section 13 of the Pledge Agreement to act as attorney-in-fact for USSM.  *Id.*

Alongside these exercises of rights, Plaintiffs also began to starve Union Station of the funds necessary to operate.  In particular, beginning in May 2022, Plaintiffs began to refuse routine requests for payment of Union Station's normal operating expenses.  Press Decl. ¶ 26. Since USSM's and USI's original monetary default in April 2020, all funds from the operation of the Station were placed into a lockbox controlled by Kookmin.  *Id.*  For two years, this arrangement worked fine, as Kookmin would approve the payment of all regular course expenses that USSM and Ashkenazy submitted.  *Id.*  However, beginning in May 2022, Kookmin began to reject the requests and demanded information to confirm invoices due and payable that was not required under any of the Loan Documents and had never previously been provided.  *Id.* ¶¶ 27-28.

For example, on May 18, 2022, a representative of USI and AAC submitted to Rexmark, as a representative of Kookmin, a list of necessary payments (in the same format as every other request over the previous two years) from the lockbox accounts (which Kookmin controls). Press Decl. ¶ 27.  A large portion of these payments concerned annual insurance premiums for Union Station, without which the Station could not operate.  *Id.*  Nevertheless, and despite that identical charges were previously paid out of the lockbox account without objection, Rexmark refused to fund the expenses without itself first reviewing and approving invoices directly, which had never previously occurred.  *Id.*  The insurance premium payments were not made for more than a week after the request, and Kookmin, through Rexmark, still had not made multiple necessary payments as of the end of May, nearly two weeks after the expenses were submitted for payment.  *Id.*

The following month, the problem persisted and Rexmark refused to pay more than $600,000 in bills for janitorial services at the Station, electricity, trash removal, and water and

sewer services, among other things.  Press Decl. ¶ 28.  Eventually, Kookmin paid only the outstanding utility bills, only after receiving shut off notices.  *Id.*

Plaintiffs' and their affiliates' actions since the Condemnation Action was filed are merely a continuation of their attempt to gain control of Union Station, and to cut USSM and Ashkenazy out of any recovery in that action.

The culmination of these efforts occurred in June 2022 when, after the minimum 30 days' notice, Kookmin purported to hold a nonjudicial "foreclosure sale" of the Mezzanine Loan collateral (*i.e.*, the membership in USI owned by USSM).  Press Decl. ¶ 31.  USI and USSM objected to the sale in their papers in the Condemnation Action, and the notice for the foreclosure sale specifically referenced the pendency of that action.  *See* Memorandum in Support of Motion to Strike, ECF No. 55-1, Condemnation Action (D.D.C. June 3, 2022).  The Condemnation Action was specifically referenced in the Public Notice of Sale for the Foreclosure Sale.  *See* Public Notice of Sale, Rebibo Decl. Ex. E-3, ECF No. 57-8 (Nov. 23, 2022).   At the "sale," Lender was the only bidder and entered a credit bid for the full amount of the Mezzanine Loan.  Press Decl. ¶ 34.

This action followed shortly thereafter.  Along with their Complaint, Plaintiffs filed a motion for a preliminary injunction.  *See* ECF Nos. 6-8.  After briefing and a hearing, the Court granted the Motion and ruled that, for the pendency of this case, USSM and its affiliates were enjoined from "(1) holding itself out as the owner or in control of Union Station Investco, LLC ("USI"); (2) exercising or purporting to exercise any contractual or other legal right of USI; (3) collecting, transferring, seizing, or directing the transfer of any assets or liabilities of USI; and (4) impeding the collection or transfer of any assets to USI that are owed to it."  *See* ECF No. 39.

Since the entry of the preliminary injunction, USSM and its affiliates have had no hand in the management or operation of Union Station.

## **ARGUMENT**

The law in this Circuit is clear that "summary judgment should only be granted if *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." *Hellstrom v. U.S. Dep't of Veteran Affairs,* 201 F.3d 94, 97-98 (2d Cir. 2000) (reversing grant of summary judgment where the plaintiff "was prejudiced in his efforts to accumulate needed evidence because he was denied the opportunity to conduct discovery") (emphasis in original).   The U.S. Court of Appeals for the Second Circuit has made plain that only in the "rarest of cases" should courts grant summary judgment against a party prior to discovery.  *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 83 (2d Cir. 2018) (concluding that the district court erred in granting plaintiffs' pre-discovery motion for partial summary judgment).

Federal Rule of Civil Procedure 56(d) permits a Court to defer consideration of a summary judgment motion or to deny it outright when a litigant brings a motion before the opposing party has had an opportunity to conduct appropriate discovery and where the nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).  Rule 56(d) "is a safeguard against premature grants of summary judgment and 'should be applied with a spirit of liberality.'" *Dubai Islamic Bank v. Citibank, Nat'l Ass'n,* 126 F. Supp. 2d 659, 665 (S.D.N.Y. 2000) (quoting *Bonnie & Company Fashions, Inc.*, 945 F. Supp. at 706).

Under Rule 56(d) "all that is required is for [the nonmovant] to point to potential facts that might raise an issue of material fact, that it has been unable to obtain without discovery."

10

*Seneca Beverage Corp. v. Healthnow New York, Inc.*, 200 F. App'x 25, 28 (2d Cir. 2006); *see also Commercial Cleaning Services, L.L.C. v. Colin Service Systems, Inc.*, 271 F.3d 374, 386 (2d Cir. 2001) (court should defer if nonmoving party "reasonably advises . . . it needs discovery to be able to present facts needed to defend the motion"); *Mitsubishi Elec. Corp. v. Westcode, Inc.*, 2016 WL 3855180, at \*15 (N.D.N.Y. July 12, 2016) ("[Non-movant] has sufficiently stated a need for discovery to support its affirmative defenses as well as its counterclaims that are integrally intertwined with [movant]'s breach of contract claim."). The party seeking discovery need only specify "'the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful.'" *Elliott v. Cartagena*, 2020 WL 4432450, at \*3 (S.D.N.Y. July 31, 2020) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).

## I.   THE DISCOVERY USSM SEEKS IS RELEVANT TO USSM'S AFFIRMATIVE DEFENSES, WHICH WOULD BAR PLAINTIFFS' RELIEF IF PROVEN

### A.   USSM's Contract-Related Discovery Is Relevant to Plaintiffs' Claim

USSM seeks discovery from Plaintiffs regarding the meaning of ambiguous provisions of the loan agreements, including provisions that Plaintiffs themselves have invoked in this case. Importantly, Plaintiffs did not move here for judgment on the pleadings based on what they allege to be clear contractual language. Instead, Plaintiffs sought summary judgment, which permits the parties to present—and the Court to consider—extrinsic evidence related to the meaning of the contracts at issue.

USSM previously has argued, and continues to believe, that Plaintiffs were barred by the unambiguous plain language of the loan agreement from pursuing their putative foreclosure sale

after the Condemnation Action was filed.[8]  But, even if Plaintiffs were not so barred, they seek

for the Court to consider and address ambiguous provisions of the contract in connection with

the declaratory judgment Plaintiffs seek.  As a result, courts permit discovery into the drafting of

the relevant contract provisions and Plaintiffs' basis for its assertions related to it in order to

permit the parties to contest the correct meaning of the ambiguous agreement.  *See Berman v.*

*Microchip Tech. Inc.*, 838 F. App'x 292, 293 (9th Cir. 2021) ("Because the language of the

[contract] is ambiguous, the district court abused its discretion in denying defendants' motion for

discovery under Rule 56(d) of the Federal Rules of Civil Procedure."); *Est. of Lennon by Lennon*

*v. Screen Creations, Ltd.*, 939 F. Supp. 287, 293 (S.D.N.Y. 1996) (denying without prejudice a

motion for summary judgment seeking to enforce a contract to allow the parties to conduct

further discovery); *BlueTarp Fin., Inc. v. E. Materials Corp.*, 592 F. Supp. 2d 188, 191 (D. Me.

2009) (same).  In addition, discovery as to contractual provisions that the Court has not yet found

to be unambiguous is warranted since the Court is otherwise empowered to grant summary

judgment for the movant "if the non-moving party fails to point to any extrinsic evidence

supporting that party's interpretation of the language."  *Cf.  Compagnie Financiere de CIC et de*

*L'Union Europeenne v. Merrill Lynch*, 232 F.3d 153, 158 (2d Cir. 2000).

Here, Plaintiffs' proposed declaration seeks to have the court declare that, as of the date

of any declaration: (a) Lender is entitled under Section 5.2.2 of the Mezzanine Loan Agreement

to act as USSM's attorney-in-fact with exclusive power to collect, receive, and retain any

condemnation award and with exclusive power to make a compromise or settlement in

---

[8]      As the Court is aware, this position is addressed in USSM's brief in opposition to
Plaintiffs' motion for a preliminary injunction.  *See* ECF No. 27.  USSM still asserts this position
and expects to raise this argument again in connection with a merits opposition to Plaintiffs'
summary judgment motion.  However, since discovery is not necessary for this argument, USSM
does not address it here.

connection with the Condemnation Action.  While the Court previously considered "whether or not [Section] 5.2.2 superseded the right of . . .  the lender to exercise the remedies with respect to the collateral," the Court has not had occasion to interpret the provisions of Section 5.2.2 alone. *See* Transcript of December 1, 2022 Hearing at 11:1-3, attached as Ex. 4 to the Ross Declaration. In connection with Plaintiffs' Motion and to issue the declaration Plaintiffs seek, the Court must decide 1) whether the right to act as "attorney-in-fact" under the Mezzanine Loan Agreement survives the foreclosure sale that Plaintiffs conducted and 2) if so, what rights accrue to Plaintiffs as "attorney-in-fact" and the contours of the right to "collect, receive, and retain any award" in connection to a condemnation.  *See* Mezzanine Loan Agreement § 5.2.2.

Although the attorney-in-fact provision does not explicitly state that it is an interim remedy that is only exercisable prior to foreclosure, the context would appear to so indicate including the requirement that it can only be exercised while an event of default is occurring.  As to the latter, the Mezzanine Loan Agreement is facially ambiguous as to USSM's rights after a Condemnation and, thus, to the meaning of the declaration Plaintiffs seek.  Specifically, the Mezzanine Loan Agreement provides that "if the Property [*i.e.* Union Station] is sold, through foreclosure or otherwise, prior to the receipt by [Mezzanine] Lender of the [Condemnation] Award, [Mezzanine] Lender shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive the [Condemnation] Award or a portion thereof sufficient to pay the Debt in full."  *See* Mezzanine Loan Agreement § 5.2.2.  This provision seems to assert that the Mezzanine Loan Lender only is entitled to a portion of the Condemnation Award up to the amount of the outstanding debt due on the Mezzanine Loan. And, it conflicts with the provision, mere sentences earlier, which states that the Mezzanine Loan lender is permitted to "collect, receive, and retain" any Condemnation Award.  Because the

Court will be required to "harmonize" these conflicting ambiguous provisions, and because resolving ambiguity is a question of fact, this is sufficient to deny or defer ruling on Plaintiffs' Motion now.  *Gaffney v. Muhammad Ali Enterprises LLC*, 2022 WL 4095953, at *7 (S.D.N.Y. Sept. 7, 2022) ("[D]isputes over ambiguous contract terms is a question of fact that a court must leave to a jury." (citation omitted)); *Exec. Office Network, Ltd. v. 666 Fifth Ave. Ltd. P'ship*, 294 A.D.2d 166, 168 (1st Dep't. 2002) (reversing order granting summary judgment and holding that extrinsic evidence was necessary to harmonize provisions of agreement).  USSM is therefore entitled to take discovery regarding the meaning of the attorney-in-fact-provision.

### B.   USSM's Discovery Related to Inequitable Actions is Relevant

USSM also seeks discoverable and relevant information related to Plaintiffs' actions to interfere with USSM's—and its affiliates'—management and operation of Union Station. Among other things, and as discussed above, Plaintiffs and their agent, Rexmark, disrupted USSM's relationships with existing and prospective tenants, preventing USSM from rehabilitating Union Station and coming current on the Mezzanine Loan before the putative foreclosure sale.  Plaintiffs and Rexmark also held themselves out as the owner of Union Station in an attempt to negotiate a sale transaction with Amtrak, without notice to or consent of USSM or its affiliates.  Finally, Plaintiffs' predecessor-in-interest as Mortgage Lender unreasonably withheld consent to an equity transaction that also would have allowed USSM and its affiliates to come current on the Loans.  Because the relief Plaintiffs seek here is equitable in nature, and would be barred by USSM's equitable defenses, USSM must be given an opportunity to substantiate and discover more information related to these issues.

Plaintiffs' sole claim for a declaratory judgment in this action is an equitable claim.  Of course, "[a]ctions for declaratory judgments are neither legal nor equitable, and courts have therefore had to look to the kind of action that would have been brought had Congress not

provided the declaratory judgment remedy." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 284 (1988); *accord Diematic Mfg. Corp. v. Packaging Indus., Inc.*, 516 F.2d 975, 978 (2d Cir. 1975) ("A declaratory judgment action is a creature of statute . . . neither legal or equitable . . .[and] requires that we look to what the basic nature of the suit would have been had there been no Declaratory Judgement Act."); *American Safety Equipment Corp. v. J.P. Maguire Co.*, 391 F.2d 821, 824 (2d Cir. 1968) ("A declaratory judgment action is a statutory creation . . . neither legal or equitable . . . the courts have looked to the basic nature of the suit in which the issues involved would have arisen if Congress had not created the Declaratory Judgment Act."). In this case, Plaintiffs have sought their declaration in an effort to validate their putative foreclosure sale and to effectuate their foreclosure on the Mezzanine Loan.  In particular, Plaintiffs' claim goes far beyond construing the language of the Mezzanine Loan Agreement and instead seeks affirmative rulings, akin to an injunction, that 1) Lender is entitled under Section 5.2.2 of the Mezzanine Loan Agreement to act as USSM's attorney-in-fact and 2) all of USSM's right, title, and interest in and to USI have been extinguished by the foreclosure sale, and Lender is now the sole owner of USI."  *See* Complaint ¶ 141.  Thus, the most analogous "nature of suit" in which such an action might be brought is either an action for a judicial foreclosure or a quiet title action to finally settle the ownership of disputed property, both of which are equitable in nature.  *See Cognetta v. Bonavita*, 330 F. Supp. 3d 797, 810 (E.D.N.Y. 2018) (finding that a federal Declaratory Judgment Act claim was equitable where the alternative claim was one to quiet title); *Rajic v. Faust*, 165 A.D.3d 716, 717 (2d Dep't 2018) (foreclosure is an equitable action, triggering equitable powers of the court).

Because Plaintiffs' claim is equitable, equitable defenses can serve to bar the relief sought.  *See Franklin v. Krueger Int'l, Inc.*, 1997 WL 691424, at *5 (S.D.N.Y. Nov. 5, 1997)

("Because the plaintiff's request sounds in equity, it is properly subject to equitable defenses." (citing *Merex A.G. v. Fairchild Weston Systems, Inc.*, 29 F.3d 821, 824-26 (2d Cir. 1994))).  In the Answer, USSM has asserted several equitable defenses, including unclean hands, bad faith, estoppel, frustration of purpose, and laches, and has sufficiently alleged facts to put Plaintiffs on notice of the defenses (*i.e.* that Plaintiffs and their predecessors wrongly interfered with USSM's management of the Station and ability to come current on the Loans).  *See* Answer [ECF No. 45] at 31-32.  Thus, USSM is entitled to take discovery related to those defenses.[9]  Plaintiffs cannot be heard to complain that the equitable relief they have affirmatively sought in their complaint is held up by defenses properly raised against those claims.

The authorities Plaintiffs cite in their briefing (at 16-17, 20) are inapposite and do not compel the result they seek.  Plaintiffs largely rely on *Atlas MF Mezzanine Borrower, LLC v. Macquarie Texas Loan Holder LLC*, 174 A.D.3d 150, 153 (1st Dep't 2019), including for the proposition that equitable defenses are unavailable to a UCC foreclosure.  This misunderstands the posture of this action.  While the law is clear, as the Court held in *Atlas MF*, that a borrower cannot seek a declaration or injunction "unwinding" a UCC foreclosure sale based on allegations of fraud once the sale has occurred, *Atlas MF* did not consider an affirmative equitable claim by the lender for judicial recognition of such a sale.  Plaintiffs chose to file a Complaint seeking only a declaratory judgment and did not, as Judge Mehta in the Condemnation Action opined, seek ejectment or damages for trespass or breach of contract.  Instead, Plaintiffs affirmatively sought equitable relief from the Court, which entitles USSM to raise affirmative defenses.

---

[9]     USSM has provided the two examples of tenant interference of which it currently has specific knowledge.  USSM expects that discovery will reveal numerous additional examples of similar interference.

The other cases Plaintiffs cite (at 19-20) either do not concern a declaratory judgment claim at all, nor do they include any claim for equitable relief.  For example, in *Citibank, Nat'l Ass'n v. Jacobson*, the plaintiff sought summary judgment on only claims at law (breach of contract and a contractual claim for attorney's fees); there were no equitable claims or defenses at issue.  2020 WL 7046841, at *3 (S.D.N.Y. Dec. 1, 2020).  The same is true of *Xerox Corp. v. JCTB Inc.*, 787 F. App'x 43, 44 (2d Cir. 2019) and of this Court's decision in *Alpha Cap. Anstalt v. Imaging3, Inc.*, 2018 WL 3597520, at *8-10 (S.D.N.Y. July 26, 2018).   In *Chachkes v. David*, on the other hand, the Court granted summary judgment related solely to the interpretation of a contract provision; the judgment did not purport to recognize or bar the exercise of any rights under the contract.  2021 WL 101130, at *1 (S.D.N.Y. Jan. 12, 2021).  And, as particularly related to this case and the present Motion, while the party opposing summary judgment sought additional discovery, they failed to comply with the terms of Rule 56(d) and the request was denied out of hand.  *Id.* at *5.

Nor are Plaintiffs' cursory responses to USSM's affirmative defenses sufficient to grant summary judgment in Plaintiffs' favor without further discovery.  Indeed, the arguments themselves raise new fact questions.  In particular, Plaintiffs respond to USSM's allegations of inequitable interference with USSM's management and tenant relationships by asserting that their interference was permitted under the terms of the "Assignment of Leases and Rents."  *See* Mot. Br. at 19.  That document, however, was signed in connection with the Mortgage Loan and gives the Mortgage Lender the right to exercise rights.  Plaintiffs never have claimed—and do not here claim—that they exercised rights under the Mortgage Loan.  Likewise, to the extent notice of exercise of rights under the Mortgage Loan and Assignment of Leases and Rents is necessary to effectuate the exercise of rights, no notice ever was sent and Plaintiffs have not

established that fact for the purposes of this Motion.  Plaintiffs do not respond in their briefing to USSM's allegations regarding inequitable conduct by the Plaintiffs' predecessor-in-interest under the Mortgage Loan, and, thus, cannot now assert that those actions were permitted either.

In sum, Plaintiffs chose to file an affirmative claim for equitable relief in connection with their putative foreclosure sale.  They cannot now complain that their affirmative equitable claim subjects them to equitable defenses and discovery.  And, Plaintiffs bases for avoiding discovery here are unavailing.

## II.   USSM'S DECLARATIONS ESTABLISH THE INFORMATION USSM SEEKS AND HOW IT WILL BE ACQUIRED

That USSM's defenses are relevant to Plaintiffs' claims and would create a question of fact related to Plaintiffs' relief is sufficient to deny the Motion or defer ruling to permit discovery to continue.  However, to the extent Rule 56(d) requires the party seeking discovery to explain the information they seek and how it will be acquired, *see Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994), the declarations submitted with this memorandum establish all the necessary details.

In particular, USSM already has requested all relevant information from Plaintiffs, who are the party most likely to have relevant and discoverable information.  *See* Ross Declaration ¶¶ 22, 26.  While Plaintiffs initially refused to produce any documents in response to USSM's requests, the Parties are actively negotiating the scope of a search for electronically-stored information responsive to USSM's requests.  *Id.* Ex. 5.  As set out in the Declarations submitted herewith, several of the conversations upon which USSM bases its understanding of the events were oral conversations between Plaintiffs' principal Michael Rebibo and affiliates of USSM.

Thus, following document discovery, USSM intends to take Mr. Rebibo's deposition to solicit information about these conversations.[10]

## III.    PLAINTIFFS ARE NOT PREJUDICED BY PERMITTING DISCOVERY

Finally, Plaintiffs are not prejudiced at all by an order permitting USSM to take discovery here.  Since the preliminary injunction was entered in this case, Plaintiffs functionally have, for the time being, received the bulk of the relief they seek in this action and are not being harmed or denied any rights.  This case, thus, is different from *Chachkes*, where, in addition to failure to comply with Rule 56(d)'s terms, the Court denied discovery on the ground that the plaintiff was experiencing an ongoing "impairment of the exercise of his contractual rights."  *Chachkes*, 2021 WL 101130, at *6.  Absent an order vacating the injunction, Plaintiffs are not prejudiced by additional time to allow for discovery.

### CONCLUSION

For the foregoing reasons, pursuant to Federal Rule of Civil Procedure 56(d), the Court should deny or defer Plaintiffs' motion for summary judgment to allow USSM to take discovery.

Dated: December 14, 2022                KASOWITZ BENSON TORRES LLP

                                        By:___/s/ *David E. Ross*_____
                                            David E. Ross
                                            David J. Mark
                                            Daniel J. Koevary
                                            Andrew W. Breland
                                            1633 Broadway
                                            Tel.: (212) 506-1700
                                            New York, NY 10019

---

[10]     USSM also has considered, but has not yet served, third-party discovery on individuals and businesses that USSM knows or suspects were working with Plaintiffs.  USSM believes that Plaintiffs likely have all discoverable information in their possession as it relates to the inequitable actions and drafting of the Mezzanine Loan Agreement.  However, in the event Plaintiffs fail to produce documents, USSM may still serve third-party discovery.

dross@kasowitz.com
dmark@kasowitz.com
dkoevary@kasowitz.com
abreland@kasowitz.com

*Attorneys for Defendant Union Station
Sole Member LLC*