IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAOL REXMARK UNION STATION LLC and KOOKMIN BANK CO., LTD., in its capacity as trustee of KTB CRE DEBT FUND NO. 8, a Korean Investment Trust, by its agent in Korea DAOL FUND MANAGEMENT CO. and by its agent in United States REXMARK HOLDINGS LLC d/b/a REXMARK,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>UNION STATION SOLE MEMBER, LLC,<br><br>　　　　　　Defendant. | Case No. 1:22-cv-06649-GHW |

**DECLARATION OF DAVID E. ROSS IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56(d)**

David E. Ross, an attorney duly admitted to practice law before the Courts of the State of New York, and not a party to the above-captioned matter (the "Action"), affirms the following to be true:

1. I am a member of the Bar of the State of New York and a member of the law firm of Kasowitz Benson Torres LLP, counsel to Defendant Union Station Sole Member, LLC ("USSM") in the Action. I am admitted to the practice of law in this Court. I am fully familiar with the facts of the Action and make this Declaration in support of USSM's Opposition, pursuant to Federal Rule of Civil Procedure 56(d), to Plaintiffs' Motion for Summary Judgment (the "Motion").

2. The Court should deny the Motion because no discovery has taken place, which, alone, warrants denial or dismissal of the Motion.

3. On or about August 4, 2022, Plaintiffs commenced this action by filing their complaint. *See* ECF No. 1 (the "Complaint"). The Complaint asserts a single cause of action against USSM seeking a declaratory judgement that:

> (a) Lender is entitled under Section 5.2.2 of the Mezz Loan Agreement to act as USSM's attorney-in-fact with exclusive power to collect, receive, and retain any condemnation award and with exclusive power to make a compromise or settlement in connection with the Condemnation Action; and
>
> (b) all of USSM's right, title, and interest in and to USI have been extinguished by the foreclosure sale, and Lender is now the sole owner of USI.

4. Plaintiffs' proposed declaration references, and, indeed, the Action is substantially related to, a condemnation action pending in the United States District Court for the District of Columbia captioned, *National Railroad Passenger Corporation (Amtrak) v. Sublease Interest Obtained Pursuant to an Assignment and Assumption of Leasehold Interest Made as of January 25, 2007, with said Property Interest Pertaining to Described Leasehold Interests at Washington Union Station, et al.*, No. 22-cv-1043 (APM) (the "Condemnation Action"). In the Condemnation Action, the National Railroad Passenger Corporation ("Amtrak") seeks to condemn and acquire the rights to a subleasehold interest in the historic Union Station in Washington, D.C. That sublease interest, prior to the filing of the Condemnation Action, was owned by Union Station Investco, LLC ("USI"), which, prior to Plaintiffs' putative foreclosure sale, was wholly owned by USSM.

5. Plaintiffs' Complaint seeks, at least in part, an affirmative declaration holding that a putative foreclosure sale conducted by Plaintiffs was effective to eliminate USSM's ownership of the equity of USI. In particular, Plaintiffs seek for the Court to bless the conduct of the foreclosure sale after the Condemnation Action was filed and notwithstanding that the relevant loan documents did not permit Plaintiffs to notice or conduct the sale after the Condemnation Action was filed.

6. Plaintiffs' proposed declaration here also seeks a judicial ruling that they, and not USSM or anyone else, are empowered to negotiate and settle the Condemnation Action and that they, and not USSM, are entitled to "retain any condemnation award," notwithstanding that USSM held its interest in USI when the Condemnation Action was filed. *See* Complaint ¶ 141.

7. The same day that they filed the Complaint, Plaintiffs moved for a preliminary injunction [ECF Nos. 6-8]. The Court issued an order to show cause regarding the preliminary injunction motion [ECF No. 19], and held a hearing on August 23, 2022. At the hearing, the Court granted Plaintiffs' motion and later entered an order [ECF No. 39] stating:

> Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court enjoins USSM, its officers, directors, members, employees, agents, and all those acting in concert with any of them (the "Restrained Parties"), during the pendency of this action, from (1) holding itself out as the owner or in control of Union Station Investco, LLC ("USI"); (2) exercising or purporting to exercise any contractual or other legal right of USI; (3) collecting, transferring, seizing, or directing the transfer of any assets or liabilities of USI; and (4) impeding the collection or transfer of any assets to USI that are owed to it.

8. On September 13, 2022, the Court held an Initial Pretrial Conference in this case and entered a Civil Case Management Plan and Scheduling Order. *See* ECF No. 44 (the "CCMP"). At the time, Plaintiffs stated that they needed no discovery and intended to move for summary judgment imminently. USSM, on the other hand, asked to take discovery in order to establish its affirmative defenses and to interrogate the basis for Plaintiffs' claim. The Court entered a schedule permitting the parties to take discovery through February 10, 2023. *See* ECF No. 44 at 2.

9. On September 19, 2022, USSM timely filed its Answer, which included affirmative defenses against Plaintiffs' claim. *See* ECF No. 45 (the "Answer"). Among other things, USSM's Answer asserts that Plaintiffs are barred from the equitable relief they seek because of inequitable actions taken both by them and by their predecessor-in-interest as Lender

under one of the loans at issue here. *See* Answer at 31. The Answer also asserts that even if Plaintiffs succeed in securing a declaration validating their foreclosure sale process, that the Court must consider and rule on the parties' entitlement to shares of the proceeds in the Condemnation Action—in which USSM is entitled to share under the terms of the relevant loan documents and under applicable law.

10. Pursuant to the CCMP, the Parties exchanges Initial Disclosures on September 27, 2022. The same day, USSM served requests for the production of documents in accordance with the CCMP. A true and correct copy of USSM's requests is attached hereto as **Exhibit 1**.

11. Before responding to USSM's requests, Plaintiffs filed a letter seeking leave to move for summary judgment on their declaratory judgment claim. *See* ECF No. 51. The next day, on October 27, 2022, Plaintiffs served responses and objections to USSM's requests. A true and correct copy of Plaintiffs' responses is attached hereto as **Exhibit 2**.

12. In sum and substance, Plaintiffs' responses to USSM's requests asserted that all of USSM's requests were irrelevant, that the language of the relevant contracts was unambiguous in Plaintiffs' favor, and that USSM's affirmative defenses failed as a matter of law, though Plaintiffs did not move to strike any of USSM's affirmative defenses. Plaintiffs, thus, refused to produce any documents in response to USSM's requests.

13. Following Plaintiffs' refusal to produce any documents whatsoever (expect for five self-selected documents Plaintiffs served with their Initial Disclosures), USSM attempted to meet and confer with Plaintiffs to resolve disputes related to the scope and burden of discovery. Counsel for the parties spoke for roughly 30 minutes on November 2, 2022. During that conversation, Plaintiffs' counsel agreed to consider USSM's relevance and narrowing proposals related to several individual document requests.

14. After Plaintiffs' counsel did not respond the following week, USSM sent an email following up on the meet and confer conversation on November 11, 2022. The parties then exchanged emails regarding Plaintiffs' refusal to produce any documents between November 11 and November 16. As part of that correspondence, USSM offered to seek production, in the first instance, in response to only 10 of its 24 original requests, and Plaintiffs agreed to search for one category. *See* **Exhibit 3**. But, Plaintiffs reaffirmed that they "will not be producing any additional documents beyond those previously identified." *Id*.

15. Because of Plaintiffs' refusal, USSM sought the Court's intervention. Pursuant to the discovery dispute rules of the Court's Individual Rules of Practice in Civil Cases, the parties submitted a joint letter motion on November 25, 2022 describing the dispute. *See* ECF No. 59. The Court held a conference on December 1, 2022.

16. At the conference, the Court rejected Plaintiffs' unilateral refusal to produce any documents in response to USSM's requests. *See* **Exhibit 4** [Transcript of December 1, 2022 Hearing]. In so holding, the Court noted "[a] party cannot unilaterally determine that their adversary's legal position is inapt and, therefore, refuse to provide discovery of any type." *Id*. at 29:4-6. The Court then instructed the parties to meet and confer in an attempt to "narrow the scope of the requests so as to reduce the burden associated with any of them, to narrowly tailor them with the understanding that this record, I cannot conclude that these requests are irrelevant or disproportionate to the needs of the case because they lack any importance. *Id*. at 29:23-31:3. Finally, the Court noted that, if the parties were unable to resolve the dispute consensually, USSM could move to compel production from Plaintiffs. *Id.* at 31:4-12.[1]

---

[1] While the Court initially set a deadline of December 12, 2022 for motions to compel, *see* Ex. 4 at 31:25, following further efforts to meet and confer regarding USSM's requests, the parties requested—and the Court granted—an extension of that deadline to December 19.

17.     After the conference, the parties once again attempted to meet and confer regarding USSM's requests.  Counsel exchanged emails in an attempt to narrow the outstanding discovery proposals.  *See* **Exhibit 5**.  Counsel discussed the various narrowing proposals during a call on December 6 which lasted for more than an hour.  During that call, Plaintiffs also requested that USSM provide draft search terms for conducting a search and collection of electronically-stored information ("ESI").

18.     USSM provided the requested ESI search terms on December 7, 2022 and the parties spoke again by phone on December 8, at which point Plaintiffs agreed to run the search terms suggested by USSM and to report back by December 12, 2022.

19.     As of the date of this Declaration, USSM has not heard back from counsel to Plaintiffs.  USSM asked for an update on December 13, and was told that Plaintiffs' counsel had not received the requested hit counts.

20.     Despite Defendant's diligent efforts to obtain the necessary discovery, , Plaintiffs have not yet produced a single document in response to USSM's document requests.

21.     Once USSM receives documents from Plaintiffs, USSM anticipates noticing and taking the deposition of Plaintiffs' principal, Michael Rebibo, and, if necessary, other members or employees of the Plaintiffs.

**USSM'S Proposed Discovery Is Relevant and Necessary**

22.     In its initial requests for documents, USSM made 24 individual requests for documents and communications related to the dispute here.  In the course of the Parties' meetings and attempts to narrow any claimed burden of discovery, USSM has agreed initially to only seek production in response to 10 such requests.  Those are:

   a)   Request No. 5: Documents and Communications concerning the drafting and negotiating of the Loan Documents.

    b)      Request No. 10: Documents concerning and Communications with Amtrak concerning Union Station.

    c)      Request No. 12: Documents and Communications reflecting efforts to communicate with or meet with existing or prospective tenants at Union Station.

    d)      Request No. 13: Request: Documents and Communications with real estate brokers regarding Union Station.

    e)      Request No. 18: Documents and Communications concerning Your right to negotiate settlement agreements in the Condemnation Action.

    f)      Request No. 19: Documents and Communications relating to the Equity Investment.[2]

    g)      Request No. 20: Communications with Blackrock relating to Union Station.

    h)      Request No. 21: Communications with SL Green relating to Union Station.

    i)      Request No. 22: Communications with Wells Fargo relating to Union Station.[3]

23.      These requests seek information 1) to elucidate the meaning of ambiguous or potentially ambiguous contract provisions that the Court has not yet considered and 2) to investigate inequitable actions that my client believes were committed by Plaintiffs and their affiliates. In particular, as set out in the Declarations of Daniel Levy and Joe Press filed herewith, Plaintiffs and their affiliates actively interfered with USSM's management and operation of Union Station before Plaintiffs' putative foreclosure sale was noticed and before the Condemnation Action was filed. These efforts at least included, based on the information available to USSM, contacting existing and prospective tenants and directing those individuals and businesses to do business only with Plaintiffs or their chosen real estate broker and,

---

[2]      As defined in USSM's document requests, the Equity Investment was "the proposed investment by Aude Investment Company, LLC in or around December 2020 into an affiliate of USSM, USI, and [Ashkenazy Acquisition Company, another USSM affiliate].

[3]      In the process of conferring about the requests, the Parties have proposed narrowed versions of these requests. *See* Ex. 5 at 2-5. However, the Parties have not yet agreed to the wording of those narrowed constructions. Thus, for ease of reference, I have included the original wording of the requests as they were used in USSM's original requests.

explicitly, disallowing them from contacting USSM or any of its affiliates. In doing so, Plaintiffs' efforts prevented USSM from coming current on the relevant Mezzanine Loan by preventing USSM from signing new leases with tenants, increasing cash flows to Union Station, and, thereby, forestalling the foreclosure process.

24. Likewise, as set out in detail in the Declaration of Ben Ashkenazy filed herewith, Plaintiffs' predecessor-in-interest, as lender in connection with a related Mortgage Loan, unreasonably refused to provide consent to a restructuring investment in USSM's ultimate parent company, which immediately would have injected more than $100 million in new cash into USSM and its affiliates and would have allowed them to come current on both the Mortgage and Mezzanine Loans.

25. These are only the inequitable actions of which USSM and its agents currently have specific knowledge. However, based on statements by others in the market and their own experience in the industry, USSM and its agents believe that Plaintiffs wrongfully colluded with others, including the third-parties mentioned in Requests 21, 21, and 22.

26. Information regarding these issues, and, in particular, the evidence of these inequitable actions, is uniquely in the possession of Plaintiffs and their affiliates. In particular, Plaintiffs are the only parties likely to have information about their plan to interfere with USSM's tenant relationships and communications with those businesses and individuals. While certain third-parties may also have the information, the information is discoverable from Plaintiffs—and, thus, should be produced by them—rather than resorting in the first instance to costly and inefficient third-party discovery.

27. Once Plaintiffs have produced the requested documents, USSM intends to take the deposition of Plaintiffs' principal, Michael Rebibo. In particular, and as set out in more

detail in the declarations from Daniel Levy and Joe Press filed herewith, Mr. Rebibo repeatedly admitted his inequitable actions in conversations with Messrs. Levy and Press. However, because these conversations were not in writing, a deposition is necessary to obtain Mr. Rebibo's testimony as to these events, among others, and to test Mr. Rebibo's memory and credibility as to these facts.

28. At this stage, though USSM has used the information at its disposal and in its possession to contest the basis of Plaintiffs' motion, including Plaintiffs' Statement of Undisputed Facts pursuant to Local Rule 56.1, USSM does not have all of the information necessary regarding its affirmative defenses, which would bar Plaintiffs' relief if proven.

29. Once USSM is able to complete fact discovery, which closes in less than two months, it will have had the opportunity to marshal additional admissible testimonial and documentary evidence which will further demonstrate genuine issues of material fact with respect to its affirmative defenses, including the inequitable interference by Plaintiffs and questions of fact related to the meaning of ambiguous terms in the relevant contracts.

30. These issues are central to the declaration Plaintiffs seek here and, thus, adjudicating that claim without this discovery would unduly and unfairly prejudice USSM in preparing its opposition to the pending motion, which would take less than three months under the current scheduling order—provided that Plaintiffs produce their documents in a timely manner.

WHEREFORE, Defendant respectfully requests that the Court deny Plaintiff's Motion for Summary Judgment so that the parties can take discovery and the Motion can be decided on a developed record.

Dated: December 14, 2022                        /s/ *David E. Ross*
       New York, New York                    David E. Ross