## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DAOL REXMARK UNION STATION LLC
and KOOKMIN BANK CO., LTD., in its
capacity as trustee of KTB CRE DEBT FUND
NO. 8, a Korean Investment Trust, by its agent
in Korea DAOL FUND MANAGEMENT CO.
and by its agent in United States REXMARK
HOLDINGS LLC d/b/a REXMARK,

        Plaintiffs,

v.

UNION STATION SOLE MEMBER, LLC,

        Defendant.

Case No. 1:22-cv-06649-GHW

## DECLARATION OF YOSSI PREISEROWICZ

YOSSI PREISEROWICZ, being duly sworn, deposes and says:

1.      I am Chief Operating Officer of Ashkenazy Acquisition Corporation ("AAC"),

which is an affiliate of Union Station USSM LLC ("USSM"). Professionally, I go by the name

"Joe Press." I make this declaration in support of USSM's Opposition to Plaintiffs' Motion for

Summary Judgment.

2.      Prior to the entry of the preliminary injunction in this action, I was responsible for

the day-to-day management and operations of Union Station in Washington, D.C. ("Union

Station" or the "Station"). As such, I am fully familiar with the facts and circumstances sworn to

in this affidavit based upon my own personal knowledge.

3.      Union Station is a large, historic, national landmark owned by the federal

government. It is operated as one of the nation's busiest transit hubs along with a retail shopping

center, commercial office space, and dining components. Each year, Union Station serves tens of

millions of visitors and commuters. Operation of Union Station is complex, akin to running a train

station, major mall, and office complex at once and at the same location. Prior to the entry of the preliminary injunction in this action, I was in charge of management of Union Station since 2007. An integral part of my job was the negotiation and signing of leases with new and existing tenants at Union Station.

4.      Prior to the Condemnation Action (defined below), Union Station Investco, LLC ("USI")—an affiliate of USSM before the entry of the preliminary injunction in this action—was the holder of a 99-year lease over the majority of Union Station. USI, USSM, and AAC operated the Station safely and effectively for more than fifteen years.

**Mortgage and Mezzanine Loans**

5.      In order to obtain funding for the operation of the Station, on May 8, 2018, USI and lenders Citi Real Estate Funding Inc. ("Citi") and Natixis Real Estate Capital LLC ("Natixis" and, together with Citi, "Original Mortgage Lenders") entered into a loan agreement (the "Mortgage Loan Agreement"), a deed of trust, an assignment of leases and rents, and other loan documents (the "Mortgage Loan Documents"), pursuant to which those lenders provided a loan (the "Mortgage Loan") to USI in the aggregate original principal amount of $330 million secured by a leasehold mortgage on the Station (the "Mortgage Collateral"). A true and correct copy of the Mortgage Loan Agreement, excluding the attached schedules, is attached hereto as **Exhibit 1**. A true and correct copy of the Assignment of Leases and Rents is attached hereto as **Exhibit 2**.

6.      Following the execution of the Mortgage Loan Documents, the Mortgage Loan was securitized and Wilmington Trust, N.A., in its capacity as Trustee of the US 2018-USDC, Commercial Mortgage Pass-Through Certificates, Series 2018-USDC (the "Trust"), became the successor-in-interest to the Original Mortgage Lenders ("Second Mortgage Lender").

7.      In January 2022, the Mortgage Loan was purchased out of the Trust by Kookmin (defined below).

8.      Also on May 8, 2018, USSM, the sole owner of USI, and Kookmin Bank Co., Ltd. ("Kookmin" or "Lender") entered into an agreement (the "Mezzanine Loan Agreement"), a pledge and security agreement (the "Pledge Agreement"), and other loan documents (the "Mezzanine Loan Documents," and together with the Mortgage Loan Documents, the "Loan Documents"), pursuant to which Kookmin provided a loan to USSM in the aggregate principal amount of $100 million (the "Mezzanine Loan," and together with Mortgage Loan, the "Loans"), secured by USSM's membership interests in USI (the "Mezzanine Collateral").  True and correct copies of the Mezzanine Loan Agreement, excluding the attached schedules, and the Pledge Agreement are attached hereto as **Exhibits 3 and 4**, respectively.

9.      Kookmin acts through its authorized representative in the United States, Rexmark Holdings LLC ("Rexmark").

10.     The Mortgage Loan and Mezzanine Loan are part of a single financing transaction.

**The Effect of COVID-19 on Union Station**

11.     Prior to the COVID-19 pandemic, USI and USSM were current on all of their obligations under the Loan Documents, including their payment obligations.

12.     Union Station was devastated by the COVID-19 pandemic.  Among other things, lockdowns and travel restrictions led to an enormous reduction in the number of travelers, shoppers, and other visitors to Union Station.  As a result, many of the tenants went out of business or otherwise became unable to pay rent or began paying reduced rents.  This caused a substantial decrease in revenue to USSM and its affiliates, ultimately causing them to fall behind

on payments to lenders in connection with loans taken out in connection with management of the property.

13.     On May 13, 2020, Second Mortgage Lender and Kookmin declared Events of Default for failure to make the May 2020 payment.  Following this declaration, USSM and USI entered into extensive negotiations with those lenders and, recognizing that financial difficulties were temporary, entered into modification and forbearance agreements through which the lenders agreed to forbear from the exercise of their rights and remedies under the Loan Documents.

14.     On November 19, 2021, Second Mortgage Lender, acting through the Special Servicer for the Trust, Green Loan Services LLC, served Mortgage Borrower with a Notice of Foreclosure Sale of Real Property issued through the Recorder of Deeds, Office of Tax and Revenue, Government of District of Columbia (the "Mortgage Sale Notice"), indicating that Mortgage Lender intended to foreclose and sell the Mortgage Collateral at auction on January 6, 2022 (the "Mortgage Foreclosure Sale").

15.     Three days later, on November 22, 2021, Kookmin, acting through Rexmark, served USSM with a Notice of Disposition of Collateral Via a Public Foreclosure Sale Under Article 9 of the Uniform Commercial Code and Reservation of Rights ("Mezzanine Sale Notice," and together with the Mortgage Sale Notice, the "Sale Notices"), indicating that Kookmin intended to foreclose on and sell the Mezzanine Collateral on January 4, 2022.

16.     Thus, after agreeing in June 2021 to work with Borrowers towards reaching a workout agreement regarding the Loans, Lenders strung Borrowers along for approximately 5 months only to abruptly reverse course, race each other to foreclose on the Loans, and schedule the Foreclosure Sales of the extremely valuable and complex collateral on only approximately 6

weeks' notice with no regard whatsoever for the reasonableness of the process or the resulting consequences to Borrowers.

17.    The sales did not come to pass, however.  On January 5, 2022, title to the Mortgage Loan was transferred to Kookmin and the pending foreclosure sales were terminated. USSM and USI hoped that Kookmin, now the Lender for both Loans, would cooperate in attempting a mutually beneficial restructuring and workout of the Loans.

**Kookmin and Rexmark Interfere with USI and USSM**

18.    Almost immediately after taking ownership of the Mortgage Loan, Kookmin began to interfere with the operation of Union Station.

19.    Among other things, Rexmark, acting on Kookmin's behalf, interfered with USSM's and its affiliates' ability to lease space in Union Station by having their brokers in the market offering space in Union Station for lease, rather than directing tenants to USSM, AAC, or me.

20.    Rexmark and its representatives have themselves met with existing Union Station tenants, and with others who USSM and its affiliates were actively attempting to negotiate with, about leasing space inside Union Station.

21.    In January 2022, Rexmark's principal, Michael Rebibo, requested to use AAC's office space inside Union Station for a meeting with Cushman and Wakefield, a large property management firm.  I did not know at the time what the meeting was about.  However, after the meeting, I saw a leasing book that Cushman and Wakefield prepared for Rexmark offering the office space at Union Station for lease to tenants.  A true and correct copy of a picture of that leasing book is attached hereto as **Exhibit 5**.  Neither I nor anyone else at AAC consented to Rexmark hiring Cushman and Wakefield to market Union Station for lease to anyone.

22.     Rexmark, through its agents, also attempted to lease the Station.  For example, in early 2022, I was negotiating for Sage Hospitality Group ("Sage") to lease the entire office space at Union Station, more than 130,000 square feet.  This lease would have been the largest signed for the Station while AAC was managing the property.  However, by mid-February 2022, Sage stopped responding to my emails and inquiries.  I later learned that Rexmark, through Mr. Rebibo, had contacted Sage and purported to "take over" the leasing negotiations with them.  Following Mr. Rebibo's intervention, Sage never signed a lease for space at the Station.

23.     Rexmark also intervened in and unreasonably refused to approve other leases at the Station.  For example, in February 2022, I negotiated leases with Creative Food Group, a company with more than 10 retail and dining locations, to open two stores in Union Station: Land of Beer/Wine and Pick N Bite.  At the time, the spaces for these leases were occupied by tenants who were not paying rent, one of whom we had moved to evict.  These leases were finalized (and, in fact, were already signed by the tenants) and would have delivered more than $700,000 per year in revenue to the Station.  Due to the earlier payment default on the Mortgage Loan, however, Rexmark, as the Mortgage Lender following its purchase of the Mortgage Loan, had authority to signoff on new leases.  When presented with these leases, Mr. Rebibo unreasonably refused to authorize them.

24.     I understand that Plaintiffs in this action have asserted that they were permitted to interfere with Union Station leases under the Assignment of Leases and Rents signed in connection with the Mortgage Loan.  However, Plaintiffs never noticed an exercise of rights under the Mortgage Loan, nor did Second Mortgage Lender exercise such rights before Plaintiffs purchased the Mortgage Loan in January 2022.

25.     In addition to interference with leases, Rexmark and Kookmin also interfered with the regular payment of the Station's expenses, further endangering the health of the Station and making it more difficult to lease space inside.

26.     In particular, pursuant to the Mortgage Loan Agreement, following the payment default in 2020, all receipts from the operation of Union Station were deposited into a "lockbox" account to which only Kookmin, as the lender in connection with the Mortgage Loan, had direct access and control.  Funds were then transferred to an operating account in the amount necessary to pay incurred expenses.  Money was withdrawn by the lender for the Mortgage Loan from this account for the payment of debt service and expenses for the Station.  Beginning in May 2022, after two years of operating under this regime, Rexmark began to refuse requests to pay routine expenses out of the lockbox account.  While it refused to release funds for regular course expenses from this account, however, Rexmark continued to collect a $1 million annual servicing fee out of these lockbox funds.

27.     For example, on May 18, 2022, a representative of USI and AAC submitted to Rexmark, as a representative of Kookmin, a list of necessary payments (in the same format as every other request over the previous two years) from the lockbox accounts (which Kookmin controls).  A large portion of these payments concerned annual insurance premiums for Union Station, without which the Station could not operate.  Nevertheless, and despite that identical charges were previously paid out of the lockbox account without objection, Rexmark refused to fund the expenses without itself first reviewing and approving invoices directly, which had never previously occurred.  The insurance premium payments were not made for more than a week after the request, and Kookmin, through Rexmark, still had not made multiple necessary payments as of the end of May, nearly two weeks after the expenses were submitted for payment.

28.     The following month, on June 9, 2022, USI, USSM, and AAC submitted their regular monthly list of Union Station's incurred operating expenses, backed by a detailed spreadsheet and totaling over $600,000, that needed to be funded from the lockbox account. Kookmin never responded to the request at all, and threatened to leave unpaid more than $170,000 for janitorial services at the Station, $45,000 for electricity, $11,000 for trash removal, and $34,000 for water and sewer services.  Eventually, Kookmin paid only the outstanding utility bills, and only after receiving shut off notices.

**Events Leading Up to This Action**

29.     Following months of this kind of interference by Kookmin and Rexmark, I was blindsided when Amtrak, which subleases approximately fifteen percent of the space in Union Station, filed their complaint for condemnation of the Station in federal court in Washington, D.C.  (the "Condemnation Action")

30.     Then, almost a month after the condemnation complaint was filed, on May 13, 2022, USSM received three letters (the "May 13 Letters") from Kookmin and Rexmark's counsel purporting to exercise certain rights under the Pledge Agreement.  Specifically, the letters informed USSM that Lender purportedly 1) had exercised its option under Section 8(a) of the Pledge Agreement to register all of the ownership interest in USI (currently held by USSM) in Kookmin's name; 2) had exercised its right under Section 9(a)(i) of the Pledge Agreement to terminate the current manager of USI; and 3) had exercised its option under Section 13 of the Pledge Agreement to act as attorney-in-fact for USSM.

31.     The same day, Kookmin, through Rexmark, also sent a "Notice of Disposition of Collateral via a Public Foreclosure Sale under Article 9 of the UCC and Reservation of Rights to

USSM" which stated that a nonjudicial foreclosure sale of the Mezzanine Loan was to take place on June 14, 2022.

32.     After the Condemnation Action was filed, Rexmark purported to terminate Union Station's management company, Jones Lang LaSalle Americas, Inc. ("JLL").  While Section 7.3 of the Mortgage Loan Agreement states that Kookmin may only direct the Borrower to replace the management company at the Station, Rexmark did not direct me or anyone at USI, USSM, or AAC to terminate JLL.  Instead, Rexmark itself sent notice of the termination.

33.     Rexmark then purported to hire Cushman and Wakefield to serve as the new property manager.  Without consent, Cushman and Wakefield reached out to existing Union Station employees regarding continued employment for them.  However, after objections from USSM and Amtrak, Kookmin rescinded the termination of JLL.

34.     On June 14, 2022, Kookmin purportedly held its "foreclosure sale" of the Mezzanine Loan Collateral.  Based on a transcript of that sale, representatives of Rexmark, acting on Kookmin's behalf, were the only bidder at the sale.  I understand that Rexmark made a full credit bid at the purported sale.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:    December 14, 2022

_____
Yossi Preiserowicz