# EXHIBIT D

MC1PDAOC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    DAOL REXMARK UNION STATION,
     LLC, ET AL.,
4
                    Plaintiffs,
5
              v.                          22 CV 06649 (GHW)
6                                         Telephone Conference
     UNION STATION SOLE MEMBER,
7    LLC,

8                    Defendant.

9    ------------------------------x
                                          New York, N.Y.
10                                        December 1, 2022
                                          4:02 p.m.
11
     Before:
12
                     HON. GREGORY H. WOODS,
13
                                          District Judge
14
                  APPEARANCES VIA TELECONFERENCE
15
     MORRISON COHEN, LLP
16        Attorneys for Plaintiffs
     BY:  LATISHA V. THOMPSON
17        AMBER R. WILL
          MAHNOOR MISBAH
18
     KASOWITZ, BENSON, TORRES, LLP
19        Attorneys for Defendant
     BY:  DAVID E. ROSS
20        DAVID J. MARK

21

22

23

24

25

1          (The Court and all parties appearing telephonically)

2          THE COURT:  This is Judge Woods.  Do I have a court

3     reporter on the line?

4          THE REPORTER:  Yes, your Honor.  This is Rose.  Good

5     afternoon.

6          THE COURT:  Good.  Thank you.  Good afternoon.

7          So let me start by taking appearances from the

8     parties.  I'm going to begin by asking the principal

9     spokesperson for each set of parties to introduce him or

10    herself and each member of their team.  I'll begin with counsel

11    for plaintiffs.  Counsel, who's on the line for plaintiffs?

12         MS. THOMPSON:  Sure.  Good afternoon, your Honor.

13    This is Latisha Thompson from Morrison Cohen, and with me I

14    have my colleagues Amber Will and Mahnoor Misbah.

15         THE COURT:  Thank you.

16         And who's on the line for defendants?

17         MR. ROSS:  Your Honor, David Ross and David Mark from

18    Kasowitz, Benson, Torres for the defendant, and good afternoon

19    to you.

20         THE COURT:  Very good.  Thank you.

21         So let me begin with just a few brief instructions

22    about the rules that I'd like the parties to follow during this

23    conference.  At the outset, please remember that this is a

24    public proceeding.  Any member of the public or press is

25    welcome to dial into this conference.  Please just keep that in

1   mind.

2          Second.  Please state your name each time that you

3   speak, even if you've spoken previously.

4          Third.  Please keep your phones on mute at all times

5   except when you're speaking.  We heard a little bit of an echo

6   at the very beginning of this conference.  We'll avoid that and

7   other distractions if you keep your phones on mute except when

8   you're intentionally speaking to a participant.

9          Next, I'm inviting our court reporter to let us know

10  if she has any difficulty hearing or understanding anything

11  that we have to say here today.

12          And finally, I'm ordering that there be no recording

13  or rebroadcast of all or any portion of today's conference.

14          So, counsel, I scheduled this as an opportunity to

15  discuss the letters that was filed by the parties on the 25th

16  of November; that is a joint letter regarding some discovery

17  disputes.  I've looked at your letter.  I've looked at the

18  discovery requests themselves, and I've also looked at the

19  e-mail exchange that the parties had in connection with the

20  dispute, or the series of disputes.

21          What I'd like to do is perhaps begin with a few

22  introductory remarks just to focus the conversation and then to

23  begin a discussion regarding the discovery requests that I

24  understand to be at issue.  The ones that I understand to be at

25  issue are the ones that are listed in the e-mail exchange that

1  is on the docket at Docket Number 59-3.  I found that to be a

2  helpful framing document with respect to the disputes because

3  it ties the categorical issues raised in the parties' letters

4  to specific discovery requests.  So I may look to that as we

5  are engaging in our conversation about each of these requests.

6          The second thing that I want to just say, as an

7  observation, is that much of the argument presented to the

8  Court in your joint letter really focuses principally on one of

9  the number of issues that are pertinent to the Court's

10 assessment of the propriety of these discovery requests, and

11 that is what I will describe as relevant, or perhaps better

12 stated in the context of a rule 26 motion, depending on the

13 perspective of the parties.

14         The importance of the information to the action as a

15 whole, the parties have not presented a substantial amount of

16 information to the Court regarding the burden of the proposed

17 discovery.  Although, I can infer a substantial amount from the

18 nature of their requests, I may ask questions about that

19 category.

20         Just as a general framing comment before we begin our

21 discussion of the requests, which I will take up by category,

22 as the parties know, Federal Rule of Civil Procedure 26(b)

23 permits parties to obtain discovery regarding "any

24 non-privileged matter that is relevant to any party's claim or

25 defense and proportional to the needs of the case, considering

1    the importance of the issues at stake in the action, the amount

2    in controversy, the parties' relative access to relevant

3    information, the parties' resources, the importance of the

4    discovery in resolving the issues, and whether the burden or

5    expense of the proposed discovery outweighs its likely benefit.

6    Information within this scope of discovery need not be

7    admissible in evidence to be discoverable."

8            As the parties know, a District Court has broad

9    latitude to determine the appropriate scope of the discovery,

10   as well as to manage the discovery process as a whole.

11           So I just wanted to restate the basic principles that

12   I will be looking to here in evaluating these issues, and I

13   wanted to flag the framing document and a concern before

14   beginning a discussion related to the categories of request at

15   issue here.

16           To the extent that we can, my hope is that we'll be

17   able to resolve some of these disputes today, if not all.  To

18   the extent that there are disputes that I cannot resolve here,

19   I may request further briefing.  I should hear from each of the

20   parties, however, regarding whether either of you wants to

21   present more substantive briefing on these issues before we

22   begin to work through a potential resolution to them.

23           This is framed as a pre-motion conference letter, and

24   to the extent that the parties wish to present this set of

25   discovery disputes to the Court through more formal motion

1    practice, I'm happy to proceed in that way.  I don't want to

2    deprive any party of the opportunity to provide more

3    substantive, fulsome briefing on these topics, should you wish

4    to.

5            That said, I believe that we may be able to make some

6    progress on the basis of the letter and the parties' arguments,

7    but I'm happy to proceed as the parties wish, should either

8    party wish to present more fulsome briefing on the issues here.

9            So let me begin with counsel for plaintiff.  Counsel,

10   what's your view?  If you're on mute --

11           MS. THOMPSON:  Oh, your Honor, I had the phone on

12   mute.

13           THE COURT:  That's fine.

14           MS. THOMPSON:  Our view, overall, with respect to many

15   of the discovery requests, as you've seen in our letters, is

16   that it is overbroad, that it is --

17           THE COURT:  I'm sorry.  I apologize for interrupting.

18   I'll take up the individual requests in a moment.  What's your

19   view as to whether, at this point just limited to whether you

20   would like to submit further substantive briefing with respect

21   to these issues, as opposed to trying to make as much progress

22   as we can based on the letter submission and your arguments

23   here?

24           MS. THOMPSON:  At this point, I would like to see if

25   we can talk through some of the issues.  If it becomes apparent

1    that more substantive issues, particularly as they relate to

2    the issue of relevancy in terms of whether the information

3    sought is of consequence or something like that, we may want to

4    submit actual briefing instead of the motion to compel.

5              THE COURT:  Good.  Thank you.

6              Counsel for defendants, what's your view?

7              MR. ROSS:  Your Honor, we're ready to proceed, and

8    subject to rulings that you make or advice that you may give,

9    we'll then decide if there is anything further necessary.  But

10   at this point, we think the Court has what it needs.

11             THE COURT:  Good.  Thank you.

12             So let's begin.  So what I'd like to do is to start

13   with the first issue, which is request No. 5.  I just want to

14   say one brief comment to frame this issue, which is I think

15   very much focused on the question of whether or not the

16   relevant documents are ambiguous.

17             I'll say just a couple of things on this before I hear

18   from each of the parties, again, just to help to frame the

19   conversation and to focus the parties' arguments.

20             First, I just want to note that it is not a rule of

21   thumb that a party "should be precluded from discovering

22   extrinsic evidence because the relevant policy language is

23   unambiguous."  I'm citing to *Virtu Finance, Inc. v. Axis*

24   *Insurance Company*, 2021 Westlaw 362857 at star 3.  That, in the

25   words of that court, is because "objections that unambiguous

1   policy language cannot be undermined through extrinsic evidence

2   presents a challenge that goes to admissibility, as opposed to

3   discoverability," at star 3.

4           Here, I note that, unlike in *Virtu* and a number of

5   other cases that have looked at this issue, I have made a

6   determination, in the context of the preliminary injunction

7   hearing, that certain of the contract language is unambiguous

8   in the context of assessing the likelihood of success on the

9   merits, which was the issue presented to me there.

10          So I just want to frame the conversation to say that

11  my ability to resolve this issue may, in part, turn on whether

12  there are portions of the contract that are claimed to be

13  ambiguous that were not the subject of my prior review and the

14  issues presented to the Court through formal briefing in

15  connection with the preliminary injunction hearing.

16          So I'm going to open the floor, but let me just note

17  those points, data points to start.  As you can tell, I'm

18  interested in determining whether or not my assessment of

19  whether or not there are ambiguous parts of these contracts at

20  issue here, from the preliminary injunction hearing, really

21  covers the waterfront, or if there is some provision of the

22  contracts that I did not have the opportunity to consider with

23  the benefit of full briefing that is at issue with respect to

24  this topic.

25          So let me hear from each of the parties in turn with

1    respect to this issue.  I'll begin with counsel for plaintiff.

2    Counsel, what's your view?

3           MS. THOMPSON:  Our view is, no.  In the concept of the

4    meet and confer, we had on several occasions asked defendants'

5    counsel to point out what they believed to be the ambiguous

6    provisions in the contract, and we still are unclear on what

7    they believe toe be ambiguous.

8           But certainly, in the context of the declaratory

9    judgment, that's the only claim in this action.  That language

10   has been reviewed by the Court.  The Court has found it not to

11   be ambiguous, and there's really no question what's left, and

12   there's no need for discovery because the issue of ambiguity

13   has essentially been determined.

14          THE COURT:  Good.  Thank you very much.

15          Counsel for defendants?

16          MR. ROSS:  David Ross, your Honor.  Your Honor did not

17   take up all of the aspects of section 5.2.2 of the contract

18   provision.  In your ruling with respect to the preliminary

19   injunction, including the section that relates to condemnation,

20   which your Honor did not address at all in your ruling.

21          Also, we believe it's possible that there may be

22   ambiguity with respect to the attorney-in-fact provision, and

23   the source of that provision may -- it may be determined,

24   through discovery, that it came from the contract involving the

25   mortgage loan and was incorporated into this agreement without

1    considering its impact and how it worked together with the

2    condemnation provision.

3         We think understanding the history of the drafting and

4    construction of this document, which you're being asked to

5    construe and being told is clear and unambiguous, may give rise

6    to ambiguities or facts which your Honor may be able to

7    consider in evaluating the extent to which they're entitled to

8    a declaratory judgment; that they not only get the rights that

9    they claim to, but that they get the windfall that they claim

10   to as a result of the arguments that they have made.

11        So your Honor did not completely address all of the

12   provision.  We seek to get discovery, and it's got to be

13   limited.  There can't be a huge amount of correspondence in

14   discovery between the drafters and the people who created this

15   document, as to how it came together, the drafts s it went

16   through, how the provisions of this section got to be in the

17   document.  And we think it's, A, relevant; B, discoverable even

18   if it's not admissible ultimately; and, C, not burdensome.

19   Thank you, your Honor.

20        THE COURT:  Good.  Thank you.

21        Let me come back to counsel for plaintiff.  Counsel

22   for defendant has, I think correctly, pointed out that I did

23   not rule on the question of whether or not all of the text of

24   5.2.2 was unambiguous.

25        Instead, my ruling -- not limiting any portion of it

1    through my comments here -- focused in large part on whether or

2    not 5.2.2 superseded the right of, who I'll describe as, the

3    lender to exercise the remedies with respect to the collateral.

4         And so, counsel, let me come back to you with respect

5    to this issue.  Again, I've laid out some of the case law that

6    is guiding my view, which is that the case law says, as I

7    described earlier, that an argument regarding lack of ambiguity

8    does not preclude discovery unless a formal determination has

9    been made by the Court regarding the ambiguity or, I should

10   say, lack of ambiguity of the relevant provision.

11        So, counsel, can you respond to those arguments, and

12   then I have a couple of questions about 5.2.2 just as a matter

13   of interest?  Counsel for plaintiff?

14        MS. THOMPSON:  Sure, your Honor.  As an initial point,

15   the question of whether 5.2.2 as a whole is ambiguous, I think

16   what we need to be really focused on is the portion of 5.2.2

17   that's relevant to the claim in this action.

18        Again, this becomes the circumstance where the party

19   seeking discovery has not even identified what it believes to

20   be ambiguous.  The provision appears clear on its face, and

21   it's not a circumstance, as in the *Virtu* case, where we're

22   talking about insurance policies that have a different

23   background in terms of what courts would allow.

24        Here, the question is whether there is any ambiguity,

25   and that's a question that can be determined by the Court by

1   just looking at the language that the Court has before it.  The

2   Court has the entirety of a 5.2.2.

3           The evidence, or the information, that is being sought

4   by this discovery is not even evidence that would help the

5   Court in making the determination as to whether ambiguity even

6   exists.  That's a determination that's made simply by looking

7   at the language of the documents, of the contract that's before

8   the Court.

9           Also, as we are sort of in the summary judgment

10  briefing schedule, and we have a summary judgment motion that's

11  before the Court, and the defendant is going to be opposing,

12  presumably, the summary judgment motion, which has been limited

13  to a question of rule 56(f) in terms of what information they

14  believe that they'd need in discovery, this seems a really

15  broad and, quite frankly, not proportional to the needs of the

16  case that's really just about whether this one provision

17  supports the declaratory relief that the plaintiff is seeking

18  in this case.

19          I believe Judge Cote faced a similar question,

20  although it was in the context of a 56(f) motion, and said,

21  look, the discovery sought, because it cannot change the

22  outcome, because the provisions of the loan documents are

23  unambiguous, the discovery really isn't relevant.

24          THE COURT:  Good.  Understood.

25          So, counsel, you say this is disproportionate to the

1    needs of the case.  Counsel for defendant says that the burden

2    associated with this request will not be substantial.  What do

3    you proffer with respect to the burden associated with the

4    response to this question?

5          MS. THOMPSON:  It is a very -- if you look at the text

6    of the request, it is a very, very broad request, and it would

7    require the lender in this case to look for broad searches of

8    all communications and documents related to the negotiation and

9    drafting of loan documents, which, of course, implicates all

10   types of privilege issues.  That just doesn't seem necessary or

11   relevant in the context of language and loan documents that's

12   before the Court.

13         Importantly, the request itself is not even limited to

14   section 5.2.2.  It's the drafting and negotiation of all of the

15   loan documents.

16         THE COURT:  Thank you.

17         Counsel for defendant, can you respond to the argument

18   regarding, I'll call it, asserted over-breadth and lack of

19   proportionality?

20         MR. ROSS:  Your Honor, it's a very limited request in

21   the sense that when lawyers -- from my experience, when lawyers

22   negotiate loan documents back and forth, there are drafts,

23   there are e-mails, and there are records of the communications

24   about the drafts.  It isn't complicated.

25         And, obviously, if there are internal communications

1   with counsel, then I don't intend to be discovering those or

2   suggest that there's a waiver of privilege at this time.  So

3   they can exclude the documents that involve solely internal

4   communications between lawyer and client.

5        Also, the time period is very limited, and it's just

6   not burdensome, and it's over the plate, so to speak.  It's

7   directly on the issues that we're talking about.  Thank you,

8   your Honor.

9        THE COURT:  Good.  Thank you.

10        Let me turn to a separate question that is not in

11   chronological order, but I think may be properly categorized

12   together with this first, which is the parties' dispute

13   regarding request No. 18, which is the request for information

14   about documents supporting the plaintiff's contention on that

15   legal issue.

16        Counsel for plaintiff, what's your view regarding the

17   propriety of this request?

18        MS. THOMPSON:  Yes, your Honor.  Again, we believe

19   that this request is improper.  That issue is not before the

20   Court.  Before the Court is one request for a declaratory

21   judgment that's set forth in the clear language of section

22   5.2.2 of the mezz loan agreement.

23        Lenders -- what defendant has done is it attempts to

24   flip request No. 18 as relevant to the question of whether the

25   lender is entitled to proceeds of the condemnation -- in the

1      condemnation action, but that issue is not before this Court

2      either.  That issue is one that the DC court will get to if it

3      decides that Amtrak has the authority, the condemnation

4      authority.

5              Lender's relief in this space is clear, it's specific,

6      and it relates directly to the language of 5.2.2 of the mezz

7      loan agreement.

8              THE COURT:  Thank you.

9              Let me just pause you on that, if I can, counsel.

10     Just briefly, the request, among other things in the complaint,

11     is that I grant declaratory judgment with respect to whether

12     lender can act as USSM's attorney in fact.  It says "during the

13     continuance of an event of default."  Can I just ask, from a

14     practical perspective, where the parties are now with respect

15     to this issue?

16             Is it your view that, notwithstanding the foreclosure

17     action, that there's a continuing event of default?

18             MS. THOMPSON:  Well, I certainly think that there is a

19     continuing event of default under the mortgage loan, without

20     question, because that loan has never been foreclosed.  And we

21     certainly believe that there is an event of default as long as

22     defendant continues to contest the efficacy of the foreclosure.

23             THE COURT:  Thank you.

24             Just again out of curiosity, why is that the case?

25     Why is it your view that the foreclosure doesn't satisfy the

1    obligations of the borrower here such that the continuing

2    covenants and that grant of an attorney the power of attorney

3    during the continuance of an event of default is no longer,

4    I'll call it, applicable?

5         MS. THOMPSON:  Well, I think it's twofold:  One,

6    because there's the same language in the mortgage loan

7    documents and that's in default; and two, I think because the

8    efficacy of the foreclosure is still being contested and

9    contested in this very action.  Right?

10        The defendants have taken the position that the

11   foreclosure didn't really occur, or isn't effective, or should

12   somehow shouldn't be unwound as a result of what it believes is

13   inequitable conduct, contrary to what New York law says on that

14   issue.  And as long as these issues are sort of unresolved, we

15   think that there is a continuing event of default under the

16   mezzanine loan, but there certainly is a continuing event of

17   default under the mortgage loan.

18        THE COURT:  Thank you.  Two quick questions on that,

19   and I apologize for the diversion.

20        First, is the mortgage loan directly at issue here?

21   In other words, is the request that I grant declaratory

22   judgment with respect to that?

23        MS. THOMPSON:  Here, we certainly brought it under

24   the -- with respect to the foreclosure, and the efficacy on

25   that, that is related to the mezzanine loan.

1          THE COURT:  Thank you.

2          The second question is -- and I'll just put this

3     inelegantly -- why does it matter?  If your position, which I

4     endorsed at the preliminary injunction hearing, is correct that

5     the lender is the owner of the equity of that company, why does

6     the authority of the lender and the mortgage agreement to act

7     as power of attorney for that entity, why is that germane?

8          Why would it need authority through the power of

9     attorney, as opposed to acting -- I should say your client

10    acting as the equity holder and direction it to do what it

11    wishes?

12         MS. THOMPSON:  I suppose -- and I'll also put it

13    perhaps not as eloquently.  I suppose it doesn't matter.  If

14    the Court is in agreement with us and as part of our

15    declaratory judgment and the relief we seek here agrees that as

16    a result of the foreclosure -- and consistent with New York

17    law -- that we now own the equity, it doesn't matter.  I think

18    your Honor is correct that we can do whatever we'd like.

19         THE COURT:  Thank you.

20         Let me turn to counsel for defendant.  Counsel, what's

21    your view regarding this request No. 18, having heard that

22    plaintiff's view is that the relevant document here is the

23    agreement?  Can you give me information about what beyond that

24    document and beyond privileged communications would be properly

25    sought by this request?

1          MR. ROSS:  Yes, your Honor.  First, I just note that I

2     agree with the comments that you made in the questions that you

3     put because part of that also goes to the issue of what the

4     agreement and 5.2.2 means and what it means after a

5     foreclosure.  So I think you put your finger on -- among the

6     reasons why discovery is appropriate with respect to the rights

7     under the agreement.

8          This request 18 is not seeking attorney-client

9     communications but any communications that are not privileged

10    that relate to their claimed right to negotiate with respect to

11    this condemnation action and the extent to which it may reflect

12    on what the agreement means and what rights they claim to have

13    and that they're seeking to effectuate by this declaratory

14    judgment.

15         It also may relate directly to communications with

16    Amtrak and what has been represented back and forth with

17    respect to rights in the condemnation.

18         THE COURT:  Thank you.  Good.  Understood.

19         Let me turn to the next issue which I'd like to take

20    up, which are the issues pertaining to requests 12 and -- I

21    should say questions, first, 10 and also, I believe, 12 and 13.

22    The principal issue that's presented to the Court through the

23    parties' letter with respect to these requests, is in essence a

24    request for me to evaluate whether defendant's asserted

25    equitable defenses are viable.

1        I'll just highlight, at the outset, that this is a

2   challenging task for me to decide in the context of a discovery

3   dispute.  I'll hear from each of the parties.  I'd like to hear

4   from each of you about why you believe that these requests are

5   not relevant, which I understand to be the principal argument

6   presented by the plaintiff.

7        And I also want to ask why, to the extent that this is

8   embedded in the equitable defenses question, this discovery

9   wouldn't be pertinent to an argument brought under 9-617 of the

10  UCC here.

11       Let me hear first from counsel for plaintiff.

12  Counsel?

13       MS. THOMPSON:  Sure, your Honor.  The first part,

14  maybe I'll start with UCC 9-617.  Under *Atlas v. Macquarie*, the

15  question of whether inequitable conduct can unwind or undue a

16  foreclosure sale is not -- has been decided.  It cannot be.

17       And so to the extent that this is a defense that based

18  on alleged inequitable conduct, it can be the subject of a new

19  action if they wanted to sue the lender and seek money damages.

20  And that's actually the relief the *Atlas* court found, was that

21  if the borrower believed that the lender and the transferee

22  have engaged in inequitable conduct, their remedy, once the

23  foreclosure sale had concluded, was not to challenge the

24  efficacy of the foreclosure sale, as the defendants are doing

25  here, but it could seek money damages and that was the only

1   relief.

2          So to the extent that defendants are seeking

3   information about defenses that don't exist at law, it's simply

4   not relevant and doesn't need sort of the, you know, Federal

5   Rule of Evidence standard for what's relevant.  Now, while that

6   standard is not onerous, it does require that, you know,

7   information sought has to be of some consequence in a

8   determination of the action, and this is absolutely

9   inconsequential to the issue.  Even if defendants' wild

10  theories were correct of inequitable conduct, it doesn't

11  provide a defense here.

12         THE COURT:  Thank you.  I appreciate those arguments.

13  I think that they seem to rest on a considered foundation.

14         Let me ask a couple of brief questions about this.

15  First, in the letter, the lender says that with respect to the

16  discussions with Amtrak, lender was entitled to take

17  commercially reasonable steps.  To what extent is this

18  discovery pertinent to an assessment of whether or not the

19  conduct of the lender fell within that, I'll call it, bucket of

20  reasonableness?

21         I ask because your letter suggests that your clients'

22  discretion was not unfettered, and this might go to the

23  question of whether the work fell outside of those bounds.  And

24  then I'm going to turn back to the 617 question.  Go ahead.

25         MS. THOMPSON:  Sure, your Honor.  Well, under the

assignment of leases and rents, lender had the right that if it

was during an event of default, the lender could rent the

property, lease the property on commercially reasonable terms.

Right?  So that's just talking about what the lender could do

in terms of its right to talk to people.

And it really was in response to USSM's claim that

this was somehow evidence of fraud.  Right?  And the notion

that there's some fraudulent activity is just ridiculous, and

that's really what it went to.  It doesn't speak to the

relevant -- it doesn't speak directly to the relevancy of the

information sought.

Because, as I initially stated, even if these wild

theories of fraud or misconduct on the part of the lender had

any basis, it's not a defense here, and so seeking information

that is not sustainable as a defense just fails the relevancy

test.

THE COURT:  Good.  Thank you.

And just briefly on the issue of the UCC rights, the

parties seem to be very focused on these provisions of the

contract, including the one that I asked about earlier.

To the extent that your position is correct, that

there is a proper foreclosure, though, I'm curious whether and

to what extent the question might be framed as whether the

lender has taken the assets -- that is, the collateral -- free

and clear of any other potentially subordinate claims and, on

1    that, the UCC has something to say.  It talks -- and I don't

2    have it in front of me but I will in a moment -- I think about

3    requirements for a good-faith purchaser.

4         And the question that I have is whether the issues

5    that defense has framed as questions regarding, I'll call it,

6    equitable conduct, go to the issue of whether or not, under

7    9-617, they are a transferee -- "they" meaning lender -- is a

8    transferee that acted in good faith and, therefore, took the

9    collateral free of the other types of potential interests in

10   the assets.  This is not in your briefing, but if you have a

11   view, I welcome it.

12        MS. THOMPSON:  Given that it's not in our briefing, I

13   would suggest that if the Court would like full briefing on

14   that, we could certainly provide it, but I think that is the

15   issue -- that is directly the issue that was decided in

16   *Atlas v. Macquarie.*

17        THE COURT:  Let me just rephrase that.  I see.  Your

18   argument is that in *Atlas* -- let me step back.  Are you saying

19   that your request for declaratory relief is just that the

20   foreclosure happened but not that your client is a good-faith

21   transferee?

22        In other words, you're not asking for a determination

23   here regarding whether your acquisition, through the

24   foreclosure, has stripped other creditors, potential creditors

25   of their interest in the collateral?

1          MS. THOMPSON:  No.  That -- no.  And this is where

2     I'll back up and talk about what exactly *Atlas* said.  In that

3     case, the borrower claimed that the lender and the transferee

4     acted in bad faith, and as a result of their actions and bad

5     faith, they could not be -- the transferee could not be a

6     transferee in good faith, and it could not accede to all of the

7     rights in the collateral.

8          The court there said, no, that's not the case because

9     the foreclosure sale itself had been concluded.  It was a

10    non-judicial foreclosure sale, and it had been concluded.  As a

11    result, any challenges to that foreclosure sale was now just

12    for money damages.

13         And what we're saying here is the same logic and the

14    same reasoning and, quite frankly, very --

15         THE COURT:  Can I just pause you?  I apologize.  I

16    understand that that case is about the issue of whether or not

17    equitable remedies are available to unwind a foreclosure sale,

18    or if the Article 9 sale was done improperly.  And your

19    argument, as I understand it, is that the answer is no and that

20    the 625 limits the scope of the relief to damages, and I

21    understand that argument.

22         The question I have is whether or not 617 asks a

23    slightly separate question, which is, assuming that the

24    transaction happened properly, that is the foreclosure happened

25    properly, what is the nature of the scope of the rights of the

1    taker of the assets to those assets, free of other liens?

2              MS. THOMPSON:  I believe the scope is free and clear

3    of other liens, but this is actually an issue I would like the

4    opportunity, if it's of interest to the Court, to do

5    supplemental briefing on.

6              THE COURT:  Thank you.  I would appreciate that, and I

7    appreciate your thoughtfulness with respect to both of these

8    issues.

9              Good.  Let me turn to counsel for defendant.  Counsel,

10   what's your view?

11             MR. ROSS:  Your Honor, I just want to go to some first

12   principles, if you'll indulge me for a second.  We have

13   affirmative defenses that have been pled, and no motion to

14   strike them has been made.  And they go -- the issue as to

15   whether or not they ultimately would carry the day is something

16   that remains to be seen, depending upon the proof adduced and

17   so on.

18             So we are entitled to take discovery with respect to

19   those affirmative defenses, which include the inequitable

20   conduct of the lender and its predecessor in interest with

21   respect to their handling of the loan; their interference, as

22   we've alleged, with our attempt to refinance and obtain funds

23   to pay off the loan; our effort to lease up the property and

24   obtain money to get current on the obligation.

25             And their conduct predated their acquisition of the

1  mortgage loan and postdated their acquisition of the mortgage

2  loan in January.

3         And we are seeking to discover the communications with

4  specific third parties that would allow us to test what they

5  did, what they knew, and when they knew it, what they did and

6  the extent of their conduct.

7         So your Honor has identified other bases on which the

8  discovery would be relevant with respect to the reasonableness

9  and good faith of the conduct that they engaged in; so it's

10 clearly relevant.  It's clearly discoverable.  Whether it's

11 admissible or not remains to be seen, but it's within the

12 scope.

13        It is not burdensome to find out all the

14 communications that this lender had with Amtrak.  After all,

15 they have not been on this debt for a very long time, and if

16 they have e-mails or phone calls or letters, it shouldn't be

17 very hard for them to find them or produce them.

18        The same is true with respect to the communications

19 that we sought regarding their alleged interference with our

20 equity opportunity in 2021, very specific players that they

21 would have dealt with, Wells Fargo and Black Rock, and the

22 others that we identified.  It's limited, it's specific, and

23 it's not burdensome.  It's also -- if there was impropriety

24 with respect to the interference, then it could undermine the

25 declaratory relief that they seek.

1          The discussion about 9-617, I just point out that we

2     are not seeking -- we have not come into this court seeking to

3     undo the foreclosure transaction.  They have sought a

4     declaration, an affirmative declaration from your Honor as to

5     what their rights are.  They have sought a preliminary

6     injunction from your Honor and, in essence, they're seeking a

7     permanent injunction from this court.  And those, in our view,

8     are in the nature of equitable relief, which we think also

9     supports our ability to take discovery with respect to our

10    equitable defenses.

11         So, your Honor, I'm not sure -- if you have specific

12    questions for me, I'm happy to answer them, but I'm trying to

13    explain why I think it's premature for your Honor to decide

14    whether or not these equitable defenses would or wouldn't carry

15    the day.

16         I think you started out by saying that it's a

17    difficult posture for you to determine those things and, in

18    essence, the plaintiff has made those issues ultimate issues in

19    the case by moving for summary judgment on them; although, not

20    moving to strike our affirmative defenses.

21         So I don't see how you could now decide the ultimate

22    issues that you're going to be asked by the plaintiff to decide

23    that these affirmative defenses ultimately could undermine the

24    relief they seek while, at the same time, plaintiff gets to

25    give us no discovery on any of those issues with six weeks or

1    eight weeks or ten weeks left in the discovery schedule that

2    you set and directed everyone to adhere to.

3            THE COURT:  Good.  Thank you, counsel.  I apologize

4    for the interruption, but I think I've heard enough.

5            Counsel for plaintiff, any brief rebuttal?

6            MS. THOMPSON:  The brief rebuttal is that whether or

7    not the affirmative defenses, as a matter of law, constitute

8    defenses are not questions that require facts.  This is not a

9    question of whether the lender did or did not do what plaintiff

10   is asserting.  But it's a question of even if everything they

11   said was true, and everything they hope to discover in

12   discovery turned out to be correct, whether that constitutes an

13   affirmative defense.  That's a question of law from the Court

14   and not one that requires any discovery, much less the

15   burdensome type of discovery that's being sought here.

16           The discovery, if you look at the -- if you actually

17   look at the discovery request, it's burdensome.  They ask for

18   three years' worth of communications with Amtrak,

19   communications with Black Rock, communications with all

20   tenants.  This is not narrow discovery.  This is not tailored

21   discovery.  This is not discovery that's aimed at any of the

22   issues in this case.  It's not even aimed at inequitable

23   conduct.

24           If there are other issues -- and this goes back to

25   what I said previously.  If there are other issues that the

1     Court needs more information on, we're happy to brief it in the

2     context of a motion to compel.  I know the Court said this is

3     difficult on a discovery motion, but right now there is no

4     discovery motion.  And we'd be happy to brief one because we

5     actually believe that these requests, on their face, are

6     overbroad, they're burdensome, they're not proportional to the

7     requests, and they seek information that's irrelevant under the

8     federal standard and that they're just not consequential to any

9     determination in this action.

10         THE COURT:  Good.  Thank you.  So let me just provide

11    some brief feedback.  I've foreshadowed earlier that this is a

12    difficult procedural posture for me to resolve this set of

13    issues.  It's not a 56(f) motion.  It's not a motion to strike.

14    One of my colleagues across the river in the Eastern District

15    recently wrote that "An opposition to a discovery motion is not

16    the proper form for raising challenges to the viability

17    of...claims, nor are such challenges proper grounds to preclude

18    otherwise appropriate discovery."  That's from the Eastern

19    District in the *North Shore Long Island Jewish Health Systems,*

20    *Inc. v. MultiPlan, Inc.* case at 325 F.R.D. 3648, from 2018.

21         The arguments presented by the parties in the letter

22    motion, as I said at the very outset of today conference, focus

23    very much on what I'll describe as relevant and, by

24    implication, what I'll describe as the importance of the

25    requested discovery to the case and, thus, the proportionality

1    of the request.

2              Fundamentally, plaintiff's position, while

3    understandable, is not one that I can endorse on this record.

4    A party cannot unilaterally determine that their adversary's

5    legal position is inapt and, therefore, refuse to provide

6    discovery of any type.

7              I cannot conclude on this record that the defenses

8    interposed by the defendants have no legal merit, which is not

9    to say that I cannot decide that as a matter of law; simply,

10   that I cannot decide that as a matter of law in this procedural

11   posture.  A five-page letter is not the equivalent of a 56

12   motion, a motion to strike, or the like.

13             I think that I'd like to leave that as a principal

14   piece of feedback, that I cannot and I do not believe that a

15   party can determine for me on this record or party

16   unilaterally, that the position asserted in an affirmative

17   defense has no merit and that, therefore, no discovery is

18   warranted.

19             So my conclusion is that I cannot determine, with

20   respect to any of these requests, that the basis for the

21   request is unsound such that the request is irrelevant or such

22   that the information sought is not important to the needs of

23   the case and, therefore, is of so little value that any

24   requested information is disproportionate to the needs of the

25   case.

1          So I think, as I indicated at the outset, that much of

2     this dispute focused on that, I'll call it, original question

3     of whether or not any of these requests had importance.

4     Plaintiff said that they don't, defendants say that they do,

5     and I say that I cannot conclude that they do not on this

6     record.

7          I'm concerned about the matter of practice of parties

8     refusing to provide any discovery based on their unilateral

9     assessment of the merit of the parties' defense, and I harken

10    back to my colleagues across the river's quote as support for

11    that.  It is the general principle that counsel for defendant

12    alluded to in the beginning of his response to my last

13    question.

14         So I'd like to propose two things.  One, I think that

15    there are ways in which these requests could be narrowed

16    through a thoughtful meet-and-confer process between the

17    parties, if you were to enter into that process with the idea

18    in mind that a "no" response based on the lack of relevance or

19    lack of importance determination by plaintiff unilaterally does

20    not suffice to block the plaintiff's entitlement or obligation,

21    I should say, to respond to these requests.

22         My hope is that you will take this feedback and engage

23    in a meet-and-confer process to narrow the scope of the

24    requests so as to reduce the burden associated with any of

25    them, to narrowly tailor them with the understanding that, on

1   this record, I cannot conclude that these requests are

2   irrelevant or disproportionate to the needs of the case because

3   they lack any importance.

4          If you are unable to do that, I will have to take up a

5   motion to compel, and I will do that promptly.  I ask you to

6   please keep in mind that in the context of a formal motion, the

7   loser pays.  Rule 37 is very clear on that.  I will, unless the

8   limited circumstances described in the rule pertain, follow the

9   rule and impose fees on the losing party.  That provision of

10  the rule exists with the expectation that the parties will work

11  together to try to resolve these disputes without the need for

12  judicial intervention.

13         My hope is that with this, I'll say, determination by

14  the Court that I am unable to conclude something on this

15  record, mainly I'm unable to conclude that these requests seek

16  irrelevant information or that the information is not of any

17  importance to the case, that the parties will be able to enter

18  into a thoughtful discussion regarding these requests and

19  whether or not they can be properly scoped.

20         Because discovery is moving apace, I think I'm going

21  to say that any motion to compel should be filed relatively

22  promptly, in the event that the parties are unable to reach a

23  decision regarding this.  I understand that it is plaintiff who

24  is not responding and, therefore, any motion to compel from

25  defendant would be due by the 12th.

1          I encourage you to please meet and confer to try to

2     resolve these disputes by narrowing the scope of these requests

3     and otherwise tailoring them to the needs of the case, in light

4     of what I'll describe as my inability to conclude that

5     plaintiff is right on this record.

6          Again, this is not a determination that plaintiff's

7     position will not ultimately be sustained or that the Court

8     cannot determine, as a matter of law, whether or not the

9     equitable defenses presented here are valid or whether or not

10    the language at issue here is unambiguous, but simply that I

11    can't do that in the context of a five-page, single-spaced

12    letter and that I think that that is an inapt format in which

13    to present such fundamental issues to the Court for resolution.

14         So with that, with apologies, I'm going to end the

15    conference.  I will issue an order with respect to the deadline

16    that I've just described, and I hope that it's helpful to the

17    parties moving forward.  If not, please write me.

18         With that, this proceeding is adjourned.

19         (Adjourned)

20

21

22

23

24

25