# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAOL REXMARK UNION STATION LLC and KOOKMIN BANK CO., LTD., in its capacity as trustee of KTB CRE DEBT FUND NO. 8, a Korean Investment Trust, by its agent in Korea DAOL FUND MANAGEMENT CO. and by its agent in United States REXMARK HOLDINGS LLC d/b/a REXMARK,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UNION STATION SOLE MEMBER, LLC,<br><br>　　　　　Defendant. | Case No. 1:22-cv-06649-GHW<br><br>**DEFENDANT'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS** |

Pursuant to Fed. R. Civ. P. 26 and 34, Defendant Union Station Sole Member, LLC ("Defendant") by and through its undersigned counsel, hereby issues *Defendant's First Set Of Requests For The Production Of Documents* (the "Requests") as follows:

Pursuant to Fed. R. Civ. P. 34(b)(2)(A), Plaintiffs Daol Rexmark Union Station LLC ("Daol") and Kookmin Bank Co., Ltd. ("Kookmin") are required to serve written responses within 30 days after service of these Requests. These Requests are continuing in nature and, pursuant to the Federal Rules of Civil Procedure, supplementary answers must be served if and when additional information, materials or documents are discovered or obtained.

## **DEFINITIONS**

1.　"AAC" means Ashkenazy Acquisition Corporation.

2.　"Amtrak" means the National Railroad Passenger Corporation d/b/a Amtrak.

3.　"Ashkenazy" means Ben Ashkenazy.

4.　"Blackrock" means Blackrock, Inc. as well as their current or former affiliates, joint ventures, parents, subsidiaries, agents, predecessor or successor entities, managers, partners,

directors, shareholders, employees, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all Persons acting or purporting to act on their behalf.

5. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise, either orally or in writing), including but not limited to correspondence, packages, conversations, meetings, discussions, telephone calls, telegrams, telexes, telecopies, seminars, conferences, messages, notes, e-mails and memoranda. The transmission of documents or things by mail, courier or electronic service or otherwise is included, without limitation, in the definition of "communication."

6. "Condemnation Action" means the action pending in the United States District Court for the District of Columbia captioned *National Railroad Passenger Administration (Amtrak) v. Sublease Interest Obtained Pursuant to an Assignment and Assumption of Leasehold Interest made as of January 25, 2007, et al.*, Case No. 1:22-cv-01043-APM.

7. "CW" means Cushman and Wakefield plc as well as their current or former affiliates, joint ventures, parents, subsidiaries, agents, predecessor or successor entities, managers, partners, directors, shareholders, employees, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all Persons acting or purporting to act on their behalf.

8. "Daol" means Daol Rexmark Union Station LLC, as well as its current or former affiliates, joint ventures, parents, subsidiaries, agents, predecessor or successor entities, managers, partners, directors, shareholders, employees, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all Persons acting or purporting to act on its behalf.

9. "Document" means the original and any non-identical copy or draft of any writing or recording of whatever nature, whether written, typed, printed, photocopied, filmed, videotaped or mechanically or electronically sorted or recorded, which is in Your possession, custody or control. Without limiting the foregoing, "Document" includes, but is not limited to, correspondence, memoranda, faxes, emails, reports, notes, minutes or records of telephone conversations, meetings, or conferences, diaries, logs, calendars, calendar notes, accounting records, financial statements, books of account, vouchers, invoices, bills, computer tapes, diskettes, electronically stored information or print-outs, writings, drawings, graphs, charts, photographs, phone-records, videotape recordings and data compilations from which information can be obtained or translated.

10. "Equity Investment" means the proposed investment by Aude Investment Company, LLC in or around December 2020 into an affiliate of USSM, USI, and AAC.

11. "Forbearance Agreements" means, together and separately, (i) the First Modification of Loan Agreement and Forbearance, dated July 8, 2020, between USI, Ashkenazy, Wilmington Trust, National Association, in its Capacity as Trustee for US 2018-USDC, Commercial Mortgage Pass-Through Certificates, Series 2018-USDC, and (ii) the First Modification of Mezzanine Loan and Forbearance, dated July 8, 2020, between USSM, Ashkenazy, and Kookmin.

12. "Foreclosure Sale" means the putative foreclosure sale for the equity of USI, which took place on June 14, 2022 at 11:00AM.

13. "Foreclosure" means the putative foreclosure marketing and sale process which occurred pursuant to a "Notice of Disposition of Collateral Via a Public Foreclosure Sale Under Article 9 of the Uniform Commercial Code and Reservation of Rights," dated May 13, 2022,

delivered to USSM and Kriss and Feuerstein LLP, and a "UCC Public Notice of Sale," along with the Foreclosure Sale itself.

14. "JLL" means Jones Lang LaSalle Americas, Inc.

15. "Kookmin" means Kookmin Bank Co., in its capacity as trustee of KTB CRE Debt Fund No. 8 as well as its current or former affiliates, joint ventures, parents, subsidiaries, agents, predecessor or successor entities, managers, partners, directors, shareholders, employees, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all Persons acting or purporting to act on its behalf.

16. "Loan Agreements" means, together and separately, the Mortgage Loan Agreement and the Mezz Loan Agreement.

17. "Loan Documents" means, collectively, the Mortgage Loan Agreement, the Mezz Loan Agreement, the Pledge Agreement, and all documents referenced in or incorporated into any of those documents.

18. "May 13 Letters" means the three letters sent by counsel to Kookmin and addressed to USSM, USI, Ashkenazy, and Kriss & Feuerstein LLP purporting to exercise certain rights under Sections 8(a), 9(a)(i), and 13, respectively, of the Pledge Agreement.

19. "Mezz Loan" means the loan, with an original principal balance of approximately $100 million, governed by the Mezz Loan Agreement.

20. "Mezz Loan Agreement" means the loan agreement, dated May 8, 2018, between USSM, as borrower, and Kookmin, as lender.

21. "Mortgage Loan" means the loan, with an original principal balance of approximately $330 million, governed by the Mortgage Loan Agreement.

22. "Mortgage Loan Agreement" means the loan agreement, dated May 8, 2018, between USI, as borrower, and Natixis Real Estate Capital LLC and Citi Real Estate Funding Inc., collectively, as lender.

23. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association, incorporated entity, partnership, or limited liability company.

24. "Pledge Agreement" means the Pledge and Security Agreement, dated May 8, 2018, between USSM and Kookmin, as lender.

25. "Rexmark" means Rexmark Holdings LLC, as well as its current or former affiliates, joint ventures, parents, subsidiaries, agents, predecessor or successor entities, managers, partners, directors, shareholders, employees, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all Persons acting or purporting to act on its behalf.

26. "SL Green" means SL Green Realty Corp. as well as their current or former affiliates, joint ventures, parents, subsidiaries, agents, predecessor or successor entities, managers, partners, directors, shareholders, employees, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all Persons acting or purporting to act on their behalf. "SL Green" specifically includes Green Loan Services LLC.

27. "Union Station" means Washington Union Station.

28. "USI" means Union Station Investco, LLC.

29. "USSM" means Union Station Sole Member, LLC.

30. "Wells Fargo" means Wells Fargo Bank, N.A. as well as their current or former affiliates, joint ventures, parents, subsidiaries, agents, predecessor or successor entities,

managers, partners, directors, shareholders, employees, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all Persons acting or purporting to act on their behalf. "Wells Fargo" specifically includes Wells Fargo Bank, N.A., in its capacity as the Special Servicer of US 2018-USDC, Commercial Mortgage Pass-Through Certificates, Series 2018-USDC.

31.     "You" and "Your" means Plaintiffs (Daol and Kookmin) as well as their current or former affiliates, joint ventures, parents, subsidiaries, agents, predecessor or successor entities, managers, partners, directors, shareholders, employees, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all Persons acting or purporting to act on their behalf. "You" also specifically includes Rexmark.

Capitalized terms used but not otherwise defined herein have the meaning given to them in the Loan Agreement.

## INSTRUCTIONS

1.      The Requests are continuing and to the extent Your responses may be enlarged, diminished, supplemented, or otherwise modified by Documents or information acquired subsequent to Your initial response to these Requests, You shall promptly supplement Your responses and production.

2.      In responding to the Requests, You shall produce all responsive Documents that are in Your possession, custody, or control, regardless of the location or manner in which the Documents are stored, electronically or otherwise, or in the possession, custody, or control of Your predecessors, successors, affiliates, agents, employees, attorneys, accountants, auditors, financial advisors, or other representatives. A Document shall be deemed within Your control if

You have the right to secure the Document or a copy of the Document from another Person having possession or custody of the Document.

3. In the event that any Document called for by the Requests has been lost or destroyed, that Document is to be identified as follows: title, date, author(s), recipient(s) (including addressees, cc's and bcc's), custodian(s), Person(s) intending to send or sending the Document, number of pages, attachments or appendices, and the subject matter, as well as the date, place, manner, reason and circumstances of the Document's destruction or loss, Person or Persons authorizing destruction, Person or Persons destroying the document, and the paragraph of the Requests to which the Document relates.

4. In the event that any Document called for by the Requests is no longer in Your possession, custody, or control, You shall state what disposition was made of the Document and the date of such disposition, and identify all Persons having knowledge of the Document's contents.

5. If it is otherwise impossible to produce any Document called for by the Requests, or if any part of the Requests is objected to, You shall state fully and with specificity the reasons for the impossibility of production or for the objection.

6. If any portion of any Document is responsive to any Request, then the entire Document must be produced. If any Document cannot be produced in full, produce the Document to the extent possible, specifying each reason for Your inability to produce the remainder, and stating whatever information, knowledge or belief You have concerning the portion not produced.

7. A Request calling for the production of any Document shall be deemed to include, in addition to the Document itself, a Request for any and all exhibits or attachments to the

Document and any enclosures sent or kept with the Document.  Any Document that is attached by staple, clip, or otherwise to a Document requested herein shall also be produced (attached in the same manner as the original) regardless of whether the production of that Document is otherwise requested herein.

8. The file or other container in which a Document is kept is deemed an integral part of the document and shall be produced with the Document.  Whenever a Document or group of Documents is maintained in the ordinary course of business in any file, folder, container, box or other storage or organization device, each Request herein shall be deemed to call for the production of copies of, or the identification of, such file, folder, container, box or other storage or organization device and any labels or other form of identification set forth thereon.

9. To the extent that You object to any of the Requests herein, whether in whole or in part, on the grounds that the Documents sought are privileged, work product, or subject to any other privilege or immunity, You shall prepare and produce a privilege log setting forth the grounds upon which such claimed privilege rests and the document be identified by specifying:

    (a) The type of document (for example, letter, memorandum, photographs, etc.);

    (b) The date the document was prepared;

    (c) The title of the document;

    (d) The person who prepared the document;

    (e) The person to whom the document was originally sent, if appropriate;

    (f) The present location of the document;

    (g) The present location of all copies of the document; and

    (h) The person or persons having possession, custody or control of the documents and any copies of it.

10. Documents requested herein shall be produced as they are kept in the usual course of business or organized and labeled to respond to the specific categories set forth in this

notice to produce and with information indicating their source (*e.g.*, the Person(s) from whom the documents were obtained).

11. Produced Documents shall be organized so that the files in which they were located can be ascertained, as well as their relative order in such files and how such files were maintained. Electronically stored information should be produced in the same electronic form as it exists in Your computers, original files or other storage media and the production should preserve the integrity of the underlying electronically stored information, *i.e.*, the original formatting, email header and family information, and the revision history. Metadata shall be included with all files, and shall be in the form described in Exhibit A hereto. Spreadsheet files, such as those created using the Microsoft Excel software application, and database files, such as those created using the Microsoft Access or QuickBooks software application, shall be produced in native format.

12. You shall respond to the Requests reasonably and not strain to interpret them in an artificially restrictive manner to avoid disclosure of relevant and non-privileged documents. You shall not produce documents in a manner designed to hide or obscure the existence of particular documents, or to accomplish any other improper purpose. You shall base Your discovery objections on a good faith belief in their merit and will not object solely for the purpose of withholding or delaying the disclosure of relevant information, or for any other improper purpose.

13. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, as necessary, to bring within the scope of the Requests all Documents that might otherwise be considered to be beyond their scope.

14. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all Documents that might otherwise be construed to be beyond its scope.

15. The use of the terms "all" shall be construed to mean "each," "any," and "all" as necessary to bring within the scope of the Request all Documents that might otherwise be construed outside of its scope.

16. The use of the singular form of any word includes the plural and vice versa, and the masculine includes the feminine and neutral genders and vice versa.

17. The use of the term "including" in the Requests, as well as in the Definitions and Instructions thereto, shall not be construed as a limiting phrase but, rather, shall be construed to mean "including, without limitation."

18. The terms "concerning" and "relating to" shall be read and applied as interchangeable and shall be construed in the broadest sense to mean discussing, supporting, describing, concerning, referring to, regarding, pertaining to, containing, analyzing, evaluating, studying, recording, memorializing, recording, reporting on, commenting on, reviewed or prepared in connection or conjunction with, evidencing, setting forth, contradicting, refuting, considering, recommending, or constituting, in whole or in part.

19. The use of capital letters, lower case letters or quotation marks in the Requests shall not be construed to limit the scope of any specific Request contained herein.

20. Unless otherwise specified below, these Requests seek information for the time period of January 1, 2020 through the present.

## REQUESTS FOR PRODUCTION

**Request No. 1:** Documents and Communications related to Union Station.

**Request No. 2:** Documents and Communications concerning the Foreclosure.

**Request No. 3:** Documents and Communications concerning AAC, USI, USSM, and Ashkenazy.

**Request No. 4:** Documents and Communications relating to the Condemnation Action.

**Request No. 5:** Documents and Communications concerning the drafting and negotiating of the Loan Documents.

**Request No. 6:** Documents and Communications reflecting management of Union Station, including the responsibilities of JLL, USI, USSM, AAC, and Kookmin.

**Request No. 7:** Documents sufficient to show Your corporate structure, including the ownership of Kookmin and Daol.

**Request No. 8:** Documents and Communications reflecting efforts to contract with JLL following the Foreclosure Sale.

**Request No. 9:** Documents concerning and Communications with CW related to Union Station.

**Request No. 10:** Documents concerning and Communications with Amtrak concerning Union Station.

**Request No. 11:** Documents and Communications relating to the payment of expenses for Union Station and reflecting Kookmin's payment thereof.

**Request No. 12:** Documents and Communications reflecting efforts to communicate with or meet with existing or prospective tenants at Union Station.

11

**Request No. 13:** Documents and Communications with real estate brokers regarding Union Station.

**Request No. 14:** Documents and Communications relating to any request to restructure the ownership of USI and USSM.

**Request No. 15:** Documents and Communications relating to forbearance of payments due under the Loan Agreements, including all Documents and Communications related to the Forbearance Agreements.

**Request No. 16:** Documents and Communications reflecting marketing efforts for the Foreclosure.

**Request No. 17:** Documents and Communications reflecting Daol's ownership of the equity of USI, including Documents and Communications reflecting any transfer of the ownership interest after the Foreclosure Sale.

**Request No. 18:** Documents and Communications concerning Your right to negotiate settlement agreements in the Condemnation Action.

**Request No. 19:** Documents and Communications relating to the Equity Investment.

**Request No. 20:** Communications with Blackrock relating to Union Station.

**Request No. 21:** Communications with SL Green relating to Union Station.

**Request No. 22:** Communications with Wells Fargo relating to Union Station.

**Request No. 23:** Documents and Communications reflecting any agreements between You and any other lender in relation to the Mortgage Loan or Mezz Loan, including any intercreditor agreement.

**Request No. 24:** Documents and Communications relating to Your purchase of the Mortgage Loan.

DATED this 27th day of September, 2022.    By:

                                              /s/ *David E. Ross*

                                          KASOWITZ BENSON TORRES LLP
                                          David E. Ross
                                          David J. Mark
                                          Daniel J. Koevary
                                          Andrew W. Breland
                                          1633 Broadway
                                          New York, New York 10019

                                          *Attorneys for Defendant*

**Exhibit A – Data Delivery Standards**

Electronically Stored Information ("ESI") must be produced in the form in which it is ordinarily maintained or in a form that is reasonably usable.

The use of file de-duplication methodologies in preparing productions is becoming more commonplace. If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production.

In the event produced files require the use of proprietary software not commonly found in the workplace, Defendant will explore other format options with the producing party.

**ESI Production Specifications**

1. ESI should be produced as Group IV, 300 DPI, single-page TIFF images. File names cannot contain spaces.

   Documents that cannot be converted to Tiff (video, audio, applications, etc.) should be produced in native format. Also, documents that can become unwieldy when converted to Tiff (spreadsheets, databases, source code, large diagrams, etc.) should be produced in native format. For documents produced natively, create a single page place holder sheet bearing the bates number, file name and file type of the document being produced.

   Defendant reserves the right to request native files for any produced document.

2. An Opticon load file (OPT) must be provided. The Opticon load file is a page level load file, with each line representing one image.

   Below is a sample:

   IMG00001,VOL01,D:\IMAGES\001\IMG00001.TIF,Y,,,3
   IMG00002,VOL01,D:\IMAGES\001\IMG00002.TIF,,,,
   IMG00003,VOL01,D:\IMAGES\001\IMG00003.TIF,,,,
   IMG00004,VOL01,D:\IMAGES\001\IMG00004.TIF,Y,,,2
   IMG00005,VOL01,D:\IMAGES\001\IMG00005.TIF,,,,

   The fields are, from left to right:
   - Field One – (IMG00001) – The page identifier
   - Field Two – (VOL01) – The volume identifier – not required
   - Field Three – (D:\IMAGES\001\IMG00001.TIF) – a path to the image to be loaded
   - Field Four – (Y) – Document marker – a "Y" indicates the start of a unique document.
   - Field Five – (blank) – Can be used to indicate box
   - Field Six – (blank) – Can be used to indicate folder

- Field Seven – (3) – often used to store page count but not required

3. Extracted text of a document must be delivered on a document level.  All text for a single document should be contained within one file.  The name of the file should be the first page of the document (BEGDOC.txt).  If there are non-searchable electronic documents and the text cannot be extracted, Defendant requires OCR text be provided for those documents.

4. A Concordance\Relativity load file must be delivered with the requested fields and metadata as shown in the table below.  If specific fields cannot be provided for a particular document, the field should be left blank.  In the case of email, the email image will be the parent, and attachment(s) will be the child/children; email images/parents and attachments/children must be bates numbered consecutively and sorted by email image/parent followed by attachment/child.

The delimiters for the file must be as follows (Concordance default):

Comma – ASCII character 20 (¶)
Quote – ASCII character 254 (þ)
Newline – ASCII character 174 (®)

| Field Name | Sample Data | Comment |
| --- | --- | --- |
| PRODBEG | ABC0000001 | First bates number of electronic document |
| PRODEND | ABC0000002 | Last bates number of electronic document |
| PRODBEGATT | ABC0000001 | First bates number of the first page in a parent/child email relationship |
| PRODENDATT | ABC0000010 | Last bates number of the last page in a parent/child email relationship |
| CUSTODIAN | John Doe | Owner of the email/document |
| FROM | John Doe | Sender of email |
| TO | Jane Doe Smith | Direct or Primary Recipient(s) of email (listed in To field |
| CC | Fred Murray | Secondary Recipient(s) of email (listed in CC field) |
| BCC | Jake Johnson | Blind Recipient(s) of email (listed in BCC field) |
| SUBJECT | This is a document | Subject line of email |
| DATE_SENT | 10/15/2007 | Date email was sent (MMDDYYYY) |
| TIME_SENT | 9:00 AM | Time email was sent |
| LINK | \NativeFiles\test.xls | Link to native file on the media received |

| Field Name | Sample Data | Comment |
|---|---|---|
| FILE_EXTEN | PST (email); DOC (Word) | File extension of the email, attachment, or loose e-file |
| FILE_NAME | Document.doc, jdoe.pst | The file name of the email attachment or loose e-file |
| AUTHOR | John Doe | The author of the email attachment or loose e-file |
| DATE_CREATED | 10/15/2007 | The create date of the email attachment or loose e-file (MMDDYYYY) |
| DATE_MODIFIED | 10/15/2007 | The modified date of the email attachment or loose e-file |
| DATE_ACCESSED | 10/17/2005 | The last accessed date of the email attachment or loose e-file |
| PRINTED_DATE | 10/15/2006 | The date the document was last printed |
| ORIGINALFILEPATH | Smith.pst\Personal Folders\Inbox | The path to the email in the mailbox or loose e-file |
| FILESIZE | 125 | Size of file in KB |
| MD5HASH | 7E8D6F38A8BB6FD50279B274E2E11406 | MD5 Hash value of the file |

5. Defendant requires that the delivery be sent either electronically or on a CD, DVD, or external USB hard drive, whichever results in the least number of items. Productions under 10 GB can be sent via FTP or other web based file transfer site.

**Hard Copy Collections**

1. Image files must be produced in Group IV, 300 DPI, single-page TIFF format. File names cannot contain spaces.

2. A database load file (delimited text) must be produced with, at a minimum, the PRODBEG, PRODEND, BEGATTACH, and ENDATTACH. The delimiters for the file must be as follows (Concordance default):

    Comma – ASCII character 20 (¶)
    Quote – ASCII character 254 (þ)
    Newline – ASCII character 174 (®)

3. OCR text must be delivered with all hard copy documents scanned into electronic form. All text for a single document should be contained within one file. The name of the file should be the first page of the document (PRODBEG.txt).

4. An Opticon load file (OPT) must be provided for hard copy productions.

16

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on September 27, 2022, via email on counsel of record for plaintiffs in the above-captioned action.

*/s/ Andrew W. Breland*
Andrew W. Breland
