N47BREXC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  DAOL REXMARK UNION STATION,
   LLC, *et al*,
4
                  Plaintiffs,
5
           v.                        22 Civ. 6649 (GHW)
6
   UNION STATION SOLE MEMBER,
7  LLC,

8                 Defendant.
                                     Conference
9  ------------------------------x
                                     New York, N.Y.
10                                   April 7, 2023
                                     3:00 p.m.
11
   Before:
12
                     HON. GREGORY H. WOODS,
13
                                       District Judge
14

15                        APPEARANCES

16 MORRISON COHEN, LLP
        Attorneys for Plaintiffs
17 BY:  RICHARD S. HONG
        AMBER R. WILL
18      MAHNOOR MISBAH

19 KASOWITZ, BENSON, TORRES, LLP
        Attorneys for Defendants Union Station Sole Member, LLC
20 BY:  DAVID E. ROSS
        ANDREW W. BRELAND
21

22

23

24

25

N47BREXC

1          THE COURT:  At the outset, I'd like to take the

2     appearance from the parties.  I'd like to begin with plaintiff.

3     What I'd like to do is ask the principal spokesperson for each

4     side of the case to identify him or herself and the members of

5     their team rather than have each lawyer introduce themselves

6     individually.

7          Let me start first with counsel for plaintiff.  Who's

8     on the line for plaintiffs.

9          MR. HONG:  Good afternoon, your Honor.  Richard Hong,

10    H-O-N-G for the plaintiffs.  With me are Amber Will, *WILL* and

11    Mahnoor, M-A-H-O-N-O-O-R, last name M-I-S-B-A-H.

12

13         THE COURT:  Thank you.  Good.  Thank you.  So let me

14    hear who's on the line for defendant.

15         MR. ROSS:  Good afternoon, your Honor.  David Ross

16    from Kasowitz Benson for Union Station Sole Member, and with me

17    is my colleague Andrew Breland.

18         THE COURT:  Let me start with a few brief comments

19    about the rules I'd like the parties to follow during today's

20    proceeding.  At the outset, please remember that this is a

21    public proceeding.  Any member of the public or press is

22    welcome to dial into this conference. I'm not presently

23    monitoring who has dialed in, so I ask you all just to keep the

24    possibility that third parties are auditing the call.

25         Second, please keep your phones on mute at all times

1  except when you're intentionally speaking to me or to the

2  representatives of a party as a participant in the conference.

3  Next, please state your name each time that you speak during

4  the conference.  I will not be doing that, but I ask that each

5  of the other participants please state their name each time

6  that they speak.  Fourth, please abide by instructions by our

7  court reporter that are designed to her help do her job.  And

8  finally I'm ordering that there be no recording or rebroadcast

9  of all or any portion of today's conference.

10         Counsel, with that out of the way, let's turn to the

11  substance of today's proceeding.  I scheduled this conference

12  in order to take up the issues raised in the letter submitted

13  to me at Dkt No. 90.  Let me hear from each of you about the

14  issues presented.  I should say I read the letter submitted by

15  the parties.  I have some questions about the nature of the

16  issues that are presented to me for resolution here.  We'll

17  also need to talk about the extent to which the parties wish to

18  submit briefing regarding these issues.  And I'm going to

19  expressly ask if that is indeed the request, it will change the

20  focus of today's conference if this should be considered by the

21  Court as really a premotion conference other than an

22  opportunity to engage in a conversation geared toward

23  resolution of the issues.

24         If that's the case, please feel free to let me know.

25  I'm happy to refocus the conversation to the extent that this

1   is an issue that the parties wish to present formal briefing

2   on.  I will surely give you the opportunity to do that, and

3   we'll focus much more heavily here on scheduling issues rather

4   than a deeper conversation about the nature of the disputed

5   issues, which we would take up in more depth after I've

6   reviewed the briefing.  So let me start, if I can, with counsel

7   for defendant.

8           Counsel, first off, how should I conceive of the

9   letter here?  Is the request here that I grant leave to you to

10  file a motion or more comprehensive briefing with respect to

11  these issues?  Again, I'm happy to do that, and I will focus on

12  asking some targeted questions here that will hopefully inform

13  the briefing, but we'll spend a little bit less time during the

14  course of the conversation here today perhaps debating the

15  substance of the questions presented.  So counsel for

16  defendants, let me ask that threshold question first and then

17  we'll turn to a discussion of the nature of the disputed

18  issues.  Counsel.

19          MR. ROSS:  Yes, David Ross once again for defendant.

20  It was not our intention to have to fully brief the discovery

21  issues that are presented by the letters that are now -- the

22  letter that is now before you unless your Honor feels after

23  hearing the parties that full briefing would be necessary.  We

24  were hoping that by the end of this conference your Honor would

25  issue a ruling, or at least guidance sufficient to resolve the

N47BREXC

1    parties' dispute so that we don't have to formally brief it and

2    either put the Court to the task of deciding the motion or the

3    parties to the task of delaying the case.  Part of the

4    frustration that we have on the defense side is that we have a

5    deadline coming up.  We need the documents to take the

6    depositions.  Let me think.  Let me see if I can just try to

7    summarize beyond what's in the letter for the Court what I

8    think is the nub of it.

9         Your Honor, we think that the issues that are

10   presented on this application or in this letter submission are

11   very straightforward and a kind of standard discovery 101 if

12   you will that parties engage in all the time.  What we had, is

13   we served document requests.  We got protests from the

14   plaintiff that they were excessive in number or scope.  Without

15   waiving any rights or agreeing to give up anything, we made a

16   good faith attempt repeatedly over numerous discussions to try

17   to limit the requests in number and scope, and to reach

18   agreement on ESI or electronic search terms that would assist

19   in trying to identify responsive documents.  At no point in

20   time did we waive the right to actually seek the paper

21   documents or the electronic documents that are called for by

22   the requests.

23        Your Honor may recall that there came a time that the

24   plaintiffs moved for summary judgment.  And in response to

25   that, we filed a Rule 56(d) statement that laid out the reasons

N47BREXC

1    why we could not fully respond, and the subject matters on

2    which we would seek discovery before being able to respond

3    fully and prepare the case for decision by summary judgment or

4    trial.  Your Honor agreed with us and denied the summary

5    judgment motion.  And in that decision your Honor said that the

6    topics that we were seeking discovery on could give rise to a

7    defense to the claims or otherwise undermine the claims of the

8    plaintiff.  And as a result, discovery should proceed.

9         So we have sought discovery.  And as a result of the

10   search protocols and the discussions we've had with plaintiffs'

11   counsel, they performed searches that came up with a total of

12   approximately 8,000 documents.  Now for the proportionality

13   issue, your Honor, remember that this case potentially involves

14   hundreds of millions of dollars as to what is at stake.  And

15   what we think plaintiffs are seeking a windfall through the

16   declaratory judgment that they're seeking.  And they think

17   they're simply seeking to enforce their rights whether it's a

18   windfall or not.  In any event, a large amount of money is

19   involved.  I don't think anybody disputes that.

20        Second, 8,000 documents is not extremely large, but

21   after applying the search terms and plaintiffs ended up

22   producing something like 400 documents to us.  The production

23   was not only paltry in number, but did not produce documents on

24   a number of topics or failed to produce documents that we had

25   from other sources, which we think would have been responsive

1    to the search terms that we asked be searched.  So we came back

2    to them and said, we have four additional requests, or we're

3    relying on four of the original -- some of the original

4    requests.  And we would like to see all responsive documents

5    that you have from those.  However, we're not going to put you

6    to the burden, as one would at the start of a case, of

7    searching every file cabinet or every electronic source.  We

8    said you can use the 8,000 hits that you got as the total pool

9    to search from to determine what documents you have about, for

10   example, communications on Union Station and Cushman and

11   Wakefield, very specifically defined names and terms.

12          And the other side has said, no.  We're not doing

13   that.  That's beyond what we originally agreed to do in the way

14   of search terms and a search protocol.  And, your Honor, right

15   before this phone call it occurred to us that it seems like

16   such an obvious proposition that what one agrees to from the

17   point of view of a search protocol is merely a tool to try to

18   identify documents that may be responsive.  But a party retains

19   its obligation to conduct a reasonable search for responsive

20   documents.  And I thought it was so obvious, it took about ten

21   seconds to find a decision in the Southern District of New York

22   in a case called *The Raine Group v. Reign Capital*, *LLC*, a

23   decision from Judge Katherine Parker, magistrate judge, from

24   2022.  And, your Honor, I can give you -- everyone the Westlaw

25   cite.  It's 2022 WL 538336 at *1 (S.D.N.Y. February 22, 2022).

N47BREXC

1          And in that short decision Judge Parker says on this

2     issue about ESI "In sum, an ESI protocol and search terms work

3     in tandem with the parties' obligations under the federal rules

4     and do not replace a parties' independent obligation to produce

5     electronic or paper documents that are reasonably accessible,

6     relevant, and responsive within the meaning of Rule 34."

7          Your Honor, on the four topics that we're seeking

8     documents, they go directly, as I said, to the issues from the

9     Rule 56(d) opposition.  That they relate to, for example, the

10    negotiation and drafting of the loan documents that are going

11    to be the subject of further briefing to you and potentially

12    trial.  They go to the affirmative defenses that we asserted

13    with respect to communications that were had with perspective

14    tenants at Union Station, which may have been tortiously

15    interfering with our clients rights or their ability to realize

16    income with respect to the loans in question.  Same thing with

17    the Cushman and Wakefield item where we believe that Cushman

18    and Wakefield was interposed by the plaintiffs to communicate

19    with tenants, and we'll find out what documents among the 8,000

20    that are responsive.

21         And likewise documents that relate to communications

22    with the equity lender and which relate too directly to our

23    defense, that there were improprieties in interfering with our

24    attempt to get equity infusion and be able to pay down the

25    mezzanine loan, among other things.  So in sum, we have

N47BREXC

1  requests for relevant documents that are measured in number,

2  that are reasonable in terms of the burden since we're agreeing

3  that the plaintiffs don't have to go back and reinvent the

4  wheel if you will and can use the 8,000 they have already -- I

5  omitted to say that the plaintiff have told us that they

6  already reviewed the entire group of 8,000.  So they had been

7  through them previously.

8              And, your Honor, we need the discovery in order to get

9  on with the depositions and finish this case so it can be

10  presented to you through future motions.  That's it for now,

11  your Honor.  I'll reserve sometime to come back and reply if

12  appropriate.

13              THE COURT:  Thank you.  Just briefly a couple of quick

14  questions for you before I turn to counsel for plaintiff.

15  First, the plaintiffs argue in their letter that these four new

16  topics are more expansive than the original written request.

17  So let me ask everybody to keep their phones on mute.  Somebody

18  just joined and they are not on mute.  Thank you.  So please

19  keep yourselves on mute at all times if you would.  Good.

20  Thank you very much.

21              So, first they argue that the scope of these requests

22  is broader than the original request.  They make a couple of

23  arguments based on that.  First is that it would require them

24  to rerun the searches.  I understand you would argue that

25  that's not true because you're agreeing to a limit this process

N47BREXC

1  to review of the 8,000 documents or so that were originally

2  pulled, so I'll put that aside.  The other principal difference

3  between the written request and these requests is the word

4  "concerning" which is of concern to them and potentially to the

5  Court because they're arguably broader in scope than the

6  underlying written request, and maybe more challenging, may

7  make it more challenging to identify responsive documents than

8  the request as previously formulated.

9      So can I ask you, counsel, to comment on whether the

10  request that we've talking about today are broader than those

11  that were contained in the original written request.  And in

12  particular, can you comment on the argument that the language

13  of these new request which talk about documents that concern

14  certain subjects or entities is substantially broader and more

15  difficult therefore for them to identify the universal

16  responsive documents.  Go ahead counsel for defendant.

17      MR. ROSS:  Yes, your Honor, David Ross.  Number one,

18  the previous -- the requests are not more expansive than the

19  original request that we served and that eventually led to

20  discussions in an effort to see if we could narrow them and

21  find common ground.  But if the question is were the original

22  requests -- are these broader than the original requests, the

23  answer is no.

24      As to your second question about the use of the word

25  "concerning." Certain of the requests said, Give us your

N47BREXC

1    communications with a certain party.  And in some of these we

2    are saying, concerning which.  In other words, might be a

3    discoverable document about a communication between plaintiff

4    and Cushman and Wakefield.  So to a certain extent, yes, your

5    Honor, I think some of them could be said to be broader in

6    terms of the use of the word "concerning." Though, frankly,

7    every case I've ever worked on involving Rule 34 requests

8    typically includes either the words "concerning" or "referring"

9    or "relating to."

10        And those I don't think have ever been determined to

11   be offensively overbroad in the ordinary context in which they

12   are used.  So in one case if I wrote to you, your Honor, that

13   would be a communication with you.  If I also had a document in

14   which I said to Mr. Breland my colleague yesterday, I wrote to

15   Judge Woods about the following matter -- and assuming it

16   wasn't privileged -- that would also be responsive as it's

17   certainly discoverable and could lead to discoverable

18   information.  It's also not overbroad in the sense of -- if the

19   issue is, what were the communications about between you and

20   me, Judge, in my hypothetical.  So I don't think there's

21   anything offensive, unusual or troubling about it, or that puts

22   anybody through an extraordinary burden that they don't have in

23   every other case.

24        THE COURT:  Good.  Thank you.  Let me turn back to

25   counsel for plaintiff.  Counsel, what's your view.

1      MR. HONG:  This is Richard Hong on behalf of the

2   plaintiffs.  I neglected to mention that for the plaintiff,

3   we're from Morrison Cohen. I'm relatively new to the firm, so I

4   think I should mention my firm.  My apologies.

5      Your Honor, we are here because the defendants are

6   making unreasonable discovery requests.  Let me first address

7   the two questions that you posed to Mr. Ross, and then I will

8   get into a little more detail if you would allow me to sort of

9   provide some context of why we are here and why the Court

10  should not allow this discovery.  To your questions about

11  whether the new request are broader, it is most definitely

12  broader.  And then is it more expansive, that's an affirmative

13  answer as well.  It is more expansive.  Despite whatever

14  Mr. Ross says, if you read the language of the new request and

15  compare it, as we have done in our letter, it is crystal clear

16  that they are asking for broader request.

17      Now, why is that important.  Well, it's important

18  because we're going to have to redo the document review, and

19  we're going to re-spend time, and the burden is unreasonable to

20  do that at this juncture.  And I'm going to go into the burden

21  issue because there is substantial burden issue.  But before I

22  do that, let me just briefly go over a couple of things that

23  Mr. Ross did not mention.

24      Number one, we are here because your Honor advise

25  us -- we're here in part because your Honor advised us on

N47BREXC

1  December 1 that the parties should confer about the overbroad

2  discovery request that the defense made.  And what we did was

3  taking your guidance, the parties met and they met and

4  conferred.  And from that process which is detailed in the

5  letter, we came up with 100 search terms to search.  We did

6  expansive searches per defendant's request.  They're not our

7  search terms.  We used their terms.  And from that we got 8,000

8  documents.

9       Now those 8,000 documents arose because quite frankly

10  some of the search terms were overbroad, so it picked up a lot

11  of documents that it really shouldn't have picked up.  But the

12  reality is, those were the defendants search terms, so we used

13  them.

14       And when we picked up 8,000, we now have to look for

15  whether or not it was actually responsive to the document

16  request that had been agreed upon.  And from there, we called a

17  smaller number, I think the number is close to 488 or 489

18  documents that we have pulled together and we sent them to the

19  defense.  Now clearly the defense is unhappy with those

20  collections so they want a second bite at this juncture to ask

21  for another production.

22       The problem is that we followed the defendant's

23  request.  We pulled the documents that were responsive, and we

24  withheld the privileged documents.  I don't know if any

25  additional effort will quite frankly be meaningful.  And in

N47BREXC

1    this case I would like to remind the Court that Mr. Ross

2    mentioned in prior conference that he was looking for limited

3    discovery.  And now it appears the broader terms that he's

4    using, he's asked for more discovery that will clearly come

5    against the discovery deadlines that we have and that it will

6    pose more burden to the plaintiffs.

7          Now, I want to talk a little bit more about what the

8    burdens are.  We sort of figured out how much time and effort

9    this will take for 8,000 documents.  I wasn't sure how long it

10   was going to take, your Honor.  So I asked around, and we did

11   some checking around and we did what we did in our prior

12   production.  It appears it would take about two weeks of

13   associates working on this, and it will cost in excess over

14   $100,000 to do further review.  This is not -- contrary to what

15   Mr. Ross said, this is not taking the 8,000 documents and then

16   they're just looking it over again.

17         No, we have to look at the new broader request and to

18   see if they're responsive to it or not.  In other words, the

19   associates who are familiar with this case, familiar with the

20   issues need to look at each document again *de novo*.  That is a

21   substantial burden under the circumstances of this case, and it

22   is not proportional to what is necessary.

23         Now we have tried, quite frankly, tried to work this

24   out contrary to the position that Mr. Ross is taking.  We have

25   been trying to work with them to see whether or not there is a

N47BREXC

1    possibility of doing something else.  Quite frankly, they have

2    taken the position that broader is better.  And they can't

3    agree to a broader is better when it's just not going to work.

4    When we look at this issue, we agreed.  One thing that I agree

5    with Mr. Ross, it is a fundamental discovery dispute, but we

6    see the world very differently.  We see the world very

7    differently because we made a lot of effort to make sure that

8    we found and produced responsive documents.  And on the other

9    hand, they come back and ask us to do more on things that would

10   likely not reveal much and would be a substantial burden on us.

11   Now I know that Mr. Ross mentioned about looking at

12   all kinds of loan documents and things of that nature, and I

13   understand about his affirmative defenses.  But I do want to

14   bring the Court back to what's really at issue from our

15   perspective which is the mezzanine loan agreements.  The

16   specific provision of 5.2.2 provision on it, and that's really

17   the operative issue that will ultimately be what will be

18   briefed by the parties.  So to us when the defendants are

19   asking for all this overbroad discovery, it just seems -- it

20   really feels like a fishing expedition than not.  So for all

21   those reasons, we respectfully request that the defendants be

22   denied of this additional unnecessary, unreasonable discovery.

23   THE COURT:  Counsel, let me ask briefly about your

24   estimates regarding the burden associated with these

25   incremental request.  First off, is that estimate based on

N47BREXC

1 counsel for defendants premise namely that any search need only

2 be conducted against the 8,000 odd documents that were

3 originally pulled or does that estimate assume that a new

4 search would need to be conducted?

5        MR. HONG: It's the former. We did not assume that we

6 will do additional searches. We took defendant's premise, and

7 I asked the associates how long it took, what time, what

8 effort, since the associates were working on this case are

9 familiar with this case, and it would be cost effected to have

10 the associates do it again. And we estimated that -- we take a

11 certain number of hours, even at a very quick pace, and

12 obviously their billing rates; and when we consider all these,

13 essentially two weeks of work, it's well over $100,000.

14        THE COURT: Thank you. Second related question goes

15 to what the scope of the review would be you, which I assume

16 would be connected in part to the scope of the prior review.

17 Does it make a difference in terms of the burden or how much of

18 the difference does it make in terms of the burden associated

19 with the requested incremental review if the new document

20 request are limited to the scope of those request that were

21 previously made; so if the request were limited to the original

22 request as opposed to what you argued to be their more

23 expansive supplemental request using the word "concerning."

24 Counsel for plaintiff, what's your thought?

25        MR. HONG: I'm not sure. I guess I'm not clear on

N47BREXC

1  exactly what the defense would want us to do if we are using

2  the old terms and old not the broader language on it. We have

3  as we mentioned approximately 8,000 documents that were pulled,

4  but I don't know exactly what they want us to do with those

5  things that have been already reviewed on that.  In either

6  event, your Honor, in all candor, I think that we're going to

7  have to review it again even with the limited scope.  Now it

8  may take a little less time perhaps, but it's still going to

9  take a substantial amount of effort.  I think there's -- I

10 understand this is a large case.  I understand that, but

11 there's got to be sensibly patience here particularly when the

12 defense agreed at the outset in December that it was going to

13 be limited discovery.

14      THE COURT:  Thank you.  Understood.  Another question

15 that goes to burden.  One of the supplemental areas of inquiry

16 that the defendants are the seeking is something that I'd call

17 analogous to their request five which is documents and

18 communications concerning the drafting and negotiation of the

19 loan document.  I understand your contention is that the only

20 loan documents that are at issue in this litigation are the

21 loan documents consisting of the mezzanine loan documents.

22 What's the incremental burden associated with this request were

23 it to be limited to -- I'm going to begin with by asking the

24 mezzanine loan documents.

25      MR. HONG:  One moment, your Honor.

N47BREXC

 1          THE COURT:  Thank you.

 2          (Pause)

 3          MR. HONG:  Based on what I'm advised, I think there's

 4   really not that much a difference because we only produced

 5   documents relating to the drafting history of Section 5.2.2.

 6   So the burden for us would be expanded if we were to look at

 7   the entire loan agreement.  I appreciate, your Honor, that you

 8   may be looking at potential ways of limiting the burden.  But

 9   given where we are, I'm not sure there's a way to limit the

10   burden on us.

11          THE COURT:  Thank you.  Understood.  I'll move on

12   taking that not as an invitation to decide this as an all or

13   nothing decision.  Let me turn to counsel for defendant on

14   this.  I understand there's a production with respect to the

15   loan documents according to counsel for plaintiff to date has

16   been limited to information regarding the negotiation of

17   Section 5.2.2. Of course my understanding is that any discovery

18   related to the negotiation of the documents would be germane to

19   this litigation only to the extent that the Court might

20   ultimately find some provision of the loan agreements to be

21   ambiguous, some portion that I have not had the opportunity to

22   consider.

23          First let me just check that premise.  And then

24   second, I'm going to ask, are there other provisions of the

25   loan documents, counsel, that you expect to argue are

N47BREXC

1   ambiguous.

2   MR. ROSS:  Your Honor, David Ross. I think -- let me

3   see if I can answer it this way, and let me know if you need

4   more.  First of all, the production related to Section 5.2.2

5   was something like three pages.  It was extremely limited,

6   although the lawyers that drafted the documents and delivered

7   1200 documents or something on that order to plaintiff, their

8   clients, which they said were responsive to the subpoena that

9   we served on them.  We have gotten just three pages or three

10  emails, something tiny, number one.

11  Number two, in addition to Section 5.2.2 of the loan

12  agreement, plaintiff themselves identified sections eight, nine

13  and thirteen of the pledge agreement in their pleading, in

14  their complaint, and Section 10.4 of the loan agreement in

15  their claims.  In addition to that, there are questions as to

16  what the source of the provisions were in the loan agreement

17  and who drafted them and whether they came from the mortgage

18  loan documents and were copied into the mezzanine loan

19  documents or not.  So the reason why we're seeking this

20  discovery -- and again, we're talking about this limited

21  universe of documents -- it is because the question about where

22  the provisions came from, and also because there are questions

23  of construction.  I mean, the plaintiffs have argued that your

24  Honor has to look at the entire document in order to determine

25  the context of the provisions, not just 5.2.2, but other parts

N47BREXC

1  of the document including the remedy sections.

2          So we think we're entitled to discovery on issues that

3  plaintiff has put in issue, number one.  With respect to -- I

4  have comments that I'd like to make briefly, your Honor, about

5  this burden amount and how much it will cost.  I want to first

6  answer your question directly, so I'm going to stop at this

7  point on that subject.

8          THE COURT:  Good.  Thank you very much.  Very good,

9  counsel.  I'll turn back to you and give you the opportunity to

10  respond to the other arguments that have been made.  Very good.

11  So let me turn back to you counsel for defendant before I turn

12  to my next question, if there is anything you'd like to say in

13  response to counsel for plaintiff, either arguments, let me

14  give you the opportunity to do that so we don't miss that

15  opportunity.  Go ahead.

16          MR. ROSS:  First of all, your Honor, on how much it's

17  going to cost.  Obviously that is something that's entirely

18  within their control within reason.  And they're telling you

19  that they're going to have to spend 250 or 400 hours of lawyer

20  time to review documents that they already reviewed to find the

21  ones on these limited subjects.  I'm a skeptic.  I must say.

22  I'm not saying Mr. Hong is misrepresenting anything, but I'm a

23  skeptic, and I think the Court should be skeptical about how

24  big a burden is being claimed.

25          Second, it's easy to deal with that burden.  You can

N47BREXC

1    shift it easily through my client by overproducing.  If you

2    don't want to do the work to get through the documents, take

3    out the privilege documents and give us the rest.  We'll look

4    through them and find the ones that are responsive.  It will

5    shift the burden on us.  It will be a document dump so to speak

6    as that phrase is used, but it's relatively modest in size, and

7    we'll speed through it so we can easily help them out if

8    they're going to find to be too burdensome to do what we think

9    the federal rules require them to do.

10          With respect to the effort that we made to limit the

11   document requests.  At the start, I think I already offered it,

12   your Honor.  A good faith effort to compromise but while

13   reserving rights is not a waiver of your right to take fuller

14   discovery.  And, for example, if someone said the documents

15   that you're seeking are in these 20 file cabinets, and that's a

16   big burden to have to look through them.  As a helpful counsel

17   saying, well, why don't you look through those five drawers and

18   see what you got.

19          And in this case when they look through the five draws

20   they found almost nothing that's responsive on certain topics.

21   And I didn't waive my right to seek the appropriate scope of

22   discovery to get what I need before I take depositions.  And

23   now I'm saying, you need to look at the other filing cabinets,

24   whether they're electronic or hard copy.  We also know that

25   they're very limited.

N47BREXC

1    I think it's reasonable.  It's over the plate.  They're

2    potentially responsive.  And even if it is a $100,000 burden in

3    a $200 million case, some might say that's extremely

4    proportionate.

5    THE COURT:  Thank you.  Let me just drill into one of

6    your comments because I'm not sure I know the facts here.  I

7    understand that there's some 8,000 documents that were

8    reviewed.  Counsel for defendant your comments suggest that you

9    may believe that plaintiff have only produced documents that

10   are documents that were only produced as a result of the ESI

11   protocol.  In other words, they may have not looked for paper

12   documents.  Is that a concern here?

13   MR. ROSS:  No, your Honor.  That has not been the

14   basis for the request that we're talking about.  The files may

15   well have been electronic and online, so personally I don't

16   know.  Mr. Breland my colleague who's also on may know through

17   his discussions with plaintiffs' counsel what was encompassed

18   by their electronic searches.  But our concern has not been, as

19   I understand it, that they didn't look at paper documents, so I

20   don't think that's at play.

21   THE COURT:  Thank you.  So counsel with respect to the

22   first request, this is for counsel for defendant, which is

23   request five related to the loan documents.  You've described

24   some of the kinds of things that you're looking for through the

25   document production.  Can I ask, are you anticipating taking a

N47BREXC

1    deposition from people involved in the negotiation of the

2    contracts?  I ask in part to determine whether or not that

3    maybe a more efficient way of finding some of the information

4    related to the process of crafting these documents, as well as

5    the documents themselves as we evaluate the burden associated

6    with the request for paper documents.  Counsel for defendant,

7    what's your expectation here.

8            MR. ROSS:  David Ross, your Honor.  The answer is, I

9    was not expecting to have to do so, and hoping not to have to

10   do so.  The way that K&L Gates dealt with our subpoena was not

11   entirely satisfactory from our perspective, but we had not

12   brought it before your Honor.  They delivered responsive

13   documents or potentially responsive documents to plaintiffs'

14   counsel rather than producing them to us as a non-party in

15   possession of relevant information.  So my understanding is

16   that they sent 1200 or so documents that they thought were

17   responsive to the plaintiffs' counsel.  And as I said, we got

18   less than 10 pieces of paper in total after 1200 documents were

19   sent by counsel.

20           THE COURT:  Thank you.  Let me come back to counsel

21   for plaintiff.  Counsel, can I hear your response to

22   defendant's offer to accept a document dump.  I assume, but

23   correct me if I'm wrong, that in reviewing the 8,000 documents

24   the first time around, your team coded those of the 8,000

25   documents that you thought were privileged. If that assumption

N47BREXC

1   is incorrect, let me know cause that's my assumption.  I

2   understand that the burden associated with doing what Mr. Ross

3   just offered would not be substantial.  How do you respond?

4            MR. HONG:  My understanding is that with respect to

5   the coding would not have coded not responsive documents.  I

6   think my understanding is that we coded the privilege documents

7   and not the responsive documents.  If I am wrong about that,

8   since I did not do the review, my colleague Amber Will can tell

9   me otherwise who is also on the line.  But my understanding is

10  that would not have coded not responsive as privileged.  I do

11  want to address the burden issue which I think is critical

12  here, your Honor.

13           THE COURT:  I'm sorry.  Can we just pause and get an

14  answer to that question if somebody on the line knows it.

15           MS. WILL:  Yes, your Honor.  This is Amber Will for

16  plaintiff.  And in the review I can confirm that documents were

17  marked for responsiveness first.  And if they were marked

18  responsive to the limited request that were agreed upon by the

19  parties, then the documents would then be marked for

20  privileged.  So if the document was marked not responsive in

21  the first instance, the privilege review would not have been

22  done.  So it would require us to review all of the documents

23  that were originally marked non-responsive for a privilege

24  review the second time.

25           THE COURT:  Good.  Thank you.  That's helpful.  Thank

1   you very much.  I'm sorry, Mr. Hong, please go ahead.

2           MR. HONG:  Mr. Hong again.  I think one of the

3   critical issues is the burden, and this is whether it's a

4   reasonable burden or not.  And since Mr. Ross uses the baseball

5   analogies, I would say that it's not right over the plate.

6   It's a wild pitch.  And the reason why it's a wild pitch is

7   that -- first of all, my estimate is not something that I

8   pulled out of somewhere unknown.  It's based on what we did in

9   the original review, how much time it required associates to do

10  the work at the average billing rate they are doing it. And

11  quite frankly, I did not estimate 200 hours to 400 hours.  We

12  estimated a little lower than that quite frankly, but we still

13  came up with well over $100,000 in our billing rate on that.

14          Whether it is $100 million, $200 million or a billion

15  dollars, it's still $100,000, your Honor. It's still 100,000

16  plus.  It's a substantial sum of money.  So if you were to

17  compare millions versus thousands, well, perhaps Mr. Ross can

18  view it that way, but our clients do not necessarily view it

19  that way.

20          The second point that I wanted to make is about this

21  document dump that your Honor mentioned.  We looked at these

22  documents very carefully for responsiveness, and some of them

23  are obviously not responsive, that's why we didn't produce it.

24  Some of them are confidential documents.  So it's not that easy

25  for us to say, Oh, we just turn over whatever the non-privilege

1  documents out of this collection on doing that.  It takes

2  further review and further work, which is all arising to the

3  burden that we've been talking about.  Given what their scope

4  is and given what the scope was, quite frankly, it is going to

5  cause a great deal of work at this point to do this, to

6  essentially redo this.  What the central premise of this whole

7  request as we mentioned in our letter is that the defendants

8  spend a lot of time with us.  We work together in trying to

9  come up with more limited but appropriate search terms.

10          We diligently and in good faith ran these searches and

11  did not come up with that many documents.  Mr. Ross thinks that

12  they're documents in document folders somewhere and files that

13  we did not look at or we somehow did something surreptitious

14  about it.  We didn't do that.  That's what our hits were, and

15  they basically want us to do redo it.  Because they're -- for

16  lack of a better word I think, the way I read it is they're

17  suspicious.  There's nothing to be suspicious about. We did our

18  job, and those are the hits we had and those are the documents

19  we produced.

20          I also want to briefly address about the K&L Gates

21  documents. It is true that we produced relatively few

22  documents, but it is because they were related to the mezzanine

23  loans.  Again, the responsiveness to the issues at hand is what

24  guided us to look at these documents.  We weren't trying to

25  withhold something, again, in an unfair manner.  So I guess

1  what I wanted to just bear in mind is that we have produced in

2  good faith all the documents.  We did not anticipate --

3  regardless of whatever Mr. Ross and others say about reserving

4  rights, we did not anticipate coming in April when the

5  documents were produced in January, we did not anticipate

6  coming three months later, basically a month and a half before

7  close of discovery to say -- to tell us, the plaintiff, to redo

8  document discovery and cause this substantial burden on us.

9  And that's the unreasonable part of this. That's the wild pitch

10  part of this whole request, your Honor.

11          THE COURT:  Mr. Ross, can I ask you to respond to

12  that, understanding that during your conversation with counsel

13  for plaintiffs you reserved, did not waive rights I've heard

14  you say.  Still, you just heard counsel for plaintiff argue in

15  essence that a decision was made about what the scope of

16  discovery should be here and that there's not good

17  justification to permit its expansion at this late stage.  How

18  do you respond to that.  And most significantly other than just

19  the number; in other words, the scant number of documents that

20  were produced as a result of this approach, what's the reason

21  why the broader scope of discovery requested here is now

22  warranted?

23          MR. ROSS:  David Ross.  Let me say three things.  One,

24  as to the timing of our making the application to your Honor.

25  This falls into the famous, No good deed goes unpunished

N47BREXC

1    category in the sense that we have been trying to resolve these

2    complaints that we have had with the inadequacy of the

3    production for months.  And perhaps it's our failing for having

4    tried to work on it to a point that we thought your Honor would

5    find it after looking at, for example, some of the attachments

6    to the document 90 that we filed.  You can see how many back

7    and forth efforts we made to try to reach agreement with

8    plaintiffs' counsel to capture the documents on the subjects

9    that we're trying to get.

10        So perhaps a failing on our part for trying too hard

11   to reach agreement before coming to you, but that's the reason

12   why we are here now.  Point two, it's not that late.  Nothing

13   is imminent and it's not a problem.  If it's going to take them

14   two weeks, so it takes them two weeks.  In the scheme of this

15   case and in the scheme of the issues in this whole context,

16   that's nothing of great importance and there's no prejudice to

17   anybody.

18        Number three, there should have been responsive

19   documents on some of these topics.  And we have from other

20   sources which we pointed out to them responsive documents that

21   they did not produce.  Their failure to produce documents that

22   should have been searched for and obtained to us demonstrated

23   that they were not properly performing the searches that needed

24   to be performed. I'm not saying that anybody intentionally hid

25   anything or falsified anything.  But in a case with the issues

N47BREXC

1    of importance here, we want to make sure that we have the

2    communications that Cushman and Wakefield had with tenants.  I

3    don't think that that is so burdensome or difficult to find.

4    Same thing with --

5              THE COURT:  I'm sorry.  Can I pause you?  Will you be

6    able to keep the thread if I interrupt you?

7              MR. ROSS:  Yes.

8              THE COURT:  Good.  Just briefly, can you give me some

9    examples of the kind of things that you received from third

10   parties that you believe plaintiffs should have and that would

11   have been responsive that were not produced to you?

12             MR. ROSS:  I'm going to ask Mr. Breland if he can

13   supply that, your Honor.

14             MR. BRELAND:  This is Andrew Breland speaking for the

15   defendant.  Your Honor, before we even began discovery in this

16   case, we were aware of efforts by the plaintiffs through

17   Rexmark Holdings to intervene in negotiations with prospective

18   or existing tenants at Union Station.  We heard that from our

19   client, and our client heard that, from among other people, the

20   principal for the plaintiff.  We're also aware of documentary

21   evidence, including email between plaintiff and our client

22   where the plaintiff attest that they are taking over

23   negotiations with tenants.

24             And finally we're aware of at least one marketing

25   document put together by Cushman & Wakefield for lease of

N47BREXC

1    office space at Union Station.  None of those documents were

2    produced in plaintiff's January production, but they're

3    relevant and responsive to the request that we made.

4          THE COURT:  Thank you. Did you share that information

5    with counsel for plaintiff to determine whether those came up

6    in the original group of 8,000 or so documents?

7          MR. BRELAND:  Yes, your Honor.  This is Andrew Breland

8    for the defendant.  We specifically showed them the email or

9    one email between our client and plaintiffs principal that is

10   the relevant to the tenant interference issue.  And the

11   response that we got -- and I'm not sure if it's reflected in

12   the attachment or if it's in one of the letters down the email

13   chain that was attachment D to our joint letter -- was that the

14   document wasn't responsive to the initially agreed upon

15   narrowed requests.  We went back and forth on that issue, and

16   ultimately that's what gets us here is that they had a narrower

17   interpretation of our request than we did apparently.

18         THE COURT:  Thank you.  That's very helpful.  I

19   apologize for the interruption, Mr. Ross, if you'd like to pick

20   up where you were.

21         MR. ROSS:  Your Honor, we're close to an hour.  I

22   think you understand our points.  I think given the importance,

23   the size of the case, the significance of this discovery, to

24   our affirmative defenses and to plaintiffs' fundamental

25   arguments about what the contract says and means, these

N47BREXC

1 additional requests or the original requests and having them

2 responded to is appropriate, is reasonable, is proportional,

3 and we respectfully request that your Honor order them.

4        THE COURT:  Very good.  Understood.  Counsel, what I'm

5 going to do is this.  I unfortunately have some things that I

6 need to do.  Go ahead, Mr. Hong.

7        MR. HONG:  Your Honor, this is Mr. Hong.  I would be

8 remiss if I didn't have Amber Will address the point that

9 Mr. Breland said for a minute or so if you may just indulge so

10 you have both sides of the story so to speak.

11        THE COURT:  Yes, thank you. I'm happy to hear from

12 her.

13        MS. WILL:  Thank you, your Honor.  This is Amber Will

14 for plaintiff, and I'll keep it brief.  I just want to note

15 that we did get an email from USSM regarding an email that they

16 believe should have been in the production.  We identified by

17 email back to them that the email actually is not responsive

18 under the narrow document request that the parties had agreed

19 to back in December.  I agree with Mr. Breland that this is

20 properly why they expanded their request to have that

21 "concerning" language rather than it be "with" language that

22 they started with and the parties had agreed to back in

23 December.  But the document that they produced to us as

24 evidence that we did not engage thoroughly in our discovery

25 obligations was not actually responsive under the request that

N47BREXC

1   the parties had agreed upon.

2           THE COURT:  Thank you.  And counsel for defendant, let

3   me hear from you about that.  I appreciate this may be the

4   genesis of the concerning formulation here.  Can I hear your

5   response to that argument by counsel is -- in other words, were

6   plaintiffs in your view improperly construing in too narrow a

7   fashion your initial request; or were they construing your

8   initial request properly understanding that as formulated they

9   were more narrow than the requests that are being presented to

10  the Court now.  It's pertinent to me as I'm thinking about what

11  the scope, if any, additional discovery I should permit here.

12  Counsel, can you just respond.

13          MR. ROSS:  Go ahead, Andrew.

14          MR. BRELAND:  Yes, your Honor.  This is Andrew Breland

15  for defendant.  The initial request that we've served back in

16  September of last year was documents and communications

17  reflecting efforts to communicate with prospective or existing

18  tenants.  The email that we're talking about is absolutely

19  responsive to that initial request.  As to the negotiated

20  initial request where we, as Mr. Ross said, reserved all

21  rights, we limited it to communications "with" tenants.

22          Now if the there had been any responsive documents in

23  the production to that issue which we raised both with the

24  Court and plaintiffs' counsel several times, we may not have

25  had an issue with it.  The problem is, there were no responsive

1   documents.  So we engaged in the meet and confer process and

2   then tried to come up with a discovery request that would meet

3   the needs of the case while being narrower than the original

4   request that we served in September, and plaintiffs have not

5   sort of been willing to do anything beyond the initial request

6   that we got in December, but that were just that initial

7   narrowed request.

8           THE COURT:  Thank you.  So coming back to the language

9   of the initial request.  We're talking about request 12.  Is it

10  defendant's position that the document that you flagged and

11  that we've been discussing is a document or communication

12  reflecting efforts to communicate with and meet with existing

13  tenants at Union Station, such that would fall within the scope

14  of that initial request as drafted.

15          MR. BRELAND:  Andrew Breland for defendant, your

16  Honor.  Yes.

17          THE COURT:  Thank you.  Good.  Understood.  That's

18  helpful.  So again, I apologize, counsel. What I'm going to do

19  is this.  I'm going to schedule a brief conference, hopefully

20  brief conference on Monday.  I need to do something now and I

21  can't keep my court reporter here what I'll call after hours on

22  a Friday, especially Good Friday.  So I'm going to just take a

23  break now.  I will schedule a conference on Monday morning

24  where I'll tell you what I think about this dispute and thank

25  you all for your time here today.  I apologize that I can't

N47BREXC

1   take the time right now to deliver a decision, but I will get

2   you one early on Monday.  Thank you all very much, counsel.

3   Have a good holiday weekend.

4            (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25