```
 1                  N8LDDAOC
      UNITED STATES DISTRICT COURT
 2    SOUTHERN DISTRICT OF NEW YORK
      ------------------------------x
 3
      DAOL REXMARK UNION STATION,
 4    LLC., ET AL.,

 5                 Plaintiffs,

 6            v.                          22 CV 06649

 7    UNION STATION SOLE MEMBER,
      LLC,
 8
                 Defendant.
 9                                       Conference
      ------------------------------x
10                                       New York, N.Y.
                                         August 21, 2023
11                                       4:00 p.m.

12    Before:

13                      HON. GREGORY H. WOODS,

14                                       District Judge

15                           APPEARANCES

16    MORRISON, COHEN, LLP
           Attorneys for Plaintiffs
17    BY:  RICHARD HONG
           MAHNOOR MISBAH
18
      KASOWITZ, BENSON, TORRES, LLP
19         Attorneys for Defendant
      BY:  DAVID ROSS
20         DAVID MARK

21

22

23

24

25
```

1    (Case called; appearances noted)

2    THE COURT:  Very good.  Thank you.

3    So let me begin with just a few comments about the

4 rules I'd like the parties to follow during this conference.

5 The first thing that I'd like to do is just to remind you that

6 this is a public proceeding, and that as a result, any member

7 of the public or press is welcome on the call.

8    Second, please keep your lines on mute at all times,

9 except when you're intentionally speaking to me or to the

10 representative of another party.  Next, please keep your lines

11 on mute at all times, unless you're speaking to me -- I'm

12 sorry, and you should state your name each time you speak.

13    Please abide by instructions from our court reporter

14 that are designed to help the court reporter do her job.

15    Finally, I'm ordering that there be no recording or

16 rebroadcast of all or any portion of the conference today.

17    So with that out of the way, let's turn to the

18 substance of today's proceeding.  Counsel, I scheduled the

19 conference to discuss the discovery dispute that's laid out in

20 the letter submitted to me on the 11th.  Let me hear from each

21 of you.

22    I'll start with counsel for defendant.  I've read the

23 letter, but I'll hear first from you if I can.

24    MR. ROSS:  Thank you, your Honor.  David Ross from

25 Kasowitz, Benson, Torres.

1          Your Honor, we seek to depose Mr. Eum, because he is a

2    percipient witness who has personal knowledge about the matters

3    that are the subject of discovery in this case, both with

4    respect to plaintiffs' claims and with respect to defendant's

5    counterclaims.  Mr. Eum is an agent of one or more of the

6    plaintiff entities who brought suit in this case.  He is

7    apparently a resident in Korea.  He was copied or is the author

8    or recipient of 25 percent or one-quarter of the emails and

9    documents that were produced by the plaintiffs in this case.

10          We did not know of the significance of his role until

11   we read their documents.  It appears from the documents that he

12   is not only a primary representative of a party in this case,

13   but he also had participated directly in meetings with our

14   client regarding Union Station, participated personally in

15   communications with Amtrak in this case regarding Union

16   Station, participated directly in communications with S.L.

17   Green, a special servicer entity, with respect to the mortgage

18   involved in the Union Station in this case, participated

19   directly in communicating strategy with Mr. Rebibo and others

20   on their side of the ledger, made decisions with respect to the

21   course of the foreclosure and other proceedings in this case,

22   engaged directly in setting strategy based upon emails and

23   documents that we have of text messages that we have.

24          So, no. 1, he seems to be in all respects a classic

25   percipient knowledgeable witness.  That's no. 1.

1        No. 2, we have advised the other side, plaintiffs'

2   counsel, that we're prepared to examine him remotely, so he

3   does not have to travel from Korea tomorrow to here, although

4   he is welcome to do so if he is going to be here or wants to be

5   here.  But, in any event, so as to avoid any claim of burden,

6   we have said that we would take his deposition remotely.

7        No. 3, there's a claim that the so-called Apex issues

8   are raised by our attempting -- our seeking to depose this man

9   and, respectfully, we don't think that's correct at all.  As we

10  understand the Apex cases, they typically address a situation

11  where a senior executive is sought to be deposed where they did

12  not personally participate in the underlying facts of the

13  matter, but because of their position, a party, nevertheless,

14  seeks to take them.

15       In this particular case, as I've illustrated earlier,

16  Mr. Eum, who is directly involved in a large number of emails

17  and other communications, so the Apex rules we don't -- or Apex

18  case law we don't think apply at all.  Typically speaking, a

19  party that is seeking to resist a deposition has a very high

20  burden of demonstrating why it's inappropriate to depose a

21  witness, and that, for example, in the *Speadmark v. Federated*

22  *Department Stores* case at 176 F.R.D. 116, 118, a Southern

23  District of New York case from 1997, stands for the proposition

24  one should not bar a party -- well, that barring a party from

25  taking a deposition, "is an extraordinary form of relief," and

is only imposed if the moving party carries their heavy burden

of demonstrating, "that the proposed deponent has nothing to

contribute."

          In this particular case, this man clearly

participated, and has plenty to contribute, assuming his memory

is working.  So we think we have a right to take his

deposition.

          The other idea I think that's put forth rather weakly

in my humble opinion by the plaintiff is the idea that because

they have told us that we should depose Mr. Rebibo, a

representative of Rexmark, that everything and anything that

Mr. Eum would testify to is duplicative, unnecessary, and that

we're not entitled to it.  And the claim is that while he was

copied on the same emails as Mr. Rebibo, and he attended some

of the meetings, or his information is derivative of what

Mr. Rebibo knows, from my experience, Judge, it's important to

depose people who have personal knowledge who may have attended

the same meeting, or had conversations with the other decision

makers on a matter.

          This is a case where we are taking from the

plaintiffs' side only one other deposition, Mr. Rebibo, in his

personal capacity and as a 30(b)(6) witness.  So here we're

seeking to take another person, who was a decision maker and

personally participated directly in meetings with my client,

the defendant, with Amtrak, and has direct communications that

1   even Mr. Rebibo was not part of with, for example, SL Green.

2   So the idea that we would be precluded from deposing a second

3   person in a case involving $700 million or $500 million, is a

4   very large number, Judge.  A lot of money is at stake.  And

5   we've not burdened anybody in any respect with discovery in a

6   case of this size.

7           So for all those reasons, Judge, I think that the

8   application put forth before you to seek to block the

9   deposition is not well taken, and should be denied, your Honor.

10  Thank you.

11          THE COURT:  Thank you.

12          Counsel for plaintiffs.

13          MR. HONG:  Thank you, your Honor.

14          Thank you for giving us an opportunity to take

15  Mr. Eum's deposition.  Mr. Eum, as your Honor is aware, is a

16  high level manager of Daol AMC, Asset Management Company, based

17  in Seoul, South Korea.  He is not a key witness in this case.

18  He has no key knowledge of the facts and circumstances at issue

19  in this case.  That is the reason why none of the parties

20  identified Mr. Eum as an individual who would likely have

21  discoverable information in any of the Rule 26 initial

22  disclosures.

23          The fact that document productions show that he is

24  copied or sent letters or emails on things does not make him

25  suddenly a key witness in this matter.  Your Honor, this is a

fishing expedition from the plaintiffs' perspective.  Mr. Eum,
and we've spoken to him about this, does not have any unique
personal knowledge of the relevant events of it.  And there's a
reason why Mr. Eum does not.  Because all of the conduct and
events alleged in the complaint occurred in the United States.
And if you were to look at the complaint, you will not find
anything related to Mr. Eum.

By contrast, Mr. Michael Rebibo, the U.S. agent, who
was Mr. Eum's counterpart in the United States, is the focus of
the affirmative action -- affirmative defenses.  Virtually
everything relating to how Rex -- things went wrong is related
to what Mr. Rebibo allegedly did or did not do.  There's
nothing like that with Mr. Eum.  Mr. Eum sat in Korea.  He took
phone calls from Mr. Rebibo.  He read emails that were sent to
him, that Mr. Rebibo was also copied on, and they discussed
issues, as Mr. Eum was the Korean agent.  But the fact that
there was some discussions with Mr. Rebibo does not make him a
key witness in this case by any means.

Mr. Rebibo was the U.S. agent.  He made the decisions
in the United States.  The case is about what happened in the
United States, not what happened in Seoul, South Korea.  I am
not aware, we are not aware of a single document that just went
to Mr. Eum alone without being copied to Mr. Rebibo.  We are
not aware of anything that Mr. Eum said relating to the U.S.
conduct that would be relevant to that.

1          I want to also make sure that I address that there is

2     going -- that the purpose for this deposition seems to be one

3     of if you want to boil it down, to test Mr. Eum's knowledge of

4     events.  While his knowledge is derivative, his knowledge is

5     fear based.  He relied on Mr. Rebibo for what is going on, and

6     the discussion that Mr. Rebibo and Mr. Eum had was one where

7     Mr. Rebibo was accounting or reporting what had happened, and

8     making a recommendation of how they should proceed.  And

9     Mr. Eum agreeing to do so.  That's the extent of the decisions

10    that Mr. Rebibo was making.  He was completely relying on

11    Mr. Rebibo for -- Mr. Eum was completely relying on Mr. Rebibo

12    to do what Mr. Rebibo, the U.S. partner, was going to do.

13         And if one was to take Mr. Rebibo's deposition, that's

14    the testimony you would get.  No more than that.  The idea that

15    there would be anything relevant in this -- and the only other

16    comment that counsel makes is this is a big case, and only one

17    witness is being called on.  There are reasons for that.  The

18    first reason is Mr. Rebibo was in charge.  He was a central,

19    key witness.  He's giving two depositions in one.  He's giving

20    a 30(b)(6) deposition, which is binding on the plaintiff, and

21    he's a representative of that, because he knows all the

22    relevant information.

23         He's also provided a personal capacity deposition at

24    the same time.  So there are actually, technically speaking,

25    two depositions that the defendant is taking.  And the reason

1  why he is the one who's giving it is because, as I mentioned,

2  he is the person who is most knowledgeable with that

3  information.  The fact that this case is several hundred

4  million dollars, was 700 -- doesn't sort of span the discovery

5  rules to test the knowledge of a witness, and, essentially,

6  undergo a fishing expedition of some sort on this.

7          Your Honor, we recognize that precluding a deposition

8  is not an usual -- is an unusual event, but the circumstances

9  in this case, your Honor, clearly call for precluding this

10  deposition, because this deposition is going to be based on

11  essentially Mr. Eum said, I had a conversation with Mr. Rebibo,

12  and I said, okay, or he suggested this and I said yes, to the

13  extent that Mr. Eum remembers the relevant events that are --

14  when he's questioned on this.

15          So when you look at the balance of hardship versus

16  benefit, which is what this Court would have to look at, the

17  hardship is much greater for requiring someone who lives in

18  South Korea to participate, to prepare for a deposition that he

19  has really, quite frankly, marginal tangential knowledge.  And,

20  you know, while I can't speak to your Honor right now on this,

21  but if we were to have a trial tomorrow, he's likely not going

22  to be a witness for the plaintiff.  So that's at least my

23  personal view of it.  So, what -- you know, it is to us a

24  complete waste of time to engage in this deposition.

25          I wanted to address one other -- a couple of other

1 │ points that counsel mentioned.  The key issue that is remaining

2 │ in this case is the propriety of the foreclosure sale.  That

3 │ occurred in the United States.  Mr. Eum had nothing to do with

4 │ that.

5 │          The other issues that are remaining are affirmative

6 │ defenses relating to whether or not Mr. Rebibo somehow

7 │ interfered with the management of the Union Station, and all

8 │ things related to whether or not we, the plaintiff, somehow

9 │ acted in -- had committed some sort of inequitable misconduct.

10 │ That's all relating to Mr. Rebibo's management.  That had

11 │ nothing to do with Mr. Eum.

12 │          I want to strongly object to the defendant's position

13 │ that Mr. Eum has percipient knowledge of it.  His percipient

14 │ knowledge is a derivative knowledge on this, and, quite

15 │ frankly, he is going to have -- and if this deposition were to

16 │ go on for however long, the likely answer to many questions are

17 │ that he doesn't recall, and that he relied on Mr. Rebibo.  He

18 │ has really no unique, personal knowledge of the events in

19 │ question, your Honor.  So for all those reasons, while we

20 │ understand that this is a high burden on this -- in this case,

21 │ the defendant will get all the information they need for courts

22 │ -- for any kind of court proceeding or motion practice through

23 │ Mr. Rebibo.

24 │          Mr. Eum is not a key witness.  He does not have any

25 │ unique personal knowledge that's not cumulative of Mr. Rebibo.

1    For all those reasons, we believe that this deposition should

2    not go forward.

3            THE COURT:  Thank you.

4            Counsel, the defendant's lawyers offered to conduct

5    the deposition by video conference.  How does that affect you

6    regarding the burden associated with the deposition?

7            MR. HONG:  So it does lessen the burden obviously a

8    little, the travel part of it, but we still have to prepare,

9    Mr. Eum still has to engage in participation of events and so

10   forth on that.  I think that is going to lessen the burden a

11   little bit, but not substantially.

12           Your Honor, I think and I understand maybe some desire

13   to allow some testimony to occur on this, but I think this is a

14   case where really Mr. Eum is on the sidelines so to speak.  And

15   he's not a particular witness and -- you know, I think this is

16   one of those cases, whether it's done by Zoom or in person, it

17   continues to be a substantial burden.

18           THE COURT:  Thank you.

19           Counsel, in their description of the facts of the

20   case, counsel for defendants described Mr. Eum as having been

21   in meetings, communicated with Amtrak, having been a direct

22   participant in conferences with SL Green.  Do you take issue

23   with those aspects of the defendant's description of Mr. Eum's

24   participation in the events at issue here, separate and apart

25   from email correspondence and his communications with

1  Mr. Rebibo?

2          MR. HONG:  So, your Honor, Mr. Eum did participate in

3  some meetings, but so did about ten other people, and so did

4  Mr. Rebibo.  The fact that he was one of the participants --

5  he's a Korean agent.  He's a Korean representative.  So to some

6  extent, he wanted to see what the Union Station asset was going

7  to be about.  But the fact that he was merely present for the

8  event, for a meeting, doesn't mean that a person has any

9  knowledge or any deep knowledge or any unique knowledge of

10 these events.

11         He was there.  At the end of the day, whether he

12 attended a meeting or not, he went back to talk to Mr. Rebibo,

13 and Mr. Rebibo provided his advice and counsel.  And that's how

14 decisions were made.

15         THE COURT:  Thank you.

16         Counsel for defendants, any rebuttal?

17         MR. ROSS:  Yes, your Honor.  David Ross.  Briefly.

18         Number one, there is no requirement, in order to

19 depose a witness, that they have unique knowledge.  Unique was

20 the word that Mr. Hong used.  I disagree with him.  I don't

21 think that that is part of any standard.

22         Second, he said that the witness had to be key in

23 order for them to be deposed.  I also don't think there is any

24 requirement that they be a key witness.

25         Third, he suggested that Mr. Eum doesn't have any

1   relevant knowledge, because Mr. Rebibo knows the same

2   information.  I don't think that that goes to relevance at all.

3   He's merely saying he thinks it is similar knowledge, but

4   clearly there is no objection to our deposing Mr. Rebibo about

5   these very same topics.

6         So, obviously, the information is relevant.  It is

7   discoverable.  It is entirely normal to depose multiple

8   witnesses who attended important meetings or who participated

9   in setting strategy.  Looking at a document produced by the

10  other side, Bates stamped KTBOOO4685, and it is an e-mail, it

11  is a text message string between Mr. Rebibo and Mr. Eum in

12  which they are going back and forth discussing the strategy

13  regarding the foreclosure.

14        Obviously Mr. Eum participated in setting the strategy

15  from Korea.  The argument that has been made, that he was a

16  senior witness, and that he doesn't know anything, it seems to

17  me that since it's he who was directing the investment from

18  Korea, and he who was giving advice and strategy discussions

19  with Mr. Rebibo about what should be done, that -- the fact

20  that Mr. Rebibo may have carried out what he was directed to do

21  does not make the person who is the decision maker or the

22  director any less important as a witness.

23        So it seems to me -- I mean, to use perhaps a simple

24  analogy, am I only entitled to take the puppet but not the

25  puppeteer?  I think I'm entitled to take both, particularly

1    where it is not overly burdensome, and where all the evidence

2    indicates the participation of both.

3         So for those reasons, your Honor, again, I submit that

4    this is just an ordinary, run of the course deposition in a

5    case involving a large amount of money, and a relatively

6    controlled burden, which a plaintiff would have to put up with

7    if they want to seek rights with respect to hundreds of

8    millions of dollars.

9         Thank you.

10        MR. HONG:  Your Honor, may I be heard briefly?

11        THE COURT:  Yes.  Counsel, please go ahead.

12        MR. HONG:  So the text that Mr. Ross is talking about

13   is a conversation between Mr. Rebibo and Mr. Eum talking about

14   various events, and if you had the text in front of you, you

15   will see that after we discuss -- Mr. Rebibo makes the

16   recommendation, and Mr. Eum goes along with that, okay?  And

17   that is how the relationship was.  Mr. Rebibo would talk to his

18   Korean counterpart to do this, to do that.

19        Now, I think the reason why I spent a fair amount of

20   talking about the key -- whether the importance, the

21   significance, the meaningfulness of this deposition is because

22   the defendant has made Mr. Eum into a paramount -- a critical

23   witness, issue dispositive witness, and we're saying, no, he's

24   not -- he doesn't have such information.  They would be deeply

25   disappointed with the testimony there.  And if the purpose is

1    to get a thousand I don't recalls, I don't knows, and Mr. Eum

2    says, I relied on Mr. Rebibo, so be it.  That's the exercise

3    they want to go through.  And if that is an exercise they want

4    to go through, I would -- and if this Court were inclined to

5    provide some deposition -- this deposition, which we think is

6    unnecessary, we would ask that this deposition be, no. 1, set

7    after Mr. Rebibo's 30(b)(6) and personal deposition -- personal

8    or capacity deposition to determine whether or not it is

9    necessary at all.  And September 21 is the date that we have

10   been discussing for Mr. Rebibo's deposition.

11          No. 2, set a strict time limit of one hour only to

12   test the knowledge, because we believe that within an hour,

13   counsel will recognize that, in fact, Mr. Eum does not have any

14   unique, personal, non-cumulative knowledge.

15          And, no. 3, obviously we discussed then the setting of

16   the Zoom only, not requiring that.

17          And, no. 4, we respectfully ask that the defendant

18   provide to us five business days before the deposition the

19   topics to be addressed, so we can try to prepare Mr. Eum for

20   this deposition, although, quite frankly, we're not sure

21   whether or not we can do so given what we understand the scope

22   of the responsibility and the involvement of Mr. Eum is

23   regarding the relevant events that occurred in the United

24   States.

25          So those are the requests that we would make, if the

1    Court were inclined to provide any type of deposition for

2    Mr. Eum.

3              THE COURT:  Good.  Thank you very much, counsel.

4              Thank you both for your arguments.  They're strong,

5    and compelling.

6              Let me just say a few brief words.  First off, the

7    information sought from Mr. Eum I understand to indisputably be

8    relevant here, the testimony that's been described as seeking

9    information that's relevant under the broad scope permitted

10   under the Federal Rules, as counsel have noted.

11             The deposition of Mr. Rebibo is being taken without

12   objection as to overlapping subject matter.  So, again, I don't

13   understand the relevance of the testimony sought to be

14   contested.  So the testimony is relevant.

15             There are limitations on the scope of discovery that

16   can be taken under the rules.  Even with respect to relevant

17   information, the Court is required to take into account the

18   proportionality of the discovery, taking into account the

19   importance of the issues at stake, the amount in controversy,

20   and the parties' relevant access to the information, the

21   parties' resources, the importance of the discovery resolving

22   the issues, and whether the burden or the expense of the

23   proposed discovery outweighs the likely benefit of that

24   discovery.

25             Similarly, as the parties know, a party may seek a

1   protective order with respect to the discovery of information

2   under Rule 26(c), and the Court can, for good cause shown,

3   issue an order to protect a person or party from annoyance,

4   embarrassment, depression, or undue burden or expense by, among

5   other things, forbidding discovery.

6        I should also note that under certain circumstances,

7   the Court must limit the frequency or extent of discovery if it

8   determines that the discovery sought is unreasonably

9   cumulative, or duplicative, or can be obtained from some other

10   source that's more convenient, less burdensome, or less

11   expensive.  That requirement is embedded in Federal Rule of

12   Civil Procedure 26(d)(2)(C).

13        So having considered all of those factors, I'm not

14   going to prohibit the deposition of Mr. Eum.  To the extent the

15   application here is for the issuance of a protective order to

16   deny the opportunity to depose him, I do not find that

17   plaintiffs have made a sufficient showing of good cause in

18   order to justify the issuance of such an order.

19        I'll describe just briefly some of the considerations

20   that go into my determination regarding this issue.  I think

21   that, largely, the defendant's lawyer has properly framed the

22   issue here, not to the expense of counsel for plaintiffs'

23   arguments, which, again, have been compelling.

24        I note, at the outset, that there are a number of

25   factors that the Court should consider here.  I appreciate that

1    Mr. Eum is a relatively highly placed executive.  However,

2    highly placed executives are not immune from discovery.

3    However, depositions of high level corporate executives may be

4    duplicative in the -- or burdensome where the person sought to

5    be deposed has no personal knowledge of the event in dispute.

6    And courts recognize that where the deposition of a high

7    ranking corporate executive is sought, it might be served or

8    used as an instrument for harassment.  As a result, courts have

9    considered, as counsel for the plaintiffs identified, issues

10   such as the likelihood that the individual possesses relevant

11   information, or whether another source could provide identical

12   information.  Other courts have considered whether the witness

13   has some unique knowledge that's relevant to the action.  I

14   expect that that's the source of the argument, that Mr. Eum

15   does not have unique knowledge.  The case law supports that as

16   a factor for the Court to consider in evaluating whether a

17   deposition of a high level executive should take place.

18        It's clearly established that the mere fact that an

19   executive has a busy schedule or claims no unique knowledge of

20   relevant facts, however, is not sufficient to foreclose

21   otherwise proper discovery.  See, for example, *Hallmark*

22   *Licensing, LLC v. Dickens Inc.*, 2018 Westlaw 6573435, at *4.  I

23   think that this case fits into that category.

24        Here, counsel for defendants have proffered that

25   Mr. Eum does have knowledge of the -- personal knowledge of the

relevant facts.  They proffered that he was copied on, or the

offer of one quarter of the documents provided by the

plaintiffs -- that he was involved in meetings with the client,

that he had communicated with Amtrak, that he was a direct

participant in conference with SL Green, that he was in direct

discussions with Mr. Rebibo and others regarding the

foreclosure, and that he was involved in setting the strategy.

In sum, defendants assert that Mr. Eum was a

percipient witness, and that he provided advice regarding the

conduct of others involved in the case.  As a result, I

understand that he does have knowledge of the facts at issue in

the case as a percipient witness, and I believe that the

defendants are entitled to probe that knowledge.

I agree that a witness need not be a key witness in

order to be deposed, and here the plaintiff has not made a

sufficient showing that the deposition would be unduly

cumulative.  I do not believe that it will be unduly burdensome

either.  Here the defendants have offered to conduct the

deposition by remote means.  Counsel for plaintiffs correctly

concedes that that does ameliorate the burden associated with a

New York based deposition.

So, in sum, I think that the proffer by defendants

provides me with sufficient information to conclude that

Mr. Eum has some personal, percipient knowledge of the facts

involved in this case.  The fact that there may be overlapping

1    testimony by Mr. Rebibo does not mean that he need not testify

2    here.  I understand that there are only two depositions being

3    taken.  I do not believe that, in the context of this case,

4    that two depositions or three, counting one 30(b)(6) and/or one

5    personal for Mr. Rebibo are disproportional to the needs of

6    this large case, given the nature of the issues involved in the

7    case.

8           So I'm not going to preclude the defendants from

9    taking the deposition, understanding that the defendants and

10   the plaintiffs will agree that the deposition should be taken

11   by remote means.  Now, I do want to say just briefly that it

12   may be that the deposition will play out as counsel for

13   plaintiff has suggested.  Namely, it may be that Mr. Eum will

14   not have direct, personal recall of all of the incidents about

15   which he may be questioned, and that's fine.  I don't discredit

16   counsel's proffer, but I do believe that defendants are

17   entitled to probe that.

18          With respect to the four requests made by counsel, in

19   the event that I were not to grant or sustain the objection,

20   and to grant a protective order, the third -- I understand the

21   parties will agree that the deposition will be conducted by

22   Zoom.  I'll leave it to the parties to choose when best to

23   schedule this deposition.  I'm not going to take a position on

24   that issue now.  I can see real benefits potentially in

25   deferring the deposition of Mr. Eum until after Mr. Rebibo's

1    for the reasons that counsel has described, but I do not direct

2    that the parties schedule the depositions in any particular

3    order.  The rules state that there is no preferred order.  I

4    leave it to the parties to discuss that issue.  I'm confident

5    that counsel for defendants will take their own counsel if they

6    believe that the deposition is not yielding useful information,

7    and that they will use their client's time and their money

8    well.

9          So I'm not going to set a specific limit on the

10   duration of the deposition beyond that that's established in

11   the rules by default.  I'm not going to direct that the

12   defendants provide a list of topics for discussion.  This is an

13   individual deposition, as I understand it, not a 30(b)(6)

14   deposition.

15         Now, while I'm not going to direct that they do that,

16   I would strongly encourage the parties to talk about what the

17   anticipated scope of the deposition will be, if you would.  It

18   could be that that kind of conversation would allow Mr. Eum's

19   memory to be better refreshed, and, therefore, have a more

20   productive deposition.  But, then again, I'm not going to

21   direct the parties to come to any resolution with respect to

22   that.  I'll just encourage you to discuss the topics, so that

23   you can make the best use of your respective time.

24         I think that's all that I have.  Counsel, is there

25   anything else that we need to take up here, starting with

```
 1    counsel for plaintiff?

 2             Counsel?

 3             MR. HONG:  No, your Honor.  As I said, I think that --

 4    no, your Honor.

 5             THE COURT:  Thank you.

 6             Counsel for defendant?

 7             MR. ROSS:  No, your Honor.

 8             THE COURT:  Very well.  This proceeding is adjourned.

 9             (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```