November 17, 2023

**VIA ECF**
Hon. Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007-1312

      Re:    *Daol Rexmark Union Station LLC et al. v. Union Station Sole Member, LLC*,
              No. 1:22-cv-06649-GHW (S.D.N.Y.)

Dear Judge Woods:

      Pursuant to Rule 2(E)(ii) of Your Honor's Rules, counsel for both parties submit this joint letter regarding a discovery dispute in the above-captioned litigation.  As of October 25, 2023, the parties completed the originally noticed depositions.  After the depositions, each party demanded additional documents.  Plaintiffs requested that some of the objections made in Ben Ashkenazy's deposition be withdrawn and that Daniel Levy be produced as an additional deponent.  The parties met and conferred on Monday, November 6, 2023, with a follow-up call on November 9.  Thereafter both parties produced additional documents.  These productions have resolved some of the issues raised by Plaintiffs and each of the issues raised by Defendant.

    **I.**    **Plaintiffs Assert That Ashkenazy Should Answer Relevant Questions About Facts Supporting Defendant's Defenses**

      **Plaintiffs' Position.**  During his deposition, Ashkenazy refused to answer questions that targeted the facts supporting Defendant's position that the mezzanine foreclosure was invalid. Plaintiffs' counsel asked Ashkenazy plainly "Are there any facts that you can share with us that you believe underlie the legal theory as to why [the foreclosure] was invalid?" (Ashkenazy Dep. Tr. 52:4-9.)[1] Ashkenazy hid behind a feigned attorney-client privilege shield, stating that he could not even answer the question without divulging privileged communications. Plaintiffs repeatedly emphasized that the question was focused on facts, not legal communications, but Ashkenazy's answer remained the same. (*Id.* at 52:10-18.) When asked whether facts presented in an email and his declaration supported the notion that the foreclosure was invalid (*id.* at 61:2-10; 62:24-63:7), Ashkenazy again relied on privilege in his refusal to answer. It is well settled that the "attorney-client privilege extends only to communications and not facts." *Spectrum Sys. Int'l Corp. v. Chem. Bank*, 157 A.D.2d 444, 449 (1st Dep't 1990) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)), *aff'd as mod*, 78 N.Y.2d 371 (1991). The challenged questions were explicitly limited to the witness's understanding of the facts—not legal theories, legal communications, or other information arguably covered by privilege. Plaintiffs request that Ashkenazy be compelled to provide answers to questions regarding the facts supporting Defendant's defenses.

      **Defendant's Position.** Ashkenazy's invocation of privilege at his deposition—and refusal to waive the privilege—was proper and forcing Ashkenazy—who was deposed as a non-party

---

[1] Excerpts of the deposition transcript of Ben Ashkenazy, taken October 25, 2023, are attached hereto as **Exhibit A**. Pursuant to the Confidentiality Order, the "Confidential" deposition transcript is filed under seal with the Court.

Hon. Gregory H. Woods
November 17, 2023
Page 2

pursuant to a subpoena—to sit for a second deposition, after Plaintiffs already have taken the Rule 30(b)(6) deposition of Defendant, is not merited.  The law is clear that questions such as those Plaintiff asked seeking "mental impressions, conclusions, opinions, and legal theory," including what kinds of facts specifically underlie or support a legal conclusion, impermissibly seek privileged work product. *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 363 (S.D.N.Y. 2002); *see also Liveperson, Inc. v. 24/7 Customer, Inc.*, 2015 WL 4597546, at *7 (S.D.N.Y. July 30, 2015) (denying motion to compel deposition on topics including "facts supporting contention of patent infringement" and "facts supporting contention of interference with business relationships"). Depositions "are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means." *JPMorgan*, 209 F.R.D. at 362.  Plaintiffs were free to ask, and did ask, Ashkenazy about (a) facts and events and (b) the legal positions he or Defendant has taken.  But information about the arguments counsel will make, including what specific facts underlie specific legal arguments, is not proper deposition testimony, especially from a non-party witness.[2]

## II. Plaintiffs Assert that Ashkenazy Should Answer Relevant Questions About Alternative Available Liquidity and Financial Ability To Come Current

**Plaintiffs' Position.**  At Ashkenazy's deposition, Plaintiffs questioned whether the Mezz Guaranty required Ashkenazy to maintain unencumbered liquid assets of $20 million and a net worth of $500 million, along with Ashkenazy's net worth and value of unencumbered liquid assets. (Ashkenazy Dep. Tr. 118:9-119:11.) Defendant objected that these questions sought information related to the recourse action pending before this Court and directed Ashkenazy not to answer. However, these questions are directly relevant to Defendant's Third Affirmative Defense and statements made to Court alleging that Plaintiffs prevented Defendant from "coming current on the Mezzanine Loan." Def.'s Mem. of Law in Opp., ECF Doc. No. 65 at 14. Defendant is wholly owned by Ashkenazy Union Station Holdings LLC, which is in turn 95% owned by Ashkenazy. His ability to make payments towards the Mezzanine Loan or forbearance obligations is relevant to whether Plaintiffs prevented Defendant from coming current under the loan. Plaintiffs proposed that Ashkenazy provide written certified answers, but Defendant refused.

**Defendant's Position.**  This action is limited to Plaintiffs' claim for a declaratory judgment relating to a foreclosure and Defendant's affirmative defenses to that claim.  Among Defendant's defenses is that Plaintiffs' predecessor-in-interest prevented Defendant from closing on a transaction that would have provided funds sufficient to come current on the then-outstanding loans and to pay off the mezzanine loan.  Defendant is a legal entity separate and apart from Ashkenazy.  Ashkenazy's personal assets are not relevant to whether USSM had the ability to become current or to repay or refinance the loans at issue.  Thus, questions about Ashkenazy's personal net worth are not relevant here.

---

[2] During a break in the deposition, Plaintiffs' lead counsel told Ashkenazy that he was a "lying sack of shit." Mr. Scharf should be admonished to refrain from similar conduct in the future.

Hon. Gregory H. Woods
November 17, 2023
Page 3

Instead, these questions, could only be relevant, if at all, to the still pending action relating to the limited personal guaranty that Ashkenazy signed. Discovery in that action is stayed pursuant to an order of this Court, and Plaintiffs seek to violate the stay by seeking the information here. Such "artful, alternative discovery methods" should not be countenanced. *Lowe v. New Mexico ex rel. King*, 2011 WL 13284675, at *3 (D.N.M. Oct. 3, 2011) (holding that using an alternative discovery method to avoid a stay of discovery is improper (citing 7 James William Moore, et al., MOORE'S FEDERAL PRACTICE, § 34.02[5][e] (3d Ed. 2009)). Significantly, Plaintiffs never requested documents from Defendant or Ashkenazy concerning their financial status, further indicating these questions are a last-minute ploy to violate the discovery stay rather than a bona fide request for information relevant to this case.

### III. Plaintiffs Assert that Ashkenazy Should Answer Questions on Text Messages

**Plaintiffs' Position.** Ashkenazy was presented with two text messages produced in his personal production. As produced, the documents only contained the sender (Levy), not the recipient or metadata. Ashkenazy balked at the notion that he could be asked any questions of documents he had never seen and without evidence that he received the message. (Ashkenazy Dep. Tr. 266:19-275:18.) Given the lack of metadata and the fact that Defendant did not produce the text message in a conversation, Plaintiffs could not establish that Ashkenazy received the messages at the deposition. After the deposition, Plaintiffs asked for surrounding text messages and metadata. Defendant produced additional documents, showing the original text messages in conversation. Unsurprisingly, the text messages were not only received by Ashkenazy, but he also responded to the them. Because Ashkenazy refused to answer questions based on the false assumption that he never received these messages, Plaintiffs request additional time to depose Ashkenazy about what had been previously marked as Exhibits 21 and 22 at his deposition.

**Defendant's Position.** To be clear, and contrary to Plaintiffs' statements above, the production of text messages was made by Ashkenazy as a non-party and not by Defendant. Plaintiffs have not identified any actual deficiency with Ashkenazy's original production and do not purport to do so now. Instead, Plaintiffs seek to capitalize on Ashkenazy's agreement, after his deposition in response to a specific request, to reproduce messages in "conversation" format. That agreement, standing alone, is not a basis to recall Ashkenazy, and Plaintiffs cite no support for the position.

Moreover, Plaintiffs' complaint that when presented with the text messages at issue Ashkenazy had no recollection of them, could not explain what was meant by the messages, and that showing him the documents did not refresh his recollection is not a proper basis for seeking further examination on those documents. (*See, e.g.*, Ashkenazy Dep. Tr. 249:22-254:2; 268:5-269:12.) Plaintiffs provide no reason why Ashkenazy's recollection and testimony is likely to change if shown the newly produced versions.[3]

---

[3] Notably, Ashkenazy testified about other text messages that he produced where he had a basis for doing so. (*See, e.g.*, Ashkenazy Dep. Tr. 252:16-253:5; 254:5-266:18.)

Hon. Gregory H. Woods
November 17, 2023
Page 4

### IV. Plaintiffs Assert that Ashkenazy's Supplemental Document Production Shows Need for Independent Review and Production

**Plaintiffs' Position.** Plaintiffs sought documents and communications relating to Defendant's defenses, including the allegations that lender refused consent on the sovereign transaction, interfered with existing and prospective tenants, and engaged in purported culpable conduct concerning the mezzanine loan and Union Station. In his original production, Ashkenazy did not produce any recordings. At his deposition, Plaintiffs asked Ashkenazy whether he recorded conversations—he denied, but later admitted to recording only one conversation of Michael Rebibo. (Ashkenazy Dep. Tr. 287:2-288:14.) Plaintiffs asked for this recording, along with an independent review of Ashkenazy's devices to certify that no other recordings involving the senior or mezzanine lenders or Union Station exist. Defendant subsequently produced no less than six recordings that Ashkenazy took of Rebibo. Given this inconsistent testimony and supplemental production, it appears likely that additional recordings exist. Plaintiffs request that Ashkenazy's devices be subject to an independent review to certify no other responsive recordings exist.

**Defendant's Position.** Plaintiffs cite absolutely no authority for their demand that the Court order an "independent" review of Ashkenazy's personal devices. Despite being a non-party, Ashkenazy agreed to produce documents in response to a Rule 45 subpoena. Plaintiffs provided search terms to be used to search Ashkenazy's devices. Counsel ran the terms and produced responsive documents. At some point, perhaps even before the case was filed, Plaintiffs became aware that one or more recordings existed because at least one was in the possession of Plaintiffs' principal, Rebibo. But Plaintiffs never raised its existence to counsel until the day of Ashkenazy's deposition. Had they done so, counsel would have immediately supplemented Ashkenazy's production, as they have now done. Specifically, counsel confirmed with Ashkenazy personally that the production now includes all recordings Ashkenazy has of conversations with Rebibo. These are the recordings responsive to Plaintiffs' requests and they have been produced.

### V. Plaintiffs Assert that Levy's Deposition Became Relevant and Necessary

**Plaintiffs' Position.** The September 15, 2023 Order limited depositions to those that had already been noticed. ECF Doc. No. 109. In July 2023, Defendant designated Joe Press as Defendant's corporate representative, but did not confirm that Press would be testifying as to all topics until August 28. The deposition topics included Defendant's allegations of unlawful interference and Lender holding itself as owner of Union Station. The parties proceeded with Press's deposition, with the expectation that Press could testify to these topics. However, at the deposition, Press repeatedly referred to Levy as the one having exclusive knowledge of the specifics stated in the conversations. Levy purportedly had conversations with Rebibo where Rebibo stated he owned or controlled Union Station, described meetings with tenants, and commented on the sovereign transaction that Defendant had pursued. (Press Dep. Tr. 36:7-13; 38:8-16; 43:23-47:15; 49:14-52:22; 78:21-79:9; 85:2-86:14; 181:12-21; 187:2-188:25; 250:18-

251:7.)[4] Press could not provide specifics to these conversations, and Rebibo has denied the substance. Ashkenazy also referred back to Levy in his deposition on topics involving whether Defendant made various forbearance payments, consent requests to the lenders for the sovereign transaction, and text messages received from Levy. (Ashkenazy Tr. 171:20-24; 172:20-25; 179:3-12; 200:22-201:12; 218:7-16; 267:3-270:18; 272:16-276:23; 284:21-285:17.)

Levy is undoubtedly relevant to the defenses raised in this action, and the testimonies from Press and Ashkenazy repeatedly relied on Levy's knowledge. The extent of Levy's involvement—and the inability of Press or Ashkenazy to testify as to the specifics of their affirmative defenses—necessitates Levy's deposition. Plaintiffs requested the same, but Defendant has thus far refused because the Court limited discovery to the depositions originally noticed. Defendant has not—and cannot—claimed that Levy is not relevant or that his deposition would be disproportionate to the needs of this case. *Rosen v. N.Y.C. Dep't of Educ.*, 1:18-cv-06670 (AT) (SDA), 2021 WL 5279396, at *2 (S.D.N.Y. Nov. 12, 2021) (compelling deposition of witness who had relevant knowledge to key allegations). Plaintiffs promptly raised its request to depose Levy days after Ashkenazy's deposition and are prepared to proceed with the deposition expeditiously.

**Defendant's Position.** Beginning with the Court's July 25 order extending discovery, the Court ordered that no new document requests or deposition notices could be served (with the exceptions of certain non-party depositions not relevant here). *See* ECF No. 102, 109, 110. Plaintiffs did not notice Levy's deposition before those orders were entered, despite knowing that Levy had knowledge of the facts underlying this case. At a minimum, Plaintiffs were aware of Levy's knowledge when he submitted a sworn declaration in opposition to Plaintiffs' early summary judgment motion in December 2022. *See* ECF No. 68. But even earlier, Plaintiffs and their representatives knew about Levy's role because the "conversations" about which they seek to depose him (*see* above) were between Levy and Rebibo. Plaintiffs instead decided to forgo Levy's deposition. Specifically, Plaintiffs sought a Rule 30(b)(6) deposition of Defendant and merely asked, during a meet-and-confer, whether Levy would be the corporate designee. After Defendant confirmed that Press would be Defendant's corporate designee, Plaintiffs did not seek Levy's testimony then either.

This pattern of behavior is the opposite of the "diligence" required to reopen discovery. *Saray Dokum v. Madeni Aksam Sanayi Turizm A.S.*, 335 F.R.D. 50, 52 (S.D.N.Y. 2020) ("[A] party seeking to reopen discovery must show why the court's deadlines could not reasonably have been made despite its diligence.") This standard applies to Plaintiffs' request since the Court ordered, on multiple occasions, that no additional depositions be noticed. And Plaintiffs cannot show such cause where they were aware that Levy could have relevant information and neglected to seek his deposition. *Minnie Rose LLC v. Yu*, 2023 WL 7386024, at *7 (S.D.N.Y. Nov. 8, 2023); *George v. Ford Motor Co.*, 2007 WL 2398806, at *12 (S.D.N.Y. Aug. 16, 2007). Significantly, Plaintiffs do not assert that Defendant's Rule 30(b)(6) witness was not properly prepared and was unable to answer questions about relevant conversations involving Levy.

---

[4] Excerpts of the deposition transcript of Joe Press, taken October 17, 2023, are attached hereto as **Exhibit B**, filed under seal.

Hon. Gregory H. Woods
November 17, 2023
Page 6

Respectfully submitted,

| MORRISON COHEN LLP | KASOWITZ BENSON TORRES LLP |
|---|---|
| */s/ Amber R. Will* | */s/ David E. Ross* |
| Amber R. Will | David E. Ross |
| 909 Third Avenue | 1633 Broadway |
| New York, NY 10022 | New York, NY 10019 |
| Telephone: (212) 735-8600 | Telephone: (212) 506-1700 |
| awill@morrisoncohen.com | dross@kasowitz.com |
| | |
| *Attorneys for Plaintiffs* | *Attorneys for Defendant and Non-Party Ben Ashkenazy* |