UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAOL REXMARK UNION STATION LLC and KOOKMIN BANK CO., LTD., in its capacity as trustee of KTB CRE DEBT FUND NO. 8, a Korean Investment Trust, by its agent in Korea DAOL FUND MANAGEMENT CO. and by its agent in United States REXMARK HOLDINGS LLC d/b/a REXMARK, <br><br> Plaintiffs, <br><br> v. <br><br> UNION STATION SOLE MEMBER, LLC, <br><br> Defendant. | Case No. 1:22-CV-06649-GHW |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL BEN ASHKENAZY TO ANSWER DEPOSITION QUESTIONS**

MORRISON COHEN LLP
Y. David Scharf
Brett Dockwell
Kristin T. Roy
Latisha V. Thompson
Amber R. Will
Mahnoor Misbah
909 Third Avenue
New York, New York 10022
(212) 735-8600
dscharf@morrisoncohen.com

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .......................................................................................................... 2

    A.    Ashkenazy Refuses To Answer Relevant Questions Based on Privilege ................. 2

    B.    Discovery Demonstrates That Any Privilege Has Been Waived .............................. 4

ARGUMENT ................................................................................................................................ 6

    I.    DEPOSITION QUESTIONS DO NOT IMPLICATE PRIVILEGE ..................... 7

    II.    EVEN IF PRIVILEGE HAD PROTECTED FACTS SUPPORTING ASHKENAZY'S BELIEF THAT THE FORECLOSURE SALE WAS INVALID, ANY PRIVILEGE WAS INTENTIONALLY WAIVED .............................................. 9

    III.    ASHKENAZY SHOULD OTHERWISE BE COMPELLED TO ANSWER THE QUESTIONS BASED ON SUBSTANTIAL NEED ................................................... 11

CONCLUSION ........................................................................................................................... 12

**Table of Authorities**

Page(s)

**Cases**

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
   No. 93 Civ. 6876 (KMW), 1995 WL 598971 (S.D.N.Y. Oct. 11, 1995) ..............................7, 8

*Bank Brussels Lambert v. Credit Lyonnaise (Suisse) S.A.*,
   160 F.R.D. 437 (S.D.N.Y. 1995) ...................................................................................6, 9

*Baptiste v. Cushman & Wakefield, Inc.*,
   No. 03 Civ. 2102 (RCC)(THK), 2004 WL 330235 (S.D.N.Y. Feb. 20, 2004).........................6

*In re Cnty. of Erie*,
   473 F.3d 413 (2d Cir. 2007)...............................................................................................6, 7

*Dealer Comput. Servs. Inc. v. Curry*,
   No. 12 Civ. 3457(JMF)(JLC), 2013 WL 499520 (S.D.N.Y. Feb. 7, 2013)..........................7, 9

*Obeid v. Mack*,
   14 Civ. 6498 (LTS) (HBP), 2016 WL 7176653 (S.D.N.Y. Dec. 9, 2016) ....................6, 9, 11

*Spectrum Sys. Int'l. Corp. v. Chem. Bank*,
   157 A.D.2d 444 (1st Dep't 1990), *aff'd as mod*, 78 N.Y.2d 371 (1991)...................................7

*Tribune Co. v. Purcgliotti*,
   No. 93 CIV. 7222 LAP THK, 1997 WL 10924 (S.D.N.Y. Jan. 10, 1997)............................7, 9

*United States v. Ghavami*,
   882 F. Supp. 2d 532 (S.D.N.Y. 2012)...............................................................................6, 11

*United States v. Mejia*,
   655 F.3d 126 (2d Cir. 2011)..................................................................................................6

*Weizmann Inst. of Sci. v. Neschis*,
   No. 00 Civ. 7850(RMB), 2004 WL 540480 (S.D.N.Y. Mar. 17, 2004)...................................9

**Other Authorities**

Federal Rules of Civil Procedure Rule 37 .......................................................................... *passim*

Plaintiffs Daol Rexmark Union Station LLC ("Union Station Sub") and Kookmin Bank Co, Ltd., in its capacity as trustee ("Trustee") of KTB CRE Debt Fund No. 8, a Korean Investment Trust (the "Trust"), by its agent on behalf of the Trust in Korea, Daol Fund Management Co. ("Daol"), and by its agent on behalf of the Trust in the United States, Rexmark Holdings LLC d/b/a Rexmark ("Rexmark," and collectively with Union Station Sub, Trustee, the Trust, and Daol, "Lender"), respectfully submit this memorandum of law in support of their Motion to Compel Ben Ashkenazy to Answer Deposition Questions pursuant to Rule 37 of the Federal Rules of Civil Procedure (the "Motion").

## PRELIMINARY STATEMENT

During the deposition of Ben Ashkenazy ("Ashkenazy"), Ashkenazy repeatedly refused to answer questions, dodged answering questions honestly, and revealed the existence of additional documents not produced in the first instance. One of the line of questions that Ashkenazy refused answering involved the facts supporting Ashkenazy's belief that the foreclosure sale on the mezzanine loan was invalid. It is well settled that privilege can protect only communications with legal counsel and associated work product prepared in anticipation of litigation—not facts. Even though Ashkenazy submitted a declaration in support of Defendant Union Station Sole Member LLC's ("USSM") opposition to Lender's motion for summary judgment, he refused to answer the most basic question as to what facts support USSM's affirmative defense that the foreclosure sale was invalid. Ashkenazy himself called the foreclosure invalid at the deposition, yet refused to discuss what facts supported his belief. Improperly invoking the shield of privilege, Ashkenazy created a wall around the facts and circumstances supporting USSM's affirmative defense, preventing Lender from learning the facts underlying USSM's defenses.

After the deposition, further document production revealed that Ashkenazy discussed at least some of the facts supporting why Ashkenazy believed the foreclosure sale was invalid with

none other than his current adversary, Michael Rebibo of Rexmark ("Rebibo"). This conversation, which was recorded without Rebibo's knowledge or consent, demonstrates how any privilege or work product protection was intentionally waived by Ashkenazy. Whether the information could have been protected by attorney-client privilege or work product protection is irrelevant because Ashkenazy intentionally waived both by discussing the information with a third party and adversary.

Accordingly, the Court should compel Ashkenazy to answer the line of questioning posed at the deposition regarding the facts supporting why the foreclosure sale was purportedly invalid, and award Lender's counsel costs associated with this Motion.

## STATEMENT OF FACTS

The relevant facts are further outlined in the Declaration of Y. David Scharf, dated December 29, 2023 ("Scharf Decl."), submitted herewith.

### A. Ashkenazy Refuses To Answer Relevant Questions Based on Privilege

On March 29, 2023, Lender's counsel served a Rule 45 subpoena duces tecum on non-party Ashkenazy, seeking Ashkenazy's deposition and production of relevant documents in his possession, custody, or control. (Scharf Decl. at ¶ 3.) The deposition took place on October 25, 2023. (*Id.* at ¶ 5.)

Over the hours of the deposition, Ashkenazy repeatedly resisted answering questions and challenged the discovery process. (*Id.* at ¶ 12.) As is relevant for this Motion, Ashkenazy refused to answer various questions targeting the facts that supported USSM's position that the foreclosure sale of the mezzanine loan that took place on June 14, 2023, was invalid. (*Id.* at ¶ 13.) Defendant USSM has argued that the foreclosure sale was invalid before this Court, but Ashkenazy himself referred to the foreclosure as invalid repeatedly during the deposition. (*Id.* at ¶ 13.) When Lender's counsel questioned Ashkenazy's understanding of what facts supported his belief that the

foreclosure was invalid, Ashkenazy intractably refused to answer the questions. (*Id.* at ¶ 13.) Counsel for Ashkenazy did not object to the questions and direct Ashkenazy not to answer. (Id. at ¶ 15.) Rather, Ashkenazy determined that the answers would implicate privilege and confidentiality, inhibiting his ability to answer the questions. (*Id.* at ¶ 15.) Lender's counsel reiterated that the questions were not focused on privileged communications but the facts supporting the belief that the foreclosure sale was invalid to no avail. (*Id.* at ¶ 15.)

The deposition transcript demonstrates that the questions posed to Ashkenazy do not implicate the attorney-client privilege or work product doctrine:

> Q. Can you tell me in your words why it was an invalid foreclosure?
>
> A. That's privileged and confidential between me and my lawyers and I can't answer that question.
>
> Q. Okay. Are there any facts that you can share with us that you believe underlie the legal theory as to why it was invalid?
>
> A. I've already answered that question. It's privileged and confidential information between me and my lawyers and I cannot answer this question.
>
> Q. So you're saying that you can't share with us the facts that you believe underlie the legal basis for why it's invalid?
>
> > Mr. Ross: Objection to form. If answering his question would reveal the legal advice you got, then don't answer the question for the reason you already stated.
>
> A. So it's the same, for the third time, it's privileged and confidential.
>
> …
>
> Q. You say the foreclosure was invalid, that's what you called it, the invalid foreclosure, right?
>
> A. Correct.
>
> Q. And my question to you is, is anything in Exhibit 9 a factual support for why you call the foreclosure invalid?
>
> A. So you've asked this question before and I'll answer it again. The reason that we believe that the foreclosure was invalid is privileged and confidential, and I'm not going

to share with you my privileged and confidential – privileged and confidential conversation with my lawyers.

…

Q. My question to you, again, is am I correct in understanding that none of the facts that you have in your declaration support your claim that the foreclosure was invalid?

Mr. Ross: Objection to form. And foundation.

A. Same answer, you could take it up with the judge, like you said.

Q. Okay, we will.

(*Id.* at ¶ 15.)

Along with other issues that arose from the deposition, Lender's counsel raised the objections in a post-deposition letter on November 1, 2023. (*Id.* at ¶ 6.) In the letter, Lender's counsel asked USSM to reconsider the objections and have Ashkenazy sit for an additional deposition limited to the line of questioning he refused to answer on October 25. (*Id.* at ¶ 7.) USSM refused, arguing that the information asked about was protected by the work product doctrine. (*Id.* ¶ 9.) Unable to resolve the disagreement, the parties filed a joint discovery dispute letter with the Court, and this briefing followed. (*Id.* at ¶ 10.)

**B. Discovery Demonstrates That Any Privilege Has Been Waived**

The letter sent on November 1, 2023 by Lender's counsel also requested additional documents that were discussed or raised at Ashkenazy's deposition. (Scharf Decl., Ex. B.) On November 10, 2023, a supplemental production was made on behalf of Ashkenazy. (Scharf Decl. at ¶ 22.) Included in this production were six audio recordings Ashkenazy made of conversations with Rebibo. (*Id.* at ¶ 22.) As is evident in the recordings, Rebibo was unaware that he was being recorded in these conversations. (*Id.* at ¶ 22.)

In one of the recordings, Ashkenazy explains to Rebibo how he would argue against a foreclosure brought against the then senior lender who held the debt over the mortgage loan. (*Id.*

4

at ¶ 23.) Ashkenazy said that "there wouldn't be a foreclosure if they gave us what they promised," referring to the senior lender. (*Id.* at ¶ 23.) Ashkenazy continued:

> If we went in front of a judge, you and I, okay, and just told him what took place.
>
> . . .
>
> $100 million deposit, which we've both done in letters, right? And went with -- just go with me for a minute. We went to the judge and said, take a look. These are letters. This is a letter that Rebibo sent to the senior. This is a letter that Ashkenazy sent to -- this is what took place, right? And the position, the truth comes out. Wells Fargo will confirm the same. Wells Fargo's also confirmed that, for six months, they said to us, don't worry, we're coming back to you with a two-year forbear, and I want a three, and they said it'll go to two, and it'll end up at two, and I went, fine, okay. Don't worry. We're putting it together. We're going to get you a forbear. You don't have to do anything, and then you're going to have a chance to rebuild the station, and you're going to have a chance to bring back your buyer, and you're going to have the chance to sell it again. Right? If we want like this to a judge, why would he allow for a foreclosure?
>
> . . .
>
> Why would he allow this? This is what I'm missing. Why would you allow a senior, who's a predator senior, who's been trying to take over the property, and you tried to sell it and get him current and put a half a million, that $50 million in the bank for reserves, if he didn't take the money then, during COVID, why would he allow that same person to succeed, just work with me, to succeed in foreclosing on you now, when he's the reason you're being foreclosed on, right? Because if he would've processed the approval, then we wouldn't be in default.

(*Id.* at ¶ 23.)

The same acts described by Ashkenazy in the recording correspond with the alleged "unclean hands, bad faith, and other culpable conduct" claimed in USSM's Third Affirmative Defense. (*Id.* at ¶ 24.) The Third Affirmative Defense provides that "Plaintiffs and their predecessors in interest have interfered with USSM's efforts to refinance the Loans to enable it to remedy the alleged defaults. . . . In particular, Kookmin's predecessor-in-interest as Lender under

5

the mortgage loan wrongly and unreasonably denied consent to a change in ownership transaction that would have allowed USI and USSM to repay the balance of both the mortgage and the mezzanine loans." (*Id.*) Ashkenazy also attested to these facts in his declaration in opposition to Lender's motion for summary judgment. (*Id.* at ¶ 25.) Ashkenazy had the opportunity to review his sworn statement at the deposition, evidenced by the fact that he took notes and asked clarifying questions during his review. (*Id.* at ¶ 26.) Yet, when Lender's counsel asked if these statements supported Ashkenazy's belief that the foreclosure was invalid, Ashkenazy continued in his refusal to respond. (*Id.*)

## **ARGUMENT**

The attorney-client privilege protects documents and communications from disclosure if the communication is between a client and their lawyer and relates to the request for or provision of legal advice. *See Obeid v. Mack*, 14 Civ. 6498 (LTS) (HBP), 2016 WL 7176653, at *3 (S.D.N.Y. Dec. 9, 2016) (quoting *Bank Brussels Lambert v. Credit Lyonnaise (Suisse) S.A.*, 160 F.R.D. 437, 441 (S.D.N.Y. 1995)). Specifically, the communication must "relate[] to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily" legal advice. *Id.* The privilege affords protection from disclosure "so long as the communications were intended to be, and were in fact, kept confidential." *Baptiste v. Cushman & Wakefield, Inc.*, No. 03 Civ. 2102 (RCC)(THK), 2004 WL 330235, at *1 (S.D.N.Y. Feb. 20, 2004).

The work product doctrine, on the other hand, "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy with an 'eye toward litigation,' free from unnecessary intrusion by his adversaries." *Obeid*, 2016 WL 7176653, at *3 (quoting *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998). The work product doctrine protects the mental impressions and strategies of counsel, along with "fact work product" that encompasses

6

factual material from an investigation. *United States v. Ghavami*, 882 F. Supp. 2d 532, 540 (S.D.N.Y. 2012).

The party asserting the attorney-client privilege or work product doctrine bears the burden of establishing that the privilege applies. *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). Courts "construe the privilege narrowly because it renders relevant information undiscoverable; we apply it 'only where necessary to achieve its purpose.'" *In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007).

Parties may move for an order compelling a discovery response where "a deponent fails to answer a question" pursuant to Rule 37(a)(3)(B)(i) of the Federal Rules of Civil Procedure. If the motion is granted, the court may order the "party or deponent whose conduct necessitated the motion" to pay the movant's reasonable expenses incurred in making the motion. Fed. R. Civ. P. 37(a)(5)(A).

## I. DEPOSITION QUESTIONS DO NOT IMPLICATE PRIVILEGE

The deposition questions posed to Ashkenazy directly target relevant discovery to USSM's affirmative defenses that are not covered by the attorney-client privilege or work product protections. Discovery affords the opportunity for each party to "learn the facts underlying their opponent's claims and defenses." *Dealer Comput. Servs. Inc. v. Curry*, No. 12 Civ. 3457(JMF)(JLC), 2013 WL 499520, at *6 (S.D.N.Y. Feb. 7, 2013). "Discoverability of a communication depends on its nature, rather than its source." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93 Civ. 6876 (KMW), 1995 WL 598971, at *11 (S.D.N.Y. Oct. 11, 1995). The attorney-client privilege can protect only communications, not facts. *See Spectrum Sys. Int'l. Corp. v. Chem. Bank*, 157 A.D.2d 444, 449 (1st Dep't 1990), *aff'd as mod*, 78 N.Y.2d 371 (1991) (quoting *Upjohn v. United States*, 449 U.S. 383, 395-96 (1981)). Even if the fact is one that is communicated by counsel, the fact itself is still discoverable—but the legal advice

7

relating to the fact remains protected. *See Tribune Co. v. Purcgliotti*, No. 93 CIV. 7222 LAP THK, 1997 WL 10924, at *4 (S.D.N.Y. Jan. 10, 1997) ("Nevertheless, the privilege does not protect the client's knowledge of relevant facts, whether or not they were learned from his counsel, or facts learned by an attorney from independent sources."); *Bank Brussels*, 1995 WL 598971, at *11 ("A fact is discoverable regardless of how a deponent came to possess it.").

Questions asked in depositions that focus on the facts—not the legal theories, impressions, or communications—are proper questions that cannot be shielded by the attorney-client privilege. *See id.* In *Bank Brussels Lambert*, the parties disagreed as to whether a witness could answer questions during a deposition without divulging attorney-client privileged or work product information. *Id.* This Court reviewed the deposition questions and determined that while the witness could not be compelled to answer "what did you say or write to the attorney?", the witness could also not "refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Id.* at *9. The questions posed at the deposition in that case demonstrated that the witness was capable of answering questions without divulging privileged information because the questions targeted the "factual basis behind the plaintiffs' allegations, rather than the arrangement of privileged or unprivileged documents." *Id.* at *11.

Here, Ashkenazy argues that the facts supporting why the foreclosure sale was purportedly invalid are protected by either the attorney-client privilege or work product doctrine. Inherent in the questions asked of him, Lender's counsel focused exclusively on the facts—not the legal theories, communications, or analysis by counsel. Ashkenazy's counsel appears to have initially agreed with this distinction given that counsel did not object to the questions on basis of privilege until Ashkenazy refused to answer two prior questions on that basis. (Scharf Decl. at ¶ 15.)

The questions posed here are similar to the ones posed in *Bank Brussels Lambert*. In a similar analysis, the deposition transcript demonstrates that Ashkenazy has knowledge about facts supporting why he thinks that the foreclosure sale was invalid. Indeed, Ashkenazy raised that the foreclosure sale was invalid at the deposition without any prompting from the questions. (Scharf Decl., Ex. D at 51:17-18.) Ashkenazy opined that the foreclosure sale was invalid, and the subsequent questions target the facts that support Ashkenazy's understanding.

"[L]itigants are permitted to learn the facts underlying their opponent's claims and defenses." *Dealer Comp. Servs. Inc.*, 2013 WL 499520, at *6. Because Lender's counsel merely sought to understand and flesh out the facts underlying the Third Affirmative Defense, Ashkenazy should be compelled to answer the questions posed of him.

## II. EVEN IF PRIVILEGE HAD PROTECTED FACTS SUPPORTING ASHKENAZY'S BELIEF THAT THE FORECLOSURE SALE WAS INVALID, ANY PRIVILEGE WAS INTENTIONALLY WAIVED

If the Court determines that Ashkenazy's answers would implicate either the attorney-client privilege or work product doctrine, however, Ashkenazy should still be compelled to answer due to the intentional waiver of these protections. It is well settled that the attorney-client privilege and work product protections are waived if the holder of the privilege discloses the otherwise privileged information to a third party or adversary. *See Obeid*, 2016 WL 7176653, at *3; *Weizmann Inst. of Sci. v. Neschis*, No. 00 Civ. 7850(RMB), 2004 WL 540480, at *3 (S.D.N.Y. Mar. 17, 2004). The client ultimately "has the responsibility of ensuring the continuing confidentiality of the information." *Tribune Co.*, 1997 WL 10924, at *4. The privilege for attorney-client communications is waived if shared with any third party, but waiver only occurs for work product protection "where disclosure to a third-party substantially increases the likelihood that the work product will fall into the hands of the adversary." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 448 (S.D.N.Y. 1995).

9

Through supplemental discovery productions, Lender uncovered that Ashkenazy had clandestinely been recording conversations with Rebibo. (Scharf Decl. at ¶ 22.) In one such recording, Ashkenazy explains to Rebibo why the senior mortgage lender at the time should not be able to foreclose on the mortgage loan due to purported bad acts in not approving a transaction that allegedly could have made USSM and USI current under their loans. (*Id.* at ¶ 23.) Ashkenazy explains how he would go to a judge in an attempt to prevent or unwind a foreclosure based on the acts of what he called a "predator senior." (*Id.*)

These same allegations form the basis of USSM's Third Affirmative Defense. USSM's Answer alleges that Lender engaged in "unclean hands, bad faith, and other culpable conduct" that prevents USSM from succeeding on the declaratory judgment claim. (Answer, ECF Doc. No. 45 at 31.) Specifically, USSM alleges that "Plaintiffs and their predecessors in interest have interfered with USSM's efforts to refinance the Loans to enable it to remedy the alleged defaults. . . . In particular, Kookmin's predecessor-in-interest as Lender under the mortgage loan wrongly and unreasonably denied consent to a change in ownership transaction that would have allowed USI and USSM to repay the balance of both the mortgage and the mezzanine loans." (*Id.*)

Ashkenazy carries this theme in his declaration submitted in opposition to summary judgment. (Decl. of Ashkenazy, ECF Doc. No. 69.) Ashkenazy stated that "despite USSM and USI successfully obtaining financing that would have brought the Loans current and provide for future payments—which included the $100 million escrow deposit—the [controlling class representative] would not even consider, let alone grant, the consent necessary for USSM and USI to cure their default unless the [controlling class representative] could profit from the Investment. And, if it could not receive that profit, the [controlling class representative] would force a foreclosure, otherwise stripping USSM and USI of their equity and interests in Union Station."

10

(*Id.* at ¶ 22.)  Lender's counsel asked specifically about this declaration in the deposition to determine whether the facts alleged therein supported Ashkenazy's belief that the foreclosure was invalid.  (Scharf Decl. at ¶ 15.)  Ashkenazy's refusal to answer questions regarding the very facts he attested to in his declaration in opposition of summary judgment prevent Lender from adequately understanding the support for USSM's defenses.

To the extent that there was any privilege or work product protection over the facts supporting Ashkenazy's belief that the foreclosure was invalid, that privilege was waived by intentional disclosure to a third party (i.e. Rebibo), who became Ashkenazy's adversary in this litigation.  The conversation with Rebibo were directly tied to the same support used by USSM in its Answer and by Ashkenazy in his declaration in opposition for summary judgment.  Because privilege is waived when "the client voluntarily discloses the [communication] to a third party," Ashkenazy should be compelled to answer the questions asked during the deposition.  *See Obeid*, 2016 WL 7176653, at *3.

### III. ASHKENAZY SHOULD OTHERWISE BE COMPELLED TO ANSWER THE QUESTIONS BASED ON SUBSTANTIAL NEED

In the joint letter submitted to the Court, USSM argues that the answers to the relevant deposition questions would implicate work product protection.  (Scharf Decl., Ex. C at 2.)  Even if work product applied and was not waived in conversations with Rebibo, Lender has established substantial need.  The protections provided for work product vary in degree based on whether the disclosure implicates opinion work product of counsel or fact work product.  *Ghavami*, 882 F. Supp. 2d at 540.  Although opinion work product "is entitled to virtually absolute protection," fact work product "may be ordered disclosed upon a showing of substantial need."  *Id.*

Here, USSM has asserted an affirmative defense targeting purported culpable conduct that renders the foreclosure sale invalid.  Lender is entitled to question Ashkenazy as to the facts that

11

support the defense that the foreclosure was invalid. Although Lender also questioned USSM's 30(b)(6) witness about the specifics detailed in the Third Affirmative Defense, Ashkenazy has a personal perspective that USSM has relied upon in opposition to summary judgment. (Decl. of Ashkenazy, ECF Doc. No. 69.) Ashkenazy should be compelled to answer questions about the facts supporting the allegation that the foreclosure sale is invalid so that all parties understand the facts underlying the claims and defenses in this action.

## CONCLUSION

For the foregoing reasons, Lender's Motion to Compel should be granted in its entirety, including an award for attorneys' fees and costs associated with this Motion.

Dated: New York, New York
       December 29, 2023

                                          MORRISON COHEN LLP

                                          By:   *Y. David Scharf*
                                                Y. David Scharf
                                                Brett Dockwell
                                                Kristin T. Roy
                                                Latisha V. Thompson
                                                Amber R. Will
                                                Mahnoor Misbah
                                                909 Third Avenue
                                                New York, New York 10022
                                                (212) 735-8600
                                                *Attorneys for Plaintiffs*