# Exhibit B



Y. David Scharf
Chair and Co-Managing Partner
(212) 735-8604
dscharf@morrisoncohen.com

November 1, 2023

**VIA EMAIL**

David E. Ross
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019

      Re:     <u>*Daol Rexmark Union Station LLC et al. v. Union Station Sole Member, LLC*, 1:22-cv-06649-GHW (S.D.N.Y.)</u>

Dear David:

     We write in follow up to our letter dated October 26, 2023, regarding Mr. Ben Ashkenazy's deposition taken on October 25, 2023. We reviewed the transcript and have identified additional issues that came to light in Mr. Ashkenazy's deposition. Given the tight timelines with regard to remaining discovery in this case, please confirm receipt of this letter and an estimated time period in which we can expect a response.

**Improper Reliance on Attorney-Client Privilege To Shield Testimony on Facts**

     There were a number of critical questions that frame up USSM's defenses in this lawsuit that Mr. Ashkenazy refused to answer on the basis that they were protected by attorney-client privilege. Specifically, Mr. Ashkenazy hid behind a privilege shield in response to the following questions:

- "Are there any facts that you can share with us that you believe underlie the legal theory as to why [the foreclosure] was invalid?" (Tr. 52:4-9);

- "So you're saying that you can't share with us the facts that you believe underlie the legal basis for why [the foreclosure is] invalid?" (Tr. 52:10-18);

- "And my question to you is, is anything in Exhibit 9 a factual support for why you call the foreclosure invalid?" (Tr. 61:2-10); and

- "My question to you, again, is am I correct in understanding that none of the facts that you have in your declaration support your claim that the foreclosure was invalid?" (Tr. 62:24-63:7).

Mr. Ashkenazy's position throughout the deposition was that he would not explain any facts "about the foreclosure as to why it's invalid" due to privilege. (Tr. 61:18-24.)

USSM relies on the foreclosure sale being invalid as a defense in this lawsuit, yet Mr. Ashkenazy repeatedly refused to answer any questions as to the ***facts*** supporting that defense. It is well settled that the "attorney-client privilege extends only to communications and not facts." *Spectrum Sys. Intern. Corp. v. Chemical Bank*, 157 A.D.2d 444, 449 (1st Dep't 1990) (quoting *Upjohn v. United States*, 449 US. 383, 395-96 (1981)). The questions asked of Mr. Ashkenazy were to identify the facts as he understood them—not the privileged communications from his attorneys. Please reconsider your objections to the identified questions above. If you remove your objections, we are happy to work with you on setting a convenient time for all parties to resume the deposition by remote means to answer these questions and any follow up thereto.

**Incomplete Document Production**

At the deposition, Mr. Ashkenazy was asked whether he used emails to communicate with people between 2018 and 2022 with respect to Washington Union Station. He answered unequivocally, "Yes." (Tr. 202:24-203:5; *see also* Tr. 202:15-17 (answering "I do" in response to whether Mr. Ashkenazy uses email as a means of communicating with people).) We reviewed documents produced by USSM and Ashkenazy in this case again after the deposition. We could not find a single instance in which Mr. Ashkenazy responded to an email. Given Mr. Ashkenazy's testimony, the document production appears to be incomplete. Mr. Ashkenazy's emails should be re-searched and/or re-reviewed to determine whether responsive documents exist, and if so, a supplemental production should be made. If there are no responsive documents, which seems unlikely given Mr. Ashkenazy's confidence at his deposition, please certify in writing that none of Mr. Ashkenazy's email communications are responsive to this case.

Mr. Ashkenazy also testified that he does not record phone conversations (Tr. 286:22-25), and confirmed under oath that he never recorded Mr. Michael Rebibo (Tr. 287:2-3). Yet, when confronted with forwarding a recording of Mr. Rebibo to him, Mr. Ashkenazy conceded that he not only recorded Mr. Rebibo, but played the recording in a voicemail to Mr. Rebibo as proof. (Tr. 287:4-7; 292:8-14.) Based on this inconsistent testimony, we want an independent review of Mr. Ashkenazy's devices to confirm the veracity of his testimony that he did not record conversations involving the senior or mezz lenders or Union Station. Please certify in writing that this independent investigation was completed and that no additional recordings are responsive in this case.

**Questions Regarding Mr. Ashkenazy's Net Worth are Relevant to this Case**

As counsel, you directed Mr. Ashkenazy to not answer questions about his net worth and liquidity of assets based on a misguided notion that the stay of discovery in the recourse action

before Judge Woods prevents us from asking questions that are relevant to this case. Specifically, you directed Mr. Ashkenazy not to answer:

- whether the guaranty related to the Mezzanine Loan required Mr. Ashkenazy personally to have unencumbered liquid assets of not less than $20 million (Tr. 118:9-15);

- whether the same guaranty required Mr. Ashkenazy personally to maintain a net worth of not less than half a billion dollars (Tr. 118:16-20); and

- what Mr. Ashkenazy's net worth and value of unencumbered liquid assets were at various times (Tr. 118:21-119:11).

Contrary to your objections, these questions are directly relevant to USSM's arguments in this case—not the recourse action where discovery is stayed pending a motion to dismiss. USSM's Third Affirmative Defense alleges that "Plaintiffs and their predecessors in interest have interfered with USSM's efforts to refinance the Loans to enable it to remedy the alleged defaults." USSM Answer, ECF Doc. No. 45 at 31. In its opposition to summary judgment, USSM argued that it needed discovery to show that USSM was prevented from "coming current on the Mezzanine Loan before the putative foreclosure sale." Def.'s Mem. Of Law in Opp. To Pls. Motion for Summary Judgment, ECF Doc. No. 65 at 14.

Given that USSM has repeatedly alleged that Lender prevented USSM from coming current on the Mezz Loan, Mr. Ashkenazy's personal net worth and liquid assets are relevant to whether USSM—an entity almost exclusively owned by Mr. Ashkenazy—could have avoided default or met its forbearance obligations. We request that you withdraw your objections to this line of questioning. Because these answers should be readily available in concrete numbers, we will accept certified written answers to these questions from Mr. Ashkenazy.

**Deposition Notice for Daniel Levy**

On September 18, 2023, the Court extended the discovery order to allow for all fact discovery to be completed by November 10, 2023. ECF Doc. No. 109. We understand from that Order that fact discovery is extended "for the sole purpose of completing depositions that have already been noticed." *Id.* It became evident at the depositions of both Mr. Joe Press and Mr. Ashkenazy that we needed to take the deposition of Mr. Daniel Levy as well. Both Mr. Press and Mr. Ashkenazy offered Mr. Levy up as the person with personal knowledge as to the discussions had with Mr. Rebibo, the alleged interferences claimed in USSM's Answer, among other issues. These instances include:

- **Deposition Transcript of Joe Press**

    o Purported conversations between Mr. Levy and Mr. Rebibo where Mr. Rebibo said he owned or controlled Washington Union Station (Tr. 36:7-13; 38:8-16; 43:23-47:15);

    o Purported conversations between Mr. Levy and Mr. Rebibo regarding communications with prospective or current tenants (Tr. 49:14-51:16; 51:23-52:22; 78:21-79:9; 85:2-86:14; 250:18-23; 251:2-7);

    o Lender's stance on the "PIF Deal" based on purported conversations between Mr. Levy and Mr. Rebibo (Tr. 181:12-21); and

    o Senior Lender's reaction to the "PIF Deal" based on purported conversations between Mr. Levy and Mr. Rebibo (Tr. 187:2-188:25).

- **Deposition Transcript of Ben Ashkenazy**

    o Mr. Levy's job responsibilities at Washington Union Station and who reported to him (Tr. 22:5-24:13);

    o Whether payments were required under the forbearance agreement and whether payments were made (Tr. 171:20-24; 172:20-25);

    o Whether the parties to the "PIF Deal" exchanged term sheets before entering into a contract (Tr. 179:3-12);

    o Consent requests to the lender (Tr: 200:22-201:12) and the response from Wells Fargo (Tr. 218:7-16);

    o Text messages sent from Mr. Levy that were included in Mr. Ashkenazy's personal production of documents (Tr. 267:3-270:18; 272:16-276:23); and

    o Conversations with Mr. Levy regarding alleged interference by Lender and/or Mr. Rebibo (Tr. 284:21-285:17).

It is necessary to understand Mr. Levy's knowledge with respect to these issues, particularly given USSM's reliance on these purported facts as the basis for its defense.

We are willing to conduct Mr. Levy's deposition remotely within the same time confines dictated by the Court (November 10), assuming Mr. Levy is available in that window. Given the time constraints present here, please indicate by **5 p.m. EST on November 2, 2023**, whether USSM will produce Mr. Levy as a witness and when he would be available for a remote deposition. If he is not available until after November 10, please indicate whether USSM will stipulate to an extended discovery deadline for that specific purpose.

David E. Ross
November 1, 2023
Page 5

      Lender reserves the right to pursue other issues that arose during Mr. Ashkenazy's deposition not addressed herein.

                                             Sincerely,

                                             Y. David Scharf