## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAOL REXMARK UNION STATION LLC; and KOOKMIN BANK CO., LTD., in its capacity as trustee of KTB CRE DEBT FUND NO. 8, a Korean Investment Trust, by its agent in Korea DAOL FUND MANAGEMENT CO. and by its agent in United States REXMARK HOLDINGS LLC d/b/a REXMARK, | Case No.  1:22-cv-06649-GHW |
| Plaintiffs, | |
| v. | **LOCAL RULE 56.1 STATEMENT OF** <u>**UNDISPUTED FACTS**</u> |
| UNION STATION SOLE MEMBER, LLC, | |
| Defendant. | |

Pursuant to Rule 56.1 of this Court's Local Civil Rules, Plaintiffs Daol Rexmark Union Station LLC ("Union Station Sub") and Kookmin Bank Co., Ltd. ("Kookmin"), in its capacity as trustee ("Trustee") of KTB CRE Debt Fund No. 8, a Korean Investment Trust (the "Trust"), by its agent in Korea, Daol Fund Management Co. ("Daol"), and by its agent in the United States, Rexmark Holdings LLC d/b/a Rexmark ("Rexmark", together with Union Station Sub, Trustee, the Trust, and Daol, "Lender" or "Mezz Lender" when referring to conduct related to the Mezz Loan as defined below), by its attorneys, Morrison Cohen LLP, respectfully submit the following statement of undisputed facts relevant to Lender's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and as to which there is no genuine issue to be tried.  These undisputed facts establish that Lender is entitled to summary judgment on its declaratory judgment claim against Defendant Union Station Sole Member, LLC ("USSM") as stated in the complaint filed on August 4, 2022 (the "Complaint"), an order that Union Station Sub has bona fide title over

the USI Equity, and dismissal of the affirmative defenses raised by USSM in its answer filed on September 19, 2022 (the "Answer").

**The Loan Documents Govern the Parties' Rights and Remedies**

1.      Lender currently holds a senior mortgage loan relating to the ground lease of Washington Union Station ("Union Station").  The senior mortgage loan, with an original principal balance of $330 million, was entered into by Lender's predecessor-in-interest, Citi Real Estate Funding Inc. and Natixis Real Estate Capital LLC ("Original Mortgage Lender"), and Union Station Investco LLC ("USI") (the "Mortgage Loan"), the terms of which are documented in the Mortgage Loan Agreement, dated May 8, 2018.  *See* Mortgage Loan Agreement, Declaration of Michael Rebibo in Support of Lender's Motion for Summary Judgment, dated May 2, 2024 ("Rebibo Decl."), Ex. A.[1]

2.      The Mortgage Loan Agreement defines "Debt" as the "Outstanding Principal Balance, together with all interest accrued and unpaid thereon, and all other sums due to Lender in respect of the [Mortgage] Loan under the Note, this Agreement or any other Loan Document." Mortgage Loan Agreement, Rebibo Decl., Ex. A-1 at § 1.1.

3.      Pursuant to the Mortgage Loan Agreement, USI further covenanted to "pay all costs and expenses incurred by [Original Mortgage] Lender as a result" of Original Mortgage Lender remedying or attempting to remedy any Event of Default, "including costs of collection and defense (including reasonable attorneys', experts', consultants' and witnesses' fees and disbursements) in connection therewith." *Id.*, Ex. A-2 at § 4.1.14.

---

[1]      Documents marked CONFIDENTIAL during discovery, along with the deposition transcripts of Joe Press, Ben Ashkenazy, and Daniel Levy (and all exhibits marked at their respective depositions), have been filed under seal at USSM's request because USSM contends that they are confidential and protected under the parties' Stipulated Confidentiality Agreement and Protective Order (ECF Doc. No. 84).  Detailed references to the information contained within these documents have likewise been redacted.  Lender disagrees with USSM's position but has provided notice to USSM to file a letter justifying the sealing and redactions pursuant to the Court's Local Rule 4(A)(ii).

4.      During an Event of Default, "the Outstanding Principal Balance and, to the extent permitted by law, overdue interest in respect of the [Mortgage] Loan, shall accrue interest at the Default Rate." *Id.*, Ex. A-1 at § 2.2.

5.      In conjunction with the Mortgage Loan Agreement, the Original Mortgage Lender and USI entered into an Assignment of Leases and Rents, dated May 8, 2018. *See* Assignment of Leases and Rents, Rebibo Decl., Ex. B.

6.      The Mortgage Loan was secured by USI's ground lease for Union Station as collateral. *See* Mortgage Loan Agreement, Rebibo Decl., Ex. A-2 at § 3.1.7.

7.      On May 8, 2018, Ben Ashkenazy entered into a personal guaranty in connection with the Mortgage Loan. Rebibo Decl. at ¶ 10.

8.      Mezz Lender also holds a mezzanine loan, with an original principal balance of $100 million, that was entered into by Mezz Lender and USSM (the "Mezz Loan"), the terms of which are documented in the Mezz Loan Agreement, dated May 8, 2018. *See* Mezz Loan Agreement, Rebibo Decl., Ex. C.

9.      Similar to the Mortgage Loan Agreement, "Debt" is defined in the Mezz Loan Agreement as the "Outstanding Principal Balance, together with all interest accrued and unpaid thereon, any applicable Prepayment Fee and all other sums due to Lender in respect of the [Mezz] Loan under this Note, this Agreement or any other Loan Document." Rebibo Decl., Ex. C-1 at § 1.1.

10.     Pursuant to the Mezz Loan Agreement, USSM covenanted to "pay all costs and expenses incurred by [Mezz] Lender as a result" of Mezz Lender remedying or attempting to remedy any Event of Default, "including costs of collection and defense (including reasonable

attorneys', experts', consultants' and witnesses' fees and disbursements) in connection therewith." *Id.* at § 4.1.14.

11.     As with the Mortgage Loan Agreement, the Outstanding Principal Balance and overdue interest shall accrue interest at the Default Rate.  *Id.* at § 2.2.2.

12.     In conjunction with the Mezz Loan Agreement, USSM and Lender entered into a pledge and security agreement, dated May 8, 2018 (the "Pledge Agreement").  Pledge Agreement, Rebibo Decl., Ex. D.

13.     The Mezz Loan was secured by USSM's 100% membership interest in USI as collateral (the "USI Equity").  *Id.* at § 2(i); USSM's Am. Resp. & Obj. to Pls.' Requests for Admission, annexed to the Declaration of Y. David Scharf, dated May 2, 2024 ("Scharf Decl.") as Ex. F ("USSM RFA Responses"), No. 11.

14.     In conjunction with the Mezz Loan Agreement, Ashkenazy also entered into a Guaranty of Recourse Obligations, dated May 8, 2018 (the "Mezz Guaranty").  Mezz Guaranty, Rebibo Decl., Ex. E.

15.     Pursuant to the Mezz Guaranty, Ashkenazy as Guarantor affirmatively covenanted that "[a]t all times while the Debt remains unsatisfied, Guarantor shall maintain Unencumbered Liquid Assets [] of not less than $20,000,000 [and] a Net Worth [] of not less than $500,000,000." *Id.* at § 5.1(d).

16.     ████████████████████████████████████████████

████████████████████████████████████████████████

████     Deposition Transcript of Ben Ashkenazy, annexed to the Scharf Decl. as Ex. J ("Ashkenazy Dep. Tr."), at 317:4-6, 320:19-321:11.



17. █████████████████████████████████████████

████████████████ Ashkenazy Dep. Tr. at 315:10-12; *see also id.* at 320:19-22.

18. █████████████████████████████████████████

███████████████████████████████████ Deposition Transcript of Joe

Press, annexed to the Scharf Decl. at Ex. I ("Press Dep. Tr."), at 303:8-14, 303:18-24; Ashkenazy

Dep. Tr. at 114:18-19.

19. █████████████████████████████████████████

████████████████ Ashkenazy Dep. Tr. at 114:20-22.

**In May 2020, USI and USSM Both Default on Their Respective Payment Obligations**

20. █████████████████████████████████████████

███████████████████████████████████████████

████████████████████ Press Dep. Tr. at 11:19-24.

21. ███████████████████████ Press Dep. Tr. at 12:11-16.

22. █████████████████████████████████████████

███████████████████████████████████████████

████████████████████ Press Dep. Tr. at 314:24-315:5.

23. In May 2020, USI defaulted on the $330 million Mortgage Loan by failing to pay

the amounts due and owing. Rebibo Decl. at ¶ 19.

24. In May 2020, USSM also defaulted on the $100 million Mezz Loan by failing to

pay the amounts due and owing. *Id.*; USSM RFA Responses, No. 7.

25. Non-payment of monthly debt service constitutes an Event of Default under the

Mortgage and Mezz Loan Agreements. Rebibo Decl., Exs. A-3 and C-2 at § 10.1(a).

26.     In July 2020, after USI's default, USI entered into a forbearance agreement for the Mortgage Loan that also served as a first modification of the Mortgage Loan Agreement (the "Mortgage Loan Forbearance").  Rebibo Decl. at ¶ 20.

27.     Under the Mortgage Loan Forbearance, Wilmington Trust, National Association, in its capacity as Trustee for US 2018-USDC, Commercial Mortgage Pass-Through Certificates, Series 2018-USDC ("Wilmington"), took over as the new holder of the Mortgage Loan.  *Id*.  For purposes of this Motion, Wilmington is included in the definition of Original Mortgage Lender from July 8, 2020 forward.

28.     Wells Fargo Bank, N.A. ("Wells Fargo") served as Original Mortgage Lender's Special Servicer.  BlackRock, Inc. ("BlackRock") served as the controlling class representative in the securitization and, at all relevant times, had veto rights over major decisions regarding the Mortgage Loan.  Rebibo Decl. at ¶ 21.

29.     USI promised to make certain payments to the Original Mortgage Lender pursuant to the Mortgage Loan Forbearance after a deferral period.  Rebibo Decl. at ¶ 20.

30.     At the request of USSM, Mezz Lender also agreed to a forbearance in which USSM could make certain payments after a deferral period without Mezz Lender exercising its rights and remedies under the Mezz Loan and Pledge Agreements.  USSM and Mezz Lender entered into a First Modification of Mezzanine Loan Agreement and Forbearance, dated as of July 8, 2020 ("Mezz Loan Forbearance").  Mezz Loan Forbearance, Rebibo Decl., Ex. F at USDC_USSM_0007820.

31.     Although the Mezz Loan Forbearance is dated as of July 8, 2020, as the effective date, the agreement was signed in October 2020.  Rebibo Decl. at ¶ 23.

32.     The duration of the forbearance period covered May 9, 2020 through March 8, 2021.  Rebibo Decl. at ¶ 24.

33.     The forbearance period for the Mortgage Loan Forbearance originally ended in January 2021, but USI asked Original Mortgage Lender for a two-month extension to line up the deadline with the Mezz Loan Forbearance, which was granted.  Rebibo Decl. at ¶ 25.

34.     Pursuant to the Mezz Loan Forbearance, USSM agreed to pay what was defined as Deferred Monthly Debt Service Payment Amounts in 18 monthly installments.   Mezz Loan Forbearance, Rebibo Decl., Ex. F at § 3(d).  Deferred Monthly Debt Service Payment Amounts are defined in the agreement as ██████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████   *Id.* at § 3(c).  The payment schedule for Deferred Monthly Debt Service Payment Amounts was listed in Schedule C.  *Id.* at Sch. C.

35.     USSM also agreed to pay what was defined as Modification Fees to Mezz Lender.  *Id.* at § 3(d).  The Modification Fee is defined in the agreement as ████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████ as is further provided in Schedule A.  *Id.* at § 3(a), Sch. A.

36.     Section 3(d) of the Mezz Loan Forbearance provided that USSM would pay Special Servicing Fees in 10 monthly installments immediately succeeding the expiration of the Deferral Period.  *Id.* at § 3(d).  Special Servicing Fees are defined in the agreement as ██████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

7

███████████████████████████████████ as is further described in Schedule

B.  *Id.* at § 3(a), Sch. B.

37.     USSM also agreed to pay Mezz Lender ███████, constituting 50% of all out-of-

pocket costs and expenses actually incurred by Mezz Lender in connection with the agreement, by

November 2020, and an additional ███████ to cover the remainder by December 2020.  *Id.* at

§ 5(G).

38.     USSM's first payment of legal fees was due approximately one month after the

Mezz Loan Forbearance was fully executed.  Rebibo Decl. at ¶ 30.

39.     USSM failed to make its obligated November and December payments, putting

USSM in default of the Mezz Loan Forbearance almost immediately.  *Id*.

40.     As explained further below, once the deferral period expired, USSM likewise failed

to make payments to Mezz Lender on its other obligations under the Mezz Loan Forbearance.

Rebibo Decl. at ¶ 34.

41.     USI also failed to meet its payment obligations under the Mortgage Loan

Forbearance.  Rebibo Decl. at ¶ 32.

**After Defaulting on the Mortgage Loan Forbearance, USI Sought Original Mortgage
Lender's Consent for PIF Deal but Refuses To Make any Capital Injections**

42.     At some point in December 2020, Ashkenazy reached a deal with the Public

Investment Fund of the Kingdom of Saudi Arabia ("PIF") in which PIF would receive equity in

Ashkenazy Union Station Holdings LLC, the parent company to USSM ("Ashkenazy Holdings"),

valuing the leasehold interest at Union Station at approximately $700 million (the "PIF Deal").

Rebibo Decl. at ¶ 35

43.     By agreement dated December 21, 2020, Ashkenazy Holdings entered into a contribution agreement with PIF (the "Contribution Agreement"), outlining the terms of the transaction.  Contribution Agreement, Rebibo Decl., Ex. G.

44.     ████████████████████████████████████████████

████████████████████████████████████████████████████

████ Rebibo Decl. at ¶ 37.

45.     Pursuant to the Contribution Agreement, Ashkenazy Holdings needed to obtain written consent from Original Mortgage Lender before the scheduling closing date, and consent from Mezz Lender was required only if the Mezz Loan remained outstanding after the closing. Rebibo Decl., Ex. G-1 at § 3.1(e).

46.     The Contribution Agreement outlined PIF's obligations to consummate the PIF Deal subject to the fulfillment or written waiver by PIF of certain conditions prior to the Closing Date, including:



*Id.* at § 3.1(e).

47.     ████████████████████████████████████████████

*Id.* at § 1.1.

48.     According to USSM, ██████████████████████████████████

██████████████████████████████████████████████████████

██████████████████     Press Dep. Tr. at 179:9-13.

49.     On February 3, 2021, PIF made a $100,000,000 hard deposit into an escrow account in connection with the PIF Deal.  Rebibo Decl., Ex. H at BLK-USI-00000221.

50.     On March 9, 2021, USSM defaulted on the Mezz Loan Forbearance by failing to make any of the payments that became due after the deferral period, including the scheduled Deferred Monthly Debt Service Payment Amounts, Modification Fees, and Special Servicing Fees, adding to USSM's default for failing to pay Lender's expenses.  Rebibo Decl. at ¶¶ 30-31; Deposition Transcript of Daniel Levy, annexed to the Scharf Decl. as Ex. K ("Levy Dep. Tr."), at 34:18-20.

51.     At the same time, USI also defaulted on the Mortgage Loan Forbearance for failing to make payments based on the agreed upon schedule.  Rebibo Decl. at ¶ 32.



52.     ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████     Ashkenazy Dep. Tr. at 326:12-17.

53.     ████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████     Ashkenazy Dep. Tr. at 324:23-325:3.

54.     After USI and USSM defaulted on their respective forbearance agreements, they advised both Original Mortgage Lender and Mezz Lender that they were not going to fund their obligations in 2021 or inject capital.  Rebibo Decl. at ¶ 34.

55.     On March 10, 2021, having not received any payments on the Mortgage Loan Forbearance, Original Mortgage Lender issued a notice of default of the Mortgage Loan to USI. Rebibo Decl. at ¶ 41.

56.     On March 22, 2021, having not received any payments on the Mezz Loan Forbearance, Mezz Lender issued a notice of default of the Mezz Loan to USSM.  Rebibo Decl. at ¶ 42.

57.     On March 26, 2021, Wells Fargo sent a notice of default and loan acceleration to USI, demanding full payment of the outstanding debt under the Mortgage Loan.  Rebibo Decl., Ex. I at USDC_USSM_0001129.

58.      Rebibo Decl., Ex. J at USDC_Ashkenazy_00000629.

59.     Rebibo Decl. at ¶ 45.

60.     Rebibo Decl., Ex. K at USDC_USSM_0001151.

61.     On April 12, 2021, Original Mortgage Lender issued an additional notice of default to USI for failure to make deferral catch-up payments that were due on April 9.  Rebibo Decl. at ¶ 47.

62.     On the same day, USI made a formal written request to Original Mortgage Lender, via Wells Fargo as Special Servicer, to consent to the PIF Deal ("April 12 Consent Request"). Rebibo Decl., Ex. L.  No prior formal request to Original Mortgage Lender had been made.  Rebibo Decl. at ¶ 48.

63.     Aside from the requirement in the Contribution Agreement (*see supra* ¶ 46), the Mortgage Loan Agreement required USI to obtain written consent from Original Mortgage Lender on any change to USI's organizational structure before engaging in a "Transfer" as defined in the Mortgage Loan Agreement.  Mortgage Loan Agreement, Rebibo Decl., Ex. A-2, at § 4.2.12, Ex. A-3, at § 8.1(b).

64.     Original Mortgage Lender's consent was not assured or required to be given—the Mortgage Loan Agreement provided that Original Mortgage Lender's consent "shall not be reasonably withheld . . . provided that the following conditions are satisfied: . . . (ii) no Default or Event of Default shall have occurred and remain outstanding."  Rebibo Decl., Ex. A-3, at § 8.2.

65.     Because USI remained in default under the Mortgage Loan Agreement and Forbearance, Original Mortgage Lender was not obligated to consent to the PIF Deal.  Rebibo Decl. at ¶ 48.

66.     In the April 12 Consent Request, USI requested Original Mortgage Lender to

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████  Rebibo Decl., Ex. L at BLK-USI-00000212.

67.     The Contribution Agreement was never provided to Original Mortgage Lender for review or consideration.  Rebibo Decl. at ¶ 53.

68.     Mezz Lender was not included in or copied on the April 12 Consent Request to Original Mortgage Lender.  Rebibo Decl., Ex. L; Levy Dep. Tr. at 59:2-8.

69.     Neither the Original Mortgage Lender nor Wells Fargo had the authority to speak on behalf of Mezz Lender.  Rebibo Decl. at ¶ 57.

70.     Wells Fargo was engaged as the Special Servicer for the Mortgage Loan.  Rebibo Decl., Ex. A-1 at § 3.10.  Mezz Lender never engaged Wells Fargo to act as a special servicer for the Mezz Loan.  Rebibo Decl. at ¶ 57.

71.     Neither Wells Fargo nor Original Mortgage Lender provided the April 12 Consent Request to Mezz Lender or informed Mezz Lender of its existence.  Rebibo Decl. at ¶ 58.

72.     On April 26, 2021, Wells Fargo, as the Special Servicer for Original Mortgage Lender, responded to the April 12 Consent Request ("April 26 Response").  Rebibo Decl., Ex. P.

73.     In the April 26 Response, Wells Fargo provided that ███████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

*Id.* at BLK-USI-00000701.

74.     ████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ *Id.*

13

75.     Wells Fargo further noted that ████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████ *Id.*

76.     Mezz Lender was not copied on or included in the April 26 Response. *Id.*

77.     On April 29, 2021, USI sent a letter to Mezz Lender, ████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████ Rebibo Decl., Ex. Q.

78.     The April 29 letter did not attach any of the correspondence between USI and Wells

Fargo.  Rebibo Decl. at ¶ 70.

79.     The April 29 letter also did not request Mezz Lender's consent for the PIF Deal.

Rebibo Decl., Ex. Q.

80.     USI responded to the April 26 Response on May 3, 2021 ("May 3 Letter"),

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ Rebibo Decl., Ex.

R.

81.     Mezz Lender was not copied on or included in the May 3 Letter. *Id.*

82.     ████████████████████████████████████████████████████████████████

Levy Dep. Tr. at 83:11-13.

83.     ████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Ashkenazy Dep. Tr. at

326:12-17.

84.     ████████████████████████████████████████████████████████████████

████████████ Levy Dep. Tr. at 90:10-15.

85. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Press Dep. Tr. at 303:23-304:4.

86. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ Press Dep. Tr. at 303:23-304:4.

87. Mezz Lender never withheld consent for the PIF Deal because (1) Mezz Lender's consent was never requested and (2) consent was not withheld. Rebibo Decl. at ¶¶ 77, 80; Press Dep. Tr. at 211:7-14.

88. Even though USSM did not request Mezz Lender's consent, Mezz Lender encouraged Original Mortgage Lender to consent to the PIF Deal once Mezz Lender learned about the general parameters of what had been going on. Rebibo Decl. at ¶ 77.

89. On May 10, 2021, Rebibo emailed BlackRock, stating that ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rebibo Decl., Ex. S.

90. On May 10, 2021, PIF sent a letter to USI, informing USI that ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Rebibo Decl., Ex. T at BLK-USI-00001517 (emphasis added).

91. Mezz Lender was not copied on PIF's May 10 letter. Rebibo Decl. at ¶ 85.

92. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ Rebibo Decl., Ex. G-1 at § 1.1.

93.    ████████████████████████████████████████████████████

████████████████████████████████    Rebibo Decl. at ¶ 84.

**USI and USSM Refused To Pay Any of Their Obligations Under the Loan Agreements**

94.    USI's refusal to commit or raise capital to fund the Missed Deferral Catch-Up Payments did not instill confidence that USI and USSM were serious about meeting their obligations under the Mortgage and Mezz Loan Agreements.  Rebibo Decl. at ¶ 81.

95.    Over the course of 2021, neither USI nor USSM made additional payments under the Mortgage or Mezz Loans.  Rebibo Decl. at ¶ 93.

96.    On June 16, 2021, Mezz Lender noticed default to USSM for nonpayment under the Mezz Loan.  Rebibo Decl., Ex. V.

97.    On November 12, 2021, Mezz Lender provided USSM notice of default for failure to pay the obligations under the Mezz Loan Modification and accelerated the Mezz Loan, making the outstanding balance due and payable in full.  Rebibo Decl., Ex. W.

98.    On November 19, 2021, Original Mortgage Lender gave notice to Mezz Lender that it would conduct a foreclosure sale on the Mortgage Loan on January 6, 2022.  Rebibo Decl., Ex. X.

99.    The Mezz Loan was in danger of being foreclosed as a junior lien if the Original Mortgage Lender foreclosed on the Mortgage Loan before Mezz Lender could exercise its rights and remedies.  Rebibo Decl. at ¶ 97; Deposition Transcript of Jaesang Eum, annexed to the Scharf Decl. as Ex. H ("Eum Dep. Tr."), at 116:25-117:7.

100.    To protect its investment, Mezz Lender noticed and scheduled a foreclosure sale on the Mezz Loan for January 5, 2022—one day before the scheduled foreclosure on the Mortgage Loan.  Rebibo Decl. at ¶ 98.

16

101.    Around this same time period, Mezz Lender retained Cushman & Wakefield to market the Mezz Loan for sale and run the Uniform Commercial Code ("UCC") process for the scheduled Mezz Loan foreclosure of the USI Equity.  Rebibo Decl. at ¶ 99.

102.    Throughout December 2021, Mezz Lender and Original Mortgage Lender negotiated whether the lenders could find a possible transaction that would preclude the need to conduct the scheduled foreclosure sales.  Rebibo Decl. at ¶ 100.

103.    On December 20, 2021, after Mezz Lender and Original Mortgage Lender could not come to a different agreement, Mezz Lender provided Wells Fargo, as Special Servicer to Original Mortgage Lender, the requisite notice pursuant to Section 14(a) of the Intercreditor Agreement that Mezz Lender would purchase the Mortgage Loan at par value.  Rebibo Decl. at ¶ 101.

104.    On January 5, 2022, pursuant to the Intercreditor Agreement, Mezz Lender purchased the Mortgage Loan from the Original Mortgage Lender for approximately $358 million. Rebibo Decl. at ¶ 102.

105.    Mezz Lender and Original Mortgage Lender entered into an assignment and assumption agreement, dated January 5, 2022, to document the transaction (the "Assignment Agreement").  Rebibo Decl., Ex. Y.

106.    Section 3 of the Assignment Agreement provides that Mezz Lender, as the Assignee,



Rebibo Decl., Ex. Y at § 3 (emphasis added).

107.    By purchasing the Mortgage Loan, Mezz Lender became what is defined as a "Co-Lender" under the Mortgage Loan Agreement.  Rebibo Decl. at ¶ 92.

108.    "Co-Lender" is defined as a lender who purchases "all or any part of [Original Mortgage Lender's] right, title and interest in, and to, and under the [Mortgage] Loan."  Mortgage Loan Agreement, Rebibo Decl., Ex. A-4 at § 11.36(a)(i).

109.    Section 11.36(a)(ii) of the Mortgage Loan Agreement explicitly provides that "[t]he liabilities of [Original Mortgage] Lender and each of the Co-Lenders shall be several and not joint . . . .  Neither [Original Mortgage] Lender nor any Co-Lender shall be responsible for the obligations of any other Co-Lender."  *Id.* at § 11.36(a)(ii).

110.    Both the foreclosures for the Mortgage and Mezz Loans were canceled or adjourned to a later date as a result of Mezz Lender purchasing the Mortgage Loan from the Original Mortgage Lender.  Rebibo Decl. at ¶ 106.

**During Continuing Event of Default, Lender Held Consent Rights for all Leases**

111.    After Mezz Lender purchased the Mortgage Loan, USI and USSM continued to remain in an Event of Default for failure to pay obligations under the respective loans.  Rebibo Decl. at ¶ 110.

112.    Lender met with USI and USSM after canceling the January foreclosure sales in an attempt to find a resolution with the borrowers.  Rebibo Decl. at ¶ 107.  Rebibo negotiated with Levy and Ashkenazy for months to work toward a possible solution.  Rebibo Decl. at ¶ 108.

113.     At the same time, Mezz Lender was still marketing the Mezz Loan for sale and exploring other options, but working with the borrower was one of these options.  Rebibo Decl. at ¶ 107.

114.     Mezz Lender also considered finding a third party who could enter into a joint venture transaction with Mezz Lender if it completed a foreclosure on the USI Equity.  Rebibo Decl. at ¶ 109.

115.     With regard to Union Station, Lender had contractually granted rights relating to the operation and management of the station based on the borrowers' continued state of default.  Rebibo Decl. at ¶ 110.

116.     After purchasing the Mortgage Loan, Lender's consent was required before USI could make payments to vendors and third parties for the operation of Union Station.  USI gave Lender the requisite information and payment details required on a monthly basis, and Lender would approve those expenses to be released from the lockbox (source of collected rents and fees) for payment.  Rebibo Decl. at ¶ 112.

117.     Before extending or renewing an existing lease or entering a new lease, USI was required to have prior written consent from Lender during an Event of Default.  Rebibo Decl. at ¶ 113.

118.     Section 3.1 of the Assignment of Leases and Rents provides that Lender has the right to lease to tenants on commercially reasonable terms Lender deems proper during an Event of Default.  Rebibo Decl., Ex. B at § 3.1.

119.     Section 4.1.9(c) of the Mortgage Loan Agreement provides that "[a]ll Major Leases and all extensions or renewals thereof . . . executed after the Closing Date shall be subject to the

prior written consent of Lender, which approval shall not be unreasonably withheld, conditioned or delayed." Mortgage Loan Agreement, Rebibo Decl., Ex. A-2 at § 4.1.9(c).

120.     Similarly, Section 4.1.9(c) of the Mezz Loan Agreement provides that "[a]ll Major Leases and all extensions or renewals thereof . . . executed after the Closing Date shall be subject to the prior written consent of Lender." Mezz Loan Agreement, Rebibo Decl., Ex. A-2 at § 4.1.9(c); USSM RFA Responses, No. 8.

121.     Section 1.1 of the Mortgage and Mezz Loan Agreements defines "Major Lease" as including "any Lease which . . . (v) is entered into during the continuance of an Event of Default." Rebibo Decl., Exs. A-1 and C-1 at § 1.1; *see also* USSM RFA Responses, No. 9.

122.     In early 2022, Lender worked with USI on a joint leasing plan to approach the depressed market from the Covid pandemic. Rebibo Decl. at ¶ 118.

123.     The goal of the joint leasing plan was to ensure that deals were made with tenants to decrease the number of vacancies at the station and keep tenants open and operating. Rebibo Decl. at ¶ 119. With the lingering Covid effects, the parties were not going to commit to long-term leases at lower rents at that time. Rebibo Decl. at ¶ 120.

124.     USI, usually through Press, would bring proposed new leases or extensions of current leases to Lender for review and approval. Rebibo Decl. at ¶ 121.

**Cushman & Wakefield Continued To Market the Mezz Loan for Sale**

125.     Mezz Lender engaged Cushman & Wakefield for purposes relating to the Mezz Loan, namely to market the Mezz Loan for sale and prepare for foreclosure of the USI Equity. Rebibo Decl. at ¶ 132.

126.     Cushman & Wakefield offers additional services, including high-street retail and office leasing, property management, and assistance with foreclosure sales. Rebibo Decl. at ¶ 133.

127.     After Mezz Lender acquired the Mortgage Loan and cancelled the foreclosure sales in January 2022, Cushman & Wakefield continued to market the Mezz Loan for sale.  Rebibo Decl. at ¶ 134.

128.     Cushman & Wakefield also looked for a joint venture partner that could invest $50-100 million in Union Station and help manage the property with Mezz Lender.  *Id*.; Eum Dep. Tr. at 130:18-22.

129.     On January 20, 2022, Lender met with Cushman & Wakefield at Union Station to meet with prospective joint venture partners or acquirers of the Mezz Loan.  Rebibo Decl. at ¶ 136.

**Mezz Lender Talks With Amtrak About Purchasing the Mezz Loan**

130.     In case the negotiations about restructuring the Mortgage and Mezz Loans with USI and USSM were unsuccessful, Mezz Lender simultaneously met with third parties interested in acquiring the Mezz Loan or entering into a joint venture agreement with Mezz Lender.  The joint venture would allow Mezz Lender to foreclose on the loans with a partner who could operate Union Station immediately post-foreclosure.  Rebibo Decl. at ¶ 109; Eum Dep. Tr. at 156:20-157:8.

131.     Amtrak was a sub-tenant of certain space at Union Station when Amtrak approached Mezz Lender about possible opportunities for Amtrak.  Rebibo Decl., Ex. CC at AMTRAK_SDNY_0000839.

132.     ███████████████████████████████████████

███████████████████████████████████████

*Id*.

133.     ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████  *Id*.

21

134.   Before sharing information, Mezz Lender asked Amtrak to sign a confidentiality non-disclosure agreement (the "Amtrak NDA Agreement").  *Id.* at AMTRAK_SDNY_0000832.

135.   Mezz Lender explained that ███████████████████████████████████████ ███████████████████████████████████████████████████  *Id.*  at AMTRAK_SDNY_0000823.

136.   Amtrak refused to sign the Amtrak NDA Agreement, ██████████████████ ███████████████████████████████████████████████████████ ██████  *Id.* at AMTRAK_SDNY_0000821.

137.   ███████████████████████████████████████ ██████████████████████████████████  *Id.* at AMTRAK_SDNY_0000822.

138.   ███████████████████████████████████████ ███████████████████████  *Id.*

139.   ███████████████████████████████████████ ███████████████████████████████████████ ██████████████████████  *Id.* at AMTRAK_SDNY_0000821.

140.   Mezz Lender was interested in selling Amtrak a loan, not giving Amtrak confidential information that Amtrak could use to harm the Borrowers (USI or USSM) or Lender in any way.  Rebibo Decl. at ¶ 166.

141.   Given that Amtrak refused to sign the Amtrak NDA Agreement, Lender and Amtrak ceased discussions about the sale of the loans or other transactions involving Union Station.  Rebibo Decl. at ¶ 167.

**Amtrak Files a Declaration of Taking Over USI's Leasehold Interest
To Take the Property Interest by Eminent Domain**

142.    On January 28, 2022, days after the Amtrak NDA Agreement discussions folded, Amtrak sent notice to USI that they were going to conduct an appraisal of the Union Station leasehold.  Rebibo Decl. at ¶ 171.

143.    USI denied Amtrak access to financial information and property access for purposes of conducting Amtrak's proposed appraisal.  Levy Dep. Tr. at 218:6-10.

144.    Amtrak conducted an appraisal on the limited information and access available to Amtrak as a sub-tenant.  Rebibo Decl. at ¶ 173.

145.    Without prior notice to Lender, on April 14, 2022, Amtrak used the January 2022 limited appraisal of the Union Station leasehold to file an eminent-domain proceeding over USI's leasehold interest in Union Station in the U.S. District Court for the District of Columbia, indexed at *Nat'l R.R. Passenger Corp. (Amtrak) v. Sublease Interest Pertaining to Described Leasehold Interests at Washington Union Station, et al.*, 1:22-cv-01043-APM (D.D.C.) (the "Condemnation Action").  Rebibo Decl. at ¶ 176; USSM RFA Responses, No. 20.

146.    Lender, USI, and USSM are all named defendants in the Condemnation Action and are currently challenging Amtrak's authority to take the leasehold interest by eminent domain and the amount of just compensation deposited with the Court.  Rebibo Decl. at ¶ 178.

147.    Under Section 5.2.2 of the Mezz Loan Agreement, Mezz Lender has the exclusive right to make any compromise or settlement in a condemnation proceeding.   Mezz Loan Agreement, Rebibo Decl., Ex. C-1 at § 5.2.2.

148.    Section 5.2.2 provides:

> Condemnation. Borrower shall provide Lender with copies of any
> written notice received by Borrower or Mortgage Borrower of any
> actual or threatened Condemnation by any Governmental Authority
> of all or any part of the Property and shall deliver to Lender a copy

of any and all notices or papers served in connection with such Condemnation or related proceedings promptly upon obtaining knowledge thereof (Lender acknowledging that Borrower shall have complied with this covenant with respect to any Condemnation that is not a Material Condemnation if Borrower delivers or causes Mortgage Borrower to deliver such written notice to Lender by no later than the end of the calendar quarter in which Borrower or Mortgage Borrower first obtained such knowledge). Borrower may settle and compromise or may permit Mortgage Borrower to settle and compromise any Material Condemnation only with the prior consent of Lender (which consent shall not be unreasonably withheld or delayed) and Lender shall have the opportunity to participate, at Borrower's reasonable cost and expense, in any applicable litigation or proceeding and settlement discussions in respect thereof and Borrower shall from time to time deliver or shall cause Mortgage Borrower from time to time to deliver to Lender all instruments reasonably requested by Lender to permit such participation. Borrower shall, at its cost and expense, diligently prosecute or cause Mortgage Borrower to diligently prosecute any such litigations or proceedings, and shall consult with Lender, its attorneys and experts, and cooperate with them in the carrying on or defense of any such litigations or proceedings. Subject to the rights of Mortgage Lender under the Mortgage Loan Documents, <u>Lender is hereby irrevocably appointed to act after the occurrence and during the continuance of an Event of Default as Borrower's attorney-in-fact, coupled with an interest, with exclusive power to collect, receive and retain any Award and to make any compromise or settlement in connection with any Material Condemnation.</u> Notwithstanding any Condemnation, Borrower shall continue to pay the Debt at the time and in the manner provided for in this Agreement, the Note and the other Loan Documents and the Debt shall not be reduced until any Net Liquidation Proceeds After Debt Service shall have been actually received and applied by Lender, after the deduction of expenses of collection, to the reduction or discharge of the Debt. Lender shall not be limited to the interest paid on the Award by any Governmental Authority, but shall be entitled to receive out of the Net Liquidation Proceeds After Debt Service interest at the rate or rates provided herein or in the Note. If any portion of the Property is taken by any Governmental Authority, Borrower shall cause Mortgage Borrower to promptly commence and diligently prosecute to completion the Restoration of the Property and otherwise comply with the provisions of Section 5.3 of the Mortgage Loan Agreement. Subject to the rights of Mortgage Lender under the Mortgage Loan Documents, if the Property is sold, through foreclosure or otherwise, prior to the receipt by Lender of the Award, Lender shall have the right, whether or not a deficiency

24

> judgment on the Note shall have been sought, recovered or denied, to receive the Award or a portion thereof sufficient to pay the Debt in full.

*Id.* (emphasis added); *see also* USSM RFA Responses, No. 19.

149.    The "Debt" Borrower must continue to pay in Section 5.2.2 is defined by the Mezz

Loan Agreement as including the outstanding principal, as well as the interest accrued (including

default interest), any applicable fees, and all other sums due to Lender under the corresponding

loan agreement or other loan document.  Mezz Loan Agreement, Rebibo Decl., Ex. C-1 at § 1.1.

150.    The Mezz Loan Agreement defines "Material Condemnation" as:

> a Condemnation (a) in which more than fifteen percent (15%) of the land constituting the Property is taken, (b) in which any land taken is located on any portion of the Property other than along the perimeter or periphery thereof, (c) in which any portion of the Improvements is taken, (d) the proffered Award for which, or the anticipated amount of any settlement or compromise of which, exceeds one percent (1%) of the original principal amount of the Loan, or (e) which results in the amount of parking at the Property not being in compliance with Legal Requirements, the REA and each Major Lease.

*Id.* at § 1.1.

151.    Corresponding provisions are found in the Mortgage Loan Agreement.  Mortgage

Loan Agreement, Rebibo Decl., Ex. A-1 at § 1.1, Ex. A-3 at § 5.2.2.

152.    The term "Property" referred to in Section 5.2.2 refers back to the Mortgage Loan

Agreement and is defined as the land and improvements encumbered by the Security Instrument,

i.e. the leasehold interest held by USI.  Mortgage Loan Agreement, Rebibo Decl., Ex. A-1 at § 1.1.

153.    At the time of the filing of the Condemnation Action, USSM was in default under

the Mezz Loan Agreement.  USSM RFA Responses, No. 21.

154.     Pursuant to Section 5.2.2 of the Mezz Loan Agreement, Mezz Lender sent notice to all relevant parties that Mezz Lender had the exclusive power to make any compromise or settlement in connection with the Condemnation Action.  Rebibo Decl. at ¶ 183.

155.     USSM and its beneficial owner, Ashkenazy (who also served as manager for USI before being replaced in May 2022), ignored Lender's exclusive rights to settle the Condemnation Action.  Rebibo Decl. at ¶ 184.

**Faced With Continued Resistance, Mezz Lender Exercises its Rights and Remedies**

156.     On May 13, 2022, Mezz Lender sent three notices that Mezz Lender was exercising its rights under the Pledge Agreement.  Rebibo Decl. at ¶ 185.

157.     The first notice (the "Section 8(a) Notice") notified USSM that Mezz Lender was exercising its rights pursuant to Section 8(a) of the Pledge Agreement ███████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████  Rebibo Decl., Ex. DD at 2; Pledge Agreement, Rebibo Decl., Ex. D at § 8(a).

158.     ███████████████████████████████████████████████ ████████████████████████████████Press Dep. Tr. at 157:2-8.

159.     USSM refused to register the USI Equity in Mezz Lender's name.  Rebibo Decl. at ¶ 187.

160.     The second notice (the "Section 9(a) Notice") notified USSM that Mezz Lender was employing its rights pursuant to Section 9(a) of the Pledge Agreement ██████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████Rebibo Decl., Ex. EE at 2; Pledge Agreement, Rebibo Decl., Ex. D at § 9(a).

161.     As part of its exercise of rights, Mezz Lender amended the Second Amended and Restated Limited Liability Company Agreement of USI to appoint William H. Henrich of Getzler Henrich & Associates as the new manager for USI.  Rebibo Decl., Ex. EE at 2.

162.     In so doing, Mezz Lender notified Ashkenazy that he was no longer the manager of USI and demanded that USSM turn over all corporate books and records to Henrich.  *Id.*

163.     USSM ignored the Section 9(a) Notice and refused to give Mezz Lender the ability to exercise voting, managerial, consensual, and other powers of ownership pertaining to USI. Rebibo Decl. at ¶ 188.

164.      Press Dep. Tr. at 269:22-270:2.

165.     On May 26, 2022, Henrich emailed Press Rebibo Decl., Ex. GG.

166.     In response, Press emphasized that *Id.*

167.     Press Decl. Tr. at 280:2-5.

168.     When Ashkenazy was the manager of USI, USI would send invoices and payment information to Lender, who then approved the expenses and released money form the lockbox account controlled by Ashkenazy.  Rebibo Decl. at ¶ 198.

169.     Press Dep. Tr. at 270:19-22.

170. ███████████████████████████████████████████

███████████████████████████████████████████████ Press Dep. Tr. at

315:13-18.

171.    USSM refused to cooperate with and provide critical financial information to Mezz

Lender so Mezz Lender could open a new operating account to pay Union Station expenses

directly.  Rebibo Decl. at ¶ 199.

172. ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████  Press Dep. Tr. at 271:19-23.

173.    USSM also interfered with Mezz Lender's ability to manage Union Station by

refusing to recognize Mezz Lender's role in controlling the USI Equity.  Rebibo Decl. at ¶ 200.

174.    After receiving the Section 9(a) Notice, USSM continued to misrepresent its

involvement with Union Station to third parties, obstructing Mezz Lender's ability to manage the

station.  *Id.*

175. ██████████████████████████████████  Press Dep. Tr. at

313:23-25.

176. ███████████████████████████████████████████

██████████████████████████████████████████  Press Dep. Tr.

at 314:20-23.

177. ███████████████████████████████████████████

███████████  Press Dep. Tr. at 270:3-7.

178.    Mezz Lender and Henrich tried to change the property manager from JLL to another manager because JLL refused to cooperate with the new management.  Eum Dep. Tr. at 135:25-136:8.

179.    Amtrak raised the attempted change in property management to the Court in the Condemnation Action, and Mezz Lender agreed to maintain JLL as the property management company.  Rebibo Decl. at ¶ 203.

180.        Press Dep. Tr. at 161:4-13.

181.    Press Dep. Tr. at 161:14-19.

182.    The third notice (the "Attorney-in-Fact Notice") notified USI that Mezz Lender was exercising its rights as attorney-in-fact pursuant to Section 13 of the Pledge Agreement.  Rebibo Decl., Ex. HH at 2; Pledge Agreement, Rebibo Decl., Ex. D at § 13.

183.    USSM did not acknowledge Mezz Lender's right to act as attorney-in-fact.  Rebibo Decl. at ¶ 205.

184.    On May 13, 2022, Mezz Lender also provided notice to the relevant parties that Mezz Lender would foreclose on the Mezz Loan (the "Foreclosure Sale Notice").  Rebibo Decl., Ex. II at p. 2.

185.    Section 9(a)-(b) of the Pledge Agreement provides Mezz Lender the right to foreclose on the Mezz Loan:

> (a)    If an Event of Default shall occur and be continuing, Lender may, in addition to all other rights and remedies granted in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Debt:

> (i) <u>exercise all rights and remedies of a secured party under the [Uniform Commercial] Code</u> (whether or not said Code is in effect in the jurisdiction where the rights and remedies are asserted) and such additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted . . .
>
> (b) Without limiting the generality of the foregoing, if an Event of Default shall occur and be continuing, <u>Lender . . . may forthwith sell, assign, give option or options to purchase or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales.</u> . . .  Lender shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption of Pledgor [i.e., USSM], which right or equity of redemption is hereby waived or released.

Pledge Agreement, Rebibo Decl., Ex. D at §§ 9(a)-(b) (emphasis added); *see also* USSM RFA

Responses, No. 12.

  186. The Mezz Loan Agreement also refers to Mezz Lender's right to foreclose,

providing that:

> (a) <u>Upon the occurrence of an Event of Default</u> (other than an Event of Default described in Section 10.1(f), (g) or (h) above) and at any time thereafter while any such Event of Default is continuing, <u>Lender may, in addition to any other rights or remedies available to it pursuant to this Agreement and the other Loan Documents or at law or in equity,</u> take such action, without notice or demand, that Lender deems advisable to protect and enforce its rights against Borrower and in and to the Collateral, including, without limitation, <u>declaring the Debt to be immediately due and payable, and Lender may enforce or avail itself of any or all rights or remedies provided in the Loan Documents and may exercise the rights and remedies of a secured party under the UCC against Borrower and the Collateral, including, without limitation, all rights or remedies available at law or in equity;</u> and upon any Event of Default described in Section 10.1(f), (g) or (h) above, the Debt shall immediately and automatically become due and payable, without notice or demand, and Borrower hereby expressly waives any such notice or demand,

anything contained herein or in any other Loan Document to the
contrary notwithstanding.

Mezz Loan Agreement, Rebibo Decl., Ex. C-2 at § 10.2(a) (emphasis added); *see also* USSM RFA

Responses, No. 13-14.

187.   USSM did not respond to the Foreclosure Sale Notice.  Rebibo Decl. at ¶ 209.

188.   ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████   Press Dep. Tr. at 159:20.

189.   On May 19, 2022, Henrich filed an answer in the Condemnation Action on behalf
of USI.  *See* USI Answer, Condemnation Action, ECF Doc. No. 36.

190.   Even though Mezz Lender had exercised its rights under the Pledge Agreement,
USSM had its counsel file papers in the Condemnation Action on behalf of USI.  Press Dep. Tr.
at 313:7-13; USI and USSM's Answer, Condemnation Action, ECF Doc. No. 38.

191.   On May 20, 2022, Press emailed Beverley K. Swaim Staley, the President of Union
Station Redevelopment Corp. ("USRC"), USI's landlord, stating:



Rebibo Decl., Ex. FF.

192.   USSM and USI had their counsel file a motion to strike the answer filed by Henrich
on behalf of USI.  Press Dep. Tr. at 317:21-25; Motion to Strike, Condemnation Action, ECF Doc.
No. 55.

**Lender Forecloses on the Mezz Loan**

193.    The Foreclosure Sale Notice explained that the foreclosure sale was scheduled for June 14, 2022 (the "Foreclosure Sale").   Foreclosure Sale Notice, Rebibo Decl., Ex. II at USDC_USSM_0012092.

194.    Along with the notices sent to USSM on May 13, 2022, Lender made reference to the upcoming Foreclosure Sale in its answer in the Condemnation Action.   *See* Answer, Condemnation Action, ECF Doc. No. 35 at ¶ 19.

195.    The Foreclosure Sale was conducted by Cushman & Wakefield, as the marketing and sales agent.  Rebibo Decl. at ¶ 212.

196.    Cushman & Wakefield marketed the upcoming sale in publications like the *New York Times*, the *Washington Post*, and various commercial real estate news sources.  Rebibo Decl., Ex. JJ at 13:1-9; Rebibo Decl., Ex. JJ-4 at pp. 3-15.

197.    Leading up to the sale, 134 confidentiality agreements were approved to view the documents.  Rebibo Decl., Ex. KK at p. 3.

198.    Of the parties signing confidentiality agreements, 70 viewed materials on the data site.  Rebibo Decl., Ex. JJ at 15:1-3.

199.    ██████████████████████████████████████████ Press Dep. Tr. at 165:9-11.

200.    ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ Press Dep. Tr. at 320:8-16.

201.    On June 14, 2022, the Foreclosure Sale was held as planned.  Rebibo Decl., Ex. JJ at 15:14-21.

202.    USSM did not attend the Foreclosure Sale.  Rebibo Decl. at ¶ 217.

203.    At the beginning of the proceedings, the coordinator of the sale addressed that USSM had not obtained an injunction order from a court or filed for bankruptcy to preclude the sale from proceeding.  *See* Foreclosure Tr., Rebibo Decl., Ex. JJ at 4:13-25.

204.     Press Dep. Tr. at 164:17-165:2; USSM RFA Responses, No. 18.

205.    Press Dep. Tr. at 165:3-5.

206.    Press Dep. Tr. at 165:6-8; USSM RFA Responses, No. 16.

207.    Lender was the only qualified purchaser at the Foreclosure Sale and purchased the USI Equity for $140,535,334.53, the same amount of the outstanding debt on the Mezz Loan at the time.  Rebibo Decl., Ex. JJ at 18:19-24.

208.    After the conclusion of the Foreclosure Sale, Lender assigned its interests in the USI Equity to Union Station Sub.  Rebibo Decl., Ex. LL at § 1; Rebibo Decl., Ex. MM at § 3.

209.    The Memorandum of Sale is signed by Union Station Sub, dated June 14, 2022. Rebibo Decl., Ex. NN at KTB_0000597.

210.    The following day, Mezz Lender notified all relevant parties, including USSM, about the change in management and control of USI from USSM to Union Station Sub (the "Disposition Notice").  Rebibo Decl., Ex. OO at KTB_0000631.

211.    In the Disposition Notice, Union Station Sub is listed as the new owner of the USI Equity.  *Id.*

212. 

Press Dep. Tr. at 170:4-8.

213.

Press Dep. Tr. at 170:9-13.

**USSM Refused To Recognize the Foreclosure Sale**

214.    Consistent with USSM's refusal to recognize the exercise of Mezz Lender's rights under the Mezz Loan and Pledge Agreements, USSM refused to acknowledge the results of the Foreclosure Sale and that USSM no longer owned the USI Equity.  Rebibo Decl. at ¶ 224.

215.    USSM and Ashkenazy argued to the Court in the Condemnation Action that Lender's rights and remedies during default were limited due to the pending condemnation proceeding.  *See* Memorandum of Law in Support of Defendants USI and USSM's Motion to Strike, Condemnation Action, ECF Doc. No. 55-1 at pp. 12-17.

216.    USSM and Ashkenazy reiterated these arguments on Reply to the Motion to Strike, claiming that the Foreclosure Sale had "no effect given the pendency of this action."  *See* Memorandum of Law in Further Support of Defendants USI and USSM's Motion to Strike, Condemnation Action, ECF Doc. No. 60 at fn.5.

217.    Both the Mezz Loan and Pledge Agreements contain explicit provisions that Mezz Lender's rights are cumulative.  *See* Mezz Loan Agreement, Rebibo Decl., Ex. C-2 at §§ 10.2(a), 10.4; Pledge Agreement, Rebibo Decl., Ex. D at §§ 9(a)-(b).

218.    Section 10.4 of the Mezz Loan Agreement states in relevant part:

> The rights, powers and remedies of Lender under this Agreement shall be cumulative and not exclusive of any other right, power or remedy which Lender may have against Borrower [i.e., USSM] pursuant to this Agreement or the other Loan Documents, or existing at law or in equity or otherwise.

Mezz Loan Agreement, Rebibo Decl., Ex. C-2 at § 10.4 (emphasis added).

219.    Section 9(a)-(b) of the Pledge Agreement states in relevant part:

(a)    If an Event of Default shall occur and be continuing, Lender may, <u>in addition to all other rights and remedies granted in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Debt</u>:

(i)    <u>exercise all rights and remedies of a secured party under the [Uniform Commercial] Code</u> . . .

(b)    <u>Without limiting the generality of the foregoing</u>, if an Event of Default shall occur and be continuing, Lender . . . may forthwith sell, assign, give option or options to purchase or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales. . . .

Pledge Agreement, Rebibo Decl., Ex. D at §§ 9(a)-(b) (emphasis added).

220.    The Condemnation Action concerns the leasehold interest held by USI—collateral under the Mortgage Loan, not the Mezz Loan.  Rebibo Decl. at ¶ 230.

221.    Since the Foreclosure Sale, USSM has repeatedly misrepresented to JLL, vendors, the court in the Condemnation Action, the press, and other third parties that USSM has the authority to speak on behalf of USI.  Rebibo Decl. at ¶ 231.

222.     Press Dep. Tr. at 159:24-160:2.

223.    Press Dep. Tr. at 313:14-18.

35

224.   USSM interfered with Lender's ability to pay the bills, insurance, and utilities at Union Station, forcing Lender to circumvent USSM's involvement and make direct payments to the third parties.  Rebibo Decl. at ¶ 233.

225.   On June 23, 2022, Ashkenazy's counsel sent a letter to Lender's counsel, stating that ██████████████████████████████████████████████████████ ████████████████████████████████████████████████  Rebibo Decl., Ex. PP.

## USSM's Interference Forced Lender To Bring This Lawsuit

226.   On August 4, 2022, Lender filed this lawsuit, seeking a single claim for a declaratory judgment to determine the effect of Lender's exercise of rights and remedies provided under the Mezz Loan and Pledge Agreements.  Complaint, ECF Doc. No. 1, Scharf Decl., Ex. A.

227.   With the complaint, Lender filed an order to show cause for a preliminary injunction to enjoin USSM from holding itself out as the owner or otherwise in control of USI. Scharf Decl. at ¶ 3.

228.   On August 23, 2022, the Court held a preliminary injunction hearing with the parties.  Scharf Decl., Ex. B.

229.   At the hearing, USSM argued that the Foreclosure Sale had no legal effect, characterizing the marketing efforts and public UCC sale as "prepar[ing] papers." *Id.* at 17:10.

230.   On August 25, 2022, the Court entered the Preliminary Injunction Order enjoining USSM from

> holding itself out as the owner or in control of [USI]; (2) exercising or purporting to exercise any contractual or other legal right of USI; (3) collecting, transferring, seizing, or directing the transfer of any assets or liabilities of USI; and (4) impeding the collection or transfer of any assets to USI that are owed to it.

Scharf Decl., Ex. C.

231.     Mezz Lender has only been able to exercise management and control over USI after this Court issued the Preliminary Injunction Order enjoining USSM from holding itself out as owner of USI in August 2022.  Rebibo Decl. at ¶ 237.

232.     

Press Dep. Tr. at 281:10-13.

233.

Press Dep. Tr. at 282:12-16.

234.     On September 19, 2022, USSM filed its answer, raising eight affirmative defenses. Scharf Decl., Ex. D.

235.     On November 23, 2022, Lender filed a motion for summary judgment pre-discovery.  ECF Doc. Nos. 55-58.

236.     On January 4, 2023, the Court denied Lender's motion for summary judgment, allowing discovery.  Scharf Decl., Ex. E at 13:20-14:1.

237.     Neither USSM nor USI have made a payment on their debt owed to Lender since May 2020.  Rebibo Decl. at ¶¶ 93, 238.

238.     Press Dep. Tr. at 198:10-12.

239.     The debt outstanding on the Mortgage and Mezz Loans, including principal, default interest, and fees (including attorneys' fees), amounts to more than $560 million.  Rebibo Decl. at ¶ 238.

**USSM's Affirmative Defenses Lack Merit and Should Be Dismissed**

240.     Of USSM's eight affirmative defenses, only one contains factual allegations. Scharf Decl., Ex. D, at p. 31.

37

241.    USSM's third affirmative defense broadly alleges that Lender's claims are "barred by its own breach of contract, unclean hands, bad faith, and other culpable conduct." *Id.* The alleged specifics provided in this affirmative defense include: (a) Lender's purported interference with USSM's efforts to refinance the Mortgage and Mezz Loans; (b) Lender's purported misconduct that was designed to deprive USSM of its claimed rights to participate in the condemnation award of a different proceeding above the amounts required to repay the Mortgage and Mezz Loans; (c) "Kookmin's predecessor-in-interest" purportedly unreasonably denying consent to the PIF Deal; (d) Lender's purported interference with the management of Union Station and existing and prospective contractual relationships by (i) instructing real estate brokers to not negotiate or speak with USSM representatives and (ii) by meeting with existing and prospective tenants in connection with commercial leasing at Union Station. *Id.*

### a.    <u>Mezz Lender Did Not Interfere With the PIF Deal</u>

242.    USSM's allegations about the denial of consent for the PIF Deal are detailed in Ashkenazy's Declaration in Opposition of Summary Judgment, dated December 14, 2022, ECF Doc. No. 69 at ¶¶ 19-26.

243.    Around the same time USI first sought consent from Original Mortgage Lender, Mezz Lender had been in discussions with Wells Fargo and BlackRock about how to restructure the Mortgage and Mezz Loans to avoid Original Mortgage Lender from conducting a mortgage foreclosure sale, which would foreclose the Mezz Loan as a junior lien.  Rebibo Decl. at ¶ 59.

244.    BlackRock asked Mezz Lender to prepare a proposal that included a mezzanine foreclosure sale.  Rebibo Decl. at ¶ 59.

245.    The proposals suggested that Mezz Lender would foreclose on the Mezz Loan and inject capital contributions to bring Original Mortgage Lender current on all its past due interest, pay it modification and special servicing fees, and then fund projected shortfalls to Original

Mortgage Lender for a period of time since the leasehold interest was not producing enough cash flow to pay the Mortgage Loan debt current.  Rebibo Decl. at ¶ 60.

246.    Mezz Lender's interest in conducting a mezzanine foreclosure sale at the time was limited to finding a way to reinstate the Mortgage Loan and avoid the Mezz Loan from being foreclosed as a junior lien in a mortgage foreclosure.  Rebibo Decl. at ¶ 61.

247.    On April 21, 2021, BlackRock responded to Mezz Lender's proposal with comments, ██████████████████████████████████████████████████ ███████████████████████████████████████████ Rebibo Decl., Ex. O at BLK-USI-00000680.  BlackRock stated that ████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████ *Id.*

248.    ████████████████████████████████████████████████ ████████████████████████████████ Levy Dep. Tr. at 97:8-14.

249.    The PIF Deal collapsed because USI could not obtain written consent from the Original Mortgage Lender prior to the Closing Date.  Rebibo Decl. at ¶ 82.

250.    On May 21, 2021, USI wrote a letter to Wells Fargo, as Special Servicer for the Mortgage  Loan, ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████  Rebibo Decl., Ex. U at BLK-USI-00001514 (emphasis added).

251.    USI alleged that ████████████████████████████████████ ████████████████████████████████████████████████████████████



*Id.* (emphasis added).

252.     USI further claimed that ████████████████████████████████

*Id.* at BLK-USI-00001515 (emphasis added).

253.     ████████████████████████████████████████████

████████████████████████████████ Ashkenazy Dep. Tr. at 224:8-10.

254.     Consistent with the prior correspondence between USI and Original Mortgage Lender in this matter, Mezz Lender was not copied on the May 21 Letter.  Rebibo Decl., Ex. U at BLK-USI-00001514.

255.     ████████████████████████████████████████

████████████████████████████ Press Dep. Tr. at 211:7-14.

256.     ████████████████████████████████████████

████████████ Press Dep. Tr. at 217:11-16.

257.     ████████████████████████████████████████

████ Press Dep. Tr. at 217:22-25; Levy Dep. Tr. at 106:5-8.

258.     ████████████████████████████████████████

████████ Levy Dep. Tr. at 106:23-107:3.

259.     ████████████████████████████████████████

██████████████████████ Press Dep. Tr. at 217:7-10.

260.  ████████████████████████████████████████████ Levy
Dep. Tr. at 105:4-6; Rebibo Decl. at ¶ 76.

261.   There are no facts showing Lender's interference with USI's ability to close on the PIF Deal that can preclude summary judgment.

### b. Mezz Lender Did Not Hire Real Estate Brokers For Leasing or Property Management Services

262.   USSM's allegations about Mezz Lender's purported relationships with real estate brokers stem from Levy's Declaration in Opposition of Lender's Summary Judgment Motion, dated December 14, 2022, ECF Doc. No. 68, at ¶¶ 7-9 ("Levy Summary J. Decl.").  Vague assertions also appear in the Joe Press's Declaration in Opposition of Lender's Summary Judgment Motion, dated December 14, 2022, ECF Doc. No. 67, at ¶¶ 19, 21 ("Press Summary J. Decl.").

263.   Mezz Lender never instructed real estate brokers to not negotiate or speak with USSM or its affiliates.  Rebibo Decl. at ¶ 131.

264.   Mezz Lender did not retain Cushman & Wakefield in any leasing or property management capacity before Mezz Lender acquired the USI Equity through the Foreclosure Sale. Rebibo Decl. at ¶ 135.

265.  ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████ Press Dep. Tr. at 39:4-22, 114:2-5.

266.  ████████████████████████████████████████
████ Press Dep. Tr. at 88:8-10.

267. ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████  Press Dep. Tr. at 134:15-19.

268. ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████  Levy Dep. Tr. at 112:3-18, 114:8-12.

269. ████████████████████████████████  Levy Dep. Tr. at 112:19-25.

270. ██████████████████████████████████████████

████████████████████  Press Dep. Tr. at 88:8-10.

271.     Mezz Lender met with Cushman & Wakefield on January 20, 2022 at Union Station to meet with prospective joint venture partners or acquirers of the Mezz Loan.  Rebibo Decl. at ¶ 136.

272.     Lender worked with USI to schedule the property tour and conference room space for the January 20 meeting.  Rebibo Decl. at ¶ 139.

273.     The meeting agenda for the meeting included time for a property tour, presentation from Cushman & Wakefield for leasing and property management, ████████████████████████

████████████████████████████████████████████████████

██████████████████████████████  Rebibo Decl., Ex. BB.

274.     The  meetings  with  third  parties  ████████████████████████████████

████████████████████████████████████  were in connection with a possible sale of the Mezz Loan or joint venture transaction with Lender.  Rebibo Decl. at ¶ 138.

275.     Prior to the meetings, each of the entities toured the property with Press or other members of USI or Ashkenazy.  *Id.*

276.     ███████████████████████████████████████████

███████████████████████████████ Press Dep. Tr. at 253:23-25.

277.     ███████████████████████████████████████████

██████████████████████████████ Press Dep. Tr. at 254:10-14.

278.     At the meeting in the conference room, Cushman & Wakefield pitched their leasing and property management services to Lender, but Lender did not execute an agreement with Cushman & Wakefield for leasing activity or property management.  Rebibo Decl. at ¶ 141.

279.     ███████████████████████████████████████████

███████████████████████████████████████████

Press Dep. Tr. at 88:25-90:6, 94:22-95:3.

280.     Cushman & Wakefield was not marketing Union Station for retail space to tenants. Eum Dep. Tr. at 151:12-19.

281.     Mezz Lender never directed Cushman & Wakefield to bring new tenants into the station.  Rebibo Decl. at ¶ 142

282.     Cushman & Wakefield did not present new leases to or negotiate existing lease extensions for Lender or USI.  *Id.*; Eum Dep. Tr. at 151:20-24, 160:10-14.

283.     ███████████████████████████████████████████

███████████████████████████████████ Press Dep. Tr. at 119:7-15.

284.     At the time of the January 20 meeting, and up until Mezz Lender exercised its rights under the Pledge Agreement in May 2022, JLL remained the property manager for Union Station. Rebibo Decl. at ¶ 145.

285.    At the end of May 2022, Mezz Lender confirmed that it would maintain JLL as the property manager for the station.  Rebibo Decl. at ¶ 146.

286.     Press Dep. Tr. at 107:6-9.

287.    Press Dep. Tr. at 107:12-14.

288.    There are no facts showing Mezz Lender's interference with management at Union Station through real estate brokers—whether Cushman & Wakefield or otherwise—to preclude summary judgment.

c.  **Mezz Lender Did Not Interfere With Existing or Prospective Tenant Relationships**

289.    USSM alleges that Lender met with prospective and existing tenants about commercial leasing, thereby interfering with USI's management of Union Station.  Answer, ECF Doc. No. 45, Scharf Decl., Ex. D at p. 31.  The specifics of these allegations are outlined in the Levy Summary J. Decl. at ¶¶ 3-6, 9 and Press Summary J. Decl. at ¶¶ 22-23.

290.    At the January 20, 2022 meeting, Mezz Lender met with some of the third parties interested in purchasing the Mezz Loan or entering into a joint venture transaction, including a museum entity and Sage Hospitality.  Rebibo Decl. at ¶ 151.

291.     Press Dep. Tr. at 39:4-14.

292. 

Press Dep. Tr. at 60:10-13.

293.

Press Dep. Tr. at 56:24-57:9.

294.

Press Dep. Tr. at 56:24-57:9, 75:24-76:3.

295.

Press Dep. Tr. at 84:3-5.

296. on

January 20, 2022, Mezz Lender met with a different non-for-profit museum that was interested in acquiring a portion of the Mezz Loan or entering into a structured joint venture with Mezz Lender. Rebibo Decl. at ¶¶ 150-151.

297. 

Press Dep. Tr. at 52:17-19.

298.

Press Dep. Tr. at 52:17-19, 77:18-23.

299.    Mezz Lender did not discuss leasing terms with the museum entity.  Rebibo Decl. at ¶ 152.

300.    The conversation with the museum concerned solely purchasing the Mezz Loan from Mezz Lender or entering into a joint venture transaction with Mezz Lender to operate Union Station together after a foreclosure of the USI Equity.  Rebibo Decl. at ¶ 152.

301.    Mezz Lender did not end up selling the Mezz Loan or entering into a joint venture arrangement with the museum entity.  Rebibo Decl. at ¶ 153.

302.   On January 20, 2022, Mezz Lender also met with Sage Hospitality, ███████ ███████████████, about acquiring the Mezz Loan in a joint venture.  Rebibo Decl. at ¶ 155.

303.   Mezz Lender did not discuss leasing terms with Sage Hospitality because the conversation concerned solely purchasing the Mezz Loan or entering into a joint venture arrangement.  Rebibo Decl. at ¶ 156; Eum Dep. Tr. at 153:10-14.

304.   ████████████████████████████████████ ██████████████████████████  Rebibo Decl. at ¶ 154.

305.   Rebibo told Levy about how Mezz Lender was meeting with Sage Hospitality about Union Station.  Rebibo Decl. at ¶ 156.

306.   ████████████████████████████████████ █████████████████  Levy Dep. Tr. at 132:16-23.

307.   ████████████████████████████████████ ███████████████████████████████  Press Dep. Tr. at 77:13-16.

308.   ████████████████████████████████████ ████████████  Press Dep. Tr. at 62:4-12.

309.   ████████████████████████████████████ █████████████████  Levy Dep. Tr. at 118:19-22.

310.   ████████████████████████████████████ ████████████████████████  Press Dep. Tr. at 62:4-12.

311.   ████████████████████████████████████ ████████████████████████  Press Dep. Tr. 83:5-13.

312. ██████████████████████████████████████████

Press Dep. Tr. at 75:20-23.

313. ██████████████████████████████████████████

████████ Press Dep. Tr. at 83:23-84:2.

314. ██████████████████████████████████████████

██████████ Levy Dep. Tr. at 131:5-9.

315.     Rebibo also told Levy about the Amtrak NDA Agreement and how Amtrak refused to sign the standard confidentiality language.  Rebibo Decl. at ¶ 168.

316.     Mezz Lender did not discuss leasing arrangements or modifications with Amtrak. Rebibo Decl. at ¶ 169.

317. ██████████████████████████████████████████

████████████████████████████ Levy Dep. Tr. at 223:3-6.

318. ██████████████████████████████████████████

████████████████████████████████████████████

██████████████ Levy Dep. Tr. at 140:4-20.

319. ██████████████████████████████████████████

████████ Levy Dep. Tr. at 138:18-139:2.

320. ██████████████████████████████████████████

████████████████████████████████████████████

Levy Dep. Tr. at 150:18-25.

321. ██████████████████████████████████████████

██████████████████ Levy Dep. Tr. at 151:6-14.

322.    The kind of transaction Amtrak was seeking with Mezz Lender could not be offered by USI or USSM—namely the sale of the loans.  Rebibo Decl. at ¶ 160.

323.    

Levy Dep. Tr. at 170:23-171:8.

324.

Levy Dep. Tr. at 153:16-22.

325.

Levy Dep. Tr. at 108:18-25.

326.                                                    Press Dep. Tr. at 43:23-44:11.

327.

Press Dep. Tr. at 48:13-16.

328.

Levy Dep. Tr. at 127:10-13.

329.

Press Dep. Tr. at 86:15-25.

330.    Mezz Lender discussed prospective tenants collectively with USI.  Other than meetings regarding the sale of the Mezz Loan, Lender did not participate in any meetings with potential or existing tenants without someone from USI or USSM present.  Rebibo Decl. at ¶ 170.

331.    In February 2022, USI requested Lender's consent for two new leases: █████

████████████████████████████████████████████████████████████████

███████    Rebibo Decl., Ex. Z; Press Dep. Tr. at 223:3-11.

332.    ██████████████████████████████████████████████████Press

Dep. Tr. at 223:18-22.

333.    ██████████████████████████████████████████████

████████████████████████████████████████████████████

Rebibo Decl., Ex. Z.

334.    ██████████████████████████████████████████████

█████████████████████████████████    Press Dep. Tr. at 130:22-

131:3.

335.    Based on the joint leasing plan developed with USI, Lender did not approve the

new leases for Pick N Bite and Land of Beer/Wine.  Rebibo Decl. at ¶ 126.

336.    ████████████████████████████████████████████    Press Dep.

Tr. at 127:12.

337.    ████████████████████████████████████████████████

██████████████████████████████████    Press Dep. Tr. at 137:11-13, 137:17-

21.

338.    ██████████████████████████████████████████████

████████████████████████████████    Press Dep. Tr. at 131:4-8.

339.    ██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████    Press Dep. Tr. at 133:13-18.

340.     Lender approved numerous other lease extensions that were presented by USI during this same time period because they fit within the joint leasing plan and provided flexibility. Rebibo Decl. at ¶ 128; Press Dep. Tr. at 221:24-222:7.

341.     For example, on March 2, 2022, ██████████████████████████ ████████████████ Rebibo Decl., Ex. AA.

342.     There are no facts showing Lender's interference with existing or prospective tenants at Union Station to preclude summary judgment.

343.     ████████████████████████████████ ████████████████████████ Press Dep. Tr. at 144:21-25.

344.     ████████████████████████████████ ████████████████████████████████████████████ Press Dep. Tr. at 145:14-22.

345.     ████████████████████████████████ ████████████████████████████████████████████

Press Dep. Tr. at 325:6-14.

Dated: New York, New York
       May 2, 2024

                                    MORRISON COHEN LLP

                                    By:    /s/ Y. David Scharf
                                           Y. David Scharf
                                           Brett Dockwell
                                           Kristin T. Roy
                                           Latisha V. Thompson
                                           Amber R. Will
                                           Mahnoor Misbah
                                           909 Third Avenue
                                           New York, New York 10022
                                           *Attorneys for Plaintiffs*