

Y. David Scharf
Chair and Co-Managing Partner
(212) 735-8604
dscharf@morrisoncohen.com

March 4, 2025

**VIA ECF**
Hon. Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Kookmin Bank Co., Ltd. et al. v. Union Station Sole Member, LLC*, No. 1:22-cv-06649-GHW

Dear Judge Woods:

We represent Plaintiffs Daol Rexmark Union Station LLC ("Union Station Sub") and Kookmin Bank Co. Ltd. ("Kookmin", collectively with Union Station Sub, "Lender") in the above-captioned matter. We write to Your Honor seeking permission to file a Motion for Contempt against Defendant Union Station Sole Member, LLC ("USSM") for violating the Court's Preliminary Injunction Order (ECF Doc. No. 39).

Contempt is appropriate where "(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (citing *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004)). Each of those factors are present here, making a finding of contempt against USSM appropriate.

On August 25, 2022, the Court was careful to craft clear and unambiguous language in the Preliminary Injunction Order. The Order—which the parties had time to review and discuss—enjoined USSM from "(1) holding itself out as the owner or in control of Union Station Investco, LLC ('USI'); (2) exercising or purporting to exercise any contractual or other legal right of USI; (3) collecting, transferring, seizing, or directing the transfer of any assets or liabilities of USI; and (4) impeding the collection or transfer of any assets to USI that are owed to it." (ECF Doc. No. 39.) Of particular importance are clauses Nos. 1 and 4. USSM must refrain, during the pendency of this litigation, from holding itself out as in control of USI and from impeding the collection or transfer of any assets that are owed USI. USSM failed to comply with both of these provisions.

As the Court is aware, there is a pending condemnation action in which National Railroad Passenger Corp. ("Amtrak") condemned the leasehold interest of Washington Union Station (the "Condemnation Action").[1] Lender, USI, and USSM were all named defendants in the

[1] *See Nat'l R.R. Passenger Corp. (AMTRAK) v. Sublease Interest Obtained Pursuant to an Assignment & Assumption of Leasehold Interest made as of Jan. 25, 2007, with said property interest Pertaining to Described Leasehold Interests at Washington Union Station located at 50 Massachusetts Ave., NE Washington, D.C. 20002, et al.*, 1:22-cv-01043-APM (D.D.C.).






Condemnation Action. On February 6, 2025, after almost three years of contentious litigation, Lender, USI, and Amtrak reached a settlement agreement that would resolve the Condemnation Action and associated appeal. That day, Lender, USI, and Amtrak moved the Court to enter a proposed Consent Order, which would enter judgment in the case based on the parties' settlement. (Condemnation Action, ECF Doc. No. 167.) Amtrak also moved to dismiss USSM as a defendant from the Condemnation Action because discovery confirmed that USSM never held, and does not now hold, a legal or equitable interest in the leasehold interest that is being condemned, which is required to be considered a necessary party. (Condemnation Action, ECF Doc. No. 168.1.)

In responding to and opposing these motions, USSM directly violated the first and fourth clauses of the Preliminary Injunction Order.

***First*****,** USSM filed a Motion for Extension of Time to File a Response. (Condemnation Action, ECF Doc. No. 170, attached hereto as **Exhibit A**.) In that motion, USSM asserted that it is entitled to share in the condemnation award and that it would contest Lender's and USI's ability to settle the Condemnation Action without the consent of USSM. (*Id.* at p. 2.) Such a bold statement flies directly against this Court's directive that USSM cannot hold itself out as being in control of USI and therefore cannot speak purportedly on USI's behalf. As a necessary party to the Condemnation Action, USI (the property holder of the condemned property) joined the Motion for Entry of the Consent Order, and USSM cannot stop the settlement on the basis that USI did not consult with or seek approval from USSM.

***Second*****,** USSM subsequently filed a Consolidated Opposition to the Motion to Dismiss and Motion for Entry of a Consent Order. (Condemnation Action, ECF Doc. No. 174, attached hereto as **Exhibit B**.) In its Opposition, USSM argued that the payment of any just compensation award flows through USI—the owner of the condemned property—merely as a pass-through entity, ultimately ending with USSM pursuant to a tortured reading of Section 5.2.2 of the Mezz Loan Agreement. (*Id.* at p. 8.) Contrary to USSM's argument, there is nothing in Section 5.2.2 that details how the just compensation award flows from USI to USSM. Rather, Section 5.2.2 simply ensures that the Mezzanine Lender will be paid the outstanding debt of the Mezz Loan after a condemnation award issues.[2] Asserting itself as the receiver of the just compensation award from USI implicitly challenges who has control over USI. Pursuant to the Preliminary Injunction Order, USSM cannot make such a claim.

USSM also asked the D.C. District Court to deny the proposed Consent Order, thereby impeding USI's right to receive the assets owed to it under well-settled condemnation law. (*Id.* at p. 11.) USSM's interference with the settlement agreement executed by USI and Lender concerns the Preliminary Injunction Order's restriction on USSM to refrain from exercising any contractual rights of USI. Moreover, the basic tenets of condemnation law provide that the condemnation proceeds flow to the owner of the property interest being condemned, i.e., USI—not USSM. USSM's assertion that it has any legal right to a share in the condemnation award is not only

---

[2] The relevant sentence from Section 5.2.2 reads that "Subject to the rights of Mortgage Lender under the Mortgage Loan Documents, if the Property is sold, through foreclosure or otherwise, prior to the receipt by Lender of the Award, Lender shall have the right, whether or not a deficiency judgment on the Note shall have been sought, recovered or denied, to receive the Award or a portion thereof sufficient to pay the Debt in full."




without legal merit, but also violates the restriction from the Preliminary Injunction Order that USSM cannot interfere with the assets owed to USI.

***Third***, USSM's counsel advanced these same arguments during a hearing before the D.C. Court on February 27, 2025, adding to its growing list of violations under the Preliminary Injunction Order. The statements listed below both concern USSM improperly holding itself as being in control of USI and impeding the transfer of assets undoubtedly owed to USI as just compensation from being made.

- "The flow of funds, because there is a credit agreement at the moment of the condemnation and debt, the flow of funds in the contractual agreements between the parties says that first money in a condemnation needs to go to satisfy the debt at the property level. Then it needs to be upstreamed to USSM and mezzanine holder." (Condemnation Action, Tr. of Motion Hearing Proceedings Before the Hon. Amit P. Mehta, Feb. 27, 2025, attached hereto as **Exhibit C**, at 11:13-19.)

- "[T]hen the money would be upstreamed to USSM to satisfy the mezzanine debt, and it keeps the remainder." (*Id.* at 12:9-11.)

- Suggesting to the D.C. Court that rather than ruling on the Motion for Entry of a Consent Order expeditiously, the Court could simply "wait" (*id.* at 57:10-11); continue with a trial between only USSM and Amtrak over the amount of just compensation for the property interest exclusively held by USI (*id.* at 57:12-25); demand that USSM have a seat at the negotiating table (*id.* at 58:7-9); or direct the parties—including USSM—to have a mediation (*id.* at 59:1-4). According to USSM, each of these options are preferable to resolving a hotly contested litigation because "this is only money." (*Id.* at 59:10.)

- "Second, USI is a settling party, as I understand it. It has a fiduciary duty and an obligation to USSM, its parent company. So it can't settle without our consent." (*Id.* at 64:5-7.)

- "But, Your Honor, I was saying, I do mean USI is a party to the settlement, it has a parent company that's still the parent company" [in reference to USSM]. (*Id.* at 65:5-7.)

USSM's arguments that it somehow is involved in the chain of distribution of the just compensation awards puts itself as the entity in control of USI. Indeed, counsel said as much when he claimed that USI cannot settle without USSM's consent because USSM remains USI's parent company. Moreover, arguing that the D.C. Court should delay ruling on the motion meant to resolve the case because the outcome concerns only money avoids the fact that that money is an asset that is owed to USI.

When counsel confronted USSM on its violative behavior, USSM claimed that the Preliminary Injunction Order did not inhibit USSM's participation in the Condemnation Action.





(*Id.* at 64:2-4.) During this Court's hearing on the preliminary injunction, Your Honor noted that "USSM, among other things, may be entitled to a seat at the table in connection with the condemnation proceeding. I'm not taking a position on that issue." (ECF Doc. No. 57-21, Tr. of Hearing Preliminary Injunction, Aug. 23, 2022, at 80:8-10.) While USSM is free to represent itself in the Condemnation Action until it is properly dismissed by that Court, it cannot hold itself out as being in control of USI or impede the transfer of assets owed to USI in doing so. The statements in USSM's Opposition papers and at oral argument cross the line set by this Court.

Although the Court does not need to find whether USSM's violation of its Preliminary Injunction Order was willful (*Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 438 F. Supp. 3d 203, 207 (S.D.N.Y. 2020)), the repeated violations over the course of the last few weeks makes it evident that USSM did not carefully consider the proper bounds of the preliminary injunction. If USSM wanted to ensure that its arguments in the Condemnation Action did not violate this Court's Order, it could have sought instruction or clarification from this Court. *See CBS Broad.*, 814 F.3d at 99 (finding defendant failed to comply in reasonable manner where it used its own determination of injunction rather than return to the Court for "modification, clarification or construction of the order") (quotation omitted). USSM decided to rest on its counsel's interpretation of the Preliminary Injunction Order to its detriment.

Based on these outlined violations, Lender respectfully seeks permission from the Court to file a Motion for Contempt against USSM for violating the Court's Preliminary Injunction Order and seek other relief the Court deems just and proper under the circumstances.

We thank the Court for its attention to this matter and are available to discuss at the Court's convenience.

Respectfully,

*/s/ Y. David Scharf*

Y. David Scharf

cc: All counsel of record, via ECF