# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


NRPC (AMTRAK),                    )
                                 )
          Plaintiff,             )
                                 )    CV No. 22-01043
      vs.                        )    Washington, D.C.
                                 )    February 27, 2025
SUBLEASE, ET AL.,                )    2:00 p.m.
                                 )
          Defendants.            )
_____)


TRANSCRIPT OF MOTION HEARING PROCEEDINGS
BEFORE THE HONORABLE AMIT P. MEHTA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          Patricia M. Lambert
                            PESSIN KATZ LAW, P.A.
                            901 Dulaney Valley Road
                            Suite 500
                            Towson, MD 21204
                            (410) 339-6759
                            Email: plambert@pklaw.com


For Defendant Union:        James H. Hulme
                            ARENT FOX LLP
                            1717 K Street, NW
                            Washington, D.C. 20036-5344
                            (202) 857-6144
                            Email: james.hulme@afslaw.com

                            David Ross
                            KASOWITZ BENSON TORRES LLP
                            1633 Broadway
                            New York, NY 10019
                            (212) 506-1700
                            Email: dross@kasowtiz.com

APPEARANCES CONTINUED:

For Defendant
Kookmin Bank:                    Amber R. Will
                                 MORRISON COHEN, LLP
                                 909 Third Avenue
                                 New York, NY 10022
                                 (212) 735-8600
                                 Email: awill@morrisoncohen.com

For D.C. Govt:                   Andrew Glover

Court Reporter:                  William P. Zaremba
                                 Registered Merit Reporter
                                 Certified Realtime Reporter
                                 Official Court Reporter
                                 E. Barrett Prettyman CH
                                 333 Constitution Avenue, NW
                                 Washington, D.C. 20001
                                 (202) 354-3249


Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

```
 1                    P R O C E E D I N G S

 2            COURTROOM DEPUTY:  All rise.  This court is now in

 3    session; the Honorable Amit P. Mehta presiding.

 4            THE COURT:  Good afternoon, everyone.  Please be

 5    seated.

 6            COURTROOM DEPUTY:  Your Honor, we are now calling

 7    for the record Amtrak versus Sublease Interest, Civil Action

 8    22-1043.

 9            Representing the plaintiff is Patricia Lambert.

10            And representing the defendant is David Ross.

11            Amber Will represents Kookmin Bank.

12            And Andrew Glover represents the D.C. government.

13            THE COURT:  All right.  Good afternoon, everybody.

14    I'm still trying to get used to the re-alignment here.

15    It used to be, this side of the room had more lawyers.

16            In any event.

17            All right.  Thank you, all, for being here this

18    afternoon, obviously a lot to talk about.

19            So, you know, the motion before the Court is one

20    for entry of the consent order and of final judgment which

21    Amtrak and lender have sponsored and USSM is opposing.

22            So why don't we begin -- actually, I'd like to

23    begin with Mr. Ross.  And if you would kindly come on up,

24    and I have some questions for you, and certainly I'm happy

25    to hear from you as well.
```

1           MR. ROSS:  Your Honor, good afternoon.

2           THE COURT:  Good afternoon.

3           MR. ROSS:  I just want to point out, I'm with

4     David Mark; my colleague, Jay Hulme from Arent Fox;

5     Mr. Ashkenazy is here.

6           THE COURT:  Mr. Ashkenazy, welcome.

7           MR. ROSS:  And also Mr. Press.  Both of them are

8     responsible for the great work in developing the station

9     from 2007 to 2022.

10           THE COURT:  Thank you for your efforts and all

11     you've done for the public.  I appreciate it.

12           Mr. Ross, you obviously have undoubtedly some

13     things you want to say to me, but can I ask you to start

14     with the following, which is, can you articulate for me

15     precisely what is the source of your, that is, USSM's claim

16     interest in the leasehold interest?

17           MR. ROSS:  Yes, Your Honor.

18           At the time of the condemnation, which is the

19     relevant time under the *Danforth* case and the four other

20     Supreme Court cases that we cited, and under the statute

21     under which this condemnation occurred, the moment of

22     condemnation is when you measure the rights of who is

23     entitled to just compensation.

24           At that moment in time, there was no foreclosure.

25     Mr. Ashkenazy, through Union Station sole member, was the

1  sole owner of the rights that were condemned on that date,

2  April 14th or 12th, I've forgotten the exact date, in 2022.

3          So at that moment in time, the bank had no control

4  whatsoever, shall we say, of USI, and it was exclusively

5  owned by Union Station's sole member, its sole member.

6  So the source of the interest is the complete ownership of

7  the equity interest in USI.

8          THE COURT:  But help me out.

9          I mean, do you dispute that Delaware law says that

10  a member of an LLC has no interest, property interest in the

11  property of the entity?

12          MR. ROSS:  It's not necessary that it be an

13  express property interest, Your Honor.

14          THE COURT:  All right.  No, no.

15          MR. ROSS:  The rule of the case --

16          THE COURT:  Do you disagree with that -- I'm just

17  trying to understand where this slots in, because my

18  understanding is as follows, which is that, under Delaware

19  law, as the sole member, you do not have -- you have a

20  personal property right in USI, that's your interest, but

21  you don't have any legal interest in USI's property.

22          Would you agree with that?

23          MR. ROSS:  I don't think that's the relevant

24  inquiry in a condemnation.

25          THE COURT:  Do you agree -- help me out.

1          MR. ROSS:  Yes, I agree.

2          THE COURT:  Do you agree that's what Delaware

3    provides?

4          MR. ROSS:  Yes.

5          THE COURT:  Okay.  Great.

6          So then we're looking, in my estimation, for some

7    other source of your interest in the leasehold.

8          And if it's not Delaware law, help me understand

9    what it is.

10          Is it some common law interest you're pointing to?

11          Is it something within the loan documents?

12          Help me point to where precisely I would look to

13    say, yes, USSM has a legal interest.

14          And we'll talk about an equitable interest in the

15    proceedings in a moment, but a legal interest in the

16    leasehold interest.

17          MR. ROSS:  Your Honor, the loan documents are not

18    relevant on this subject, I don't think, for what you're now

19    asking for.

20          The right of the sole shareholder to control,

21    receive any funds that are received by the entity to make

22    the decisions for the entity, to control how it operates, to

23    take out borrowings on its behalf, all of those things go

24    with -- in a limited liability company format, the sole

25    control.

 1                    So I view it as a legal control of one step up in

 2       the classic corporate structure of how entities are owned

 3       and controlled in real estate development and ownership.

 4                    THE COURT:  But help me out here.

 5                    I mean, you don't cite a case for that

 6       proposition.

 7                    I've looked at everything the parties have cited.

 8       Your primary case is out of Colorado involving a ditch

 9       company, which is entirely different.  And, in fact, the

10       shareholders in the ditch company actually own the

11       underlying property rights of the water, so that's not an

12       analogy.

13                    MR. ROSS:  I don't see that the party who's

14       brought this motion and claimed to foreclose our standing

15       has cited any cases that say that in a --

16                    THE COURT:  I have issues with their cases too --

17                    MR. ROSS:  Yeah.

18                    THE COURT:  -- but I want to know, other than the

19       sort of vibes you're giving me, you know, that we are the

20       share -- you know, sole member of USI which held the

21       leasehold, I'm looking for some legal source that gives you

22       an interest in the lease.

23                    MR. ROSS:  What it is, Your Honor, I think --

24                    THE COURT:  Let me give you a hypothetical.

25       Let me give you a hypothetical.

1          Forget about Union Station and the like.

2          Say there's a public company that owns a mine,

3     okay?

4          And that public company, for some reason, the

5     government comes in and says, we're going to condemn the

6     minerals.

7          Do you mean to say that the public company's

8     shareholders could come in and challenge the just

9     compensation in a proceeding?

10          I mean, that's seemingly where you're -- what

11    you're asking -- what you're suggesting could happen.

12          MR. ROSS:  No, I don't submit that that is the way

13    it would work in a public company situation where there are

14    thousands of shareholders.

15          THE COURT:  Why is an LLC different?

16          MR. ROSS:  Because the way in which everybody

17    deals with an LLC --

18          THE COURT:  But you can't have both the benefits

19    of the form and then say, well, you know, when it's adverse

20    to us, when the form hurts us, you know, we want to sort of

21    toss it aside.

22          MR. ROSS:  We're not in the situation of mining or

23    a slip-and-fall claim or anything else.  We're in a

24    condemnation, Judge, where the law looks not only at the

25    technical property owner but at the equity interest and who

```
1    has an equitable interest, a legal interest, and any other

2    protectable interest because just compensation has to be

3    paid to them.  So I think it's a wrong analysis.

4             THE COURT:  So why does compensation have to be

5    paid to USSM?

6             MR. ROSS:  Let me just finish, Your Honor, if I

7    may.

8             I think it's a wrong analysis to take this in a

9    corporate context per se to say, we need to get down to

10   first principles of corporate law, when there's no dispute

11   that Union Station's sole member is the equity --

12   representing the equity interest in this court with respect

13   to what appears to be hundreds of millions of dollars of

14   equity that is not being represented by the debt holder that

15   has no interest in representing the equities' interest and,

16   in fact, is selling them out.

17            And your task, I believe, is not to evaluate it

18   strictly under corporate law but under condemnation

19   principles and law and --

20            THE COURT:  Okay.

21            So let's move beyond principles or corporate law,

22   because it seems that you're not on great ground there.

23            So then help me in terms of understanding what the

24   equitable interests here are.

25            I mean, I think what you've said and suggested is
```

1    that you're entitled to the excess of any just compensation

2    that's greater than the debt; is that correct?

3            MR. ROSS:  Actually, I think that what we are

4    entitled to is a full participation in the negotiation, if

5    there is a negotiation, or in the trial of the claim with

6    respect to valuation.

7            And it's not limited only to the equity,

8    it's limited -- it's because essentially you have two

9    interest holders who both have an interest in an asset that

10   has been condemned.

11           There's no dispute that the lenders have an

12   interest.  And they haven't told us how they calculate the

13   amount, they haven't put in the record anything about the

14   amount.

15           But we're not talking about that, if you want to

16   just speak conceptually.

17           THE COURT:  But help me out here, because --

18   let me ask you:  Do you believe -- is it your position as

19   you stand here today that USSM is entitled to any excess of

20   the just compensation above the outstanding debt?

21           MR. ROSS:  Yes, Your Honor.

22           THE COURT:  Okay.

23           And if that were the case, and I don't know

24   whether it is or not, I have a question for the other side,

25   whether they would agree in that case that you do have a

1    right to be here, but what is the basis for your contention

2    that you're entitled to the excess?

3         MR. ROSS:  The basis is that, number one, we have

4    the interest as at the moment of condemnation, which is,

5    according to the United States Supreme Court in multiple

6    cases, the time period at which to measure the interest of a

7    party, and that post-condemnation events may not be

8    considered in determining the right holders.  So that's

9    number one.

10         Number two -- I'm sorry if you wanted to speak.

11         Number two, clearly, the ultimate equity holder

12   here is USSM.  The proceeds of a condemnation have to be

13   paid to the condemned party in essence.  The flow of funds,

14   because there is a credit agreement at the moment of the

15   condemnation and debt, the flow of funds in the contractual

16   agreements between the parties says that first money in a

17   condemnation needs to go to satisfy the debt at the property

18   level.  Then it needs to be upstreamed to USSM and mezzanine

19   holder.

20         THE COURT:  I'm sorry, what's the basis for that?

21         MR. ROSS:  That's in the credit agreement that

22   we've quoted that section.

23         THE COURT:  This is, you mean Section --

24   maybe I'm thinking of something -- this is the Section

25   5.2.2.  Is that what you're talking about?

1          MR. ROSS:  I believe it is in 5.2.2.

2          THE COURT:  It is or is not?

3          MR. ROSS:  I believe it is, but Mr. Mark is going

4    to tell me.

5          THE COURT:  Because I have that in front of me.

6          So my question -- let me ask:  Is that the section

7    you're relying on?

8          MR. ROSS:  Yes, that is the exact section.

9          And it -- then the money would be upstreamed to

10   USSM to satisfy the mezzanine debt, and it keeps the

11   remainder.

12         And so, obviously, the reason that it is a party

13   in interest, that it has standing, that it has a direct

14   interest and an equitable interest is because there is,

15   we believe, and so does the lenders, that there is a huge

16   delta between what is now the contemplated settlement amount

17   and the amount that is the actual fair value were you to

18   hold a trial and hear expert testimony.

19         THE COURT:  So would you agree that USSM, subject

20   to, I don't know if that's the right word, is subject to or

21   tripped an event of default as of the date of the

22   condemnation filing?

23         MR. ROSS:  Yes, Your Honor.  They were in default

24   under their credit agreements for quite a while that began

25   with COVID and the Union Station being closed down and no

1    passengers coming through and buying anything, and paying

2    rent through the rent payers.

3              THE COURT:  Fair enough.

4              I'm not interested in the reason why, I just want

5    to know why.

6              I just want to know that you're agreeing with me

7    that there was an event of default as of the date of the

8    condemnation.

9              MR. ROSS:  Yes.

10              THE COURT:  Okay.  Hang on.  Hang on.

11              MR. ROSS:  Yes.

12              THE COURT:  So if that's the case, then why --

13    I mean, I'm going to read from the -- this is 5.2.2,

14    "Subject to the rights, the mortgage lender under the

15    mortgage loan documents, lender is hereby irrevocably

16    appointed to act after the occurrence and during the

17    continuance of an event of default as borrowers'

18    attorney-in-fact, coupled with any interest -- coupled with

19    an interest, with the exclusive power to collect, receive,

20    and retain any award and make any compromise or settlement

21    in connection with any material condemnation."

22              MR. ROSS:  Yes, Your Honor.

23              THE COURT:  So why does that language not shut the

24    door in light of your concession that there was an event of

25    default as of the date of the filing?

1          MR. ROSS:  Two reasons, Your Honor.

2          First, if you would read also the last sentence of

3    that section, or I could read it into the record.  It says,

4    "If the property is sold through foreclosure or otherwise

5    prior to the receipt by lender of the award, lender shall

6    have the right, whether or not a deficiency judgment on the

7    note shall have been sought, recovered or denied, to receive

8    the award or a portion thereof sufficient to pay the debt in

9    full."

10          THE COURT:  So you read that to place a ceiling on

11    what the lender can acquire?

12          MR. ROSS:  I do and other have courts have.

13          And this is the precise issue that the lender has

14    asked Judge Woods to determine and to issue a declaratory

15    judgment as to what the implication is of these clauses

16    which say that the most they could get is their debt, if you

17    read the way we do, and they say, please, don't pay

18    attention to that language, it doesn't mean anything, or it

19    should be construed otherwise.

20          THE COURT:  So here's my concern, and I'd like to

21    hear what Amtrak and lender have to say about this,

22    which is, if what -- just confirm for me the following,

23    which is your belief or your position that you are entitled

24    to the excess of any just compensation award above the debt

25    is 5.2.2, this provision in the agreement.

15

1          MR. ROSS:  Yes, Your Honor, plus the fact that,

2     if we don't consider the post-condemnation events at all,

3     we had the exclusive right at that point to control the

4     negotiation, to have the whole seat at the table, though the

5     lender had a lien and obviously was an interest holder.

6          So if you don't consider the post-condemnation

7     events at all, then there's a different --

8          THE COURT:  I'm not interested in

9     post-condemnation events right now --

10         MR. ROSS:  Okay.

11         THE COURT:  -- unless I have reason to.

12    And I think I hear Amtrak and lender saying they aren't

13    relevant, and if I'm wrong about that, they'll let me know.

14         So here's my concern, I say this to both sides,

15    which is, if what you've said is that, look, we have an

16    equitable interest in being here in these proceedings and

17    some of that rests on 5.2.2 and there is this issue about

18    how to interpret 5.2.2 and that same issue is before the

19    Court in New York, if I rule in favor or against either

20    party on that issue, which it seems to me I need to reach,

21    am I not creating a res judicata problem for the judge in

22    the Southern District of New York?

23         MR. ROSS:  Absolutely.

24         You know, or collateral estoppel.

25         THE COURT:  Yes, that's what I meant to say.

1          MR. ROSS:  Clearly, this is currently presented

2    before another federal judge.

3          Your Honor is the one who had the idea that we

4    should not try to resolve that issue before you but seek

5    another -- a ruling by another court, and the parties have

6    done that.

7          The other side, first of all -- well, the other

8    side sought a summary judgment relatively early in the case

9    and the judge shot that down, agreeing with us that

10   discovery was necessary.

11         THE COURT:  And is the case in the Southern --

12   is it -- discovery is concluded?

13         MR. ROSS:  Yes.

14         THE COURT:  It's fully briefed on summary

15   judgment?

16         MR. ROSS:  Yes.

17         THE COURT:  And how long has it been pending?

18         MR. ROSS:  Eight months.

19         THE COURT:  Okay.

20         MR. ROSS:  Approximately.

21         And the -- I don't know if Your Honor wants to get

22   into this, but arguments have also been made about the

23   preliminary injunction that we are under with respect to the

24   ruling that Judge Woods made granting the preliminary

25   injunction.  And I don't know if you want to talk about that

```
 1   yet, but that's another thing that is in the background

 2   here.

 3             And what Judge Woods was asked to do at that

 4   initial preliminary injunction motion was to bar us from

 5   participating in this case, to bar USSM from participating

 6   by reason of the arguments regarding the impact of the

 7   foreclosure.

 8             The Judge refused to do that and struck out of the

 9   order the entire section that sought to inhibit USSM's

10   participation in this case, saying, I am not going to get

11   involved in that.  So he specifically did not take a

12   position on that.

13             And I want you to understand that lest you think

14   that he was attempting, for all purposes, to unseat USSM

15   from its position here, what he did was say --

16             THE COURT:  So can I ask you ask a different

17   question?

18             MR. ROSS:  Yes.

19             THE COURT:  Can 5.2.2 be read to separate the

20   question of settlement and the question of award?

21             And here's what I mean.

22             I mean, the language in the text speaks in terms

23   of lenders irrevocably appointed to act after the occurrence

24   and during the continuance of event of default as borrowers'

25   attorney-in-fact, coupled with an interest with exclusive
```

1    power to collect, receive, and retain the award and to make

2    any compromise or settlement in connection with any material

3    condemnation.

4            So in other words, even if you had some interest,

5    even if you had some -- you know, you've got some argument

6    that we're entitled to the excess, how does that bear on

7    their ability, which seems to be clear in the contractual

8    language, to resolve this matter?

9            MR. ROSS:  Your Honor, I'll try to address that,

10   but there are a couple of parts to it.

11           First of all, Your Honor should know that no one

12   has ever had the temerity to do what the lender has done

13   here, which is, after a condemnation, conduct a foreclosure

14   at a mezzanine level when the property has already been

15   taken.

16           So as of the moment of the condemnation, there was

17   no interest being held anymore in the lease.  The lease is

18   gone, right?

19           Title shifted immediately to Amtrak on the posting

20   of the money.  So there was absolutely no property to

21   control.

22           Why did the lender then try to exercise this

23   remedy?  Well, they had waited for two years, when there was

24   an event of default, they didn't pull the trigger.

25           And, Your Honor, we've explained in our -- in the

19

```
 1   Southern District case, all of the violations of our
 2   clients' rights and interference with their business which
 3   lender was doing, which explains why they waited for two
 4   years.
 5            But let's put that aside.  They hadn't exercised
 6   that remedy as of the condemnation, which becomes the
 7   measuring time and the rights measuring time.
 8            Then -- I'm sorry.
 9            But to get to your question, well, why doesn't
10   this mean that they get to settle against your interest and
11   then we'll see if there's any money left for you?
12            And the answer is, we've said to Judge Woods that
13   this entire foreclosure, which is -- which has never been
14   done before and which was done only to cheat our client out
15   of its equity, is inequitable itself, and they're asking for
16   an equitable remedy and the Court should hold off on
17   deciding that until it hears the evidence of the wrongdoing.
18            The reason I'm saying all this is, Your Honor
19   wants to wade into this and see if you could interpret it,
20   but there's a lot more behind it that's in the summary
21   judgment motion.
22            THE COURT:  Mr. Ross, here's my question.
23            I'm not sure I care about the foreclosure.
24            I mean, you yourself have stood up here from the
25   very beginning and said what matters is where we were as of
```

1    the date of the condemnation filing, right?

2            The foreclosure happened months later.  So I'm not

3    sure why we're even talking about that if your view of the

4    world is it froze, for present purposes, on April, I can't

5    remember what the date is, but whatever the date Amtrak

6    filed.

7            So if that's the date that matters, whether they

8    foreclosed or not is not the relevant inquiry under 5.2.2.

9            MR. ROSS:  Yes.

10           THE COURT:  I'm sorry.

11           MR. ROSS:  We -- this directly addresses your

12   point.

13           In our papers in New York, and we've cited the

14   cases here, under New York law, this clause that you quoted

15   and that they bank quotes about settlement, has been

16   interpreted by New York courts not to exclude the equity

17   holder from the negotiation; that the -- although these word

18   are here, courts in New York, and this is a New York

19   interpreted agreement, have said that the lender cannot

20   settle to the derogation of the rights of the equity holder.

21   So they can protect themselves but they can't hurt the

22   equity holder, and we have cited those cases for Your Honor

23   in our brief.

24           And so the reason I want to just say there is even

25   law on this subject as to these express words don't

```
 1   necessarily mean what Your Honor thinks they do in the eyes
 2   of New York courts that have previously interpreted it.
 3            I'm sorry if I interrupted you improperly.
 4            THE COURT:  No.
 5            But that's the answer I was looking for, at least
 6   in terms of your position.
 7            I mean, I'm glad we got there.
 8            MR. ROSS:  You know, we have -- there are many
 9   different analogies, Your Honor.
10            But, you know, we basically view this as, we have
11   a three-legged stool and only two legs are on the stool at
12   this moment.
13            We have a right to participate.
14            THE COURT:  Can I ask you a different question?
15            Was the senior note foreclosed on?
16            MR. ROSS:  No.
17            THE COURT:  Okay.
18            So here's my other question then.
19            5.2.2 speaks not only in terms of an event of
20   default but the continuation of an event of default.
21            Do you agree that, as of today, you are continuing
22   to be in an event of default?
23            MR. ROSS:  I don't know because they foreclosed.
24   And then they --
25            THE COURT:  Only on the mezzanine.
```

1          MR. ROSS:  Yes, they foreclosed and bought the

2     note.

3          If that had some legal effect, then the entire

4     obligation went away.  So there couldn't be any more

5     default.  They bought the note.

6          I'm not sure if that's directly responsive, but

7     even that is a potentially tricky question.

8          What we're arguing about in the Southern District

9     of New York is what is the -- we know that pieces --

10    you know, that a UCC foreclosure purported to occur,

11    but what is the legal effect of it when it occurs after a

12    condemnation in a mezzanine context?

13         THE COURT:  So say you lose in the Southern

14    District, are you sort of done here?

15         MR. ROSS:  Yes.

16         THE COURT:  Okay.

17         MR. ROSS:  Apart from our appeal in the Southern

18    District.

19         If -- now, let me just say the "yes" was a little

20    too fast.

21         The request for --

22         THE COURT:  I actually appreciated that.

23         MR. ROSS:  The request for declaratory judgment

24    has a variety of provisions of what the lender has asked

25    for.

1          If Judge Woods finds that, by reason of the

2     foreclosure and the effect of the language, that USSM has no

3     rights whatsoever in the condemnation, the answer is yes.

4          But Judge Woods not only has alluded twice to the

5     windfall idea and that he has some concern about the

6     potential for a windfall for the lender, but he also has

7     options in how he handles the request for the declaration.

8     It's open to him to give a variations on the declarations or

9     limit the declaration.  So I can't say for sure that --

10    what it is that he is going to rule or conclude.

11         If the question is the relief that they have

12    sought, if it is completely granted, would it wipe out the

13    interest, apart from our appeal, the answer is yes.

14         THE COURT:  Okay.

15         MR. ROSS:  But the other thing, Your Honor,

16    I think -- Your Honor always comes to this bench applying

17    both law and equity, trying to do justice, trying to do the

18    right thing.

19         In this particular case, Mr. Ashkenazy built up

20    this asset over a period of 16 or 17 years to what it was at

21    the moment it was condemned.  There was no foreclosure.

22         THE COURT:  But let me just ask the following.

23         Would you agree that if, as a matter of law,

24    it were determined, either by me or in the Southern

25    District, that you were not entitled to any excess of the

1  award, that is, anything above the outstanding debt, that

2  you have no equitable interest in these proceedings?

3          MR. ROSS:  I think that's correct.

4          THE COURT:  Okay.

5          MR. ROSS:  Let me see if my colleagues have

6  anything else.

7          Yeah, I think you're right, Your Honor.

8          THE COURT:  Okay.

9          So this has been helpful.  I think it ultimately

10  seems to hang on that question.  Okay.

11          MR. ROSS:  All right.

12          I have some other things, but I know that you want

13  to talk to the other side.

14          THE COURT:  I'll give you an opportunity.

15          MR. ROSS:  I'll reserve some time to come back and

16  conclude.  Thank you.

17          THE COURT:  Ms. Lambert.

18          MS. LAMBERT:  Good afternoon, Your Honor.

19          THE COURT:  It's good to see you.

20          Can you -- I know you've got a lot on your mind,

21  but can you start with where I just left off with Mr. Ross,

22  and that is, the opposite, which is, if it were determined

23  either by me or the judge in the Southern District of

24  New York, that the USSM does have a right to the excess,

25  would you agree that they have a right to be here and

1    participate in these proceedings before a final judgment is

2    entered?

3              MS. LAMBERT:  No, Your Honor.

4              THE COURT:  Okay.  Why?

5              MS. LAMBERT:  Because that right would be a

6    contractual right rather than a legal or equitable interest

7    in the property.

8              That is the key for this Court, because it's an

9    in rem proceeding, not a contractual proceeding.  It's not a

10   case -- a situation where the Court is exercising

11   supplemental jurisdiction.

12             And I noticed very carefully the words that were

13   being used and it was sometimes equitable interest in the

14   proceeding.

15             That's not what this Court should be looking at.

16   If you look at it going down the kind of the rubric that we

17   have, you start with 24311 and it talks about acquiring an

18   interest in property.

19             71.1(a) and (c) talks about including those who

20   claim an interest in the property and, you know, not has an

21   equitable interest in the proceeding.

22             And so --

23             THE COURT:  So you read that very narrowly to mean

24   just the condemned property itself and not any just

25   compensation award that might follow from the condemnation?

1        In other words, look, I think I tend to agree with

2    you that they have no "legal" interest under Delaware law in

3    the leasehold interest.  I think that seems to be pretty

4    clear.  And so in your view, if they don't have that, they

5    have no seat at the table here even if they might have an

6    interest in the award?

7        MS. LAMBERT:  Yes, because it's not an equitable

8    interest in property.

9        And I think because they've chosen Delaware law

10   and also how they formulated their deals with the lender --

11   and let me kind of talk about the 5.2.2 issue.

12       They're actually two different agreements.

13       I'm sorry, something is ringing in my ear.  Just a

14   second, Your Honor.

15       THE COURT:  If you need to have a seat,

16   that's fine.

17       Why don't you have a seat, Ms. Lambert.

18       Are you okay?  Do you need a drink of water?

19       MS. LAMBERT:  So in a 5.2.2 situation, there's two

20   documents; one is the mortgage loan, and that talks about --

21       THE COURT:  Thank you, Mr. Ross.

22       MS. LAMBERT:  Thank you -- the mortgage loan,

23   and the borrower in that situation is defined as USI.

24       THE COURT:  Right.

25       MS. LAMBERT:  That's talking about property

1    rights.

2            But they're not USI, not anymore.

3            So you look at 5.2.2 under the Mezz Loan

4    agreement --

5            THE COURT:  Right.

6            MS. LAMBERT:  -- and that's talking about personal

7    property rights and contractual rights, and it does not

8    create an interest in the property.

9            As a matter of fact, if you look at the -- in that

10   document, it talks about that certain things shall not be

11   reduced until the net proceeds after debt have actually been

12   received and applied by the lender.  So how could the lender

13   apply it if it didn't have it?

14           So they might have contractual rights, and those

15   are the issues that have to be decided up in New York.

16           And there may be breaches, they're both alleging

17   breaches, but that's not what the limited jurisdiction that

18   this Court has in an in rem proceeding.

19           THE COURT:  So my question to Mr. Ross,

20   your answer, I think I hear you saying is, Judge, you don't

21   need to reach the question of how to interpret 5.2.2 --

22           MS. LAMBERT:  That's correct.

23           THE COURT:  -- because that is a contractual

24   right, and your concern here is only whether they have an

25   interest in the property right that was condemned.

1          MS. LAMBERT:  That is correct, Your Honor.

2          THE COURT:  Okay.

3          MS. LAMBERT:  And I think that we presented a

4    great number of cases where they looked at whether or not,

5    when a person had contractual rights, they could participate

6    in a proceeding.  And it had to be combined with a property

7    interest to allow them to participate, such as a tenant with

8    an option to purchase, or the ditch digging company where

9    it's a mutual ditch company, something I had never heard

10   about before, that said that those are property rights under

11   Colorado, I believe, law.

12          So the issue is what rights exist under Delaware

13   law.  And Delaware law is absolutely clear, and they chose

14   this form, that there is no interest in the individual

15   property owned by the LLC.

16          THE COURT:  So what, in your mind, would

17   constitute an equitable interest?

18          And if there's no legal interest -- in other

19   words, your position is the Delaware law provides no legal

20   interest for USSM and the leasehold interest.

21          What would constitute an equitable interest?

22          MS. LAMBERT:  Equitable interest in property,

23   Your Honor, I want to kind of keep stressing that.

24          THE COURT:  Right, in property, I got you.

25

1          MS. LAMBERT:  It could be a situation, let's say

2    somebody had a marriage in Florida where there's certain

3    rights to common law property.  That could be an equitable

4    interest even though it might not technically be a legal

5    interest, but it has to be something that the law allows as

6    an equitable interest.

7          It could be some other type of -- where you've got

8    some type of court order or something that it might be.  But

9    that's not the situation here.

10          And they haven't produced a single case that says

11    that they have an equitable interest in property.  They kind

12    of slip and slide, it's equitable for us to have it, and

13    that's not the case.  They chose the format, and so they

14    have to live and die by Delaware law.

15          And I think your argument -- Your Honor's point

16    about the shareholder of, like, if Exxon had a piece of

17    property that was condemned, does Amtrak have to -- because

18    this is about whether the party is necessary -- does Amtrak

19    have to include every party on that?  There's no line other

20    than on that.

21          THE COURT:  Ms. Lambert, I'm sorry to interrupt

22    you.

23          But what then is USSM's remedy?

24          I mean, I think I know what you're going to

25    respond, but if you're right, that all that matters here is

1    whether they have an interest in the property but it turns

2    out they also have a right to some portion of the

3    compensation, is it your view that their remedy is a

4    contractual one and one that would need to be resolved

5    where?

6            MS. LAMBERT:  It could be resolved in a court

7    other than a court having in rem jurisdiction only.

8            It could be resolved here in a different

9    proceeding.

10           It could be resolved in New York.

11           And you've heard that that's part of the issue

12   that is being resolved in New York.  They could have sought

13   preliminary relief in there.  Hey, we hear something about

14   this, so let us move in front of Judge Woods to get some

15   type of special relief.  But they haven't chosen to do that.

16   And so the question is whether this Court, which has only --

17   our view is, only the authority under 24311 or 71.1, that

18   where does it have the ability to go beyond that?

19           There are cases that we've talked about a little

20   bit before very early on, talking about, the Court doesn't

21   have jurisdiction for counterclaims in an in rem proceeding;

22   that there's other types of things.  It's very limited as to

23   what the Court has, and, you know, that's what we are

24   seeking.

25           And I understand that they think that they had

1    some type of equity because they built up the station, but

2    this is just a limited issue and it should -- nothing else

3    should be resolved here.

4                THE COURT:  So what happens, in your view, if the

5    lender loses in New York and that the foreclosure sale is

6    undone?  What then?  What does the world look like there?

7                MS. LAMBERT:  I am not an expert in New York,

8    we have somebody who can address those questions, but my

9    understanding is that there has never been a request to have

10   the foreclosure sale undone.

11               THE COURT:  Okay.  Maybe that -- then I misspoke.

12               MS. LAMBERT:  Rather, it's what the impact of the

13   foreclosure is in terms of the overall debt that is owed.

14               And so that is one of the issues being litigated

15   that Mr. Ben Ashkenazy believes that, because there was a

16   foreclosure, that all the rest of the debt is wiped out,

17   and so there's that issue.

18               But, Your Honor, I do want to address, I think

19   that you can't stop the analysis at the day of the taking,

20   you have to look at the substitution rule.

21               And the testimony about the foreclosure sale and

22   that the interest was transferred is unequivocal.  Their

23   corporate designee indicated that it was transferred.

24               And this Court has to make a determination,

25   under 71.1(g), as to whether a different party should be

```
 1   substituted.

 2            THE COURT:  I guess I don't understand that,

 3   because if -- maybe I'm missing something.

 4            I mean, I understand them to say, we have an

 5   interest -- a legal or an equitable interest in the property

 6   as of the time of the condemnation.

 7            But your argument with respect to substitution

 8   seems to depend upon events that took place after that,

 9   including the foreclosure and then the reassignment of the

10   interest to Rexmark, I believe, I may have the name wrong,

11   Daol.

12            MS. LAMBERT:  Rexmark entity.

13            THE COURT:  So am I missing something there?

14            MS. LAMBERT:  Well, yes, Your Honor, I think.

15            Because I think that the issue -- the first level

16   is, does USSM have an interest sufficient to allow it to

17   participate?  We argue no, they argue yes.

18            Then the secondary analysis is that, okay, if USSM

19   has an interest, was it transferred?  And, if so, that the

20   person who it was transferred to should be substituted in as

21   a party, and so that's what we are arguing.

22            If the membership interest being the one who

23   controls, the one who does the things with USI, is what is

24   key, that's what they say gives them their interest, all of

25   that has been transferred to the Daol Rexmark, and so
```

```
1    that -- it's a -- we think that we win on either ground.

2              THE COURT:  Have you ever seen a court do that?

3              MS. LAMBERT:  Excuse me?

4              THE COURT:  I know you've suggested that's a

5    possibility, but -- and it seems like a creative one,

6    but are there any cases that you've cited in which a court

7    has done something like that?

8              MS. LAMBERT:  Yeah, there was a -- yes,

9    Your Honor.

10             There were several cases that we cited in our

11   proceedings where substitution was allowed, where there was

12   a substitution of a successor trustee, a substitution due to

13   transfer of interest in rights; and that's the Constitution

14   Pipeline case, and that the Court may have to do a factual

15   determination as to whether or not it was transferred.  But

16   here you don't, because they agreed that it was transferred.

17   And they're not fighting the foreclosure, they're fighting

18   the impact of the foreclosure sale.

19             And so, either way, the settlement that has been

20   hard fought, the litigation that has been long and

21   expensive, that it's -- we are entitled to have the

22   settlement to go forward because all the people who have

23   interest in the entities and Amtrak have agreed.

24             THE COURT:  Can I ask you a different question?

25             MS. LAMBERT:  Yes.
```

1          THE COURT:  It has less to do with the merits than

2     the procedure.

3          You all are asking me to enter judgment and have

4     proposed an order that enters judgment in favor of lender in

5     the amount of $255 million, which was the just compensation

6     withdrawal.  I'm just a little confused -- help me

7     understand why you're asking me to enter judgment as opposed

8     to just this being an ordinary settlement between parties.

9          MS. LAMBERT:  Your Honor, one of the things when

10    you are doing condemnation is you want to have clear title

11    so that somebody 70 years from now knows what the property

12    rights are.

13         Somebody had suggested early on when we were

14    talking settlement is, let's just have a stipulation of

15    dismissal.  And I'm like, you can't have a stipulation of

16    dismissal because that's what gives us our title.

17         And so that --

18         THE COURT:  The judgment gives you the title.

19         MS. LAMBERT:  And the judgment kind of is the

20    belts and suspenders for that so that somebody looking at it

21    later on that --

22         THE COURT:  And is it enough, in your estimation,

23    that the parties have essentially stipulated to the judgment

24    as opposed to my having to make some findings to support it?

25

1          MS. LAMBERT:  I think that -- how 71.1 works is if

2    there's not a special rule in there, then the Court can look

3    at just the regular other rules of the Federal Rules of

4    Civil Procedure.

5          And so the parties have agreed as to evaluation,

6    the parties who are entitled to participate, just like any

7    other stipulation made in any other case, then the Court, on

8    the basis of that stipulation, can enter a decision on that.

9          THE COURT:  Okay.

10         All right.  I don't have any further questions,

11   but obviously if there's more you'd like to present.

12         MS. LAMBERT:  Thank you, Your Honor.

13         THE COURT:  Thank you.

14         MS. WILL:  Good afternoon, Your Honor.

15         THE COURT:  Good afternoon.  Can you just tell me

16   your name again, please?

17         MS. WILL:  Yes.  Amber Will for lender,

18   Your Honor.

19         THE COURT:  Ms. Will, welcome.

20         MS. WILL:  So we've heard a lot of Section 5.2.2.

21   We've heard a lot about whether USSM has any right over the

22   excess of outstanding debt.  And we agree with Amtrak in

23   this case that all of those issues are properly before

24   another court.

25         We have --

1        THE COURT:  Can I ask you:  Do you agree with

2   Amtrak -- I'm sorry to interrupt you --

3        MS. WILL:  Of course.

4        THE COURT:  -- but do you agree with Amtrak

5   that -- it's been suggested by Ms. Lambert is that, to the

6   extent that there is a 5.2.2 issue, it's an issue with

7   respect to their contractual rights and not their rights in

8   the property.  So, Judge, you don't even need to get to that

9   question.  So your concerns about estoppel, don't worry

10  about it, you're good.

11        Do you agree with that?

12        MS. WILL:  Yes, Your Honor.

13        THE COURT:  Okay.

14        MS. WILL:  We think all of these are contractual

15  issues in which USSM and lender can fight either in the

16  Southern District of New York where there are two different

17  actions pending over the variable parties that have kind of

18  these commercial interests from the contract rights in the

19  Mezz Loan agreement and the mortgage loan agreement, but

20  they're not proper in front of this Court, which is a

21  property proceeding with the condemnation.

22        THE COURT:  So what does the world look like --

23  and I have to ask Ms. Lambert this same question and maybe

24  you can help me out -- say the lender loses in New York and

25  I've, prior to that, said, USSM, you're out of luck,

1    I'm going to sign off on the requested order and judgment,

2    then what?

3              MS. WILL:  Well, I think there are two levels that

4    lender would have to lose in New York.

5              One, that the foreclosure sale was not something

6    that could be done after the condemnation, which are

7    arguments that USSM has made to Judge Woods and which has

8    been rejected based on the preliminary injunction order that

9    was entered.

10             But then also the secondary declaratory relief

11   that we're seeking is exactly that Section 5.2.2 language in

12   which lender has the exclusive right to settle any

13   condemnation.

14             So there would have to be two findings against

15   lender for it to really change the world.

16             THE COURT:  Here's my concern, which is, I don't

17   think I want to be in a position, and you tell me whether

18   this is possible, in which I've signed off on a judgment

19   here based upon your negotiations that's excluded USSM, and

20   then Judge Woods determines, well, you know what, USSM is

21   entitled to some relief in New York.  It's not clear to me

22   exactly what that looks like and how that affects this case.

23             But there is something intentioned with the notion

24   of my going ahead and signing off something while it's

25   possible that another judge might rule that actually it's

1    USSM that should have a right at the table here.

2            I mean, let me ask you this.  If you think --

3    if USSM wins in New York, should they have a right at the

4    table here?  Or would they have a right at the table here?

5            MS. WILL:  No, Your Honor, because of the language

6    in Section 5.2.2.

7            It's just -- it's very clear unequivocal language

8    that in an event of default, which although it was not

9    mentioned in USSM's opposition, they've been in default

10   since May of 2020.

11           There's no argument that there was an event of

12   default that has occurred that gives lender the right to

13   exclusive -- with the exclusive authority to act as the

14   attorney-in-fact and to have the power to collect, receive,

15   and retain any award and to make any compromise or

16   settlement with condemnation.

17           THE COURT:  But I heard Mr. Ross say that that is

18   an issue in New York; in other words, that those issues --

19   what those words mean is something before Judge Woods;

20   is that right?

21           MS. WILL:  Yes, Your Honor.

22           And we don't think you have to get to it at all.

23   We think that if there's any dispute in the sense that,

24   in the SDNY action that is currently pending before

25   Judge Woods, which is only a declaratory action brought by

1    lender and Daol Rexmark Union Station, there have been no

2    counterclaims filed, no requests by USSM for affirmative

3    relief, if that case ends up being that USSM wins after this

4    Court has entered judgment in this case, USSM has a breach

5    of contract against lender and that can be brought up under

6    the terms of the loan agreements back in New York.

7                It's still not an issue as to condemnation

8    proceeds.

9                THE COURT:  And what does that look like?

10               Does that include a claim that you all settled for

11   less than the property was worth?

12               MS. WILL:  It could, Your Honor.

13               I don't think that claim is going to be very

14   plausible.  And we would obviously seek to dismiss, but --

15               THE COURT:  No, I understand that.

16               But I mean, I'm just trying to --

17               MS. WILL:  -- hypothetically.

18               THE COURT:  I don't want to -- I think you can

19   understand where I'm coming from, which is, I don't want to

20   be put -- and I don't want to put Mr. Ross and his client in

21   a position where if they do prevail, if I get out ahead of

22   this, sign off on what you're asking me to and they prevail,

23   or you all do not prevail, that they would somehow be

24   prejudiced in terms of the settlement here and that they

25   didn't have a seat at the table and didn't have an

1    opportunity to argue to me that what these -- you know, what

2    Amtrak and the lender have settled for is grossly

3    inadequate.

4            MS. WILL:  Yeah, I understand what you're saying,

5    Your Honor.

6            And I think all of that is still contractual

7    issues between USSM and lender.  None of that comes to play

8    in the just compensation for the property interest, which is

9    really what we are proposing to settle here.

10           There's nothing in the outcome of New York that

11   would retroactively create a legal or equitable interest in

12   the property that's being condemned in this case, the

13   leasehold interest.  It only would put USSM back in control

14   of USI.

15           It's all discussing the just compensation.

16           And we've talked about the chain of distribution

17   of the funds.  It goes to the property owner and any entity

18   that has a legal or equitable interest.

19           And the only entities that we have in this case

20   are lender, who has a secured lien as of April 14th of 2022

21   based on the mortgage loan default, and then USI themselves.

22           THE COURT:  So perhaps USI would have a claim

23   against the lender for improper foreclosure and settling for

24   less than the property value?

25

1        MS. WILL:  If we got to that point, Your Honor,

2   yes.

3        We would think that this is still just contractual

4   claims that would get brought up in New York for breach of

5   contract or other acts that are under the contractual

6   agreements between the parties.

7        THE COURT:  I'm sorry to interrupt, but just help

8   me out in terms of what the claim looks like from USSM's

9   perspective.

10        I understand the -- I mean, you've called it a

11   contractual claim, but it's not clear to me what contractual

12   right lender will have violated that's owed to USSM to

13   maximize the value of the just compensation.

14        MS. WILL:  Well, under Section 5.2.2, if the Judge

15   in New York rules against lender, that the clear contractual

16   language does not give lender the exclusive right to settle

17   the condemnation action during an event of default -- which,

18   again, if the foreclosure sale is unwound in any way, we're

19   still under this continuing state of default, USSM has not

20   made a single payment on the Mezz Loan debt since May of

21   2020.  So there would still be that operation of underlying

22   default in that case.

23        But assuming on this hypothetical that Judge Woods

24   in the Southern District says that the clear contractual

25   language goes against lender, then there would be a breach

1  of contract on lender's actions done pursuant to

2  Section 5.2.2, would be how I would articulate that claim.

3          THE COURT:  And do I need to reach the issue that

4  Mr. Ross has suggested, which is that New York courts have

5  interpreted the language that seems pretty clear to me that

6  would give lender the exclusive right to settle, that, in

7  fact, that doesn't mean what it says?

8          MS. WILL:  Again, if USSM is dismissed from this

9  case based on the motion to dismiss standards, we don't

10  think you have to get to Section 5.2.2 at all, Your Honor.

11          But on the terms of the case law that is

12  represented in the brief, we take issue, obviously, with the

13  cases that are cited, which are all throughout the country,

14  not specifically just in New York, and the -- apply to

15  different kinds of kind of postures than is what is

16  presently before the Court.

17          So all of these issues, again, I do want to

18  clarify, are in front of Judge Woods, so I don't necessarily

19  want to duplicate efforts with this Court.

20          But looking at the cases that they cite,

21  JPMCC 2006-CIBC14 *Eads Parkway*, this is a case that USSM

22  relies upon on the basis that it has the similar language

23  that's found in Section 5.2.2.

24          And USSM argues that that means that the Court

25  held in the case that there was -- the exclusive

 1    attorney-in-fact language did not grant rights but only

 2    described a lender-borrower relationship and a government

 3    taking; however, in that case, the borrower was seeking to

 4    enforce a duty upon the lender to act as the attorney

 5    representative, and when the lender did not do so in a

 6    condemnation proceeding, the borrower argued that the lender

 7    waived its right to full recovery under the loan documents.

 8              So it's a completely different posture where the

 9    lender in that case did not act as the attorney-in-fact,

10    whereas here, the lender has pursued its contractual right

11    that was bargained for and negotiated with the parties in

12    the loan agreements to be able to do so.

13              THE COURT:  And, I'm sorry, which case again was

14    that?

15              MS. WILL:  Yes, that's JPMCC 2006-CIBC14

16    *Eads Parkway LLC versus DBL Axle, LLC*, which is from the

17    Indiana Court of Appeals in 2012.

18              They also cited to a case *In re: Old Prairie Black

19    Owner LLC*, which is a bankruptcy case in the Northern

20    District of Illinois.

21              They cited that for the attorney-in-fact provision

22    being similar, that allowed the debtor to negotiate --

23    to enter negotiations without the lender.

24              They have -- the language is actually different

25    there; it does not give lender the exclusive right under an

1    event of default as we have here.

2              And then in *City of Englewood versus Exxon Mobil*

3    *Corp*, which is from New Jersey Appellate Division 2009, they

4    cited that for the proposition that the total taking of a

5    property interest changes the interests of the parties.

6              And in that case, it was simply a determination of

7    interest after the condemnation award was issued.

8    It doesn't apply to the interpretation of Section 5.2.2

9    here.

10             THE COURT:  Okay.

11             So just to be clear, these are cases cited in

12   New York or cases cited --

13             MS. WILL:  They're cases cited in USSM's

14   opposition in front of Your Honor in this case.

15             THE COURT:  Okay.

16             MS. WILL:  They're similarly cited in the Southern

17   District.

18             I at least note the JPMCC case is cited.  I don't

19   recall if the other two were cited in the opposition for

20   summary judgment.

21             But these cases have all been briefed generally

22   and this proposition has been briefed to Judge Woods.

23             THE COURT:  Okay.

24             All right.  Anything else, Counsel?

25

1          MS. WILL:  I just want to -- I'd be remiss if --

2     a few things, Your Honor.

3          First, I wanted to make sure to note that

4     I believe Mr. Ross had conceded that if there was -- and I

5     may be wrong so I'm not even going to quote him, but

6     basically on whether there's an excess to the outstanding

7     debt.

8          We have both the outstanding mortgage loan and

9     Mezzanine Loan if the foreclosure didn't happen.  And we can

10    represent to the Court that that amount exceeds the just

11    compensation that is being sought in the settlement.

12    So lender is not even being made whole here, but it is a

13    settlement of the parties, where everybody --

14          THE COURT:  Is that right?

15          MS. WILL:  It's not being made whole in

16    consideration of the outstanding debt under the two loans.

17          THE COURT:  Okay.

18          MS. WILL:  So lender is still taking less in this

19    settlement -- or USI is taking less in this settlement than

20    what lender is owed under the two outstanding loans.

21          And then on the date of taking --

22          THE COURT:  So I'm sorry to interrupt.

23          I mean, if that's -- because I've been operating

24    here under the assumption that lender is taking more out of

25    this than what was owed in terms of debt, and that's why

1    Mr. Ross and I had this long discussion about entitlement to

2    the excess.

3              MS. WILL:  Correct.

4              THE COURT:  Are you telling me that the settlement

5    involves no excess?

6              MS. WILL:  Correct.

7              Based on the outstanding debt, it's lender's

8    position that there is no excess.

9              So even if USSM retained a position in this case,

10   they would be entitled to nothing based upon their argument

11   that they're only entitled to the excess over the

12   outstanding debt.

13             THE COURT:  Okay.

14             And I guess Mr. Ross is going to get up and say,

15   well, that doesn't matter, that's the whole point, which is

16   that they've settled for less than we're entitled to.

17             MS. WILL:  I'm sure.

18             One other point I want to make, though, quickly,

19   if I can is, in condemnation law, the just compensation is

20   due to the people that own the property interest and the

21   taken property.

22             The property interests are determined by state

23   law.  Mr. Ross conceded Delaware law applies.  There is no

24   basis to have USSM having a property interest in the

25   leasehold interest, which is what the taken.

1          Courts have recognized that title owners and

2     co-owners can have this kind of legal and equitable right,

3     that a recorded lien holder like a lender can have the

4     equitable -- a legal or equitable right to participate in

5     condemnations, but it's not the shareholders of a

6     corporation.  It's not the management company.

7          And Mr. Ross, when he was talking about his

8     equitable right that would exist here, he focused on the

9     right of being the sole shareholder to receive funds,

10    make decisions, and control the operation.  Those are all

11    commercial aspects.  They're not a legal or equitable right

12    in the property interest, in the leasehold interest

13    themselves.

14          THE COURT:  Those are essentially what, I think,

15    the statute in Delaware says, are personal rights to the

16    member --

17          MS. WILL:  Correct.

18          THE COURT:  -- personal property rights.

19          MS. WILL:  Yes.

20          THE COURT:  Okay.

21          MS. WILL:  And then I would be remiss if I return

22    to my table without making one comment on this notion of

23    cheating USSM out of equity.

24          There is no cheating when we have contractual

25    arrangements here.  These are contracts that have been

48

```
1    executed by sophisticated parties.  All parties were
2    represented by counsel.  USSM has been in default of the
3    loan, of the Mezzanine Loan, since May of 2020.  Lender is
4    merely exercising its rights and remedies under those loan
5    agreements.
6              THE COURT:  All right.  Thank you, Counsel.
7              Mr. Ross.
8              MR. ROSS:  Your Honor, we've covered a lot of
9    different ground, so I'm going to try to move quickly to
10   reply quickly to them, but I also want to be responsive to
11   issues of concern to you after hearing everyone.  In some --
12   it might be easy to work backwards in certain respects.
13             On this issue of how much the debt is and whether
14   or not the lender is settling for less than the debt,
15   as they said, Ms. Will just used a phrase, it is lender's
16   position that we are settling for less than the debt.
17   No evidence has been put before you of any kind, nothing has
18   been put in the record.  They did not move on this basis.
19             And I'll come back to that at the end, because you
20   asked Amtrak's counsel about why it is that you're signing
21   on to what the judgment that recites what is just
22   compensation in this case.  I'll come back to that.
23             But it's troubling in both respects, as there's
24   absolutely no proof of any kind by anybody as to what just
25   compensation is or what the debtors -- what debt there is
```

1   owed to the lender.

2           And I assure you that USSM thoroughly disagrees

3   with how the lender is calculating default interest and

4   whether interest began to run on what debt at what time.

5           They didn't draw down the 250 million that was

6   available to them for two years.  And Your Honor asked about

7   that some months ago, about why they didn't do that,

8   and questioned, why haven't you taken the money in all this

9   time.  This is all part of what actually is the proper

10  amount.

11          But I simply want to say, no evidence of any kind

12  has been presented to you from which you could reach a

13  conclusion as to whether they are or are not being fully

14  paid.

15          I do want to say, though, that the position that

16  we're asserting is very simple.  They can't settle.  Even if

17  they have a right to negotiate, they cannot settle without

18  considering our interests and getting our consent because of

19  the interest that we have in the equity.

20          Now, just to put a clear point on it, about two

21  months ago, Mr. Rebibo, who's sitting now at the cooperative

22  table between Amtrak and lender, Mr. Rebibo testified under

23  oath that the station was worth at least 700 million and

24  possibly up to a billion dollars as at the time of the

25  taking.  So there's at least 200 million of equity,

1    according to the lender, that they are leaving on the table,

2    and possibly as much as 500 million that they are leaving on

3    the table.  So we're not talking about a piddling amount.

4            THE COURT:  Trust me --

5            MR. ROSS:  So it helps put a perspective on what's

6    going on here.

7            THE COURT:  So help me understand why you believe

8    Ms. Lambert and Ms. Will are wrong in terms of how they want

9    me to think about this, which is that, the strict question

10   before you, Judge, is what is their property interest?

11   And the answer is, none.

12           To the extent that they, as you suggested, have an

13   interest in the award, well, that's a contractual interest.

14           And if for some reason you think they end up

15   settling for less than what you think the just compensation

16   award should be, well, take that up in a breach of contract

17   suit.

18           So why is that not the right way to think about

19   this?

20           MR. ROSS:  Because our right is not limited to a

21   contractual right.

22           It is -- the Supreme Court cases and the 30 cases

23   in the brief that we cited to you all talk about equitable

24   rights.  And in each of the cases, including some of those

25   that Amtrak has relied on where they've asked you to say,

1    well, look, attorneys, these were denied in this Virginia

2    case and you can see that a party wasn't permitted to

3    participate when a trustee was representing their rights.

4         Well, that case helps me, that case helps USSM,

5    because it recites that courts routinely recognize that if

6    there is an equitable interest in the recovery, a party has

7    a right to be at the table and get their attorneys' fees

8    paid later.

9         In that particular case, the Court said, sorry,

10   but there was a bankruptcy that occurred and a trustee was

11   appointed, or there was a proceeding that led to a trustee

12   being appointed.  So the trustee was representing all of

13   your interests and was duty-bound to do so, and, therefore,

14   you didn't get your legal fees.

15        If you look at every single one of the cases that

16   we have cited and they have cited, courts routinely

17   recognize that it doesn't require an express property right.

18   Sometimes it's a lessee, sometimes it's an occupant on the

19   property.  Sometimes it --

20        THE COURT:  Aren't those legal rights?

21        In other words, if you're a lessee, if you're an

22   occupant, you're protected by law --

23        MR. ROSS:  But they --

24        THE COURT:  -- either by some contractual term or

25   some, perhaps, statute that gives, you know, a lessee some

1    rights, and so that's what I'm struggling with here.

2           I mean, I recognize that in some of these cases,

3    courts have said, look, we don't need to worry about whether

4    you, as shareholders, have an interest or not because your

5    interest was adequately represented.

6           And I guess the question is, should I read those

7    cases to really reach the issue that you've suggested, which

8    is that a shareholder does have an interest, an equitable

9    interest, even though the courts never said that?

10           MR. ROSS:  Well, our case is not a *General Motors*

11    case and where we have thousands of shareholders.

12           We have a single-purpose entity with a single

13    owner in a corporate LLC context and that makes it very

14    different, Your Honor.

15           THE COURT:  Why?

16           I guess I just don't understand why.

17           Because, look, I am far from an expert on

18    corporate law, but my sort of general principle baseline

19    understanding when it comes to corporate law is that you

20    live with the choices you make.  If you choose a particular

21    corporate form, you can't both use it as a shield and a

22    sword.

23           And so if you agree with me that somebody in a

24    public company setting doesn't -- you know, the public

25    shareholders don't have that right, why isn't the same with

1    an LLC, unless you can point me to some statute or case law

2    that says, well, in this particular circumstance when it

3    comes to a condemnation, we need to treat members of an LLC

4    differently?

5         MR. ROSS:  I think that the cases that we have

6    cited do show that courts do that and Ms. -- and that

7    Amtrak's argument that this is strictly an in rem

8    proceeding, you can't consider equity, you only can consider

9    somebody who has --

10        THE COURT:  Let's say USSM had 25 members.

11   Would that make a difference?  Is that something I'm

12   supposed to -- you've sort of emphasized that it's a single

13   member.  Should it make a difference whether it's 25 versus

14   1 or 50?  That can't be the inquiry.

15        MR. ROSS:  I agree with you, but you don't have --

16   that hypothetical doesn't apply here.  It's very simple.

17        Also, the idea -- perhaps this isn't directly

18   responsive, but Amtrak also argues to you that this is a

19   clear case of substitution.

20        But nobody died here.  This is not the typical

21   case of somebody got renamed or reappointed, and at the

22   moment of the condemnation, there was nobody appointed.

23   So it's not a classic substitution case.

24        And, by the way, some things Ms. Will said were

25   not accurate, I'm not saying intentionally, but we do

1    challenge in the Southern District the actual validity of

2    the foreclosure, and that is part of the challenge that's

3    before the Judge.

4            Also, the very practical issues that you spoke

5    about, where you don't want to be in a position where

6    there's a conflict between what you decide at this stage on

7    this record and what Judge Woods may decide, if Amtrak has

8    failed to pay just compensation in this case because all of

9    the equity was not part of what they paid for, what we're

10   hearing is, according -- if you believe what counsel has

11   represented, and I don't know if it's true because there are

12   technical issues about calculation -- but if we accepted

13   that for the moment, lender is settling only for what is due

14   them and somewhat less because it's a settlement.

15           Yeah, clearly, they're also telling you, I'm not

16   taking a dime of equity, I'm selling Mr. Ashkenazy out for

17   zero.  And why am I doing that?  Because of the foreclosure,

18   because of contract documents, which are the subject of a

19   dispute.

20           So telling me, Mr. Ross, that'll be your next

21   lawsuit, isn't this great news, that you've got another case

22   for Mr. Ashkenazy to sue them for wrongfully failing to

23   settle for an amount that they should have?

24           And in the meantime, these are Korean insurance

25   companies that are -- Rexmark represents -- the money that

55

```
1    is coming out of this is going to Korea, to insurance

2    companies.

3              And the reason I mention that is because I'm

4    supposed to start a new suit to challenge hundreds of

5    millions of dollars which have not been paid by Amtrak which

6    is duty-bound under the statute to pay as just compensation.

7    And I'm supposed to run after entities that don't have any

8    presence in the United States.  And that's what I'm looking

9    at as my next option here, because -- if Your Honor would

10   grant the motions as put to you.

11             With respect to the form of -- even the form of

12   order that was put to you for the judgment, and I think it's

13   kind of amazing that Amtrak is telling you they need you to

14   clear title for them, if you don't say that this was a

15   valid, just, proper condemnation, somebody later might argue

16   that they don't own Union Station, which they condemned and

17   have taken the property -- but I find that amazing, frankly,

18   but it doesn't matter.

19             You don't know what the just compensation amount

20   is, Your Honor, and yet that's what's in the order.  If you

21   read it says, you are endorsing that 255- is the remaining

22   amount of just compensation.  Were you to enter that, you

23   would be giving your imprimatur to a number that you have no

24   way of knowing since you did not hold a trial or a hearing

25   or hear experts on it.  I'm not criticizing you, of course,
```

1   Your Honor, but I'm saying no proof has been put before you,

2   and magically --

3           THE COURT:  It's not that I haven't tried.

4           MR. ROSS:  -- now you're being asked to rubber

5   stamp what they say -- they would like you to say is just.

6           So when we get to the D.C. Circuit, I'm supposed

7   to also be told, well, it's already been determined by the

8   judge that this was a just amount.

9           I mean, exactly what you said, why aren't they

10  just putting a settlement together and saying, we don't need

11  your help, Judge, thank you very much, please dismiss the

12  case?  Why is it that you're being asked to say that what

13  they've done is proper?

14          Really, all you're being asked is to, truly,

15  what's on this motion, please decide that Ashkenazy is not

16  in the money.  After that, what they decide to do is their

17  business, right, because my client would have no rights.

18          I think that's totally wrong and not what you

19  should do for all the reasons we talked about.

20          I also think you have some other alternatives,

21  which I put in my papers, but I was hoping not to get here.

22          But, number one, if you knew that Judge Woods was

23  going to decide what's before him in, let's just say a

24  month, I think, out of prudence, you probably would say,

25  well, let's come back in a month and see what happens.

1    That will help me because I will at least know what happened

2    there.

3              You don't have to decide this now.  The fact that

4    they are worried about the next target of DOGE or what

5    somebody might say about whether Amtrak should or shouldn't

6    be paying this money and who's going to look at this

7    department or this quasi-governmental agency next and why

8    everybody is running for the exits here at this moment in

9    time is not my problem.  My problem is, we have a right to

10   just compensation also.  Also -- so one option for you is to

11   wait.

12             Another option for you is also to say, look, isn't

13   it wonderful that the two of you have decided how much

14   between the two of you're prepared to pay and accept.

15             That's great.  Let's have the trial in May, just

16   as we planned, and have Mr. Ross put on his expert and have

17   Amtrak put on their expert and we'll see if there really is

18   a delta between 505 million and the fair value.

19             Let's say it comes out at 400 million.  Well, they

20   already agreed to pay 5 to these folks, and it's done.

21             Let's say it's 700 million.  Well, now we know

22   Mr. Ashkenazy's equity has been determined, if you agree

23   with it, to be 200 million above the amount that Amtrak was

24   telling you was just compensation that they'd like you to

25   endorse.

58

1            So we have an alternative, we have a trial.

2      And you might say, gee, that's a lot of extra energy to

3      expend if Judge Woods is going to, at some point, rule.

4      And suppose you're out of the money.  Then I wasted my

5      effort.  And I would just say, you know, Your Honor, you

6      have other things to do than to conclusively decide today.

7            Another thing that you could do is suggest

8      strongly to the parties that they get back to the

9      negotiating table.

10            They have never, ever spoken with us, including

11      the statute that they're condemning under required that they

12      engage in good faith negotiations with USI, and you know,

13      you heard testimony, that they never did.

14            They gave Mr. Ashkenazy one week to take their

15      offer, and he asked to meet with them and they said, no, and

16      then they condemned.

17            And Your Honor heard, well, there were post

18      discussions.  We were excluded from them.  They refused to

19      allow us in the door.  I asked to attend.  I asked to

20      participate.

21            More recently, you know, Your Honor then

22      encouraged later in the process, have some settlement

23      discussions, maybe we could resolve this, or you can satisfy

24      the statute which hadn't been satisfied.  We were excluded.

25      Once again, these were secret negotiations.

59

1          So one thing Your Honor could do is suggest

2   strongly mediation, you could suggest that the parties do

3   it, or you could order the parties to do it for the next

4   four weeks.

5          There is no harm whatsoever to anybody with

6   waiting four weeks or eight weeks.  Why?  Money is in

7   Amtrak's pocket.  Obviously the lender wants to get it in

8   their pocket and send it upstream.  But it's earning

9   interest.  Whoever's got it, it's earning interest.

10          So this is only money.  Nobody's life is at stake.

11   There's, you know, there's a lot of money at stake, but

12   there are other options that Your Honor could consider.

13   It's not only a strict decision which is going to result in

14   an appeal or something else.

15          THE COURT:  Okay.  I got you.

16          MR. ROSS:  Thank you, Your Honor.

17          THE COURT:  Okay.  Thank you.  I appreciate it.

18          It's your motion, I know.

19          MS. LAMBERT:  May I comment on the motion very

20   briefly?

21          I note that Your Honor kind of likes little

22   tidbits on history and stuff.

23          So one of the reasons we like orders is because

24   I had to one time look at property dealing with a 1930

25   condemnation of a post office in Baltimore.  And I will have

1    to say.  I said, what were these people doing?  I don't want

2    that to happen in the future, and so it is important that we

3    have clarity.

4            And let's have some clarity about damages.

5            There was not a single thing said by Mr. Ross as

6    to why seeking damages would not be available to them.

7    If there was a fiduciary duty or breach of contract in the

8    Mezzanine Loan agreement and what that means, then he did

9    not explain to this Court why those would be insufficient.

10           Another point, Your Honor, that we keep talking

11   about, equity versus equitable interest.

12           *Nichols* explicitly states that a stockholder is

13   not a proper party to a condemnation proceeding.  And they

14   have not cited a single case where somebody with a

15   contractual right has, by virtue of that contractual right,

16   been considered a necessary party.

17           And we would point the Court to the 6.31 case

18   which talks about Boston had a contractual right, and the

19   Court said that's not enough.

20           And then there was the argument of, hey, what

21   difference does it make?  Just let it go on, have parties

22   settle.

23           Well, we already know something.  USSM does not

24   agree to this settlement.  They have said that they don't

25   agree to the value.

1          Well, this is -- you know, this is -- you can

2    imagine how hard the parties have fought for this

3    settlement.

4          And says, just try it.

5          That kind of flips the loan documents on its head.

6    It gives USSM a veto over what the condemner and the lender

7    have said.  So that's not what those agreements...

8          They also say, make a special rule for us,

9    because, yeah, we chose the Delaware forum.  Yes, it's a

10   corporate forum, but let us participate.  But don't allow

11   those other people who might have similar interests.

12   And that doesn't make legal sense or practical sense.

13          There is harm for delay.  The trial is off the

14   calendar.  We would be talking about months down the road.

15          Amtrak, as you may recall, said it would not do

16   certain things while -- until a final judgment was entered.

17   Amtrak wants to do those things, and yet USSM says that it

18   wants to continue to fight this.  They should not be allowed

19   to do it.  They have contractual rights.  And if the Court,

20   you know, that this is -- that's been made very clear by

21   everybody in this proceeding.

22          We would ask that this hard fought, long fought,

23   almost three years of litigation with a quick-take provision

24   that wasn't quite as quick as we would like, but so that we

25   can move forward, Your Honor.

1              THE COURT:  Okay.

2              MS. LAMBERT:  That's what we need.  Thank you.

3              THE COURT:  All right.  Thank you, Ms. Lambert.

4         Ms. Will, I'll give you the last word.

5              MS. WILL:  Thank you, Your Honor.

6              MR. ROSS:  Your Honor, I have one last thing to

7    say, but it will take one minute.

8              MS. WILL:  Thank you, Your Honor.  I just have

9    three brief points.

10             Many of the issues that were raised by Mr. Ross

11   are really not for this Court to decide.

12             The Court inquiry is, again, the amount of just

13   compensation and who gets it.

14             We're focused on the property interest, the

15   leasehold interest.  USSM does not have a legal or equitable

16   right in it.  The property owners as of 4/14 of 2022 are USI

17   and lender had a secured lien over it.

18             There's also, based on USSM's argument today,

19   they're saying that we have to go to trial, we have to be

20   able to have some kind of -- more fact-finding in the just

21   compensation, basically saying that condemnation trials or

22   condemnation lawsuits cannot be finally determined unless

23   there is a trial.

24             But parties settle all the time.  There is no

25   requirement that a condemnation proceeding must go to trial.

63

1    And right now we're looking at somebody, or an entity that

2    has no legal or equitable interest basically asking for a

3    mock trial to see where the value is.

4           THE COURT:  And just to be clear, you read the

5    statute not to require me -- and there are statutes, for

6    example, that do require courts to sign off on settlements,

7    you don't think that's this statute.

8           MS. WILL:  I don't think that the Court has to do

9    a fact-finding analysis into the just compensation that the

10   parties have agreed upon, the necessary parties that have an

11   interest in the property interest to agree upon.

12          And then the last point I wanted to make is that

13   there is an injunction order in the Southern District case

14   that was mentioned by Mr. Ross previously.  And the fourth

15   prohibition on that injunction order is enjoining USSM and

16   any of its agents, representatives, officers, directors,

17   and the like from impeding the collection or transfer of any

18   assets to USI that are owed to it.

19          USI is the entity that is owed the just

20   compensation award, no matter which way you swing it.  And

21   by USSM opposing this Consent Order, opposing the settlement

22   agreement of the necessary parties, they're in direct

23   violation of the preliminary injunction order that has been

24   entered by Judge Woods.

25          THE COURT:  Okay.  Thank you.

1              MS. WILL:  Thank you, Your Honor.

2              MR. ROSS:  Your Honor, we are not in violation of

3     that order, because the Judge expressly said, I'm not going

4     to do anything to inhibit your participation in the case.

5              Second, USI is a settling party, as I understand

6     it.  It has a fiduciary duty and an obligation to USSM,

7     its parent company.  So it can't settle without our consent.

8     So there is yet another level involved here.

9              That's what I wanted to say, Your Honor.

10    Thank you for listening.

11             THE COURT:  Okay.

12             All right.

13             I don't want to prolong this, but I mean, I don't

14    quite understand the last point in terms of USI being a

15    settling party; in other words, I understand USI has the

16    potential for -- it was a -- had an interest in the

17    property, but in terms of settling, that seems to be the

18    right of the lender since it has foreclosed on the loan.

19    So I'm not sure quite why USI is a settling party when --

20             MR. ROSS:  Yeah.

21             Your Honor, the preparing --

22             THE COURT:  -- the lender represents their

23    interest, and, I believe, technically owns their interest.

24             MR. ROSS:  The preliminary injunction order was

25    preliminary.  The case has not been determined.  We are

1    still in the middle of the case.

2              THE COURT:  Okay, but you had said something that

3    seemed more absolute than the state of play as I understood

4    it, as complicated as it is.

5              MR. ROSS:  But, Your Honor, I was saying, I do

6    mean USI is a party to the settlement, it has a parent

7    company that's still the parent company.

8              THE COURT:  Okay.  Got you.

9              All right.  Thank you, all.  I appreciate it.

10   It's been very helpful and we'll get back to you as soon as

11   we can.

12             COURTROOM DEPUTY:  All rise.  The Court is

13   adjourned.

14             (Proceedings concluded at 3:31 p.m.)

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, William P. Zaremba, RMR, CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.


Date:__February 28, 2025____    _____

William P. Zaremba, RMR, CRR

COURTROOM
DEPUTY: [3]  3/2 3/6
65/12
MR. ROSS: [68]
24/18 25/3 25/5 26/7
26/19 26/22 26/25 27/6
27/22 28/1 28/3 28/22
28/25 30/6 31/7 31/10
32/12 32/14 33/3 33/8
33/25 34/9 34/19 34/25
35/12 59/19 62/2
MS. WILL: [31]  35/14
35/17 35/20 36/3 36/12
36/14 37/3 38/5 38/21
39/12 39/17 40/4 40/25
41/14 42/8 43/15 44/13
44/16 44/25 45/15
45/18 46/3 46/6 46/17
47/17 47/19 47/21 62/5
62/8 63/8 64/1
THE COURT: [125]

## $
$255 [1]  34/5

## 0
01043 [1]  1/4

## 1
10019 [1]  1/21
10022 [1]  2/4
1043 [1]  3/8
12th [1]  5/2
14 [1]  62/16
14th [2]  5/2 40/20
16 [1]  23/20
1633 [1]  1/20
17 [1]  23/20
1700 [1]  1/21
1717 [1]  1/17
1930 [1]  59/24

## 2
200 [2]  49/25 57/23
20001 [1]  2/10
20036-5344 [1]  1/17
2006-CIBC14 [1]  43/15
2007 [1]  4/9
2009 [1]  44/3
2012 [1]  43/17
202 [2]  1/18 2/10
2020 [3]  38/10 41/21
48/3
2022 [4]  4/9 5/2 40/20
62/16
2025 [2]  1/5 66/7
212 [2]  1/21 2/4
21204 [1]  1/14
22-01043 [1]  1/4
22-1043 [1]  3/8
24311 [2]  25/17 30/17
25 [2]  53/10 53/13
250 [1]  49/5
255 [1]  55/21
27 [1]  1/5
28 [1]  66/7

## 3
30 [1]  50/22
3249 [1]  2/10
333 [1]  2/9
339-6759 [1]  1/14
354-3249 [1]  2/10
3:31 [1]  65/14

## 4
4/14 [1]  62/16
400 [1]  57/19
410 [1]  1/14

## 5
5.2.2 [22]  11/25 12/1
13/13 14/25 15/17
15/18 17/19 20/8 21/19
26/11 26/19 27/3 27/21
35/20 36/6 37/11 38/6
41/14 42/2 42/10 42/23
44/8
50 [1]  53/14
500 [2]  1/13 50/2
505 [1]  57/18
506-1700 [1]  1/21
5344 [1]  1/17

## 6
6.31 [1]  60/17
6144 [1]  1/18
6759 [1]  1/14

## 7
70 [1]  34/11
700 [2]  49/23 57/21
71.1 [4]  25/19 30/17
31/25 35/1
735-8600 [1]  2/4

## 8
857-6144 [1]  1/18
8600 [1]  2/4

## 9
901 [1]  1/13
909 [1]  2/3

## A
ability [2]  18/7 30/18
able [2]  43/12 62/20
about [54]  3/18 6/14
8/1 10/13 10/15 11/25
14/21 15/13 15/17
16/22 16/25 19/23 20/3
20/15 22/8 23/5 25/17
25/19 26/11 26/20
26/25 27/6 27/10 28/10
29/16 29/18 30/13
30/19 30/20 31/21
35/21 36/9 36/10 40/16
46/1 47/7 48/20 49/6
49/7 49/20 50/3 50/9
50/18 50/23 52/3 54/5
54/12 56/19 57/7 57/5
60/4 60/11 60/18 61/14
above [5]  10/20 14/24
24/1 57/23 66/4

absolute [1]  65/3
absolutely [4]  15/23
18/20 28/13 48/24
accept [1]  57/14
accepted [1]  54/12
according [3]  11/5
50/1 54/10
accurate [1]  53/25
acquire [1]  14/11
acquiring [1]  25/17
act [5]  13/16 17/23
38/13 43/4 43/9
action [4]  3/7 38/24
38/25 41/17
actions [2]  36/17 42/1
acts [1]  41/5
actual [2]  12/17 54/1
actually [9]  3/22 7/10
10/3 22/22 26/12 27/11
37/25 43/24 49/9
address [3]  18/9 31/8
31/18
addresses [1]  20/11
adequately [1]  52/5
adjourned [1]  65/13
adverse [1]  8/19
affects [1]  37/22
affirmative [1]  39/2
afslaw.com [1]  1/18
after [12]  13/16 17/23
18/13 22/11 27/11 32/8
37/6 39/3 44/7 48/11
55/7 56/16
afternoon [8]  3/4 3/13
3/18 4/1 4/2 24/18
35/14 35/15
again [7]  35/16 41/18
42/8 42/17 43/13 58/25
62/12
against [7]  15/19 19/10
37/14 39/5 40/23 41/15
41/25
agency [1]  57/7
agents [1]  63/16
ago [2]  49/7 49/21
agree [20]  5/22 5/25
6/1 6/2 10/25 12/19
21/21 23/23 24/25 26/5
35/22 36/1 36/4 36/11
52/23 53/15 57/22
60/24 60/25 63/11
agreed [5]  33/16 33/23
35/5 57/20 63/10
agreeing [2]  13/6 16/9
agreement [9]  11/14
11/21 14/25 20/19 27/4
36/19 36/19 60/8 63/22
agreements [8]  11/16
12/24 26/12 39/6 41/6
43/12 48/5 61/7
ahead [2]  37/24 39/21
aided [1]  2/12
AL [1]  1/6
alignment [1]  3/14
all [49]  3/2 3/13 3/17
3/17 4/10 5/14 6/23
15/2 15/7 16/7 17/14

absolute [1]  65/3
absolutely [4]  15/23
29/25 31/16 32/24
33/22 34/3 35/10 35/23
36/14 38/22 39/10
39/23 40/6 40/15 42/10
42/13 42/17 44/21
44/24 47/10 48/1 48/6
49/8 49/9 50/23 51/12
54/8 56/14 56/19 62/3
62/24 64/12 65/9 65/9
65/12
alleging [2]  27/16
allow [4]  28/7 32/16
58/19 61/10
allowed [3]  33/11
43/22 61/18
allows [1]  29/5
alluded [1]  23/4
almost [1]  61/23
already [4]  18/14 56/7
57/20 60/23
also [20]  4/7 14/2
16/22 23/6 26/10 30/2
37/10 43/18 48/10
53/17 53/18 54/4 54/15
56/7 56/20 57/10 57/10
57/12 61/6 62/18
alternative [1]  58/1
alternatives [1]  56/20
although [2]  20/17
38/8
always [1]  23/16
am [6]  15/21 17/10
31/7 32/13 52/17 54/17
amazing [2]  55/13
55/17
Amber [3]  2/2 3/11
35/17
AMIT [1]  1/9 3/3
Amit P. Mehta [1]  3/3
amount [14]  10/13
10/14 12/16 12/17 34/5
45/10 49/10 50/3 54/23
55/19 55/22 56/8 57/23
62/12
AMTRAK [25]  1/3 3/7
3/21 14/21 15/12 18/19
20/5 29/17 29/18 33/23
35/22 36/2 36/4 40/2
49/22 50/25 53/18 54/7
55/5 55/13 57/5 57/17
57/23 61/15 61/17
Amtrak's [3]  48/20
53/7 59/7
analogies [1]  21/9
analogy [1]  7/12
analysis [5]  9/3 9/8
31/19 32/18 63/9
Andrew [2]  2/6 3/12
another [11]  16/2 16/5
16/5 17/1 35/24 37/25
54/21 57/12 58/7 60/10
64/8
answer [6]  19/12 21/5
23/23 23/13 27/20 50/11
any [35]  3/16 5/21 6/21
7/15 9/1 10/1 10/19
13/18 13/20 13/20

67
19/11 21/24 22/8 22/25
29/25 31/16 32/24
33/6 35/6 35/7 35/10
35/21 37/12 38/15
38/15 38/23 40/17
41/18 48/17 48/24
49/11 55/7 63/16 63/17
anybody [2]  48/24 59/5
anymore [2]  18/17
27/2
anything [8]  8/23
10/13 13/1 14/18 24/1
24/6 44/24 64/4
apart [2]  22/17 23/13
appeal [3]  22/17 23/13
59/14
Appeals [1]  43/17
APPEARANCES [2]
1/11 1/23
appears [1]  9/13
Appellate [1]  44/3
applied [1]  27/12
applies [1]  46/23
apply [4]  27/13 42/14
44/8 53/16
applying [1]  23/16
appointed [5]  13/16
17/23 51/11 51/12
53/22
appreciate [3]  4/11
59/17 65/9
appreciated [1]  22/22
Approximately [1]
16/20
April [3]  5/2 20/4 40/20
are [66]  3/6 4/7 6/17
6/21 7/2 7/19 8/13 9/24
10/3 14/23 16/23 18/10
20/18 21/8 21/11 21/21
22/14 26/18 27/15
28/10 30/19 30/23
32/21 33/6 33/21 34/3
34/10 34/12 35/6 35/23
36/14 36/16 37/3 37/6
40/9 40/20 41/5 42/13
42/13 42/18 44/11 46/4
46/22 47/10 47/14
47/15 47/25 48/16
49/13 49/13 50/1 50/2
50/8 54/11 54/18 54/24
54/25 55/21 57/4 59/12
62/11 62/16 63/5 63/19
64/2 64/25
aren't [3]  15/12 51/20
56/9
ARENT [2]  1/16 4/4
argue [4]  32/17 32/17
40/1 55/15
argued [1]  43/6
argues [2]  42/24 53/18
arguing [2]  22/8 32/21
argument [8]  18/5
29/15 32/7 38/11 46/10
53/7 60/20 62/18
arguments [3]  16/22
17/6 37/7
arrangements [1]
47/25

**A**

articulate [2]  4/14 42/2
as [62]  3/25 5/18 5/19
7/1 10/18 11/4 12/21
13/7 13/17 13/25 14/15
17/24 18/16 19/16 19/25
20/25 21/10 21/21
23/23 26/23 27/9 28/7
29/5 30/22 31/25 32/6
32/20 33/15 34/7 34/24
35/5 38/13 39/7 40/20
43/4 43/9 44/1 48/15
48/23 48/24 49/13
49/24 50/2 50/2 50/12
52/4 52/21 55/6 55/9
55/10 57/16 60/5 61/15
61/24 61/24 62/16 64/5
65/3 65/4 65/4 65/10
65/10
as opposed [2]  34/7
34/24
as they [1]  48/15
Ashkenazy [9]  4/5 4/6
4/25 23/19 31/15 54/16
54/22 56/15 58/14
Ashkenazy's [1]  57/22
aside [2]  8/21 19/5
ask [12]  4/13 10/18
12/6 17/16 17/16 21/14
23/22 32/24 36/1 36/23
38/2 61/22
asked [12]  14/14 17/3
22/24 48/20 49/6 50/25
56/4 56/12 56/14 58/15
58/19 58/19
asking [7]  6/19 8/11
19/15 34/3 34/7 39/22
63/2
aspects [1]  47/11
asserting [1]  49/16
asset [2]  10/9 23/20
assets [1]  63/18
assuming [1]  41/23
assumption [1]  45/24
assure [1]  49/2
attempting [1]  17/14
attend [1]  58/19
attention [1]  14/18
attorney [7]  13/18
17/25 38/14 43/1 43/4
43/9 43/21
attorneys [1]  51/1
attorneys' [1]  51/7
authority [2]  30/17
38/13
available [2]  49/6 60/6
Avenue [2]  2/3 2/9
award [14]  13/20 14/5
14/8 14/24 17/20 18/1
24/1 25/25 26/6 38/15
44/7 50/13 50/16 63/20
away [1]  22/4
awill [1]  2/5
Axle [1]  43/16

**B**

back [8]  24/15 39/6
40/13 48/19 48/22

background [1]  17/1
backwards [1]  48/12
Baltimore [1]  59/25
bank [4]  2/2 3/11 5/3
20/15
bankruptcy [2]  43/19
51/10
bar [2]  17/4 17/5
bargained [1]  43/11
Barrett [1]  2/9
based [7]  37/8 37/19
40/21 42/9 46/7 46/10
62/18
baseline [1]  52/18
basically [4]  21/10
45/6 62/21 63/2
basis [7]  11/1 11/3
11/20 35/8 42/22 46/24
48/18
be [72]
bear [1]  18/6
because [43]  5/17 8/16
9/2 9/22 10/8 10/17
11/14 12/5 12/14 21/23
25/5 25/8 26/7 26/9
27/23 29/17 31/1 31/15
32/3 32/15 33/16 33/22
34/16 38/5 45/23 48/19
49/18 50/20 51/5 52/4
52/17 54/8 54/11 54/14
54/17 54/18 55/3 55/9
56/17 57/1 59/23 61/9
64/3
becomes [1]  19/6
been [35]  10/10 14/7
16/17 16/22 18/14
19/13 20/15 24/9 27/11
31/9 32/25 33/19 33/20
36/5 37/8 38/9 39/1
44/21 44/22 45/23
47/25 48/2 48/17 48/18
49/12 55/5 56/1 56/7
57/22 58/24 60/16
61/20 63/23 64/25
65/10
before [18]  1/9 3/19
15/18 16/2 16/4 19/14
25/1 28/10 30/20 35/23
38/19 38/24 42/16
48/17 50/10 54/3 56/1
56/23
began [2]  12/24 49/4
begin [2]  3/22 3/23
beginning [1]  19/25
behalf [1]  6/23
behind [1]  19/20
being [23]  3/17 9/14
12/25 15/16 18/17
25/13 30/12 31/14
32/22 34/8 39/3 40/12
43/22 45/11 45/12
45/15 47/9 49/13 51/12
56/4 56/12 56/14 64/14
belief [1]  14/23
believe [11]  9/17 10/18
12/1 12/3 12/15 28/11
32/10 45/4 54/7 54/10

believes [1]  31/15
belts [1]  34/20
Ben [1]  31/15
bench [1]  23/16
benefits [1]  8/18
BENSON [1]  1/20
between [9]  11/16
12/16 34/8 40/7 41/6
49/22 54/6 57/14 57/18
beyond [2]  9/21 30/18
billion [1]  49/24
bit [1]  30/20
Black [1]  43/18
borrower [4]  26/23
43/2 43/3 43/6
borrowers' [2]  13/17
17/24
borrowings [1]  6/23
Boston [1]  60/18
both [6]  4/7 8/18 10/9
15/14 23/17 27/16 45/8
48/23 52/21
bought [2]  22/1 22/5
bound [2]  51/13 55/6
breach [5]  39/4 41/4
41/25 50/16 60/7
breaches [2]  27/16
27/17
brief [4]  20/23 42/12
50/23 62/9
briefed [3]  16/14 44/21
44/22
briefly [1]  59/20
Broadway [1]  1/20
brought [4]  7/14 38/25
39/5 41/4
built [2]  23/19 31/1
business [2]  19/2
56/17
buying [1]  13/1

**C**

calculate [1]  10/12
calculating [1]  49/3
calculation [1]  54/12
calendar [1]  61/14
called [1]  41/10
calling [1]  3/6
can [30]  4/13 4/14
14/11 17/16 17/19
20/21 21/14 24/20
24/21 31/8 33/24 35/2
35/8 35/15 36/1 36/15
36/24 39/5 39/18 45/9
46/19 47/2 47/3 51/2
53/1 53/8 58/23 61/1
61/25 65/11
can't [1]  8/18 20/4
20/21 23/9 31/19 34/15
49/16 52/21 53/8 53/14
64/7
cannot [3]  20/19 49/17
62/22
care [1]  19/23
carefully [1]  25/12
case [58]  4/19 5/15 7/5
7/8 10/23 10/25 13/12

1/1/1 [3]  11/11 16/1
54/15
client [3]  19/14 39/20
56/17
clients' [1]  19/2
closed [1]  12/25
co [1]  47/2
co-owners [1]  47/2
COHEN [1]  2/3
collateral [1]  15/24
colleague [1]  4/4
colleagues [1]  24/5
collect [3]  13/19 18/1
38/14
collection [1]  63/17
Colorado [2]  7/8 28/11
COLUMBIA [1]  1/1
combined [1]  28/6
come [6]  3/23 8/8
24/15 48/19 48/22
56/25
comes [6]  8/5 23/16
40/7 52/19 53/3 57/19
coming [3]  13/1 39/19
55/1
comment [2]  47/22
59/19
commercial [2]  36/18
47/11
common [2]  6/10 29/3
companies [2]  54/25
55/2
company [13]  6/24 7/9
7/10 8/2 8/4 8/13 28/8
28/9 47/6 52/24 64/7
65/7 65/7
company's [1]  8/7
compensation [28]
4/23 8/9 9/2 9/4 10/1
10/20 14/24 25/25 30/3
34/5 40/8 40/15 41/13
45/11 46/19 48/22
48/25 50/15 54/8 55/6
55/19 55/22 57/10
57/24 62/13 62/21 63/9
63/20
complete [1]  5/6
completely [2]  23/12
43/8
complicated [1]  65/4
compromise [3]  13/20
18/2 38/15
computer [1]  2/12
computer-aided [1]
2/12
conceded [2]  45/4
46/23
conceptually [1]  10/16
concern [1]  14/20
15/14 23/5 27/24 37/16
48/11
concerns [1]  36/9
concession [1]  13/24
conclude [2]  23/10
24/16
concluded [2]  16/12
65/14
conclusion [1]  49/13

**C**

conclusively [1]  58/6
condemn [1]  8/5
condemnation [44]
4/18 4/21 4/22 5/24
8/24 9/18 11/4 11/7
11/12 11/15 11/17
12/22 13/8 13/21 15/2
15/6 15/9 18/3 18/13
18/16 19/6 20/1 22/12
23/3 25/25 32/6 34/10
36/21 37/6 37/13 38/16
39/7 41/17 43/6 44/7
46/19 53/3 53/22 55/15
59/25 60/13 62/21
62/22 62/25
condemnations [1]
47/5
condemned [10]  5/1
10/10 11/13 23/21
25/24 27/25 29/17
40/12 55/16 58/16
condemner [1]  61/6
condemning [1]  58/11
conduct [1]  18/13
confirm [1]  14/22
conflict [1]  54/6
confused [1]  34/6
connection [2]  13/21
18/2
consent [4]  3/20 49/18
63/21 64/7
consider [5]  15/2 15/6
53/8 53/8 59/12
consideration [1]
45/16
considered [2]  11/8
60/16
considering [1]  49/18
constitute [2]  28/17
28/21
Constitution [2]  2/9
33/13
construed [1]  14/19
contemplated [1]
12/16
contention [1]  11/1
context [3]  9/9 22/12
52/13
continuance [2]  13/17
17/24
continuation [1]  21/20
continue [1]  61/18
CONTINUED [1]  2/1
continuing [2]  21/21
41/19
contract [7]  36/18 39/5
41/5 42/1 50/16 54/18
60/7
contracts [1]  47/25
contractual [27]  11/15
18/7 25/6 25/9 27/7
27/14 27/23 28/5 30/4
36/7 36/14 40/6 41/3
41/5 41/11 41/11 41/15
41/24 43/10 47/24
50/13 50/21 51/24
60/15 60/15 60/18

**control [9]**  5/3 6/20
6/22 6/25 7/1 15/3
18/21 40/13 47/10
controlled [1]  7/3
controls [1]  32/23
cooperative [1]  49/21
Corp [1]  44/3
corporate [11]  7/2 9/9
9/10 9/18 9/21 31/23
52/13 52/18 52/19
52/21 61/10
corporation [1]  47/6
correct [8]  10/2 24/3
27/22 28/1 46/3 46/6
47/17 66/3
could [23]  8/8 8/11
14/3 14/16 19/19 27/12
28/5 29/1 29/3 29/7
30/6 30/8 30/10 30/12
37/6 39/12 49/12 58/7
58/23 59/1 59/2 59/3
59/12
couldn't [1]  22/4
counsel [5]  44/24 48/2
48/6 48/20 54/10
counterclaims [2]
30/21 39/2
country [1]  42/13
couple [1]  18/10
coupled [3]  13/18
13/18 17/25
course [2]  36/3 55/25
court [45]  1/1 2/7 2/8
3/2 3/19 4/20 9/12 11/5
15/19 16/5 19/16 25/8
25/10 25/15 27/18 29/8
30/6 30/7 30/16 30/20
30/23 31/24 33/2 33/6
33/14 35/2 35/7 35/24
36/20 39/4 42/16 42/19
42/24 43/17 45/10
50/22 51/9 60/9 60/17
60/19 61/19 62/11
62/12 63/8 65/12
courts [12]  14/12
20/16 20/18 21/2 42/4
47/1 51/5 51/16 52/3
52/9 53/6 63/6
covered [1]  48/8
COVID [1]  12/25
create [2]  27/8 40/11
creating [1]  15/21
creative [1]  33/5
credit [3]  11/14 11/21
12/24
criticizing [1]  55/25
CRR [2]  66/2 66/8
currently [2]  16/1
38/24
CV [1]  1/4

**D**

D.C [5]  1/5 1/17 2/6
2/10 3/12
D.C. [1]  56/6
D.C. Circuit [1]  56/6
damages [2]  60/4 60/6

**Daol [3]**  32/11 32/25
39/1
date [11]  5/1 5/2 12/21
13/7 13/25 20/1 20/5
20/5 20/7 45/21 66/7
David [3]  1/19 3/10 4/4
David Ross [1]  3/10
day [1]  31/19
DBL [1]  43/16
dealing [1]  59/24
deals [2]  8/17 26/10
debt [25]  9/14 10/2
10/20 11/15 11/17
12/10 14/8 14/16 14/24
24/1 27/11 31/13 31/16
35/22 41/20 45/7 45/16
45/25 46/7 46/12 48/13
48/14 48/16 48/25 49/4
debtor [1]  43/22
debtors [1]  48/25
decide [8]  54/6 54/7
56/15 56/16 56/23 57/3
58/6 62/11
decided [2]  27/15
57/13
deciding [1]  19/17
decision [2]  35/8 59/13
decisions [2]  6/22
47/10
declaration [2]  23/7
23/9
declarations [1]  23/8
declaratory [4]  14/14
22/23 37/10 38/25
default [21]  12/21
12/23 13/7 13/17 13/25
17/24 18/24 21/20
21/20 21/22 22/5 38/8
38/9 38/12 40/21 41/17
41/19 41/22 44/1 48/2
49/3
defendant [3]  1/16 2/2
3/10
Defendants [1]  1/7
deficiency [1]  14/6
defined [1]  26/23
Delaware [13]  5/9 5/18
6/2 6/8 26/2 26/9 28/12
28/13 28/19 29/14
46/23 47/15 61/9
delay [1]  61/13
delta [2]  12/16 57/18
denied [2]  14/7 51/1
department [1]  57/7
depend [1]  32/8
derogation [1]  20/20
described [1]  43/2
designee [1]  31/23
determination [2]
31/24 33/15 44/6
determine [1]  14/14
determined [7]  23/24
24/22 46/22 56/7 57/22
62/22 64/25
determines [1]  37/20
determining [1]  11/8
developing [1]  4/8

**development [1]**  35/4
did [10]  17/11 17/15
18/22 43/1 43/5 43/9
48/18 55/24 58/13 60/8
didn't [8]  18/24 27/13
39/25 39/25 45/9 49/5
49/7 51/14
die [1]  29/14
died [1]  53/20
difference [3]  53/11
53/13 60/21
different [16]  7/9 8/15
15/7 17/16 21/9 21/14
26/12 30/8 31/25 33/24
36/16 42/15 43/8 43/24
48/9 52/14
differently [1]  53/4
digging [1]  28/8
dime [1]  54/16
direct [2]  12/13 63/22
directly [3]  20/11 22/6
53/17
directors [1]  63/16
disagree [1]  5/16
disagrees [1]  49/2
discovery [2]  16/10
16/12
discussing [1]  40/15
discussion [1]  46/1
discussions [2]  58/18
58/23
dismiss [2]  39/14 42/9
56/11
dismissal [2]  34/15
34/16
dismissed [1]  42/8
dispute [5]  5/9 9/10
10/11 38/23 54/19
distribution [1]  40/16
DISTRICT [16]  1/1 1/1
1/10 15/22 19/1 22/8
22/14 22/18 23/25
24/23 36/16 41/24
43/20 44/17 54/1 63/13
ditch [4]  7/8 7/10 28/8
28/9
Division [1]  44/3
do [52]  5/9 5/16 5/19
5/25 6/2 8/7 10/18
10/25 14/12 14/17 17/3
17/8 18/12 21/1 21/21
23/17 23/17 26/18
30/15 31/18 33/2 33/14
34/1 36/1 36/4 36/11
39/21 39/23 42/3 42/17
43/5 43/12 49/7 49/15
51/13 53/6 53/6 53/25
56/16 56/19 58/6 58/7
59/1 59/2 59/3 61/15
61/17 61/19 63/6 63/8
64/4 65/5
do you [8]  5/9 5/16
5/25 21/21 26/18 36/1
36/4 36/11
Do you believe [1]
10/18
document [1]  27/10
documents [7]  6/11

**develpoment [1]**  35/4
does [21]  9/4 12/15
13/23 18/6 24/24 27/7
29/17 29/18 30/18 31/6
32/16 32/23 36/22 39/9
39/10 41/16 43/25 52/8
60/21 60/23 62/15
doesn't [11]  14/18 19/9
30/20 42/7 44/8 46/15
51/17 52/24 53/16
55/18 61/12
DOGE [1]  57/4
doing [4]  19/3 34/10
54/17 60/1
dollars [3]  9/13 49/24
55/5
don't [52]  3/22 5/21
5/23 6/18 7/5 7/13 8/12
10/23 12/20 14/17 15/2
15/6 16/21 16/25 20/25
21/23 26/4 26/17 27/20
32/2 33/16 35/10 36/8
36/9 37/16 38/22 39/13
39/18 39/19 39/20 42/9
42/18 44/18 52/3 52/16
52/25 53/15 54/5 54/11
55/7 55/14 55/16 55/19
56/10 57/3 60/1 60/24
61/10 63/7 63/8 64/13
64/13
done [11]  4/11 16/6
18/12 19/14 19/14
22/14 33/7 37/6 42/1
56/13 57/20
door [2]  13/24 58/19
down [6]  9/9 12/25
16/9 25/16 49/5 61/14
draw [1]  49/5
drink [1]  26/18
dross [1]  1/22
due [3]  33/12 46/20
54/13
Dulaney [1]  1/13
duplicate [1]  42/19
during [3]  13/16 17/24
41/17
duty [5]  43/4 51/13
55/6 60/7 64/6
duty-bound [2]  51/13
55/6

**E**

each [1]  50/24
Eads [2]  42/21 43/16
Eads Parkway [1]
43/16
ear [1]  26/13
early [3]  16/8 30/20
34/13
earning [2]  59/8 59/9
easy [1]  48/12
effect [3]  22/3 22/11
23/2
effort [1]  58/5
efforts [2]  4/10 42/19
eight [2]  16/18 59/6
either [7]  15/19 23/24

**E**

either... [5] 24/23 31/1 33/19 36/15 51/24
else [5] 8/23 24/6 31/2 44/24 59/14
Email [4] 1/15 1/18 1/22 2/5
emphasized [1] 53/12
encouraged [1] 58/22
end [2] 48/19 50/14
endorse [1] 57/25
endorsing [1] 55/21
ends [1] 39/3
energy [1] 58/2
enforce [1] 43/4
engage [1] 58/12
Englewood [1] 44/2
enjoining [1] 63/15
enough [3] 13/3 34/22 60/19
enter [5] 34/3 34/7 35/8 43/23 55/22
entered [5] 25/2 37/9 39/4 61/16 63/24
enters [1] 34/4
entire [3] 17/9 19/13 22/3
entirely [1] 7/9
entities [4] 7/2 33/23 40/19 55/7
entitled [14] 4/23 10/1 10/4 10/19 11/2 14/23 18/6 23/25 33/21 35/6 37/21 46/10 46/11 46/16
entitlement [1] 46/1
entity [8] 5/11 6/21 6/22 32/12 40/17 52/12 63/1 63/19
entry [1] 3/20
equitable [32] 6/14 9/1 9/24 12/14 15/16 19/16 24/2 25/6 25/13 25/21 26/7 28/17 28/21 28/22 29/3 29/6 29/11 29/12 32/5 40/11 40/18 47/2 47/4 47/4 47/8 47/11 50/23 51/6 52/8 60/11 62/15 63/2
equities' [1] 9/15
equity [21] 5/7 8/25 9/11 9/12 9/14 10/7 11/11 19/15 20/16 20/20 20/22 23/17 31/1 47/23 49/19 49/25 53/8 54/9 54/16 57/22 60/11
essence [1] 11/13
essentially [3] 10/8 34/23 47/14
estate [1] 7/3
estimation [2] 6/6 34/22
estoppel [2] 15/24 36/9
ET [1] 1/6
evaluate [1] 9/17
evaluation [1] 35/5
even [14] 18/4 18/5 20/3 20/24 22/7 26/5

46/9 49/16 52/9 55/11
event [14] 3/16 12/21 13/7 13/17 13/24 17/24 18/24 21/19 21/20 21/22 38/8 38/11 41/17 44/1
events [5] 11/7 15/2 15/7 15/9 32/8
ever [3] 18/12 33/2 58/10
every [2] 29/19 51/15
everybody [5] 3/13 8/16 45/13 57/8 61/21
everyone [2] 3/4 48/11
everything [1] 7/7
evidence [3] 19/17 48/17 49/11
exact [2] 5/2 12/8
exactly [3] 37/11 37/22 56/9
example [1] 63/6
exceeds [1] 46/10
excess [13] 10/1 10/19 11/2 14/24 18/6 23/25 24/24 35/22 45/6 46/2 46/5 46/8 46/11
exclude [1] 20/16
excluded [3] 37/19 58/18 58/24
exclusive [10] 13/19 15/3 17/25 37/12 38/13 38/13 41/16 42/6 42/25 43/25
exclusively [1] 5/4
Excuse [1] 33/3
executed [1] 48/1
exercise [1] 18/22
exercised [1] 19/5
exercising [2] 25/10 48/4
exist [2] 28/12 47/8
exits [1] 57/8
expend [1] 58/3
expensive [1] 33/21
expert [5] 12/18 31/7 52/17 57/16 57/17
experts [1] 55/25
explain [1] 60/9
explained [1] 18/25
explains [1] 19/3
explicitly [1] 60/12
express [3] 5/13 20/25 51/17
expressly [1] 64/3
extent [2] 36/6 50/12
extra [1] 58/2
Exxon [2] 29/16 44/2
eyes [1] 21/1

**F**

fact [14] 7/9 9/16 13/18 15/1 17/25 27/9 38/14 42/7 43/1 43/9 43/21 57/3 62/20 63/9
fact-finding [2] 62/20 63/9
factual [1] 33/14

failing [1] 54/22
fair [2] 12/17 13/3 57/18
faith [1] 58/12
fall [1] 8/23
far [1] 52/17
fast [1] 22/20
favor [2] 15/19 34/4
February [2] 1/5 66/7
federal [2] 16/2 35/3
fees [2] 51/7 51/14
few [1] 45/2
fiduciary [2] 60/7 64/6
fight [2] 36/15 61/18
fighting [2] 33/17 33/17
filed [2] 20/6 39/2
filing [2] 12/22 13/25 20/1
final [3] 3/20 25/1 61/16
finally [2] 62/22
find [1] 55/17
finding [2] 62/20 63/9
findings [2] 34/24 37/14
finds [1] 23/1
fine [1] 26/16
finish [1] 9/6
first [7] 9/10 11/16 14/2 16/7 18/11 32/15 45/3
flips [1] 61/5
Florida [1] 29/2
flow [2] 11/13 11/15
focused [2] 47/8 62/14
folks [1] 57/20
follow [1] 25/25
following [3] 4/14 14/22 23/22
follows [1] 5/18
foreclose [1] 7/14
foreclosed [5] 20/8 21/15 21/23 22/1 64/8
foreclosure [24] 4/24 14/4 17/7 18/13 19/13 19/23 20/2 22/10 23/2 23/21 31/5 31/10 31/13 31/16 31/21 32/3 33/17 33/18 37/5 40/23 41/18 45/9 54/2 54/17
foregoing [1] 66/3
Forget [1] 8/1
forgotten [1] 5/2
form [6] 8/19 8/20 28/14 52/21 55/11 55/11
format [2] 6/24 29/13
formulated [1] 26/10
forum [1] 61/9 61/10
forward [2] 33/22 61/25
fought [4] 33/20 61/2 61/22 61/22
found [1] 42/23
four [3] 4/19 59/4 59/6
fourth [1] 63/14
FOX [2] 1/16 4/4

front [5] 12/5 30/14 36/20 42/18 44/14
froze [1] 20/4
full [3] 10/4 14/9 43/7
fully [2] 16/14 49/13
funds [5] 6/21 11/13 11/15 40/17 47/9
further [1] 35/10
future [1] 60/2

**G**

gave [1] 58/14
gee [1] 58/2
general [2] 52/10 52/18
generally [1] 44/21
get [21] 3/14 9/9 14/16 16/21 17/10 19/9 19/10 30/14 36/8 38/22 39/21 41/4 42/10 46/14 51/7 51/14 56/6 56/21 58/8 59/7 65/10
gets [1] 62/13
getting [1] 49/18
give [8] 7/24 7/25 23/8 24/14 41/16 42/6 43/25 62/4
gives [7] 7/21 32/24 34/16 34/18 38/12 51/25 61/6
giving [2] 7/19 55/23
glad [1] 21/7
Glover [2] 6/23 11/17
go [7] 6/23 11/17 30/18 33/22 60/21 62/19 62/25
goes [2] 40/17 41/25
going [20] 8/5 12/3 13/13 17/10 23/10 25/16 29/24 37/1 37/24 39/13 45/5 46/14 48/9 50/6 55/1 56/23 57/6 58/3 59/13 64/3
gone [1] 18/18
good [10] 3/4 3/13 4/1 4/2 24/18 24/19 35/14 35/15 36/10 58/12
got [11] 18/5 21/7 24/20 28/24 29/7 41/1 53/21 54/21 59/9 59/15 65/8
government [3] 3/12 8/5 43/2
governmental [1] 57/7
Govt [1] 2/6
grant [2] 43/1 55/10
granted [1] 23/12
granting [1] 16/24
great [6] 4/8 6/5 9/22 28/4 54/21 57/15
greater [1] 10/2
grossly [1] 40/2
ground [3] 9/22 33/1 48/9
guess [4] 32/2 46/14 52/6 52/16

had [25] 3/15 5/3 15/3 15/5 16/3 18/4 18/5 18/12 18/23 22/3 28/5 28/6 28/9 29/2 29/16 30/25 34/13 45/4 46/1 53/10 59/24 60/18 62/17 64/16 65/2
hadn't [2] 19/5 58/24
handles [1] 23/7
hang [3] 13/10 13/10 24/10
happen [3] 8/11 45/9 60/2
happened [2] 20/2 57/1
happens [2] 31/4 56/25
happy [1] 3/24
hard [3] 33/20 61/2 61/22
harm [1] 59/5 61/13
has [70]
have [159]
haven't [6] 10/12 10/13 29/10 30/15 49/8 56/3
having [3] 30/7 34/24 46/24
he [11] 17/11 17/14 17/15 23/5 23/6 23/7 23/10 47/7 47/8 58/15 60/8
head [1] 61/5
hear [7] 3/25 12/18 14/21 15/12 27/20 30/13 55/25
heard [7] 28/9 30/11 35/20 35/21 38/17 58/13 58/17
hearing [4] 1/9 48/11 54/10 55/24
hears [1] 19/17
held [3] 7/20 18/17 42/25
help [13] 5/8 5/25 6/8 6/12 7/4 9/23 10/17 34/6 36/24 41/7 50/7 56/11 57/1
helpful [2] 24/9 65/10
helps [3] 50/5 51/4 51/4
here [46] 3/14 3/17 4/5 7/4 9/24 10/17 10/19 11/1 11/12 15/16 17/2 17/15 18/13 19/24 20/14 20/18 22/14 24/25 26/5 27/24 29/9 29/25 30/8 33/3 33/16 37/19 38/1 38/4 38/4 39/24 40/9 43/10 44/1 44/9 45/12 45/24 47/8 47/25 50/6 52/1 53/16 53/20 55/9 56/21 57/8 64/8
here's [6] 14/20 15/14 17/21 19/22 21/18 37/16
hereby [1] 13/15
hey [2] 30/13 60/20

**H**

him [3] 23/8 45/5 56/23
his [3] 39/20 47/7 57/16
history [1] 59/22
hold [3] 12/18 19/16 55/24
holder [8] 9/14 11/11 11/19 15/5 20/17 20/20 20/22 47/3
holders [2] 10/9 11/8
Honor [68]
Honor's [1] 29/15
HONORABLE [2] 1/9 3/3
hoping [1] 56/21
how [18] 6/22 7/2 10/12 15/18 16/17 18/6 23/7 26/10 27/12 27/21 35/1 37/22 42/2 48/13 49/3 50/8 57/13 61/2
however [1] 43/3
huge [1] 12/15
Hulme [1] 1/16 4/4
hundreds [2] 9/13 55/4
hurt [1] 20/21
hurts [1] 8/20
hypothetical [4] 7/24 7/25 41/23 53/16
hypothetically [1] 39/17

**I**

I also [2] 48/10 56/20
I am [3] 17/10 31/7 52/17
I believe [7] 9/17 12/1 12/3 28/11 32/10 45/4 64/23
I don't [12] 6/18 10/23 12/20 16/21 16/25 21/23 37/16 39/13 42/18 54/11 63/8 64/13
I don't have [1] 35/10
I guess [3] 32/2 46/14 52/16
I had [2] 28/9 59/24
I have [8] 3/24 7/16 10/24 12/5 12/11 24/12 36/23 62/6
I just [1] 44/25
I know [3] 24/12 33/4 59/18
I mean [17] 5/9 8/10 9/25 13/13 17/21 17/22 19/24 21/7 29/24 32/4 38/2 39/16 41/10 45/23 52/2 56/9 64/13
I misspoke [1] 31/11
I say [1] 15/14
I think [26] 7/23 9/8 9/25 10/3 23/16 24/3 24/7 24/9 26/1 26/3 26/9 27/20 28/3 29/15 31/18 32/14 32/15 34/25 37/3 39/18 40/6 47/14 53/5 55/12 56/18 56/24

understand [7] 30/25 31/18 32/14 39/15 40/4 41/10 64/5 64/15
I want [5] 7/18 20/24 28/23 37/17 46/18
I wanted [3] 45/3 63/12 64/9
I was [3] 21/5 56/21 65/5
I will [2] 57/1 59/25
I would [3] 6/12 42/2 58/5
I'd [3] 3/22 14/20 45/1
I'll [6] 18/9 24/14 24/15 48/19 48/22 62/4
I'm [48] 3/14 3/24 4/3 5/16 7/21 11/10 11/20 11/24 13/4 13/13 15/8 15/13 19/8 19/18 19/23 20/2 20/10 21/3 21/7 22/6 26/13 29/21 32/3 34/6 34/15 36/2 37/1 39/16 39/19 41/7 43/13 45/5 45/22 46/17 48/9 52/1 53/11 53/25 54/15 54/16 55/3 55/7 55/8 55/25 54/6 56/6 64/3 64/19
I'm going [3] 13/13 37/1 48/9
I'm just [2] 5/16 39/16
I'm not [7] 13/4 15/8 45/5 53/25 54/15 55/25 64/3
I'm not sure [1] 19/23
I'm sorry [1] 11/10 11/20 19/8 20/10 21/3 26/13 43/13
I'm sure [1] 46/17
I've [5] 5/2 7/7 36/25 37/18 45/23
idea [3] 16/3 23/5 53/17
Illinois [1] 43/20
imagine [1] 61/2
immediately [1] 18/19
impact [1] 17/6 31/12 33/18
impeding [1] 63/17
implication [1] 14/15
important [1] 60/2
imprimatur [1] 55/23
improper [1] 40/23
improperly [1] 21/3
inadequate [1] 40/3
include [2] 29/19 39/10
including [4] 25/19 32/9 50/24 58/10
Indiana [1] 43/20
indicated [1] 31/23
individual [1] 28/14
inequitable [1] 19/15
inhibit [2] 17/9 64/4
initial [1] 17/4
injunction [8] 16/23 16/25 17/4 37/8 63/13 63/15 63/23 64/24
inquiry [4] 5/24 20/8

insufficient [1] 60/9
insurance [2] 54/24 55/1
intentionally [1] 53/25
intentioned [1] 37/23
interest [109]
interested [2] 13/4 15/8
interests [7] 9/24 36/18 44/5 46/22 49/18 51/13 61/11
interference [1] 19/2
interpret [3] 15/18 19/19 27/21
interpretation [1] 44/8
interpreted [4] 20/16 20/19 21/2 42/5
interrupt [4] 29/21 36/2 41/7 45/22
interrupted [1] 21/3
involved [2] 17/11 64/8
involves [1] 46/5
involving [1] 7/8
irrevocably [2] 13/15 17/23
is [270]
is it [1] 16/12
is that correct [1] 10/2
is that right [1] 38/20
isn't [4] 52/25 53/17 54/21 57/12
issue [20] 14/13 14/14 15/17 15/18 15/20 16/24 26/11 28/12 30/11 31/2 31/17 32/15 36/6 36/6 38/18 39/7 42/3 42/12 48/13 52/7
issued [1] 44/7
issues [12] 7/16 27/15 31/14 35/23 36/15 38/18 40/7 42/17 48/11 54/4 54/12 62/10
it [145]
It doesn't [1] 44/8
It used [1] 3/15
it were [1] 23/24
it's [55] 5/12 6/8 8/19 9/3 9/8 10/7 10/8 10/8 16/14 23/8 24/19 25/8 25/9 26/7 28/9 29/12 30/22 31/12 33/1 33/21 36/5 36/6 37/21 37/24 37/25 38/7 38/7 39/7 40/15 41/11 43/8 45/15 46/7 47/5 47/6 48/23 51/18 51/18 53/12 53/13 53/16 53/23 54/11 54/14 55/12 56/3 56/7 57/20 57/21 59/8 59/9 59/13 59/18 61/9 65/10
it's limited [1] 10/8
its [10] 5/5 6/23 17/15 19/15 43/7 43/10 48/4 61/5 63/16 64/7
its parent [1] 64/7
itself [2] 19/15 25/24

James [1] 1/16
james.hulme [1] 1/18
Jay [1] 4/4
Jersey [1] 44/3
JPMCC [3] 42/21 43/15 44/18
JPMCC 2006-CIBC14 [1] 42/21
judge [34] 1/10 8/24 14/14 15/21 16/2 16/9 16/24 17/3 17/8 19/12 23/1 23/4 24/23 27/20 30/14 36/8 37/7 37/20 37/25 38/19 38/25 41/14 41/23 42/18 44/22 50/10 54/3 54/7 56/8 56/11 56/22 58/3 63/24 64/3
Judge Woods [1] 38/25
judgment [21] 3/20 14/6 14/15 16/8 16/15 19/21 22/23 25/1 34/3 34/4 34/7 34/18 34/19 34/23 37/1 37/18 39/4 44/20 48/21 55/12 62/11 61/16
judicata [1] 15/21
jurisdiction [4] 25/11 27/17 30/7 30/21
just [67]
justice [1] 23/17

**K**

KASOWITZ [1] 1/20
kasowtiz.com [1] 1/22
KATZ [1] 1/12
keep [2] 28/23 60/10
keeps [1] 12/10
key [2] 25/8 32/24
kind [15] 25/16 26/11 28/23 29/11 34/19 36/17 42/15 47/2 48/17 48/24 49/11 55/13 59/21 61/5 62/20
kindly [1] 3/23
kinds [1] 42/15
knew [1] 56/22
know [43] 3/19 7/18 7/19 7/20 8/19 8/20 10/23 12/20 13/5 13/6 15/13 15/24 16/21 16/25 18/5 18/11 21/8 21/10 21/23 22/9 22/10 24/12 24/20 25/20 29/24 30/23 33/4 37/20 40/1 51/25 52/24 54/11 55/19 57/1 57/21 58/5 58/12 58/21 59/11 59/18 60/23 61/1 61/20
knowing [1] 55/24
knows [1] 34/11
Kookmin [2] 2/2 3/11
Korea [1] 55/1
Korean [1] 54/24

Lambert [9] 1/12 3/9 24/17 26/17 29/21 36/5 36/23 50/8 62/3
language [14] 13/23 14/18 17/22 18/8 23/2 37/11 38/5 38/7 41/16 41/25 42/5 42/22 43/1 43/24
last [5] 14/2 62/4 62/6 63/12 64/14
later [5] 20/2 34/21 51/8 55/15 58/22
law [31] 1/12 5/9 5/19 6/8 6/10 8/24 9/10 9/18 9/19 9/21 20/14 20/25 23/17 23/23 26/2 26/9 28/11 28/13 28/13 28/19 29/3 29/5 29/14 42/11 46/19 46/23 46/23 51/22 52/18 52/19 53/1
lawsuit [1] 54/21
lawsuits [1] 62/22
lawyers [1] 3/15
lease [3] 7/22 18/17 18/17
leasehold [10] 4/16 6/7 6/16 7/21 26/3 28/20 40/13 46/25 47/12 62/15
least [5] 21/5 44/18 49/23 49/25 57/1
leaving [2] 50/1 50/2
led [1] 51/11
left [2] 19/11 24/21
legal [24] 5/21 6/13 6/15 7/1 7/21 9/1 22/3 22/11 25/6 26/22 28/18 28/19 29/4 32/5 40/11 40/18 47/2 47/4 47/11 51/14 51/20 61/12 62/15 63/2
legged [1] 21/11
legs [1] 21/11
lender [64] 3/21 13/14 13/15 14/5 14/5 14/11 14/13 14/21 15/5 15/12 18/12 18/22 19/23 20/19 22/24 23/6 26/10 27/12 27/12 31/5 34/4 35/17 36/15 36/24 37/4 37/12 37/15 38/12 39/1 39/5 40/2 40/7 40/20 40/23 41/12 41/15 41/16 41/25 42/6 43/2 43/4 43/5 43/6 43/9 43/10 43/23 43/25 43/12 45/18 45/20 45/24 47/3 48/3 48/14 49/1 49/3 49/22 50/1 54/13 59/7 61/6 62/17 64/18 64/22
lender's [3] 42/1 46/7 48/15
lender-borrower [1] 43/2
lenders [3] 10/11 12/15 17/23

**less [10]** 34/1 39/11 40/24 45/18 45/19 46/16 48/14 48/16 50/15 54/14
**lessee [3]** 51/18 51/21 51/25
**lest [1]** 17/13
**let [14]** 7/24 7/25 9/6 10/18 12/6 15/13 22/19 23/22 24/5 26/11 30/14 38/2 60/21 61/10
**let me [2]** 7/25 10/18
**let's [11]** 9/21 19/5 29/1 34/14 53/10 56/23 56/25 57/15 57/19 57/21 60/4
**level [4]** 11/18 18/14 32/15 64/8
**levels [1]** 37/3
**liability [1]** 6/24
**lien [4]** 15/5 40/20 47/3 62/17
**life [1]** 59/10
**light [1]** 13/24
**like [20]** 3/22 8/1 14/20 29/16 31/6 33/5 33/7 34/15 35/6 35/11 36/22 37/22 39/9 41/8 47/3 56/5 57/24 59/23 61/24 63/17
**likes [1]** 59/21
**limit [1]** 23/9
**limited [7]** 6/24 10/7 10/8 27/17 30/22 31/2 50/20
**line [1]** 29/19
**listening [1]** 64/10
**litigated [1]** 31/14
**litigation [2]** 33/20 61/23
**little [4]** 22/19 30/19 34/6 59/21
**live [2]** 29/14 52/20
**LLC [10]** 5/10 8/15 8/17 28/15 43/16 43/16 43/19 52/13 53/1 53/3
**LLP [3]** 1/16 1/20 2/3
**loan [21]** 6/11 6/17 13/15 26/20 26/22 27/3 36/19 36/19 39/6 40/21 41/20 43/7 43/12 45/8 45/9 48/3 48/3 48/4 60/8 61/5 64/18
**loans [2]** 45/16 45/20
**long [4]** 16/17 33/20 46/1 61/22
**look [18]** 6/12 15/15 25/16 26/1 27/3 27/9 31/6 31/20 35/2 36/22 39/9 51/1 51/15 52/3 52/17 57/6 57/12 59/24
**looked [2]** 7/7 28/4
**looking [8]** 6/6 7/21 21/5 25/15 34/20 42/20 55/8 63/1
**looks [3]** 8/24 37/22 41/8

M
**loses [2]** 31/5 36/24
**lot [8]** 3/18 19/20 24/20 35/20 35/21 48/8 58/2 59/11
**luck [1]** 36/25

**M**
**made [8]** 16/22 16/24 35/7 37/7 41/20 45/12 45/15 61/20
**magically [1]** 56/2
**make [16]** 6/21 13/20 18/1 31/24 34/24 38/15 45/3 46/18 47/10 52/20 53/11 53/13 60/21 61/8 61/12 63/12
**make decisions [1]** 47/10
**makes [1]** 52/13
**making [1]** 47/22
**management [1]** 47/6
**many [2]** 21/8 62/10
**Mark [2]** 4/4 12/3
**marriage [1]** 29/2
**material [2]** 13/21 18/2
**matter [7]** 18/8 23/23 27/9 46/15 55/18 63/20 66/4
**matters [3]** 19/25 20/7 29/25
**maximize [1]** 41/13
**may [13]** 9/7 11/7 27/16 32/10 33/14 38/10 41/20 45/5 48/3 54/7 57/15 59/19 61/15
**maybe [5]** 11/24 31/11 32/3 36/23 58/23
**maybe I'm thinking [1]** 11/24
**MD [1]** 1/14
**me [51]** 4/13 4/14 5/8 5/25 6/8 6/12 7/4 7/19 7/24 7/25 9/6 9/23 10/17 10/18 12/4 12/5 12/6 13/6 14/22 15/13 15/20 22/19 23/22 23/24 24/5 24/23 26/11 33/3 34/3 34/6 34/7 35/15 36/24 37/17 37/21 38/2 39/22 40/1 41/8 41/11 42/5 46/4 50/4 50/7 50/9 51/4 52/23 53/1 54/20 57/1 63/5
**mean [27]** 5/9 7/5 8/7 8/10 9/25 11/23 13/13 14/18 17/21 17/22 19/10 19/24 21/1 21/7 25/23 29/24 32/4 38/2 38/19 39/16 41/10 42/7 45/23 52/2 56/9 64/13 65/6
**means [2]** 42/24 60/8
**meant [1]** 15/25
**meantime [1]** 54/24
**measure [4]** 4/22 11/6
**measuring [1]** 19/7

**mechanical [1]** 2/11
**mediation [1]** 59/2
**meet [1]** 58/15
**MEHTA [2]** 1/9 3/3
**member [9]** 4/25 5/5 5/5 5/10 5/19 7/20 9/11 47/16 53/13
**members [2]** 53/3 53/10
**membership [1]** 32/22
**mention [1]** 55/3
**mentioned [2]** 38/9 63/14
**merely [1]** 48/4
**Merit [1]** 2/7
**merits [1]** 34/1
**Mezz [3]** 27/3 36/19 41/20
**mezzanine [8]** 11/18 12/10 18/14 21/25 22/12 45/9 48/3 60/8
**middle [1]** 65/1
**might [11]** 25/25 26/5 27/14 29/4 29/8 37/25 48/12 55/15 57/5 58/2 61/11
**million [9]** 34/5 49/5 49/23 49/25 50/2 57/18 57/19 57/21 57/23
**millions [2]** 9/13 55/5
**mind [2]** 24/20 28/16
**mine [1]** 8/2
**minerals [1]** 8/6
**mining [1]** 8/22
**minute [1]** 62/7
**missing [2]** 32/3 32/13
**misspoke [1]** 31/11
**Mobil [1]** 44/2
**mock [1]** 63/3
**moment [12]** 4/21 4/24 5/3 6/15 11/4 11/14 18/16 21/12 23/21 53/22 54/13 57/8
**money [12]** 11/16 12/9 18/20 19/11 49/8 54/25 56/16 57/6 58/4 59/6 59/10 59/11
**month [2]** 56/24 56/25
**months [5]** 16/18 20/2 49/7 49/21 61/14
**more [8]** 3/15 19/20 22/4 35/11 45/24 58/21 62/20 65/3
**MORRISON [1]** 2/3
**morrisoncohen.com [1]** 2/5
**mortgage [7]** 13/14 13/15 26/20 26/22 36/19 40/21 45/8
**most [1]** 14/16
**motion [9]** 1/9 3/19 7/14 17/4 19/21 42/9 56/15 59/18 59/19
**motions [1]** 55/10
**Motors [1]** 52/10
**move [5]** 9/21 30/14 48/9 48/18 61/25

N
**mutual [2]** 4/7 4/12 4/25 12/3 19/22 23/19 24/21 26/21 27/19 31/15 38/17 39/20 42/4 45/4 46/1 46/14 46/23 47/7 48/7 49/21 49/22 54/16 54/20 54/22 57/16 57/22 58/14 60/5 62/10 63/14
**Mr. Ashkenazy [7]** 4/5 4/6 4/25 23/19 54/16 54/22 58/14
**Mr. Ashkenazy's [1]** 57/22
**Mr. Ben [1]** 31/15
**Mr. Mark [1]** 12/3
**Mr. Press [1]** 4/3
**Mr. Rebibo [2]** 49/21 49/22
**Mr. Ross [20]** 3/23 4/12 19/22 24/21 26/21 27/19 38/17 39/20 42/4 45/4 46/1 46/14 46/23 47/7 48/7 54/20 57/16 62/10 63/14
**Ms [4]** 26/17 29/21 48/15 53/6
**Ms. [9]** 24/17 35/19 36/5 36/23 50/8 50/8 53/24 62/3 62/4
**Ms. Lambert [5]** 24/17 36/5 36/23 50/8 62/3
**Ms. Will [4]** 35/19 50/8 53/24 62/4
**much [4]** 48/13 50/2 56/11 57/13
**multiple [1]** 11/5
**must [1]** 62/25
**mutual [1]** 28/9
**my [23]** 4/4 5/17 6/6 12/6 14/20 15/14 19/22 21/18 24/5 26/13 27/19 31/8 34/24 37/16 37/24 47/22 52/18 55/9 56/17 56/21 57/9 57/9 58/4

**N**
**name [2]** 32/10 35/16
**narrowly [1]** 25/23
**necessarily [2]** 21/1 42/18
**necessary [6]** 5/12 16/10 29/18 60/16 63/10 63/22
**need [13]** 9/9 15/20 26/15 26/18 27/21 30/4 36/8 42/3 52/3 53/3 55/13 56/10 62/2
**needs [2]** 11/17 11/18
**negotiate [2]** 43/22 49/17
**negotiated [1]** 43/11
**negotiating [1]** 58/9
**negotiation [4]** 10/4 10/5 15/4 20/17
**negotiations [4]** 37/19 43/23 58/12 58/25

**never [6]** 19/13 28/9 31/9 52/9 58/10 58/13
**new [32]** 1/21 2/4 15/19 15/22 20/13 20/14 20/16 20/18 20/18 21/2 22/9 24/24 27/15 30/10 30/12 31/5 31/7 36/16 36/24 37/4 37/21 38/3 38/18 39/6 40/10 41/4 41/4 41/15 42/4 42/14 44/3 44/12 55/4
**New Jersey [1]** 44/3
**New York [25]** 15/19 20/13 20/14 20/16 20/18 20/18 21/2 22/9 24/24 27/15 30/10 31/5 31/7 36/16 36/24 37/4 38/3 38/18 39/6 40/10 41/4 41/15 42/4 42/14 44/12
**news [1]** 54/21
**next [5]** 54/20 55/9 57/4 57/7 59/3
**Nichols [1]** 60/12
**no [47]** 1/4 4/24 5/3 5/10 5/14 5/14 8/12 9/10 9/15 10/11 12/25 18/11 18/17 18/20 21/4 21/16 23/2 23/21 24/2 25/3 26/2 26/5 28/14 28/18 28/19 29/19 32/17 38/5 38/11 39/1 39/2 39/15 46/5 46/8 46/23 47/24 48/17 48/24 49/11 55/23 56/1 56/17 58/15 59/5 62/24 63/2 63/20
**No evidence [1]** 48/17
**nobody [2]** 53/20 53/22
**Nobody's [1]** 59/10
**none [2]** 40/7 50/11
**Northern [1]** 43/19
**not [112]**
**note [7]** 14/7 21/15 22/2 22/5 44/18 45/3 59/21
**nothing [4]** 31/2 40/10 46/10 48/17
**noticed [1]** 12/18
**notion [2]** 37/23 47/22
**now [13]** 3/2 3/6 6/18 12/16 15/9 22/19 34/11 49/20 49/21 56/4 57/3 57/21 63/1
**NRPC [1]** 1/3
**number [7]** 11/3 11/9 11/10 11/11 28/4 55/23 56/22
**NW [2]** 1/17 2/9
**NY [2]** 1/21 2/4

**O**
**oath [1]** 49/23
**obligation [2]** 22/4 64/6
**obviously [8]** 3/18 4/12

**O**

obviously... [6] 12/12
15/5 35/11 39/14 42/12
59/7
occupant [2] 51/18
51/22
occur [1] 22/10
occurred [3] 4/21
38/12 51/10
occurrence [2] 13/16
17/23
occurs [1] 22/11
off [8] 19/16 24/21 37/1
37/18 37/24 39/22
61/13 63/6
offer [1] 58/15
office [1] 59/25
officers [1] 63/16
Official [1] 2/8
okay [33] 6/5 8/3 9/20
10/22 13/10 15/10
16/19 21/17 22/16
23/14 24/4 24/8 24/10
25/4 26/18 28/2 31/11
32/18 35/9 36/13 44/10
44/15 44/23 45/17
46/13 47/20 59/15
59/17 62/1 63/25 64/11
65/2 65/8
Old [1] 43/18
Once [1] 58/25
one [26] 3/19 7/1 11/3
11/9 16/3 18/11 26/20
30/4 30/4 31/14 32/22
32/23 33/5 34/9 37/5
46/18 47/22 51/15
56/22 57/10 58/14 59/1
59/23 59/24 62/6 62/7
only [20] 8/24 10/7
19/14 21/11 21/19
21/25 23/4 27/24 30/7
30/16 30/17 38/25
40/13 40/19 43/1 46/11
53/8 54/13 59/10 59/13
open [1] 23/8
operates [1] 6/22
operating [1] 45/23
operation [2] 41/21
47/10
opportunity [2] 24/14
40/1
opposed [2] 34/7
34/24
opposing [3] 3/21
63/21 63/21
opposite [1] 24/22
opposition [2] 38/9
44/14 44/19
option [4] 28/8 55/9
57/10 57/12
options [2] 23/7 59/12
order [15] 3/20 17/9
29/8 34/4 37/1 37/8
55/12 55/20 59/3 63/13
63/15 63/21 63/23 64/3
64/24
orders [1] 59/23
ordinary [1] 34/8

other [32] 4/19 6/7
7/18 9/1 10/24 14/12
16/7 16/7 18/4 21/18
23/15 24/12 24/13 26/1
28/18 29/7 29/19 30/7
30/22 35/3 35/7 35/7
38/18 41/5 44/19 46/18
51/21 56/20 58/6 59/12
61/11 64/15
otherwise [2] 14/4
14/19
our [16] 7/14 18/25
19/1 19/14 20/13 20/23
22/17 23/13 30/17
33/10 34/16 49/18
49/18 50/20 52/10 64/7
out [24] 4/3 5/8 5/25
6/23 7/4 7/8 9/16 10/17
17/8 19/14 23/12 30/2
31/16 36/24 36/25
39/21 41/8 45/24 47/23
54/16 55/1 56/24 57/19
58/4
outcome [1] 40/10
outstanding [9] 10/20
24/1 35/22 45/6 45/8
45/16 45/20 46/7 46/12
over [6] 23/20 35/21
36/17 46/11 61/6 62/17
overall [1] 31/13
owed [7] 31/13 41/12
45/20 45/25 49/1 63/18
63/19
own [3] 7/10 46/20
55/16
owned [3] 5/5 7/2
28/15
owner [5] 5/1 8/25
40/17 43/19 52/13
owners [3] 47/1 47/2
62/16
ownership [2] 5/6 7/3
owns [2] 8/2 64/23

**P**

P. [1] 3/3
P.A [1] 1/12
p.m [2] 1/6 65/14
paid [7] 9/3 9/5 11/13
49/14 51/8 54/9 55/5
papers [2] 20/13 56/21
parent [3] 64/7 65/6
65/7
Parkway [2] 42/21
43/16
part [4] 30/11 49/9 54/2
54/9
participate [10] 21/13
25/1 28/5 28/7 32/17
35/6 47/4 51/3 58/20
61/10
participating [2] 17/5
17/5
participation [3] 10/4
17/10 64/4
particular [4] 23/19
51/9 52/20 53/2
parties [23] 7/7 11/16

35/6 36/17 41/6 43/11
44/5 45/13 48/1 48/1
58/8 59/2 59/3 60/21
61/2 62/24 63/10 63/10
63/22
parts [1] 18/10
party [17] 7/13 11/7
11/13 12/12 15/20
29/18 29/19 31/25
32/21 51/2 51/6 60/13
60/16 64/5 64/15 64/19
65/6
passengers [1] 13/1
Patricia [2] 1/12 3/9
pay [6] 14/8 14/17 54/8
55/6 57/14 57/20
payers [1] 13/2
paying [2] 13/1 57/6
payment [1] 41/20
pending [2] 16/17
36/17 38/24
people [4] 33/22 46/20
60/1 61/11
per [1] 9/9
perhaps [2] 40/22
51/25 53/17
period [2] 11/6 23/20
permitted [1] 51/2
person [2] 28/5 32/20
personal [4] 5/20 27/6
47/15 47/18
perspective [2] 41/9
50/5
PESSIN [1] 1/12
phrase [1] 48/15
piddling [1] 50/3
piece [1] 29/16
pieces [1] 22/9
Pipeline [1] 33/14
pklaw.com [1] 1/15
place [2] 14/10 32/8
plaintiff [3] 1/4 1/12
3/9
plambert [1] 1/15
planned [1] 57/16
plausible [1] 39/14
play [2] 40/7 65/3
please [5] 3/4 14/17
35/16 56/11 56/15
plus [1] 15/1
pocket [2] 59/7 59/8
point [15] 4/3 6/12
15/3 20/12 29/15 41/1
46/15 46/18 49/20 53/1
58/3 60/10 60/17 63/12
64/14
pointing [1] 6/10
points [1] 62/9
portion [2] 14/8 30/2
position [13] 10/18
14/23 17/12 17/15 21/6
28/19 37/17 39/21 46/8
46/9 48/16 49/15 54/5
possibility [1] 33/5
possible [2] 37/18
37/25
possibly [2] 49/24 50/2

15/9 58/17 59/25
post-condemnation [4]
11/7 15/2 15/6 15/9
posting [1] 18/19
posture [1] 43/8
postures [1] 42/15
potential [2] 23/6
64/16
potentially [1] 22/7
power [3] 13/19 18/1
38/14
practical [2] 54/4 61/12
Prairie [1] 43/18
precise [1] 14/13
precisely [2] 4/15 6/12
prejudiced [1] 39/24
preliminary [8] 16/23
16/24 17/4 30/13 37/8
63/23 64/24 64/25
prepared [1] 57/14
preparing [1] 64/21
presence [1] 55/8
present [2] 20/4 35/11
presented [3] 16/1
28/3 49/12
presently [1] 42/16
presiding [1] 3/3
Press [1] 4/7
pretty [2] 26/3 42/5
Prettyman [1] 2/9
prevail [3] 39/21 39/22
39/23
previously [2] 21/2
63/14
primary [1] 7/8
principle [1] 52/18
principles [3] 9/10
9/19 9/21
prior [2] 14/5 36/25
probably [1] 5/14
problem [3] 15/21 57/9
57/9
procedure [2] 34/2
35/4
proceeding [16] 8/9
25/9 25/9 25/14 25/21
27/18 28/6 30/9 30/21
36/21 43/6 51/11 53/8
60/13 61/21 62/25
proceedings [9] 1/9
2/11 6/15 15/16 24/2
25/1 33/11 65/14 66/4
proceeds [3] 11/12
27/11 39/8
process [1] 58/22
produced [2] 2/12
29/10
prohibition [1] 63/15
prolong [1] 64/13
proof [2] 48/24 56/1
proper [5] 36/20 49/9
55/15 56/13 60/13
properly [1] 35/23
property [54] 5/10 5/11
5/13 5/20 5/21 7/11
8/25 11/17 14/4 18/14
18/20 25/7 25/18 25/20

25/24 26/3 26/25 27/7
27/8 27/25 28/6 28/10
28/15 28/22 28/24 29/3
29/11 29/17 30/1 32/5
34/11 36/8 36/21 39/11
40/8 40/12 40/17 40/24
44/5 46/20 46/21 46/22
46/24 47/12 47/18
50/10 51/17 51/19
55/17 59/24 62/14
62/16 63/11 64/17
proposed [1] 34/4
proposing [1] 40/9
proposition [2] 7/6
44/4 44/22
protect [1] 20/21
protectable [1] 9/2
protected [1] 51/22
provides [3] 6/3 28/19
43/21 61/23
provision [3] 14/25
43/21 61/23
provisions [1] 22/24
prudence [1] 56/24
public [7] 4/11 8/2 8/4
8/7 8/13 52/24 52/24
pull [1] 18/24
purchase [1] 28/8
purported [1] 22/10
purpose [1] 52/12
purposes [2] 17/14
20/4
pursuant [1] 42/1
pursued [1] 43/10
put [15] 10/13 19/5
39/20 39/20 40/13
48/17 48/18 49/20 50/5
55/10 55/12 56/1 56/21
57/16 57/17
putting [1] 56/10

**Q**

quasi [1] 57/7
quasi-governmental
[1] 57/7
question [20] 10/24
12/6 17/17 17/20 17/20
19/9 19/22 21/14 21/18
22/7 23/11 24/10 27/19
27/21 30/16 33/24 36/9
36/23 50/9 52/6
questioned [1] 29/22
questions [3] 3/24
31/8 35/10
quick [2] 61/23 61/24
quick-take [1] 61/23
quickly [3] 46/18 48/9
48/10
quite [4] 12/24 61/24
64/14 64/19
quote [1] 45/5
quoted [2] 11/22 20/14
quotes [1] 20/15

**R**

raised [1] 62/10
rather [2] 25/6 31/12
re [2] 3/14 43/18
re-alignment [1] 3/14

**R**

**reach [5]**  15/20 27/21 42/3 49/12 52/7
**read [10]**  13/13 14/2 14/3 14/10 14/17 17/19 25/23 52/6 55/21 63/4
**real [1]**  7/3
**really [6]**  37/15 40/9 52/7 56/14 57/17 62/11
**Realtime [1]**  2/8
**reappointed [1]**  53/21
**reason [10]**  8/4 12/12 13/4 15/11 17/6 19/18 20/24 23/1 50/14 55/3
**reasons [3]**  14/1 56/19 59/23
**reassignment [1]**  32/9
**Rebibo [2]**  49/21 49/22
**recall [2]**  44/19 61/15
**receipt [1]**  14/5
**receive [6]**  6/21 13/19 14/7 18/1 38/14 47/9
**received [2]**  6/21 27/12
**recently [1]**  58/21
**recites [2]**  48/21 51/5
**recognize [3]**  51/5 51/17 52/2
**recognized [1]**  47/1
**record [6]**  3/7 10/13 14/3 48/18 54/7 66/3
**recorded [2]**  2/11 47/3
**recovered [1]**  14/7
**recovery [2]**  43/7 51/6
**reduced [1]**  27/11
**refused [2]**  17/8 58/18
**regarding [1]**  17/6
**Registered [1]**  2/7
**regular [1]**  35/3
**rejected [1]**  37/8
**relationship [1]**  43/2
**relatively [1]**  16/8
**relevant [5]**  4/19 5/23 6/18 15/13 20/8
**relied [1]**  50/25
**relief [6]**  23/11 30/13 30/15 37/10 37/21 39/3
**relies [1]**  42/22
**relying [1]**  12/7
**rem [5]**  25/9 27/18 30/7 30/21 53/7
**remainder [1]**  12/11
**remaining [1]**  55/21
**remedies [1]**  48/4
**remedy [5]**  18/23 19/6 19/16 29/23 30/3
**remember [1]**  20/5
**remiss [2]**  45/1 47/21
**renamed [1]**  53/21
**rent [2]**  13/2 13/2
**reply [1]**  48/10
**Reporter [4]**  2/7 2/7 2/8 2/8
**represent [1]**  45/10
**representative [1]**  43/5
**representatives [1]**  63/16
**represented [5]**  9/14 42/12 48/2 52/5 54/11

**representing [6]**  30/10 3/10 9/12 9/15 51/3 51/12
**represents [4]**  3/11 3/12 54/25 64/22
**request [4]**  22/21 22/23 23/7 31/9
**requested [1]**  37/1
**requests [1]**  39/2
**require [3]**  51/17 63/5 63/6
**required [1]**  58/11
**requirement [1]**  62/25
**res [1]**  15/21
**reserve [1]**  24/15
**resolve [3]**  16/4 18/8 58/23
**resolved [6]**  30/4 30/6 30/8 30/10 30/12 31/3
**respect [6]**  9/12 10/6 16/23 32/7 36/7 55/11
**respects [2]**  48/12 48/23
**respond [1]**  29/25
**responsible [1]**  4/8
**responsive [3]**  22/6 48/10 53/18
**rest [1]**  31/16
**rests [1]**  15/17
**result [1]**  59/13
**retain [3]**  13/20 18/1 38/15
**retained [1]**  46/9
**retroactively [1]**  40/11
**return [1]**  47/21
**Rexmark [5]**  32/10 32/12 32/25 39/1 54/25
**right [68]**  4/22 5/1 7/11 13/14 19/2 19/7 20/20 23/3 27/1 27/7 27/7 27/14 28/5 28/10 28/12 29/3 33/13 34/12 36/7 36/7 36/18 43/1 47/15 47/18 48/4 50/24 51/3 51/20 52/1 56/17 61/19
**ringing [1]**  26/13
**rise [2]**  3/2 65/12
**RMR [2]**  66/2 66/8
**road [2]**  1/13 61/14
**room [1]**  3/15
**Ross [22]**  1/19 3/10 3/23 4/12 19/22 24/21 26/21 27/19 38/17 39/20 42/4 45/4 46/1 46/14 46/23 47/7 48/7 54/20 57/16 60/5 62/10 63/14
**routinely [2]**  51/5 51/16
**rubber [1]**  56/4
**rubric [1]**  25/16
**rule [8]**  5/15 15/19 23/10 31/20 35/2 37/25 58/3 61/8
**rules [3]**  35/3 35/3 41/15

**run [2]**  49/4 55/7
**running [1]**  57/8

**S**

**said [22]**  9/25 15/15 19/12 19/25 20/19 28/10 36/25 48/15 51/9 52/3 52/9 53/24 56/9 58/15 60/1 60/5 60/19 60/24 61/7 61/15 64/3 65/2
**sale [6]**  31/5 31/10 31/21 33/18 37/5 41/18
**same [3]**  15/18 36/23 52/25
**satisfied [1]**  58/24
**satisfy [1]**  11/17 12/10 58/23
**say [44]**  4/13 5/4 6/13 7/15 8/2 8/7 8/19 9/9 14/16 14/17 14/21 15/14 15/25 17/15 20/24 22/13 22/19 23/9 29/1 32/4 32/24 36/24 38/17 46/14 49/11 49/15 50/25 53/10 55/14 56/5 56/5 56/12 56/23 56/24 57/5 57/12 57/19 57/21 58/2 58/5 60/1 61/8 62/7 64/9
**saying [11]**  15/12 17/10 19/18 27/20 40/4 53/25 56/1 56/10 62/19 62/21 65/5
**says [12]**  5/9 8/5 11/16 14/3 29/10 41/24 42/7 47/15 53/2 55/21 61/4 61/17
**SDNY [1]**  38/24
**se [1]**  9/9
**seat [5]**  15/4 26/5 26/15 26/17 39/25
**seated [1]**  3/5
**second [2]**  26/14 64/5
**secondary [2]**  32/18 37/10
**secret [1]**  58/25
**section [15]**  11/22 11/23 11/24 12/6 12/8 14/3 17/9 35/20 37/11 38/6 41/14 42/2 42/10 42/23 44/8
**Section 5.2.2 [1]**  42/2
**secured [2]**  40/20 62/17
**see [9]**  7/13 19/11 19/19 24/5 24/19 51/2 56/25 57/17 63/3
**seek [2]**  16/4 39/14
**seeking [4]**  30/24 37/11 43/3 60/6
**seemed [1]**  65/3
**seemingly [1]**  8/10
**seems [9]**  9/22 15/20 18/7 24/10 26/3 32/8 33/5 42/5 64/17
**seen [1]**  33/2

**send [1]**  59/8
**senior [1]**  21/15
**sense [3]**  38/23 61/12 61/12
**sentence [1]**  14/2
**separate [1]**  17/19
**session [1]**  3/3
**setting [1]**  52/24
**settle [12]**  19/10 20/20 37/12 40/9 41/16 42/6 49/16 49/17 54/23 60/22 62/24 64/7
**settled [3]**  39/10 40/2 46/16
**settlement [23]**  12/16 13/20 17/20 18/2 20/15 33/19 33/22 34/8 34/14 38/16 39/24 45/11 45/13 45/19 45/19 46/4 54/14 56/10 58/22 60/24 61/3 63/21 65/6
**settlements [1]**  63/6
**settling [9]**  40/23 48/14 48/16 50/15 54/13 64/5 64/15 64/17 64/19
**several [1]**  33/10
**shall [4]**  5/4 14/5 14/7 27/10
**share [1]**  7/20
**shareholder [4]**  6/20 29/16 47/9 52/8
**shareholders [7]**  7/10 8/8 8/14 47/5 52/4 52/11 52/25
**shield [1]**  52/21
**shifted [1]**  18/19
**shot [1]**  16/9
**should [18]**  14/19 16/4 18/11 19/16 25/15 31/2 31/3 31/25 32/20 38/1 38/3 50/16 52/6 53/13 54/23 56/19 57/5 61/18
**shouldn't [1]**  57/5
**show [1]**  53/6
**shut [1]**  13/23
**side [5]**  3/15 10/24 16/7 16/8 24/13
**sides [1]**  15/14
**sign [3]**  37/1 39/22 63/6
**signed [1]**  37/18
**signing [2]**  37/24 48/20
**similar [3]**  42/22 43/22 61/11
**similarly [1]**  44/16
**simple [2]**  49/16 53/16
**simply [2]**  44/6 49/11
**since [5]**  38/10 41/20 48/3 55/24 64/18
**single [8]**  29/10 41/20 51/15 52/12 52/12 53/12 60/5 64/9
**single-purpose [1]**  52/12
**sitting [1]**  49/21
**situation [7]**  8/13 8/22

**sole [10]**  4/25 5/1 5/5 5/5 5/19 6/20 6/24 7/20 9/11 47/9
**some [36]**  3/24 4/12 6/6 6/10 7/21 8/4 15/17 18/4 18/5 18/5 22/3 23/5 24/12 24/15 29/7 29/8 30/2 30/14 31/1 34/24 37/21 48/11 49/7 50/14 50/24 51/24 51/25 51/25 52/2 53/1 53/24 56/20 58/3 58/22 60/4 62/20
**somebody [12]**  29/2 31/8 34/11 34/13 34/20 52/23 53/9 53/21 55/15 57/5 60/14 63/1
**somehow [1]**  39/23
**something [18]**  6/11 11/24 26/13 28/9 29/5 29/8 30/13 32/3 32/13 33/7 37/5 37/23 37/24 38/19 53/11 59/14 60/23 65/2
**sometimes [4]**  25/13 51/18 51/18 51/19
**somewhat [1]**  54/14
**soon [1]**  65/10
**sophisticated [1]**  48/1
**sorry [12]**  11/10 11/20 19/8 20/10 21/3 26/13 29/21 36/2 41/7 43/13 45/22 51/9
**sort [5]**  7/19 8/20 22/14 52/18 53/12
**sought [6]**  14/7 16/8 17/9 23/12 30/12 45/11
**source [4]**  4/15 5/6 6/7 7/21
**Southern [13]**  15/22 16/11 19/11 22/8 22/13 22/17 23/24 24/23 36/16 41/24 44/16 54/1 63/13
**speak [2]**  10/16 11/10
**speaks [2]**  17/22 21/19
**special [3]**  30/15 35/2 61/8
**specifically [2]**  17/11 42/14
**spoke [1]**  54/4
**spoken [1]**  58/10
**sponsored [1]**  3/21

**S**

**stage** [1] 54/6
**stake** [2] 59/10 59/11
**stamp** [1] 56/5
**stand** [1] 10/19
**standards** [1] 42/9
**standing** [2] 7/14 12/13
**start** [4] 4/13 24/21 25/17 55/4
**state** [3] 41/19 46/22 65/3
**states** [5] 1/1 1/10 11/5 55/8 60/12
**station** [8] 4/8 4/25 8/1 12/25 31/1 39/1 49/23 55/16
**Station's** [2] 5/5 9/11
**statute** [9] 4/20 47/15 51/25 53/1 55/6 58/11 58/24 63/5 63/7
**statutes** [1] 63/5
**stenography** [1] 2/11
**step** [1] 7/1
**still** [9] 3/14 39/7 40/6 41/3 41/19 41/21 45/18 65/1 65/7
**stipulated** [1] 34/23
**stipulation** [4] 34/14 34/15 35/7 35/8
**stockholder** [1] 60/12
**stood** [1] 19/24
**stool** [2] 21/11 21/11
**stop** [1] 31/19
**Street** [1] 1/17
**stressing** [1] 28/23
**strict** [2] 50/9 59/13
**strictly** [2] 9/18 53/7
**strongly** [2] 58/8 59/2
**struck** [1] 17/8
**structure** [1] 7/2
**struggling** [1] 52/1
**stuff** [1] 59/22
**subject** [6] 6/18 12/19 12/20 13/14 20/25 54/18
**SUBLEASE** [2] 1/6 3/7
**submit** [1] 8/12
**substituted** [2] 32/1 32/20
**substitution** [7] 31/20 32/7 33/11 33/12 33/12 53/19 53/23
**successor** [1] 33/12
**such** [1] 28/7
**sue** [1] 54/22
**sufficient** [2] 14/8 32/16
**suggest** [3] 58/7 59/1 59/2
**suggested** [7] 9/25 33/4 34/13 36/5 42/4 50/12 52/7
**suggesting** [1] 8/11
**suit** [2] 50/17 55/4
**Suite** [1] 1/13
**summary** [4] 16/8 16/14 19/20 44/20

supplemental [1] 25/11
**support** [1] 34/24
**suppose** [1] 58/4
**supposed** [4] 53/12 55/4 55/7 56/6
**Supreme** [3] 4/20 11/5 50/22
**Supreme Court** [2] 4/20 11/5
**sure** [7] 19/23 20/3 22/6 23/9 45/3 46/17 64/19
**suspenders** [1] 34/20
**swing** [1] 63/20
**sword** [1] 52/22

**T**

**table** [12] 15/4 26/5 38/1 38/4 38/4 39/25 47/22 49/22 50/1 50/3 51/7 58/9
**take** [8] 6/23 9/8 17/11 42/12 50/16 58/14 61/23 62/7
**taken** [5] 18/15 46/21 46/25 49/8 55/17
**taking** [9] 31/19 43/3 44/4 45/18 45/19 45/21 45/24 49/25 54/16
**talk** [6] 3/18 6/14 16/25 24/13 26/11 50/23
**talked** [3] 30/19 40/16 56/19
**talking** [11] 10/15 11/25 20/3 26/25 27/6 30/20 34/14 47/7 50/3 60/10 61/14
**talks** [5] 25/17 25/19 26/20 27/10 60/18
**target** [1] 57/4
**task** [1] 9/17
**technical** [2] 8/25 54/12
**technically** [2] 29/4 64/23
**tell** [3] 12/4 35/15 37/17
**telling** [5] 46/4 54/15 54/20 55/13 57/24
**temerity** [1] 18/12
**tenant** [1] 28/7
**tend** [1] 26/1
**term** [1] 51/24
**terms** [13] 9/23 17/22 21/6 21/19 31/13 39/6 39/24 41/8 42/11 45/25 50/8 64/14 64/17
**testified** [1] 49/22
**testimony** [3] 12/18 31/21 58/13
**text** [1] 17/22
**than** [17] 7/18 10/2 25/6 29/20 30/7 34/1 39/11 40/24 42/15 45/19 45/25 46/16 48/14 48/16 50/15 58/6 65/3

24/16 26/21 26/22 35/12 35/13 48/6 56/1 59/16 59/17 62/2 62/3 62/5 62/8 63/25 64/1 64/10 65/9
**Thank you** [15] 3/17 4/10 26/21 35/12 35/13 48/6 59/16 59/17 62/2 62/3 62/5 63/25 64/1 64/10 65/9
**thank you very much** [1] 56/11
**that** [433]
**That will** [1] 57/1
**that'll** [1] 54/20
**that's** [55] 5/20 5/23 6/2 7/11 8/10 10/2 11/8 11/21 12/20 13/12 15/25 17/1 19/20 20/7 21/5 22/6 24/3 25/15 26/16 26/25 27/6 27/17 27/22 29/9 29/13 30/11 30/23 32/21 32/24 33/4 33/13 34/16 37/19 40/12 41/12 42/23 43/15 45/23 45/25 46/15 50/13 52/1 54/2 55/8 55/20 56/18 57/15 58/2 60/19 61/7 61/20 62/2 63/7 64/9 65/7
**that's fine** [1] 26/16
**their** [21] 7/16 12/24 14/16 18/7 19/2 26/10 30/3 31/22 32/24 36/7 36/7 46/10 50/10 51/3 51/7 56/16 57/17 58/14 59/8 64/22 64/23
**them** [14] 4/7 9/3 9/16 28/7 32/4 32/24 48/10 49/6 54/14 54/22 55/24 58/15 58/18 60/6
**themselves** [3] 20/21 40/21 47/13
**then** [34] 6/6 8/19 9/23 11/18 12/9 13/12 15/7 18/22 19/8 19/11 21/18 21/24 22/3 29/23 31/6 31/11 32/9 32/18 35/2 35/7 37/2 37/10 37/20 40/21 41/25 44/2 45/21 47/21 58/4 58/16 58/21 60/8 60/20 63/12
**there** [67]
**there's** [24] 8/2 9/10 10/11 15/7 19/11 19/20 26/19 28/18 29/2 29/19 30/22 31/17 35/2 35/11 38/11 38/23 40/10 45/6 48/23 49/25 54/6 59/11 59/11 62/18
**therefore** [1] 51/13
**thereof** [1] 14/8
**these** [19] 14/15 15/16 20/17 20/25 24/2 25/1 36/14 36/18 40/1 42/17 44/11 44/21 47/25 51/1 52/2 54/24 57/20 58/25

**they** [101]
**they'd** [1] 57/24
**they'll** [1] 15/13
**they're** [15] 19/15 26/12 27/2 27/16 33/17 33/17 36/20 44/13 44/16 46/11 47/11 54/15 58/11 62/19 63/22
**they've** [5] 26/9 38/9 46/16 50/25 56/13
**thing** [7] 17/1 23/15 23/18 58/7 59/1 60/5 62/6
**things** [12] 4/13 6/23 24/12 27/10 30/22 32/23 34/9 45/2 53/24 58/6 61/16 61/17
**think** [49] 5/23 6/18 7/23 9/3 9/8 9/25 10/3 15/12 17/13 23/16 24/3 24/7 24/9 26/1 26/3 26/9 27/20 28/3 29/15 29/24 30/25 31/18 32/14 32/15 33/1 34/25 36/14 37/3 37/17 38/2 38/22 38/23 39/13 39/18 40/6 41/3 42/10 47/14 50/9 50/14 50/15 50/18 53/5 55/12 56/18 56/20 56/24 63/7 63/8
**thinking** [1] 11/24
**thinks** [1] 21/1
**Third** [1] 2/3
**this** [114]
**thoroughly** [1] 49/2
**those** [19] 6/23 20/22 25/19 27/14 28/10 31/8 35/23 38/18 38/19 47/10 47/14 48/4 50/24 51/20 52/6 60/9 61/7 61/11 61/17
**though** [5] 15/4 29/4 46/18 49/15 52/9
**thousands** [2] 8/14 52/11
**three** [3] 21/11 61/23 62/9
**three-legged** [1] 21/11
**through** [4] 4/25 13/1 13/2 14/4
**throughout** [1] 42/13
**tidbits** [1] 44/20
**time** [15] 4/18 4/19 4/24 5/3 11/6 19/7 19/7 24/15 32/6 49/4 49/9 49/24 57/9 59/24 62/24
**title** [6] 18/19 34/10 34/16 34/18 47/1 55/14
**titled** [1] 66/4
**today** [4] 10/19 21/21 58/6 62/18
**together** [1] 56/10
**told** [2] 10/12 56/7
**too** [2] 7/16 22/20
**took** [1] 32/8
**TORRES** [1] 1/20

**toss** [1] 8/21
**total** [1] 44/4
**totally** [1] 56/18
**Towson** [1] 1/14
**transcript** [3] 1/9 2/11 66/3
**transcription** [1] 2/12
**transfer** [2] 33/13 63/17
**transferred** [7] 31/22 31/23 32/19 32/20 32/25 33/15 33/16
**treat** [1] 53/3
**trial** [10] 10/5 12/18 55/24 57/15 58/1 61/13 62/19 62/23 62/25 63/3
**trials** [1] 62/21
**tricky** [1] 22/7
**tried** [1] 56/3
**trigger** [1] 18/24
**tripped** [1] 12/21
**troubling** [1] 48/23
**true** [1] 54/11
**truly** [1] 56/14
**Trust** [1] 50/4
**trustee** [5] 33/12 51/3 51/10 51/11 51/12
**try** [5] 16/4 18/9 18/22 48/9 61/4
**trying** [5] 3/14 5/17 23/17 23/17 39/16
**turns** [1] 30/1
**twice** [1] 23/4
**two** [19] 10/8 11/10 11/11 14/1 18/23 19/3 21/11 26/12 26/19 36/16 37/3 37/14 44/19 45/16 45/20 49/6 49/20 57/13 57/14
**type** [4] 29/7 29/8 30/15 31/1
**types** [1] 30/22
**typical** [1] 53/20

**U**

**UCC** [1] 22/10
**ultimate** [1] 11/11
**ultimately** [1] 24/9
**under** [30] 4/19 4/20 4/21 5/18 9/18 9/18 12/24 13/14 16/23 20/8 20/14 26/2 27/3 28/10 28/12 30/17 31/25 39/5 41/5 41/14 41/19 43/7 43/25 45/16 45/20 45/24 48/4 49/22 55/6 58/11
**under 71.1** [1] 31/25
**underlying** [2] 7/11 41/21
**understand** [16] 5/17 6/8 17/13 30/25 32/4 32/4 34/7 39/15 39/19 40/4 41/10 50/7 52/16 64/5 64/14 64/15
**understanding** [4] 5/18 9/23 31/9 52/19
**understood** [1] 63/3

**U**

undone [2] 31/6 31/10
undoubtedly [1] 4/12
unequivocal [2] 31/22 38/7
Union [8] 1/16 4/25 5/5 8/1 9/11 12/25 39/1 55/16
Union Station [4] 4/25 12/25 39/1 55/16
Union Station's [1] 9/11
UNITED [4] 1/1 1/10 11/5 55/8
United States [2] 11/5 55/8
unless [3] 15/11 53/1 62/22
unseat [1] 17/14
until [3] 19/17 27/11 61/16
unwound [1] 41/18
up [13] 3/23 7/1 19/24 23/19 27/15 31/1 39/3 39/5 41/4 46/14 49/24 50/14 50/16
upon [7] 32/8 37/19 42/22 43/4 46/10 63/10 63/11
upstream [1] 59/8
upstreamed [2] 11/18 12/9
us [12] 8/20 8/20 10/12 16/9 17/4 29/12 30/14 34/16 58/10 58/19 61/8 61/10
use [1] 52/21
used [4] 3/14 3/15 25/13 48/15
USI [20] 5/4 5/7 5/20 7/20 26/23 27/2 32/23 40/14 40/21 40/22 45/19 58/12 62/16 63/18 63/19 64/5 64/14 64/15 64/19 65/6
USI's [1] 5/21
USSM [47] 3/21 6/13 9/5 10/19 11/2 11/8 12/10 12/19 17/5 17/14 23/2 24/24 28/20 32/16 32/18 35/21 36/15 36/25 37/7 37/19 37/20 38/1 38/3 39/2 39/3 39/4 40/7 40/13 41/12 41/19 42/8 42/24 42/24 46/9 46/24 47/23 48/2 49/2 51/4 53/10 60/23 61/6 61/17 62/15 63/15 63/21 64/6
USSM's [7] 4/15 17/9 29/23 38/9 41/8 44/13 62/18

**V**

valid [1] 55/15
validity [1] 54/1
Valley [1] 1/13
valuation [1] 10/6

value [3] 11/17 40/24 41/13 57/18 60/25 63/3
variable [1] 36/17
variations [1] 23/8
variety [1] 22/24
versus [5] 3/7 43/16 44/2 53/13 60/11
very [15] 19/25 25/12 25/23 30/20 30/22 38/7 39/13 49/16 52/13 53/16 54/4 56/11 59/19 61/20 65/10
veto [1] 61/6
vibes [1] 7/19
view [7] 7/1 20/3 21/10 26/4 30/3 30/17 31/4
violated [1] 41/12
violation [2] 63/23 64/2
violations [1] 19/1
Virginia [1] 51/1
virtue [1] 60/15
vs [1] 1/5

**W**

wade [1] 19/19
wait [1] 57/11
waited [2] 18/23 19/3
waiting [1] 59/6
waived [1] 43/7
want [29] 4/3 4/13 7/18 8/20 10/15 13/4 13/6 16/25 17/13 20/24 24/12 28/23 31/18 34/10 37/17 39/18 39/19 39/20 42/17 42/19 45/1 46/18 48/10 49/11 49/15 50/8 54/5 60/1 64/13
wanted [4] 11/10 45/3 63/12 64/9
wants [5] 16/21 19/19 59/7 61/17 61/18
was [76]
Washington [3] 1/5 1/17 2/10
wasn't [2] 51/2 61/24
wasted [1] 58/4
water [2] 7/11 26/18
way [9] 8/12 8/16 14/17 33/19 41/18 50/18 53/24 55/24 63/20
we [92]
we basically [1] 21/10
we believe [1] 12/15
we had [1] 15/3
we have [1] 31/8
we'll [4] 6/14 19/11 57/17 65/10
we're [16] 6/6 8/5 8/22 8/23 10/15 18/6 20/3 22/8 37/11 41/18 46/16 49/16 50/3 54/9 62/14 63/1
we've [9] 11/22 18/25 19/12 20/13 30/19 35/20 35/21 40/16 48/8
week [1] 58/14

value [6] 17/17
59/6
welcome [2] 4/6 35/19
well [23] 3/25 8/19 16/7 18/23 19/9 32/14 37/3 37/20 41/14 46/15 50/13 50/16 51/1 51/4 52/10 53/2 56/7 56/25 57/19 57/21 58/17 60/23 61/1
went [1] 22/4
were [22] 5/1 10/23 12/17 12/23 19/25 23/24 23/25 24/22 25/12 33/10 34/13 44/19 48/1 51/1 53/24 55/22 58/17 58/18 58/24 58/25 60/1 62/10
what [104]
what it [1] 23/10
what's [5] 11/20 50/5 55/20 56/15 56/23
whatever [1] 20/5
whatsoever [1] 5/4 23/3 59/5
when [18] 4/22 8/19 8/20 9/10 18/14 18/23 22/11 28/5 34/9 34/13 43/5 47/7 47/24 51/3 52/19 53/2 56/6 64/19
where [27] 5/17 6/12 8/10 8/13 8/24 19/25 24/21 25/10 28/4 28/8 29/2 29/7 30/5 30/18 33/11 33/11 36/16 39/19 39/21 43/8 45/13 50/25 52/11 54/5 54/5 60/14 63/3
whereas [1] 43/10
whether [20] 10/24 10/25 14/6 20/7 27/24 28/4 29/18 30/1 31/6 31/25 33/15 35/21 37/17 45/6 48/13 49/4 49/13 52/3 53/13 57/5
which [59] 3/20 4/14 4/18 4/21 5/18 7/9 7/20 8/16 11/4 11/6 14/16 14/22 14/23 15/15 15/20 18/7 18/13 19/2 19/3 19/6 19/13 19/13 19/14 24/22 30/16 33/6 34/5 36/15 36/20 37/6 37/7 37/12 37/16 37/18 38/8 38/25 39/19 40/8 41/17 42/4 42/13 43/13 43/16 43/19 44/3 46/15 46/25 49/12 50/9 52/7 54/18 55/5 55/5 55/16 56/21 58/24 59/13 60/18 63/20
which is [1] 14/22
while [3] 12/24 37/24 61/16
who [15] 4/22 8/25 10/9 16/3 25/19 31/8 32/20 32/22 32/23 33/22 35/6 40/20 53/9

wrongdoing [1] 19/17
wrongfully [1] 54/22

**Y**

yeah [7] 7/17 24/7 33/8 40/4 54/15 61/9 64/20
years [6] 18/23 19/4 23/20 34/11 49/6 61/23
yes [33] 4/17 6/1 6/4 6/13 10/21 12/8 12/23 13/9 13/11 13/22 15/1 15/25 16/13 16/16 17/18 20/9 22/1 22/15 22/19 23/3 23/13 26/7 32/14 32/17 33/8 33/25 35/17 36/12 38/21 41/2 43/15 47/19 61/9
yet [4] 17/1 55/20 61/17 64/8
York [30] 1/21 2/4 15/19 15/22 20/13 20/14 20/16 20/18 20/18 21/2 22/9 24/24 27/15 30/10 30/12 31/5 31/7 36/16 36/24 37/4 37/21 38/3 38/18 39/6 40/10 41/4 41/15 42/4 42/14 44/12
you [223]
you know [17] 3/19 7/19 7/20 8/19 18/5 21/8 21/10 22/10 30/23 37/20 40/1 52/24 58/5 58/12 58/21 59/11 61/1
you'd [1] 35/11
you're [29] 6/10 6/18 7/19 8/10 8/11 8/11 9/22 10/11 11/2 11/25 12/7 13/6 24/7 29/24 29/25 34/7 36/10 36/25 39/22 40/4 48/20 51/21 51/21 51/22 56/4 56/12 56/14 57/14 58/4
you've [13] 4/11 9/25 15/15 18/5 24/20 29/7 30/11 33/4 33/6 41/10 52/7 53/12 54/21
your [107]
your answer [1] 27/20
Your Honor [65] 3/6 4/1 4/17 5/13 6/17 7/23 9/6 10/21 12/23 13/22 14/1 15/1 16/3 16/21 18/9 18/11 18/25 19/18 20/22 21/1 21/9 23/15 23/16 24/7 24/18 25/3 26/14 28/1 28/23 31/18 32/14 33/9 34/9 35/12 35/18 36/12 38/5 38/21 39/12 40/5 42/10 44/14 45/2 48/8 49/6 52/14 55/9 55/20 56/1 58/5 58/17 58/21 59/1 59/12 59/16 59/20 59/21 60/16 61/25 62/5 62/6 62/8 64/1 64/2 64/9 64/21
Your Honor's [1] 29/15
yourself [1] 19/24

who's [3] 7/13 49/21 57/6
Whoever's [1] 59/9
whole [4] 15/4 45/12 45/15 46/15
why [31] 3/22 8/15 9/4 13/4 13/5 13/12 13/23 18/22 19/3 19/9 20/3 25/4 26/17 34/7 45/25 48/20 49/7 49/8 50/7 50/18 52/15 52/16 52/25 54/17 56/9 56/12 57/7 59/6 60/6 60/9 64/19
Why don't you [1] 26/17
will [13] 2/2 3/11 35/17 35/19 41/12 48/15 50/8 53/24 57/1 57/1 59/25 62/4 62/7
William [3] 2/7 66/2 66/8
win [1] 33/1
windfall [2] 23/5 23/6
wins [2] 38/3 39/3
wipe [1] 23/12
wiped [1] 31/16
withdrawal [1] 34/6
within [1] 6/11
without [4] 43/23 47/22 49/17 64/7
wonderful [1] 57/13
Woods [18] 14/14 16/24 17/3 19/12 23/1 23/4 30/14 37/7 37/20 38/19 38/25 41/23 42/18 44/22 54/7 56/22 58/3 63/24
word [3] 12/20 20/17 62/4
words [9] 18/4 20/25 25/12 26/1 28/19 38/18 38/19 51/21 64/15
work [3] 4/8 8/13 48/12
works [1] 35/1
world [4] 20/4 31/6 36/22 37/15
worried [1] 57/4
worry [2] 36/9 52/3
worth [2] 39/11 49/23
would [47] 3/23 5/22 6/12 8/13 10/25 12/9 12/19 14/2 23/12 23/23 24/25 25/5 28/16 28/21 30/4 37/4 37/14 38/4 39/14 39/23 40/11 40/13 40/22 41/3 41/4 41/21 41/25 42/2 42/2 42/6 46/10 47/8 47/21 53/11 55/9 55/23 56/5 56/17 56/24 58/5 60/6 60/9 60/17 61/14 61/15 61/22 61/24
Would that [1] 53/11
wrong [7] 9/3 9/8 15/13 32/10 45/5 50/8 56/18

**Z**

**Zaremba [3]** 2/7 66/2
66/8
**zero [1]** 54/17